IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. 23-cr-257 (TSC) |
| | * | |
| DONALD J. TRUMP, | * | |
| | * | |
| Defendant. | * | |
| | * | |

**GOVERNMENT'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

The central purpose of criminal discovery is to provide the defendant with materials necessary to prepare for a fair trial. To facilitate the efficient production of discovery to the defense, the Government proposed a reasonable protective order consistent with current practice in this District. The defendant instead proposed an order designed to allow him to try this case in the media rather than in the courtroom. To safeguard witness privacy and the integrity of these proceedings, the Court should enter the Government's proposed protective order.

**Background**

The Government filed its motion for a protective order on Friday, August 4, 2023. ECF No. 10. On Saturday, August 5, the Court entered a Minute Order requiring the defendant to file a response to the Government's motion by 5:00 p.m. on Monday, August 7.

On Sunday, August 6, defense counsel appeared on five television programs and discussed this case in detail, publicly commenting on topics including the parties' disagreement over the protective order, the defense's planned legal arguments, the defendant's actions and statements during the charged conspiracies, and expected testimony of a prospective witness. For instance, regarding the protective order, defense counsel stated:

- On CNN: "[T]his protective order that's being suggested by the Biden administration is an effort to keep from the press important non-sensitive

information" and "we will not agree to keeping information that's not sensitive from the press. The press and the American people in a campaign season, have a right to know what the evidence is in this case, provided that this evidence is not protected otherwise. So, we're going to oppose it, as we have. But for whatever reason, these lawyers on the prosecution team want to keep that from the press." Defense counsel then suggested that the Government, by its proposed protective order, was "trying to impinge on the freedom of the press."

- On ABC: "This is an attack on you and members of the press. I'm really surprised people haven't spoken out about it. What the government – what the Biden administration is trying to do is prevent the press from learning about exculpatory and helpful information, evidence that the people have a right to know about. What the position of the prosecutor is non sensitive, ordinary evidence should not be disclosed to the press. That's shocking. Not only do they want to violate President Trump's First Amendment rights, they want to violate Freedom of the Press, and I'm surprised that the major networks aren't filing papers along with me on Monday." Defense counsel then suggested he could "get [the ABC reporter] a lawyer" to engage in litigation over the protective order.

- On NBC: "Well, I'm shocked and I can find you a lawyer to address this, but I'm shocked that all of the news media outlets aren't protesting what the government is trying to do. They're trying to say that we have discovery that's not sensitive, but we don't want the press to hear about it, and Mr. Trump, our team is saying, President Trump is saying that if there's evidence out there that the government has that's exculpatory or informative, then the press has a right to know, but the Biden administration doesn't want the press to know that, and I'm shocked that there aren't petitions now filed in the district court opposing what the Biden administration is doing."

- On CBS: "We're all in favor of protecting sensitive and highly sensitive information, but it's unprecedented to have all information hidden in a criminal case, including, by the way, information that might be exculpatory and might be exonerative of President Trump. The Biden administration wants to keep that information from the American people."

- On FOX: "The Biden administration wants the judge to put in place an order that will prevent the press from obtaining exculpatory and material information that might be relevant to these proceedings, even though Mr. Trump, President Trump, has argued from the very beginning, as I have, that this is an attack, this indictment is an attack on his First Amendment rights. Now what the Biden administration wants to do is deny all Americans the opportunity to learn non-sensitive information about what the case involves, in a political season." Defense counsel continued, "I'm convinced the Biden administration does not want the American people to see the truth, and they acted on it by filing this protective order, which is

an effort to keep important information about this case from the press. I'm shocked that all the networks haven't lined up and filed pleadings already, objecting to this very broad attempt by the Biden administration to keep information away from the American people during the election season. The American people have a right to know. Of course, Joe Biden doesn't want that to happen."

In television appearances, defense counsel also made specific claims about what the defendant allegedly said and did during the charged criminal conspiracies, and discussed anticipated testimony of Michael R. Pence, stating on ABC that the former Vice President would "be one of our best witnesses," and on CBS that "the Vice President will be our best witness."[1]

On Sunday afternoon, the parties conferred twice by phone. Defense counsel also shared a redline of the Government's proposed protective order. With the parties unable to reach agreement on a proposed protective order, the defendant filed his proposed protective order on Monday, August 7. *See* ECF No. 14.

## Argument

The defendant's proposed order would lead to the public dissemination of discovery material. Indeed, that is the defendant's stated goal; the defendant seeks to use the discovery material to litigate this case in the media. But that is contrary to the purpose of criminal discovery, which is to afford defendants the ability to prepare for and mount a defense in court—not to wage a media campaign. The Court should instead enter the Government's proposed order.

