

BENNIE G. THOMPSON, MISSISSIPPI
CHAIRMAN

ZOE LOFGREN, CALIFORNIA
ADAM B. SCHIFF, CALIFORNIA
PETE AGUILAR, CALIFORNIA
STEPHANIE N. MURPHY, FLORIDA
JAMIE RASKIN, MARYLAND
ELAINE G. LURIA, VIRGINIA
LIZ CHENEY, WYOMING
ADAM KINZINGER, ILLINOIS

U.S. House of Representatives
Washington, DC 20515

january6th.house.gov
(202) 225-7800

## One Hundred Seventeenth Congress
## Select Committee to Investigate the January 6th Attack on the United States Capitol

December 30, 2022

The Honorable Jonathan Meyer
General Counsel
U.S. Department of Homeland Security
Washington, DC, 20528

Dear Mr. Meyer:

      The Select Committee has concluded its hearings, released its Report and will very soon be dissolved. The Committee has enormous respect for the Secret Service and its agents, and we write now to address the disposition of Committee interview transcripts for certain U.S. Secret Service personnel.

      At the outset of our investigation, the Committee recognized the legitimate longstanding limits the Secret Service has imposed on interviews or depositions of its agents. We also recognized the significant potential ramifications for the Secret Service's mission that would be caused by any detailed disclosure of the means employed by the Service in its protective operations.

      As our investigation progressed, it became clear that additional interviews of certain Secret Service agents and personnel would be necessary for multiple reasons. For example, our investigation uncovered substantial intelligence information, circulated by other agencies to the White House and Secret Service, that a number of President Trump's supporters had prepared in advance to engage in violent action on January 6th and were specifically targeting the U.S. Capitol. These documents suggested that those in the White House, including the President, Chief of Staff, and Deputy Chief of Staff, should have had more than sufficient information to cancel the President's January 6th Ellipse rally. The intelligence was also more than sufficient to warrant the cancellation of the President's plan to instruct his supporters to march to the Capitol. Likewise, Secret Service agents had important testimony regarding President Trump's desire to participate personally at the Capitol in the effort to overturn the election.

      Last summer, we were very disappointed to learn that text messages on many Secret Service phones had been deleted in the weeks after January 6th. This ultimately hindered certain aspects of our investigation. That said, after that discovery, you and your team stepped forward

The Honorable Jonathan Meyer
Page 2

to provide unprecedented cooperation with the Select Committee.  This allowed us to fully understand what intelligence was available to the White House.  We wish to extend our thanks for that cooperation.

      Beginning last August, our staff began working with your team to obtain and comprehensively review a significant amount of intelligence and other information available to the Secret Service.  Following that review, we conducted several additional interviews of Secret Service personnel.  We also interviewed Mr. Tony Ornato, who resigned from the Secret Service last summer and served as President Trump's Deputy White House Chief of Staff on January 6th.

In each of our interviews, Secret Service lawyers participated and made clear that the transcripts:

> include information and records covered under the Privacy Act, personnel and other personal privacy information, for-official-use-only information, intelligence and law enforcement sensitive records, and raw intelligence information.

Secret Service lawyers also explained as follows:

> While the Secret Service and the Department have made this information and records available, we continue to assert that such information and records and any discussion of such information and records during the course of this transcribed interview is not intended for public release …This transcript and any attachments are protected from further dissemination to the same extent as the documents and information they are based on.

      Many of the facts developed in these interviews are important; we have summarized them in our final report without revealing any Secret Service operational details or private information regarding any agent.  We have also redacted other witness transcripts that would have disclosed that information.  In addition to operational details, certain private attorneys for Secret Service witnesses requested that particular private details in interview transcripts be withheld from public disclosure.  Although this information has some relevance to the public, we have honored that request as well – including when those same private details appear in other non-Secret Service transcripts.

      Since its outset, the Committee has intended to make as much of the information developed by the investigation public as reasonably possible.  Because Mr. Ornato's November 2022 transcript addressed a range of intelligence information important to the Committee's conclusions about January 6th, and because Mr. Ornato was not functioning as a Secret Service agent on January 6th, the Committee decided to release his November 2022 transcript.  Please

The Honorable Jonathan Meyer
Page 3

note that we made significant redactions specifically to address concerns identified by the Secret Service.

As of next week when the Committee dissolves, the Committee will no longer exercise control over this material, and thus cannot ensure enforcement of the agreements to maintain the confidentiality of any of these transcripts and related security information. Pursuant to long-standing House rules, the official records of the Committee will be archived and pass into the control of the National Archives. We fully share the Department's concern for the safety, security and reputation of our witnesses and the security information vital to the protection of USSS protectees and employees.

In coordination with the office of the Speaker of the House, to comply with House rules and to honor our commitment to best provide for continuing confidentiality of operational details and private information, we are hereby providing those transcripts to the Department now for appropriate review, timely return, and designation of instructions for proper handling by the Archives. During your review, we recommend that the Department provide for the official file that will reside with the Archives any necessary written guidance regarding the need for limitations on release or other sensitivities. Our expectation is that the transcripts with such instructions will become part of the historical record of our investigation maintained by the National Archives.

Thank you again for your assistance with our investigation. We are grateful for your assistance in carrying out this important security task.

Sincerely,

Bennie G. Thompson
Chairman

Liz Cheney
Vice Chair

cc: Mr. Jackson Eaton