IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:23-cr-00257-TSC |
| DONALD J. TRUMP, | |
| *Defendant*. | |

**PRESIDENT TRUMP'S MOTION TO DISMISS FOR
<u>SELECTIVE AND VINDICTIVE PROSECUTION</u>**

President Donald J. Trump respectfully submits this motion to dismiss the charges on the basis of selective and vindictive prosecution.

The core conduct alleged in the indictment relating to the presentation of alternate electors has a historical basis that dates back to 1800 and spans at least seven other elections. There are no other prosecutions in American history relating to these types of activities. The allegations in the indictment involve constitutionally authorized activities by President Trump as Commander In Chief, as well as speech and expressive conduct protected by the First Amendment.

Given this context, it is no surprise that in the months following the 2020 election, senior government officials rejected an investigation of President Trump as unfounded and potentially unconstitutional. However, biased prosecutors pursued charges despite the evidence, rather than based on it, with one prosecutor violating DOJ rules and ethical norms by forecasting the investigation in a television interview on *60 Minutes*. Even the Attorney General felt "boxed in" by the onslaught. Unable to address criticism from President Trump through lawful means—while facing public pressure from a House committee investigation not confined by a burden of proof or the same due process standards, *i.e.*, the same congressional investigation that failed to preserve a

huge amount of exculpatory evidence—Joe Biden pressured DOJ to pursue the nakedly political indictment in this case months before the FBI had even opened an investigation.

Less than a week before President Trump announced his candidacy for the Presidency in the 2024 election, Biden used the White House itself to tell anyone listening that he was "making sure" that President Trump "does not become the next President again."  Three days after President Trump formally announced his candidacy, the Special Counsel was put in place as part of a flawed effort to insulate Biden and his supporters from scrutiny of their obvious and illegal bias.

These actions, which are demonstrated by, *inter alia*, Biden's public statements and reports from the *New York Times* and *Washington Post* based on leaks from participants in the investigation, require further inquiry and dismissal of the indictment.

## RELEVANT FACTS

In February and March 2021, according to the *Washington Post*, the DOJ and FBI rejected aggressive proposals by line prosecutors to target President Trump, including a "wide-ranging effort . . . to trace who had financed the [allegedly] false claims of a stolen election and paid for the travel of rallygoers-turned rioters," targeting "the finances of Trump backers," examining "slates of electors for Trump that his Republican allies had submitted to Congress and the Archives," and investigating "documents that Trump used to pressure Pence not to certify the election for Biden."  Ex. 1.  The officials who rejected these proposals expressed concerns about, *inter alia*, "First Amendment-protected activities," "uncomfortable analog[ies]" to other protest activities, and the fact that "investigating public figures demanded a high degree of confidence, because even a probe that finds no crime can unfairly impugn them."  *Id.*  Nevertheless, following a March 2021 *60 Minutes* interview in which a then-acting United States Attorney expressed his "personal[] belie[f]" that the "evidence . . . probably meets" the elements of a seditious conspiracy

charge, the prosecutor "heard from a close Justice Department ally that [the Attorney General] and his deputies now felt boxed into the seditious conspiracy charges—or to tough questions if they didn't bring them." *Id.*

In November 2021, another prosecutor—who is now one of the Senior Assistant Special Counsels assigned to this case—asked the FBI to issue grand jury subpoenas targeting associates of President Trump. *See id.* "[A]ccording to people familiar with the meeting," the proposal was met with "flat rejection." *Id.* Undeterred by the FBI's determination that the subpoenas were inappropriate, the prosecutor pitched the same idea to the U.S. Postal Inspection Service. Around this time, "according to a person familiar with the exchange," an investigator working for the House committee investigating events related to January 6, 2021 "alerted" the U.S. Attorney's Office for the District of Columbia to "a few details" regarding President Trump in connection with the House committee's investigation. *Id.* Following this early coordination, the committee failed to preserve critical information regarding its activities, such as interview materials, records identifying witnesses, and intelligence and other law enforcement information. *See* Doc. 99 at 2-3.

