IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   CRIMINAL NO. 23-cr-257 (TSC) |
| | * |
| DONALD J. TRUMP, | * |
| | * |
| Defendant. | * |
| | * |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION FOR PRE-TRIAL RULE 17(c) SUBPOENAS

The defendant asks for the Court's permission to make vague early-return document demands of four non-party Legislative Branch entities and three non-party Executive Branch entities, all in search of information regarding purportedly "missing" records from the House Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee"). *See* ECF No. 99. The defendant's motion is wholly unnecessary: the Government already provided the defendant in discovery the Select Committee records that he identifies with any specificity. In any event, the defendant's proposed fishing expedition in search of other purportedly "missing" congressional records fails to satisfy the requirement that Rule 17(c) subpoenas be for relevant, admissible, and specific information. *See United States v. Nixon*, 418 U.S. 683, 698-700 (1974). The defendant's motion should be denied.

I.     Background

On October 11, 2023, the defendant filed the instant motion, seeking permission to serve seven Rule 17(c) subpoenas, each calling for the production of six categories of documents (collectively, "Requested Records"). ECF No. 99 at 5; ECF No. 99-5 at 7. The defendant's principal expansive and ill-defined request is for what he claims are "missing" materials from the Select Committee's investigation, focused on certain materials referenced in letters from the Select

Committee Chairman to the White House Counsel's Office and the Department of Homeland Security. ECF No. 99 at 4-5. Although the defendant's motion and proposed subpoenas suggest this material could be voluminous—including "the video recordings or other transcriptions of witness interviews, intelligence and other law enforcement information available to the Secret Service, records identifying witnesses, and other information the Select Committee deemed private or operational details pursuant to agreements with the White House and Department of Homeland Security," ECF No. 99-5 at 5—a review of the underlying correspondence that the defendant cites reveals that the actual records provided to the White House and Secret Service are a small number of transcripts of Select Committee interviews conducted subject to confidentiality agreements.[1] The remaining topics in the defendant's subpoenas relate to records and communications concerning "the loss or destruction" of any "missing" Select Committee materials. ECF No. 99 at 5. In a footnote, the defendant admits that he "has not reviewed [discovery] in its entirety" but nonetheless claims "a good faith belief" that the discovery does "not include the Requested Records." ECF No. 99 at 4 n.4.

As the Government has set forth in Court, in pleadings, and in its discovery letters to the defendant, during the course of its investigation, the Government obtained and produced records

---

[1] *See* ECF No. 99-3 at 1 (Letter from Rep. Bennie G. Thompson, Select Committee Chairman, to Richard A. Sauber, Special Counsel to the President (December 30, 2022) (stating that the material being returned to the White House for archiving consisted of "Committee interview transcripts")); ECF No. 99-4 at 3 (Letter from Rep. Bennie G. Thompson, Select Committee Chairman, to Jonathan Meyer, General Counsel, DHS (Dec. 30, 2022) (stating that material being returned to DHS for archiving consisted of transcripts)).

Although the defendant seeks "video recordings" of witness interviews in addition to transcripts, in correspondence that the defendant attached to his motion, the Select Committee explained that it had "determined that the written transcripts provided by nonpartisan, professional official reporters, which the witnesses and Select Committee staff had the opportunity to review for errata, were the official, permanent records of transcribed interviews and depositions." ECF No. 99-2 at 1 n.1.

from the Select Committee's investigation and from the Secret Service. As early as the August 11, 2023, hearing on the protective order motion, the Government advised the Court and the defendant that it obtained "non-public" items from the Select Committee, including "transcripts of witness interviews." ECF No. 29 at 45. The Government also described "a large volume of material obtained from the Secret Service." *Id.* That same day, the Government made its first production of unclassified discovery, which included the sensitive, non-public transcripts that the defendant now claims are "missing." In the cover letter accompanying that production, the Government informed the defendant that the production included materials from the Select Committee, "including, *inter alia*, … transcripts of interviews and depositions and accompanying exhibits provided by the House Select Committee" and that "[t]his production also includes transcripts of testimony provided by the House Select Committee and related exhibits that the Government obtained from the United States Secret Service and the White House." A detailed Source Log appended to the cover letter identified each of the witnesses for whom transcripts had been produced, sorted in alphabetical order by last name, along with the Bates range identifying the location of each witness's transcript in the production.

