**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.                                                                  Case No. 1:23-cr-257-TSC

DONALD J. TRUMP,

      Defendant.

_____/

**PRESIDENT TRUMP'S REPLY IN SUPPORT OF MOTION**
**FOR PRE-TRIAL RULE 17(c) SUBPOENAS**

President Trump moved pursuant to Fed. R. Crim. P. 17(c) for leave to issue pretrial

subpoenas for the pretrial production of records aimed at recovering documents and recordings

that the January 6 Committee (the "Committee") did not properly archive, including: (1) video

recordings, and (2) records the Committee transferred to government agencies on the last business

day before its dissolution. Additionally, President Trump seeks records concerning the disposition

of these missing materials. (Doc. 99) (the "Motion" seeking the "Requested Subpoenas").

Apparently concerned that these missing records would be helpful to the defense, or

detrimental to entities acting in concert with the Biden Administration, the prosecution goes to

great lengths to resist production, variously claiming, incorrectly, that the Requested Records are

not sufficiently relevant, specific, or admissible. Additionally, despite claiming the requests are not

sufficiently described, the prosecution strangely, and falsely, claims that President Trump already

possesses the material he seeks. These objections are meritless. Addressing each in turn:

**I.       The Requested Records are Specific, Relevant, and Admissible.**

Specificity. The Requested Records are sufficiently specific. "A subpoena that fails to

describe any specific documents is too broad, but it is not necessary that the subpoena designate

each particular paper desired. It is sufficient if kinds of documents are designated with reasonable

particularity." See 2 Charles A. Wright, Fed. Prac. & Proc. Crim. § 275 (4th ed.); *see also United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) ("exquisite specificity is not required"). As explained in the Motion and the attached Congressional correspondence, the Committee "loaned" certain materials to various government agencies at the very end of the Committee's existence. (Doc. 99, Ex. 1). The Requested Subpoenas seek these specific materials, and thus adequately describe the "kinds of records" President Trump is looking for. 2 Charles A. Wright, Fed. Prac. & Proc. Crim. § 275 (4th ed.).[1]

Next, President Trump seeks records concerning the disposition of the "loaned" (and now missing) Committee records. Undoubtedly, the Committee would not have given control of records to other government parties without discussing the matter internally first. Likewise, the Committee almost certainly communicated with the agencies that took possession of the missing records. The Requested Subpoenas narrowly request these communications, which are oriented on the specific, and highly relevant, issue of understanding how and why the Committee attempted to conceal certain materials.

Finally, the letters state that all or most witness interviews were recorded. *See* Doc. 99, Ex. 1 ("The video recordings of transcribed interviews and depositions, which featured prominently during the Committee's hearings, were not archived or transferred to the Committee on House Administration."); Doc. 99, Ex. 2 n. 1 (noting Committee did not archive "all video recordings of transcribed interviews or depositions"). President Trump seeks these recordings. It is hard to imagine a more specific request than that. *See United States v. Nixon*, 418 U.S. 683, 700 (1974)

---

[1] The prosecution claims it has already produced some of these materials, but carefully declines to say whether it has produced all of them. To the extent it has, President Trump invites the prosecution to identify the records with particularity and verify that it has produced all materials the Committee "loaned" to any government entity.

("Of course, the contents of the subpoenaed tapes could not at that stage be described fully by the Special Prosecutor, but there was a sufficient likelihood that each of the tapes contains conversations relevant to the offenses charged in the indictment.").

In fact, it should be trivially easy for the proposed respondents to locate and produce recordings the Committee created of witness interviews in the ordinary course of business, presuming, of course, the Committee did not delete the recordings specifically to ensure President Trump and other political opponents could not obtain them (which appears likely). *See Libby*, 432 F. Supp. 2d at 32 (citing *United States v. Anderson*, 31 F.Supp.2d 933, 945 (D. Kan.1998) ("one of the major purposes of the specificity requirement is to provide the subpoenaed party or other party having standing with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility").