---

[1] The defendant himself has made a number of additional social media posts related to this case since the Government filed its motion for a protective order. For example, the day before his counsel made comments about Mr. Pence, the defendant posted the following to social media: "WOW, it's finally happened! Liddle' Mike Pence, a man who was about to be ousted as Governor Indiana until I came along and made him V.P., has gone to the Dark Side. I never told a newly emboldened (not based on his 2% poll numbers!) Pence to put me above the Constitution, or that Mike was 'too honest.' He's delusional, and now he wants to show he's a tough guy. I once read a major magazine article on Mike. It said he was not a very good person. I was surprised, but the article was right. Sad!"

The Government's proposed protective order, applicable to all discovery produced by the Government, is consistent with others routinely entered in criminal cases in this District. *See, e.g., United States v. Price et. al.*, 23-cr-122 (APM), ECF No. 13, Order; *United States v. Phiri*, 22-cr-122 (CRC), ECF No. 10, Protective Order Governing Discovery; *United States v. Bannon*, 21-cr-670 (CJN), ECF No. 20, Protective Order Governing Discovery and Authorizing Disclosure of Grand Jury Testimony; *United States v. Edwards et. al*, 20-cr-66 (RDM), ECF No. 14, Protective Order Governing Discovery. The defendant's principal objection to it—as defense counsel stated publicly yesterday, and in conference with Government counsel—is that it would not permit the defendant or his counsel to publicly disseminate, and publicize in the media, various materials obtained from the Government in discovery. But there is no right to publicly release discovery material, because the discovery process is designed to ensure a fair process before the Court, not to provide the defendant an opportunity to improperly press his case in the court of public opinion. *See United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) ("a 'trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect'" (quoting *Alderman v. United States*, 394 U.S. 165, 185 (1969)); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31-34 (1984) (noting that discovery rules are a matter of "legislative grace" and litigants have no inherent rights to disseminate what they obtain through the discovery process).[2]

Defense counsel's stated goal—to publicly disseminate and discuss discovery materials in the public sphere—is contrary to the general principle against pretrial publicity and inconsistent

---

[2] The defendant contends that strict scrutiny should apply to the review of the protective order. ECF No. 14 at 4-5. The Supreme Court has stated otherwise. *See Seattle Times*, 467 U.S. at 34 ("[I]t is significant to note that an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny.").

with this District's local rule regarding conduct of attorneys in criminal cases, and the Court should not enter a protective order that permits such harmful extra-judicial publicity. As an initial matter, the Court can and should exercise its discretion, with respect to the protective order, to prevent dissemination of discovery material that could prejudice the jury. *Accord Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979) ("a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity."); *United States v. Brown*, 218 F.3d 415, 423 n.8 (5th Cir. 2000) ("Other principal dangers [of pretrial publicity] include disseminating to the press inadmissible evidence, the exclusion of which at trial 'is rendered meaningless when news media make it available to the public,' as well as creating a 'carnival atmosphere,' which threatens the integrity of the proceeding." (quoting *Shepherd v. Maxwell*, 384 U.S. 333 (1966)).

This District's rules prohibit defense counsel from doing precisely what he has stated he intends to do with discovery if permitted: publicize, outside of court, details of this case, including the testimony of anticipated witnesses. Local Criminal Rule 57.7(b) provides that it is the duty of attorneys in criminal cases not to publicly disseminate "information or opinion" regarding, among other things, "[t]he existence or contents of any . . . statement given by the accused" or "[t]he identity, testimony, or credibility of prospective witnesses." This is because such statements risk tainting the jury pool with inadmissible evidence or otherwise harming the integrity of these proceedings. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1074 (1991) ("Because lawyers have special access to information, through discovery and client communications, their extrajudicial statements pose a threat to the fairness of a pending proceeding since lawyers' statements are likely to be received as especially authoritative."). The Court should not grant a protective order that would allow defense counsel or the defendant to disseminate evidence such as snippets of witness interview recordings—no matter how short, misleading, or unlikely to be

admissible at trial under the Federal Rules of Evidence—and claim that it supports some position the defendant later may make in pre-trial motions or at trial. Such conduct has the potential to unnecessarily inflame public opinion short of all relevant facts, intimidate witnesses, pollute the jury pool, and in general degrade the integrity of proceedings in this Court. *See Bridges v. California*, 314 U.S. 252, 271 (1941) ("Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper."). The goal of the defendant's proposed protective order—prejudicial publicity—is antithetical to the interests of justice.