In April 2022, the *New York Times* reported that, "as recently as late last year, Mr. Biden confided to his inner circle that he believed former President Donald J. Trump was a threat to democracy and should be prosecuted, according to two people familiar with his comments." Ex. 2. The article also attributed the following to Biden: "he has said privately that he wanted [the Attorney General] to act less like a ponderous judge and more like a prosecutor who is willing to take decisive action . . . ." *Id.* That same month, the FBI reportedly "open[ed] an investigation of the electors scheme . . . , about 15 months after" the January 6, 2021 protests at the Capitol. Ex. 1.

On November 9, 2022, Biden was much less private. At a press conference, Biden stated: "we just have to demonstrate that he will not take power—if we—if he does run. I'm making sure he, under legitimate efforts of our Constitution, does not become the next President again."[1] On November 15, 2022, President Trump announced that he would run for a second term as President. Three days later, Biden's Justice Department appointed Jack Smith to oversee this case. In the press release appointing Mr. Smith, the Attorney General stated that the appointment was necessary because of "recent developments, including the former President's announcement that he is a candidate for President in the next election, and the sitting President's stated intention to be a candidate as well."[2]

On June 8, 2023, the Special Counsel's Office filed an indictment in the Southern District of Florida. President Trump pleaded not guilty to those charges on June 13, 2023. On July 5, 2023, President Trump argued on his Truth account that "MASSIVE PROSECUTORIAL MISCONDUCT IS CURRENTLY TAKING PLACE IN AMERICA. THE WEAPONIZATION OF LAW ENFORCEMENT CANNOT BE ALLOWED TO HAPPEN." Ex. 3. On July 12, President Trump publicly criticized "Crooked Joe Biden's Targeted, Weaponized DOJ & FBI." Ex. 4.

Following President Trump's not-guilty plea in Florida and his public criticisms, the Special Counsel's Office filed the indictment in this case on August 1, 2023. As we have explained in other filings, the allegations in the indictment focus—to an unprecedented extent—on acts by

---

[1] *Remarks by President Biden in Press Conference*, The White House (Nov. 9, 2022, 4:15 pm), https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/11/09/remarks-by-president-biden-in-press-conference-8/.

[2] *Appointment of Special Counsel*, U.S. Dep't of Justice (Nov. 18, 2022), https://www.justice.gov/opa/pr/appointment-special-counsel-0.

President Trump in connection with his "official responsibility" as the leader of this Nation, Doc. 74 at 8, as well as protected speech and expressive conduct protected by the First Amendment, which is discussed in our motion to dismiss on constitutional grounds

## **LEGAL STANDARDS**

### I.   **Selective Prosecution**

"For almost one hundred years, the federal courts have recognized that it is unconstitutional to administer the law 'with an evil eye and an unequal hand so as practically to make unjust and illegal discrimination between persons in similar circumstances. . . .'" *United States v. Napper*, 574 F. Supp. 1521, 1523 (D.D.C. 1983) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886)). "If the Executive selectively prosecutes someone based on impermissible considerations, the equal protection remedy is to dismiss the prosecution . . . ." *In re Aiken County*, 725 F.3d 255, 264 n.7 (D.C. Cir. 2013). There are two elements to a selective prosecution claim. The defendant must show that the challenged prosecution decision had a "discriminatory effect" and a "discriminatory purpose." *United States v. Armstrong*, 517 U.S. 456, 465 (1996).

### II.  **Vindictive Prosecution**

The Due Process Clause prohibits prosecutors from 'upping the ante' by filing increased charges in order to retaliate against a defendant for exercising a legal right. *United States v. Slatten*, 865 F.3d 767, 798-99 (D.C. Cir. 2017) (quoting *Blackledge v. Perry*, 417 U.S. 21, 27-28 (1974)). "[I]n the pre-trial context, a defendant must provide additional facts sufficient to show that 'all of the circumstances, when taken together, support a realistic likelihood of vindictiveness.'" *Slatten*, 865 F.3d at 799 (quoting *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)). "[A] prosecutorial decision to increase charges after a defendant has exercised a legal right does not

alone give rise to a presumption in the pretrial context, but it is surely a fact relevant to the analysis." *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011) (cleaned up).