Prior to filing the present motion, the defendant did not seek additional information or clarification regarding the Government's production of these materials, nor did he ask whether the production included the sensitive, non-public Select Committee interview transcripts that he now seeks—which it did. Had he done so, the Government would have directed him to the relevant discovery productions that obviate the need for his proposed subpoenas.

**II.      Applicable Law**

Rule 17(c) is "not intended to provide a means of discovery for criminal cases." *United States v. Nixo*n*,* 418 U.S. 683, 698 (1974) (citing *Bowman Dairy Co. v. United States*, 341 U.S.

214 (1951)).  The party seeking a Rule 17(c) subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Id*. at 700.  Even if the party seeking the subpoena meets these "exacting standards," *United States v. Fitzsimons*, 342 F.R.D. 18, 20 (D.D.C. 2022) (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004)), the Court should not grant the motion if the materials are "otherwise procurable reasonably in advance of trial by exercise of due diligence." *Nixon*, 418 U.S. at 699.  And the Court should determine that the application for a Rule 17(c) subpoena "is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699-700.  *See United States v. Libby*, 432 F. Supp. 2d 26, 31-32 (D.D.C. 2006) ("'[I]f the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused.'") (quoting *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991)); *United States v. Binh Tang Vo*, 78 F. Supp. 3d 171, 180 (D.D.C. 2015) ("In essence, 'the test … is whether the subpoena constitutes a good faith effort to obtain evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device.'" (quoting *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980))[2]; *United States v. Rand*, 835 F.3d 451, 463 (4th Cir. 2016) ("The right to defend oneself does not extend to using the power of the Court to compel third parties to provide information that may not even be

---

[2] The defendant's motion does not cite a single post-*Nixon* case from this District or Circuit dealing with Rule 17(c) subpoenas.  Instead, he relies heavily on *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008), in which a district court appears to have expansively conceived of *Nixon*.  The Court should and must instead apply settled law.  *See United States v. Cole*, 2021 WL 912425, at *3 (S.D.N.Y. Mar. 10, 2021) ("the Second Circuit and district courts in [that] Circuit have almost unanimously applied the *Nixon* standard to Rule 17(c) subpoenas requested by a defendant, including to subpoenas served on third parties." (internal citation omitted)).

- 4 -

admissible at trial or at a hearing or that is merely 'investigatory.'") (quoting *United States v. Al-Amin*, 2013 WL 3865079, at *7 n.3 (E.D. Tenn. July 25, 2013)).[3]

## III.   Argument

As an initial matter, the defendant already has the purportedly "missing" material discussed in the letters to the White House and Department of Homeland Security that he cites: sensitive, non-public Select Committee interview transcripts. To the extent that his request reaches beyond these specific records that he already has been provided, the defendant's motion should be denied because he fails to meet *Nixon*'s "exacting standards"—hurdles put in place to prevent precisely the kind of aimless fishing expedition the defendant wants to embark upon here. He fails to establish that any of the Requested Records seek relevant or admissible information, or that his requests are sufficiently specific. *See, e.g.*, *Nixon*, 418 U.S. at 700.

### A.   The Defendant Already Has Any Arguably Relevant Material He Seeks.

Although it is difficult to glean from the defendant's motion and the expansive definition of "Select Committee Missing Materials" in his subpoenas, the materials the defendant argues he

---

[3] The defendant spends a substantial portion of his legal analysis discussing the ramifications of "lost" evidence or "the government's failure to preserve" evidence. ECF No. 99 at 7-8. Yet none of the cases the defendant cites in this portion of his brief even mention Rule 17(c), and in any event there can be no recourse against the Government when dealing with records of non-parties not in the possession of the prosecution team. *See United States v. Bannon*, 21-cr-670, ECF No. 147 at 5 (D.D.C. Sept. 2, 2022) (stating that "the government is not responsible for turning over records not in its possession" and finding that Select Committee materials were not in the Government's possession). Even the defendant's cases recognize this basic principle. *See* ECF No. 99 at 7 (citing *United States v. Greenberg*, 835 F.3d 295 (2d Cir. 2016)); *Greenberg*, 835 F.3d at 303 ("[I]t is doubtful that [the defendant's] moving papers even raised a due process issue regarding the failure to preserve evidence" as "the record must first show that evidence has been lost and that this loss is 'chargeable to the state.'"); ECF No. 99 at 9 (citing *United States v. Ehrlichman*, 389 F. Supp. 95 (D.D.C. 1974)); *Ehrlichman*, 389 F. Supp. at 97 ("The subpoenaed testimony is not in the possession of the Government within the meaning of that decision, since the Subcommittee is neither an investigative or a prosecutorial arm of the Executive branch nor an agency of the Government in any way involved in the offense or related transactions.").