In sum, the Requested Subpoenas in no way resemble a fishing expedition. The "kinds of documents" President Trump seeks are narrow and specific—the video recordings of witness interviews, the records the Committee shipped out the door just before shutting down, and correspondence related to the same. Based on the four letters attached as exhibits to the Motion (Doc. 99, Ex. 1-4), these are records respondents would be aware of, and can easily locate. Indeed, the records were significant enough to engender a dispute amongst members of Congress regarding their disposition. Thus, *Nixon's* specificity prong is satisfied. *Nixon*, 418 U.S. at 700 ("As for the remainder of the tapes, the identity of the participants and the time and place of the conversations, taken in their total context, permit a rational inference that at least part of the conversations relate to the offenses charged in the indictment.").

Relevance. "There is no justification for relying upon 'assumption'" that the discovery will not yield useful information. *Dennis v. United States*, 384 U.S. 855, 874 (1966). "The

determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Id*. at 875.

Here, Committee materials—and especially those transferred to government agencies in a procedural trick to avoid archival—are manifestly relevant to this case. The Committee's entire purpose was to investigate the events alleged in the indictment, and, conceding the obvious relevance of that investigation, the prosecution has produced large quantities of Committee investigative material in discovery, without any apparent relevancy withholdings. *See Nixon*, 418 U.S. at 700 (relevance satisfied when there is a "sufficient likelihood … that each of the tapes contains conversations relevant to the offenses charged in the indictment"). So too, should President Trump have the right to obtain vital Committee materials from other individuals and entities, notwithstanding the Committee's segregation of those materials to avoid archival and later production.[2]   For example, President Trump is entitled to all evidence regarding widely reported

---

[2] The prosecution contends that video recordings of interviews are "superfluous" because transcripts may exist. Response at 7. Not so. First, video conveys far more information regarding a witness's demeanor, tone, and expression than a written transcript. *See Broad. Music v. Havana Madrid Rest. Corp.*, 175 F.2d 77, 80 (2d Cir. 1949) ("The liar's story may seem uncontradicted to one who merely reads it, yet it may be 'contradicted' in the trial court by his manner, his intonations, his grimaces, his features, and the like- all matters which 'cold print does not preserve' and which constitute 'lost evidence' so far as an upper court is concerned." (citation omitted)).

Second, many of the transcripts produced by the Committee are not signed or otherwise adopted by the witness, meaning recordings will be essential to establishing authenticity, and will also be needed as impeachment evidence if a witness denies making certain statements.

Third, notwithstanding the Committee's footnote that "nonpartisan, professional official reporters" produced the transcripts, Doc. 99-2 at 1 n.1, it provides no indication who these individuals are, and many transcripts do not say. Thus, many transcripts lack the typical markers of authenticity on their face (including a court reporter's certification) and may never be authenticated.

Fourth, as many interviews took place via Webex and other alternative methods, it appears that numerous transcripts were not created in real-time by a court reporter sitting in on an interview, but were instead produced after the fact *from the videos President Trump now seeks*. This squarely presents a best evidence problem, as "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." F.R.E. 1002. A court reporter's transcript of a video is thus not a substitute for the video itself.

decisions made by former Speaker Nancy Pelosi and District of Columbia Mayor Muriel Bowser to not deploy the National Guard, which was authorized and made available by President Trump, on January 6, even if the Committee wrongfully disposed of those materials before disbanding. Finally, the Requested Subpoenas seek information that is relevant to motions for spoliation of evidence and due process violations based on unlawful coordination between the Special Counsel's Office, NARA, and the Committee, among others.

Admissibility. The Requested Records could be admissible as public records, F.R.E. 803(8), could be used to refresh a witness's memory, F.R.E. 612, could be admissible under the Residual Clause, F.R.E. 807, and will serve as important impeachment materials.[3] *Nixon*, 418 U.S. at 701 (finding admissibility prong satisfied where recorded conversations may be admissible for the limited purpose of impeaching); *Libby*, 432 F. Supp. 2d at 31 ("[D]ocuments sought pursuant to a Rule 17(c) subpoena can be deemed admissible for a variety of purposes, including impeachment."); *Barry v. Trustees of Int'l Ass'n Full-Time Salaried Officers & Emps. of Outside Loc. Unions & Dist. Counsel's (Iron Workers) Pension Plan*, 467 F. Supp. 2d 91, 97 (D.D.C. 2006) (examining application of public records exception to Congressional records and noting "the language of the rule does not single out Congressional reports or distinguish them from Executive agency reports"); *Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 59 n.3 (D.D.C. 2018)

---

Finally, even setting aside the issues with the Committee's documentation, the threshold question of relevance does not depend on the creation of transcripts. Recorded statements discussing facts pertinent to this case are relevant in and of themselves, and therefore satisfy that requirement regardless of any other potential evidence.