In addition to the general principle that the Court should enter a protective order that prevents public dissemination of discovery in this matter, the Government below sets forth certain other specific deficiencies in the defendant's proposed protective order:[3]

- In paragraph 1, the defendant proposes replacing "unrelated to the discovery process" with "other than government production." The problem with this change is that it would allow the defense to obtain through trial subpoenas sensitive information learned about through discovery and, under the defense's proposal, publicize those materials. The Government's proposal would prevent such a potential end-run and should be adopted.

- In paragraph 2, the defendant proposes including "other attorneys assisting counsel of record." Without a clearly defined relationship of employment or privilege, this language is boundless. For example, several co-conspirators are identified as attorneys, whom the defense might interpret as "other attorneys assisting counsel of record." The Court should not accept the edit.

- In paragraph 3 (and relatedly in paragraph 9), the defendant proposes replacing the language regarding "persons employed to assist in the defense" with "persons assisting in the defense (defined as including any attorneys, investigators, paralegals, support staff, consultants, or expert witnesses who are advising or assisting defense counsel.)." In a meet-and-confer call, defense counsel stated that their intention is that this language should not be read as broadly as its plain wording, and indicated a willingness to work on language to that effect. The defendant's proposed language is boundless and would allow virtually any

---

[3] As noted in comments to the defendant's proposed order in ECF No. 14 at 16-17, the Government takes no issue with the defendant's proposed edits at the end of paragraphs 4, 6, or 9.

volunteer to access discovery, as well as any co-conspirator or fact witness. The Government's language is more definite.

- In paragraph 8(e), the defendant proposes removing from the definition of Sensitive Materials "recordings, transcripts, interview reports, and related exhibits of witness interviews." In a meet-and-confer conference, the Government clarified to defense counsel that the Government intended to produce in discovery transcripts and audio recordings of witness interviews conducted outside of the grand jury process. The defendant thereafter maintained his proposed edit—an edit that would allow the defendant to release to the public these recordings, transcripts, and interview reports. The defendant's position here makes clear the defendant's intention to try this case outside of the courtroom. The Court should reject the defendant's proposed modification.

- The defendant proposes deleting paragraph 8(f). This would have the effect of removing from the order's protections broad swaths of unredacted witness interviews and other material obtained from other governmental agencies, including the House Select Committee. For the same reasons that it would be inappropriate to allow defense counsel to publicly disseminate transcripts of witness interviews conducted by the Government, it also would be inappropriate to permit dissemination of witness interviews conducted by other government entities.[4]

- At the end of paragraph 8, the defendant proposes that the Government "conspicuously mark all such Sensitive Materials," presumably on each page of each such document. The defendant's proposal is logistically unworkable and would serve to delay the Government's production of discovery. Instead, the Government's proposal contemplates clearly defining Sensitive Material in the cover letter and/or source logs accompanying the discovery productions, thereby eliminating needless delay in getting the defendant the discovery he claims he wants.

- In paragraph 10, the defendant seeks to prohibit his counsel from confirming that his notes do not contain personally identifying information subject to Federal Rule of Criminal Procedure 49.1. But this condition—which is included in the protective order on which the defense claims to model its proposal—is particularly important here because of the defendant and his co-conspirators' practice, as described in the indictment, of publicly targeting individuals. *See, e.g.*, ECF No. 1, Indictment, at ¶¶ 26, 32, 42, 44, 97.

---

[4] As a practical matter, most (if not all) of these interview transcripts and recordings are covered only by Federal Rule of Criminal Procedure 26.2 and 18 U.S.C. § 3500. That is to say, the Government is under no obligation to produce these materials at this stage of the proceedings.

- The defendant's edits to paragraphs 11 through 13 are inappropriate. The new paragraph 11 is in direct contravention of Local Criminal Rule 49(f)(6)(i). The additional edits to the new paragraphs 12 and 13 unnecessarily complicate what the Government's proposal makes straight-forward. Should trial procedures later necessitate a modification of the protective order, such modification is expressly contemplated by paragraph 13 of the Government's proposed order. The Court should accept the Government's proposal.

## Conclusion

The Government has proposed a standard, reasonable order that will streamline the flow of discovery to the defendant while preserving the integrity of these proceedings. The defendant has proposed an unreasonable order to facilitate his plan to litigate this case in the media, to the detriment of litigating this case in the courtroom. Normal order should prevail. No oral argument is necessary. The Court should enter the Government's proposed protective order.

Respectfully submitted,

JACK SMITH
Special Counsel

By:  /s/Thomas P. Windom
Thomas P. Windom
Molly Gaston
Senior Assistant Special Counsels
950 Pennsylvania Avenue NW
Room B-206
Washington, D.C. 20530