## ARGUMENT

Public statements by Biden and news reports sourced to government personnel with direct knowledge of the relevant events make out *prima facie* cases of selective prosecution and vindictive prosecution.

### I. The Prosecutors Have Behaved in a Discriminatory and Unconstitutionally Selective Fashion

With respect to selective prosecution, the relevant theory of this case is that it is illegal to dispute the outcome of an election and work with others to propose alternate electors. As we made clear in our motion to dismiss based on fair-notice principles, which we incorporate herein, the track record of similar, unprosecuted, efforts dates back to 1800 and includes at least seven other elections. In light of the extensive history, it is not surprising that at least three Supreme Court Justices have suggested that the Electoral Count Act contemplates Congress having to "select[] among conflicting slates of electors." *Bush v. Gore*, 531 U.S. 98, 127 (2000) (Stevens, J., dissenting). What is surprising—and is likely to have an impermissibly "discriminatory effect" in this case and the 2024 election—is the efforts by the Special Counsel's Office to prosecute President Trump based on protected speech relating to the very same strategy.

This prosecution is also driven by an unconstitutional discriminatory purpose: Biden's publicly stated objective is to use the criminal justice system to incapacitate President Trump, his main political rival and the leading candidate in the upcoming election. *See Napper*, 574 F. Supp. at 1523 ("[A] defendant may not be selectively prosecuted on the basis of such considerations as religion, race or the desire to deter the proper exercise of constitutional rights."). No amount of "follow the evidence" course correction by the Attorney General or the Special Counsel can mask

the driving force behind this case, especially where there remain unresolved questions about responsibility for missing evidence collected by a House committee that was "[p]rivately" coordinating with prosecutors beginning in at least late 2021. *See* Ex. 1; Doc. 99 at 2-3.

"[T]he Government cannot base its decision to prosecute on some unjustifiable standard, such as a defendant's political beliefs." *United States v. Judd*, 579 F. Supp. 3d 1, 4 (D.D.C. 2021). In *United States v. Diggs*, the D.C. Circuit reasoned that "a concern for the integrity of the legislative process prompts careful inquiry into a congressman's claim of discriminatory prosecution," but found the defendant's evidence to be lacking. 613 F.2d 988, 1004 (D.C. Cir. 1979). The evidence in *Diggs* was limited to the "broad assertion" of a conflict with the "then-incumbent administration." *Id.* at 1004 n.92. Here, in contrast, after prosecutors who are now part of the prosecution team were rebuffed while shopping the inappropriate investigation around to the FBI and the Postal Service, Biden told his advisors that President Trump "should be prosecuted," Ex. 2, urged the Attorney General to "take decisive action," *id.*, and declared from the State Dining Room of the White House that he was "making sure" that President Trump "does not become the next President again."[3]

"What the government has done here is to undertake to suppress a viewpoint it does not wish to hear under the guise of enforcing a general regulation prohibiting disturbances on government property." *United States v. Crowthers*, 456 F.2d 1074, 1079 (4th Cir. 1972); *see also United States v. Falk*, 479 F.2d 616, 620 (7th Cir. 1973) ("[J]ust as discrimination on the basis of religion or race is forbidden by the Constitution, so is discrimination on the basis of the exercise of protected First Amendment activities, whether done as an individual or, as in this case, as a

---

[3] *Remarks by President Biden in Press Conference, supra* note 1.

member of a group unpopular with the government."). As a result, there is, at the very minimum, a *prima facie* case of selective prosecution.

## II. The Sequence of Events Demonstrates Vindictiveness

Parallel facts support President Trump's vindictive prosecution argument. This case, urged by Biden when many prosecutors and agents appropriately saw no basis for it, is a straightforward retaliatory response to President Trump's decisions as Commander In Chief in 2020, his exercising his constitutional rights to free speech and to petition for the redress of grievances, and his decision to run for political office.