is seeking are the transcripts of witness interviews that the Select Committee provided to the White House and Secret Service. *Compare generally* ECF No. 99 (not mentioning transcripts) *with* ECF Nos. 99-1, 99-2, 99-3, and 99-4 (describing the material returned to the White House and Secret Service exclusively as transcripts). In the course of its investigation, the Government obtained these materials from the Select Committee, the White House, and the Secret Service, and it produced them to the defendant in its first discovery production more than two months ago. As set forth in the Government's first discovery letter on August 11, 2023, the Government produced to the defendant Select Committee transcripts "that the Government obtained from the United States Secret Service and the White House." The Source Log accompanying the production itemized the more than 260 witnesses whose Select Committee transcripts the Government produced. The defendant does not appear to have attempted to determine whether the transcripts he seeks, for witnesses whose identities he does not specify, are already in his possession. For this reason alone, the motion should be denied. *See United States v. Cole*, 2021 WL 912425, at *6 (S.D.N.Y. Mar. 10, 2021) (declining to issue Rule 17(c) subpoena where the defendant failed "to provide an explanation as to why these documents 'are not otherwise procurable' in light of the Government's representation" that it would produce the documents). *See also Nixon*, 418 U.S. at 699 ("[T]he moving party must show . . . that [the documents] are not otherwise procurable reasonably in advance of trial by exercise of due diligence.").

### B.     The Defendant Fails to Satisfy the Relevancy Requirement.

The defendant only attempts to establish the relevancy of a portion of one of the six categories of information he seeks—specifically, the recordings of Select Committee interviews.[4]

---

[4] The defendant's subpoenas seek, *inter alia*, "video recordings or other transcripts of witness interviews." ECF No. 99-5 at 5. His argument, however, focuses only on the recordings and fails to explain the relevancy of video recordings of interviews for which he already has

*See* ECF No. 99 at 9-10.  As to that limited subcategory, the defendant's arguments carry no weight.

First, the defendant claims without citation that "recordings of interviews are critical evidence." ECF No. 99 at 9.  Even if that is so in the abstract, the defendant has not identified whose interview was recorded or if the defendant already has a transcript of the recorded interview among the hundreds of Select Committee transcripts provided to him in discovery.  *See Fitzsimons*, 342 F.R.D. at 20 (noting that "relevance prong is not satisfied merely because a defendant can articulate what they hope to find in the subpoenaed evidence").  If the defendant already has the interview transcript created by "nonpartisan, professional official reporters, which the witnesses and Select Committee staff had the opportunity to review for errata," ECF No. 99-2 at 1 n.1, then any recording of the interview for which a transcript was made is superfluous.

Second, the defendant claims that "[i]mpeachment of witnesses is 'clearly material' to the defense." ECF No. 99 at 9 (quoting *Tucker*, 249 F.R.D. at 66).  But he fails to identify for whom he seeks to obtain impeachment evidence and whether that person will be a witness at trial.  Since the parties' witness lists are not due to be exchanged until February 19, 2024, a request seeking impeachment evidence—even if it identified a specific witness—is, at best, premature.  *Cf. United States v. King*, 194 F.R.D. 569, 574 (E.D. Va. 2000) ("[W]here it is known with certainty before trial that the witness will be called to testify . . . the admissibility determination can be made before trial.").  *See also Binh Tang Vo*, 78 F. Supp. 3d at 181 (rejecting argument that the subpoenaed

---

transcripts.  The defendant also claims that "the letters to the Special Counsel to the President and the General [C]ounsel for DHS" describe "very important information" and "substantial intelligence information." ECF No. 99 at 9.  While it is correct that those words appear in the letters, it is incorrect that the letters suggest any of that information was returned to the White House or Secret Service.  Instead, the letters clearly state that the Select Committee is returning only "transcripts." *See* ECF No. 99-3 at 1 ("we are hereby providing those transcripts . . . ."); ECF No. 99-4 at 1 ("we are hereby providing those transcripts . . . .").