[3] The Court need not decide the precise grounds for admissibility at this stage. *Libby*, 432 F. Supp. 2d at 31 (citing *United States v. Orena*, 883 F. Supp. 849, 868 (E.D.N.Y.1995) ("Admittedly, it will often be difficult at the pretrial stage to determine with precision the admissibility of certain documents; therefore, if a document is arguably relevant and admissible under the Rules of Evidence, the *Nixon* 'evidentiary' requirement is likely satisfied.")).

(finding Congressional report and transcript to be "official U.S. Government reports, records, and statements" under the public records exception to the hearsay rule, Fed. R. Evid. 803(8)); 30B Charles Alan Wright, *et al.*, Federal Practice and Procedure § 6882 (2023 ed.) (noting that Rule 803(8) applies to federal offices and agencies).

## II.    President Trump's Constitutional Rights to Due Process, Fair Trial, and Counsel Require the Ability to Seek Compulsory Process of Evidence.

The prosecution's resistance to the Requested Subpoenas is emblematic of the injustice that pervades this case.   President Trump, at the prosecution's request, has been repeatedly and unlawfully deprived of a fair and meaningful ability to defend the charges against him and prepare for trial.   The prosecution's opposition to the Requested Subpoenas is just the latest example of that unconstitutional prejudice, as "Rule 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor." *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir. 1988) (citing *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also United States v. Beckford*, 964 F. Supp. 1010, 1019 (E.D. Va. 1997) (quoting 25 Moore's Federal Practice § 617.08[l] at 617–21) ("Indeed, *[t]he essential purpose of the Rule* is to implement the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in the accused's favor.") (emphasis in original).   "[C]riminal defendants have the right to the Government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987); *see also United States v. Colburn*, 2020 WL 6566508, at *1 (D. Mass. Nov. 9, 2020) (citing *Nixon,* 418 U.S. at 698-99) ("Rule 17(c) enables a defendant to exercise his constitutional rights to confrontation and compulsory process by permitting him to request subpoenas duces tecum that are returnable before trial.").

Permitting a defendant to gather this evidence ahead of any trial, such that the defense may fully review the materials and incorporate them into a cohesive defense strategy, likewise implicates "the core" of the Sixth Amendment right to effective assistance of counsel which "has historically been, and remains today, 'the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial.'" *Kansas v. Ventris*, 556 U.S. 586, 590 (2009) (quoting *Michigan v. Harvey*, 494 U.S. 344, 348 (1990)).

Ultimately, the Constitution guarantees President Trump a fair opportunity to review discovery, compel evidence, investigate the case, and prepare a defense. Without the Requested Subpoenas, that guarantee will be further undermined. Accordingly, the Court should grant the Motion and direct the Clerk to issue the Requested Subpoenas.

Dated: November 1, 2023

Todd Blanche, Esq. (PHV)
toddblanche@blanchelaw.com
Emil Bove, Esq. (PHV)
Emil.Bove@blanchelaw.com
BLANCHE LAW
99 Wall St., Suite 4460
New York, NY 10005
(212) 716-1250

Respectfully submitted,

*/s/John F. Lauro*
John F. Lauro, Esq.
D.C. Bar No. 392830
jlauro@laurosinger.com
Gregory M. Singer, Esq. (PHV)
gsinger@laurosinger.com
Filzah I. Pavalon, Esq. (PHV)
fpavalon@laurosinger.com
LAURO & SINGER
400 N. Tampa St., 15th Floor
Tampa, FL 33602
(813) 222-8990
*Counsel for President Trump*