Without question, this is a "high-profile prosecution with international ramifications no less," which has a "far greater potential to give rise to a vindictive motive." *United States v. Slatten*, 865 F.3d 767, 799-800 (D.C. Cir. 2017). That motive is manifest. President Trump criticized the process and results of the 2020 election. He criticized Biden and his family before, during, and after that election, including with respect to misconduct and malfeasance in connection with the Ukrainian oil and gas company known as Burisma,[4] China's State Energy HK Limited,[5] and Russian oligarchs such as Yelena Baturina.[6] President Trump is now the leading candidate in

---

[4] *See Hunter Biden, Burisma, and Corruption: The Impact on U.S. Government Policy and Related Concerns*, U.S. Senate Comm. on Homeland Security and Government Affairs and U.S. Senate Comm. on Finance (Sept. 22, 2020), https://www.hsgac.senate.gov/wp-content/uploads/imo/media/doc/HSGAC_Finance_Report_FINAL.pdf, at 3.

[5] *See Second Bank Records Memorandum from the Oversight Committee's Investigation into the Biden Family's Influence Peddling and Business Schemes*, House of Rep. Comm. on Oversight and Accountability (May 10, 2023), https://oversight.house.gov/wp-content/uploads/2023/05/Bank-Memorandum-5.10.23.pdf, at 5, 9.

[6] *See Third Bank Records Memorandum from the Oversight Committee's Investigation into the Biden Family's Influence Peddling and Business Schemes*, House of Rep. Comm. on Oversight and Accountability (Aug. 9, 2023), https://oversight.house.gov/wp-content/uploads/2023/08/Third-Bank-Records-Memorandum_Redacted.pdf, at 2.

the 2024 election, and raises all these concerns in that context as well. Likewise, President Trump also criticized the Special Counsel's Office after charges were filed against him in Florida. *See* Exs. 3 and 4. Following those criticisms, and after President Trump exercised his constitutional right to plead not guilty in Florida, the prosecutors added additional charges in this District. The record is more than sufficient to support a presumption of vindictiveness.

### III.  A Hearing Is Necessary

At the very least, even if the Special Counsel's Office makes self-serving arguments in an effort to articulate a defense of the prosecutors' charging decision, where there is none, a hearing is necessary to give President Trump an opportunity to demonstrate that their proffered evidence is pretextual. "[T]he defenses of selective prosecution and vindictive prosecution both require the defendant to probe the mental state of the prosecutors. Requiring the defendant to prove more than a colorable claim before compelling discovery might prematurely stifle a legitimate defense of vindictive prosecution for lack of evidence." *United States v. Heidecke*, 900 F.2d 1155, 1159 (7th Cir. 1990) (cleaned up). The standard "necessarily is lower than the 'clear evidence' standard required for dismissal of the indictment." *United States v. Hsia*, 24 F. Supp. 2d 33, 49 (D.D.C. 1998). Here, at minimum, Biden's statements from the White House and leaked accounts of flaws in the underlying investigation require additional fact finding before these arguments can be resolved.

## CONCLUSION

For the foregoing reasons, President Trump respectfully submits that the indictment should be dismissed on the basis of selective and vindictive prosecution or, in the alternative, the Court should hold a hearing to develop the record regarding due process violations by the Special Counsel's Office.

Dated: October 23, 2023                                                       Respectfully submitted,

                                                                                              */s/ Todd Blanche*

| | |
|---|---|
| John F. Lauro, Esq. | Todd Blanche, Esq. (PHV) |
| D.C. Bar No. 392830 | ToddBlanche@blanchelaw.com |
| jlauro@laurosinger.com | Emil Bove, Esq. (PHV) |
| Gregory M. Singer, Esq. (PHV) | Emil.Bove@blanchelaw.com |
| gsinger@laurosinger.com | BLANCHE LAW PLLC |
| LAURO & SINGER | 99 Wall St., Suite 4460 |
| 400 N. Tampa St., 15th Floor | New York, NY 10005 |
| Tampa, FL 33602 | (212) 716-1250 |
| (813) 222-8990 | |

*Counsel for President Donald J. Trump*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 23, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

<u>/s/ Todd Blanche</u><br>Todd Blanche