information contained impeachment evidence "because such statements ripen into evidentiary material for purposes of impeachment only if and when the witness testifies at trial" (cleaned up)); *Fitzsimons*, 342 F.R.D. at 20-21 (denying Rule 17(c) subpoena where the defendant failed to identify "any reason to think that [the subpoenaed information] contain[ed] potential impeachment material"); *United States v. Rhodes*, 22-cr-15, Hr'g Tr. at 973-980 (D.D.C. Sept. 29, 2022) (denying requests for Rule 17(c) subpoenas that seek information that may impeach cooperators) (citing *Fitzsimons*, 2022 WL 3354709).[5]

The defendant's motion fails in any way to discuss, much less establish, the relevancy of any of the other Requested Records.[6] For example, other parts of Request One sought "the temporary committee records identified in footnote 1 of the Thompson letter," "intelligence and other law enforcement information available to the Secret Service," "records identifying witnesses," and "other information the Select Committee deemed private or operational details pursuant to agreements with the White House and Department of Homeland Security." Also, Requests Two through Six call for an unknown amount of material generally related to the document retention practices and policies of the U.S. House of Representatives; communications between the Select Committee and other entities; and "[a]ny other documents, communications,

---

[5] The defendant's reliance on *United States v. Silverman*, 745 F.2d 1386 (11th Cir. 1984), is misplaced. *See* ECF No. 99 at 12. In *Silverman*, the requests were specific, limited to complaints filed against the defendant with the Florida State Bar, and contingent on the defendant electing to testify at trial. *See id*. at 1396-98.

[6] The defendant cannot attempt to rehabilitate in his reply brief arguments waived by failure to be included in his motion. *See United States v. Ford*, 183 F. Supp. 3d 22, 38 (D.D.C. 2016) ("These new bases for suppression are waived because [the defendant] raised them for the first time in his reply brief."); *Steele v. United States*, 14-cv-1523, 2023 WL 2139722, at *14 (D.D.C. Feb. 21, 2023) ("[T]he Court will not consider plaintiffs' argument, raised for the first time in their reply brief . . . . Whatever the merits of that argument, plaintiffs had every opportunity to include it in their opening summary judgment brief but chose not to do so. 'Arguments raised for the first time in a reply brief are waived.'") (quoting *Nippon Shinyaku Co., Ltd. v. Iancu*, 369 F. Supp. 3d 226, 239, n.8 (D.D.C. 2019)).

or records in any way pertaining to the Missing Materials." The defendant's motion says nothing about the relevancy of these items—probably because he is unable to identify them. Since he fails to even try to carry his burden as to these materials, his motion should be denied. *See Fitzsimons*, 342 F.R.D. at 20 ("The burden of satisfying the 'exacting standards' of the three-part *Nixon* test falls 'on the party requesting the information.'"); *Binh Tang Vo*, 78 F. Supp. 3d at 178 ("The burden rests with the party issuing a subpoena . . . .").

### C. The Defendant Fails to Satisfy the Admissibility Requirement.

As with his relevancy claims, the defendant's admissibility arguments fail to state what materials his subpoenas seek. For instance, the defendant references "the evidence identified in the [DHS] letter," ECF No. 99 at 11, leaving it to the Court to determine what that evidence may be. But as described above, the DHS letter, ECF No. 99-3, only specifies the transcripts the Select Committee returned to the Secret Service, and the defendant has been provided with those in discovery.

The defendant also claims without citation that "the evidence identified in the [DHS] letter" "could be used to show notice to White House personnel regarding the events of January 6th" and "could be offered for the non-hearsay purpose of demonstrating a witness or party's state of mind." ECF No. 99 at 11. It is unclear how these arguments relate to transcripts of unidentified witnesses that the defendant already has in his possession. To the extent the defendant is referring to some other potential evidence, his motion does not specify what it is. *See United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010) (affirming denial of Rule 17(c) subpoena where defendant could "only speculate as to what the requested information would have shown" and stating that the defendant's "requested Rule 17(c) subpoenas cast a wide net that betokens a 'general fishing expedition'"). Nor does the defendant's motion address that whatever the "notice" or "state of mind" information he seeks for some unidentified witness, it is likely to be found among the Select

Committee interviews, Government interviews, grand jury proceedings, Secret Service material, or other subpoena returns the defendant has in his possession already because of the Government's robust, detailed, early discovery productions.

### D. The Defendant Fails to Satisfy the Specificity Requirement.

In light of the defendant's failure to establish either the relevancy or the admissibility of the Requested Records, the Court need not address whether the requests satisfy *Nixon*'s specificity requirement. The cursory argument the defendant offers as to why his requests are specific, however, is readily dispatched.

To establish specificity under *Nixon*, the defendant asserts that the Requested Records "concern only a specific issue and do not include documents related to any other aspect of the Select Committee's investigation or archived records." ECF No. 99 at 10. While at a sufficiently high level of generality it may be correct that the Requested Records "concern only a specific issue," the claim falls apart upon rudimentary inspection, as "courts will not approve a subpoena for documents based upon requests for disclosure from broad categories of documents." *Libby*, 432 F. Supp. 2d at 31. The defendant's requests suggest a breathtaking amount of potential material, such as "intelligence and other law enforcement information available to the Secret Service" (Request One) and "[a]ny other documents, communications, or records in any way pertaining to the Missing Materials" (Request Six). Setting aside that the defendant's request is premised on "missing" materials that do not appear to be missing at all, the fact that the defendant is unable to articulate beyond the top-line what records he might obtain or the volume of records that might fall within these requests demonstrates that the requests are not sufficiently specific. *See, e.g.*, *Cole*, 2021 WL 912425, at *4 (insufficiently specific when defendant failed to identify a

specific portion of a personnel file and explain its relevancy); *United States v. Lindberg*, 2019 WL 7000089, at *2-3 (W.D.N.C. Dec. 20, 2019) (collecting cases); *Libby*, 432 F. Supp. 2d at 31-32.

Instead of being "specific," the defendant's requests are a quintessential "fishing expedition" through which the defendant apparently hopes he might obtain unidentified impeachment evidence for unknown individuals who may never be on any party's witness list, learn what the House's record keeping requirements were (for some inadmissible purpose), learn what the Select Committee may or may not have done with "missing" materials (again for some inadmissible purpose), and identify who the Select Committee may or may not have communicated with about such materials (again for some inadmissible purpose). *See, e.g.*, *Binh Tang Vo*, 78 F. Supp. 3d at 180-81 ("[The] assertion at oral argument that the movants would undoubtedly 'say things that would be evidence that we could potentially even use in our case in chief,' . . . is the type of vague justification that makes clear the subpoenas were 'a general 'fishing expedition' that attempts to use the rule as a discovery device.'"); *United States v. Constantine*, 2023 WL 3045408, at *2 (S.D.N.Y. Apr. 21, 2023) ("Subpoenas should not issue when 'defense counsel merely speculates that the materials *may* constitute inconsistent statements of expected witnesses.'"). Since the defendant fails to make a sufficiently specific request, the Court should deny his motion for this additional reason.[7]

---

[7] The defendant's motion is contrary to applicable law, and authorizing the issuance of his proposed subpoenas would invite wasteful collateral litigation with Congress and the White House over these non-party subpoenas. *See* ECF No. 99 at 11 (noting that the proposed subpoena recipients "retain the right to raise any objections with the Court"); ECF No. 99-5 at 6 (describing the manner to raise privilege assertions); *Ehrlichman*, 389 F. Supp. at 98 (noting that "further proceedings to enforce the subpoenas would be futile" in light of a valid assertion of constitutional privilege by the U.S. House of Representatives); *Bannon*, Hr'g Tr. at 141 (D.D.C. Jan. 9, 2023) ("I conclude that much of the testimony that Mr. Bannon would seek from the individuals he has subpoenaed and most of the documents are barred by the Speech or Debate Clause.").

## IV. Conclusion

The Court should deny the defendant's motion.

<div style="text-align: right">

Respectfully submitted,

JACK SMITH
Special Counsel

By:   /s/Thomas P. Windom
Thomas P. Windom
Molly Gaston
Senior Assistant Special Counsels
950 Pennsylvania Avenue NW
Room B-206
Washington, D.C. 20530

</div>