**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. 23-cr-257 (TSC)** |
| | * | |
| **DONALD J. TRUMP,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION**

The Special Counsel and career prosecutors in the Special Counsel's Office collectively have served in the Department of Justice for decades.  They have sworn oaths to support and defend the Constitution, and they have faithfully executed their prosecutorial duties in this case. Consistent with the Department's best traditions and the Principles of Federal Prosecution, Justice Manual, § 9-27.000, the indictment in this case is the result of a thorough and impartial investigation guided by the facts and applicable law, and it was returned by a grand jury of citizens in this District empaneled by the district court.  The factual and legal record contain absolutely no indication of selective or vindictive prosecution.  Despite this, the defendant asks the Court to conclude otherwise and dismiss the charges, and he does so on the basis of nothing more than spurious allegations contrived from two newspaper articles citing anonymous sources.  The defendant's motion to dismiss falls far short of the rigorous proof necessary to establish selective or vindictive prosecution.  The motion should be denied without a hearing.

I.      **Applicable Law**

The defendant's motion fails to address the high bar he must surmount to succeed on his claims of selective and vindictive prosecution.  To establish selective prosecution, the defendant must produce clear evidence that the prosecutor's charging decision was motivated by a

discriminatory purpose and had a discriminatory effect. To establish vindictive prosecution, he must establish that the prosecutor's charging decision was motivated only by animus. As set forth below, the defendant cannot meet those exacting standards, and his suggestion that he can do so with speculation based on two newspaper articles should be summarily rejected.

### A.       Selective Prosecution

"In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982)). Once a discretionary prosecutorial decision has been made, it is subject to a "'presumption of regularity.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)). A defendant seeking to establish selective prosecution must overcome the presumption of regularity by providing "clear evidence" that the government's charging decision "had a discriminatory effect" and "was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 464-65 (quotations omitted). This is a "demanding" conjunctive standard, as it was intended to be, since it necessarily "asks a court to exercise judicial power over a 'special province' of the Executive." *Id.* at 463-64.

In order to even obtain discovery in support of a claim of selective prosecution, the defendant must meet a standard that is "correspondingly rigorous" and that "should itself be a significant barrier to the litigation of insubstantial claims," as such discovery "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy." *Id.* at 464, 468. *See also United States v. Bass*, 536 U.S. 862, 864 (2002) (per curiam) (summarily reversing unfounded selective-prosecution discovery order which itself "threaten[ed] the performance of a core executive constitutional function") (quotations omitted). Under that standard, the defendant must put forward "some evidence tending to show the existence of the essential elements of the defense." *Armstrong*, 517 U.S. at 468 (citation omitted). Accordingly, a defendant is not entitled

to discovery on a claim of selective prosecution absent a "colorable showing," *Armstrong*, 517 U.S. at 471, that (1) the defendant was "singled out for prosecution from among others similarly situated," and (2) "the prosecution is improperly motivated, *i.e.*, based on an arbitrary classification," *United States v. Blackley*, 986 F. Supp. 616, 617-18 (D.D.C. 1997).  If a defendant fails to make the requisite showing as to either prong, he is not entitled to discovery, much less to the extreme remedy of dismissal of the indictment.  *See Bass*, 536 U.S. at 863; *Att'y Gen. of the U.S. v. Irish People, Inc.*, 684 F.2d 928, 947 (D.C. Cir. 1982).

A person has "engaged in similar conduct," and is therefore "similarly situated" for purposes of a selective prosecution claim, *Blackley*, 986 F. Supp. at 617, "when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them," *Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000) (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)).  Such legitimate prosecutorial factors include, among other things, the defendant's "relative culpability" and "the strength of the case against particular defendants."  *United States v. Khanu*, 664 F. Supp. 2d 28, 32 (D.D.C. 2009).  Stated differently, a person is "similarly situated" for selective prosecution purposes only if he "committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant." *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000).  *See United States v. Stone*, 394 F. Supp. 3d 1, 31 (D.D.C. 2019) (same).  This analysis is necessarily sensitive not only to the nature of the criminal conduct but the precise way in which the crime was carried out.  Accordingly, courts look to the specific factual allegations at hand when assessing selective prosecution claims. *See, e.g.*, *Smith*, 231 F.3d at 811 ("[F]or [the defendants] to establish selective prosecution, they

must show that there are other individuals who voted twice or more in a federal election by applying for and casting fraudulent absentee ballots, *and* who forged the voter's signature or knowingly gave false information on a ballot affidavit or application, *and* that the voter whose signature those individuals signed denied voting, *and* against whom the government had evidence that was as strong as the evidence it had against [the defendants].") (emphasis in original).

## B.     Vindictive Prosecution

The vindictive prosecution doctrine "'precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a criminal prosecution.'" *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011) (quoting *Maddox v. Elzie*, 238 F.3d 437, 446 (D.C. Cir. 2001)). *See United States v. Meadows*, 867 F.3d 1305, 1311 (D.C. Cir. 2017) (same). As has been noted with respect to the presumption of regularity, "prosecutors have broad discretion to enforce the law, and their decisions are presumed to be proper absent clear evidence to the contrary." *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017). "Thus, to succeed on a claim of vindictive prosecution, a defendant must establish that the increased charge" or other punitive prosecutorial action "was 'brought *solely* to 'penalize' [him] and could not be justified as a proper exercise of prosecutorial discretion.'" *Id.* at 799 (emphasis and alteration in original) (quoting *Goodwin*, 457 U.S. at 380 n.12).

A defendant can show "actual vindictiveness" by presenting "'objective evidence' that the prosecutor's actions were designed to punish a defendant for asserting his legal rights." *Maddox*, 238 F.3d at 446 (quoting *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)). "Such a showing is normally 'exceedingly difficult to make.'" *Maddox*, 238 F.3d at 446 (quoting *Meyer*, 810 F.2d at 1245). *See Meadows*, 867 F.3d at 1312 (same). Specifically, a defendant "must show that "(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking

- 4 -

horse,' and (2) the defendant would not have been prosecuted except for the animus." *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) (cleaned up).

A defendant can establish a rebuttable "presumption of vindictiveness" by pointing to a sequence of events that establishes "a realistic likelihood of 'vindictiveness'" that would be "applicable in all cases." *Goodwin*, 457 U.S. at 381, 384. *See Blackledge v. Perry*, 417 U.S. 21, 27 (1974). Such a "realistic likelihood" typically occurs only in a narrow set of circumstances, where a defendant exercises a right and the prosecutor responds by "upping the ante," *i.e.*, increasing the severity of the charges the defendant is facing, in a manner that would be likely to deter other defendants from exercising a similar right under the circumstances. *Blackledge*, 417 U.S. at 27-28. *See Goodwin*, 457 U.S. at 384. Even then, the mere possibility of vindictiveness is insufficient to trigger a presumption; instead, a court should consider "the timing of the prosecutor's actions" as well as the "nature of the right" that the defendant has exercised. *Goodwin*, 457 U.S. at 381-82. Thus, for example, "a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision," since the latter necessarily occurs at a time when "the prosecutor's assessment of the proper extent of prosecution may not have crystallized." *Id.* at 381. Accordingly, the concerns animating the presumption typically arise only when the defendant's exercise of a right "require[s] duplicative expenditures of prosecutorial resources," challenges a decision in which the prosecutor has a "personal stake" that would prompt him to engage in "self-vindication," or triggers an "institutional bias" against the exercise of the right. *Id.* at 383. In the rare cases when a presumption of vindictiveness applies, the Government may rebut it by presenting "objective evidence that its motive in prosecuting the defendant was not vindictive." *Safavian*, 649 F.3d at 692.

The standard for obtaining discovery for a vindictive prosecution claim is analogous to the "rigorous" standard for selective prosecution. *See United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 175 (D.D.C. 2020) (citing and quoting *Armstrong*, 517 U.S. at 464). As such, a defendant is not entitled to discovery unless he can present "some objective evidence tending to establish the vindictive prosecution defense." *Oseguera Gonzalez*, 507 F. Supp. 3d at 175.

## II.      Argument

There is no evidence that the indictment in this case was returned based upon anything other than the facts and the law, and the defendant cannot meet the high bar that is required to succeed on a selective or vindictive prosecution motion. To support his claims, the defendant attaches to his motion two newspaper articles—one from April 2022 and the other from June 2023—which exclusively quote anonymous sources for the claims upon which the defendant relies. From these articles, the defendant engages in rank speculation and offers the Court nothing more than conspiratorial narratives of prosecutorial bias and abuse. This rumor and innuendo is not a substitute for proof, and it falls far short of the sort of clear, objective evidence that is required to support a selective or vindictive prosecution claim. The defendant fails to satisfy the standard to support a request for discovery, much less the extraordinary step of dismissing the indictment.

### A.      The Selective Prosecution Claim Is Unfounded

The defendant offers no evidence, much less colorable or clear evidence, of either discriminatory effect or discriminatory purpose. His selective prosecution claim is meritless.

#### 1.      The defendant fails to prove any discriminatory effect

The defendant's discriminatory effect allegation, confined to one paragraph of his motion, ECF No. 116 at 6, is built on an inaccurate and misleading characterization of the conduct charged in the indictment, which he has manufactured in order to supply himself with a more favorable set of facts from which to set off in search of uncharged comparisons. He wrongly contends that "the

relevant theory of this case is that it is illegal to dispute the outcome of the election and work with others to propose alternate electors." *Id.* at 6. But that is not what the indictment alleges. In plain English, the indictment charges that the defendant "perpetrated three criminal conspiracies"—one conspiracy to "defraud the United States by using dishonesty, fraud, and deceit to impair, obstruct, and defeat the lawful federal government function by which the results of the presidential election are collected, counted, and certified by the federal government"; another to "corruptly obstruct and impede the January 6 congressional proceeding at which the collected results of the presidential election are counted and certified"; and a third "against the right to vote and to have one's vote counted," ECF No. 1 ¶ 4—which converged on January 6 to result in the violent obstruction of the congressional proceeding to certify the results of the presidential election.

Then, cloaked in his inaccurate characterization of the charges, the defendant explores historical episodes dating back to the time of Thomas Jefferson in support of his claim that he is the only person who has been prosecuted for this conduct. The defendant cites no caselaw to support a theory that a selective prosecution claim can be based upon uncharged comparators from different centuries. But even those episodes provide no comparison for the defendant's conduct that is actually charged in the indictment. As explained in the Government's Omnibus Opposition to Defendant's Motions to Dismiss the Indictment on Statutory and Constitutional Grounds, *see* ECF No. 139 at 55-62, none of the historical examples the defendant points to involved deceitful and corrupt efforts to defeat a government function or block the certification of the legitimate results of a presidential election. And certainly in no instance has any dispute over the results of an election culminated in a "singular event" like the violent attack on the United States Capitol on January 6, 2021. *Trump v. Thompson*, 20 F.4th 10, 43 (D.C. Cir. 2021). If the defendant is correct in his claim that the indictment is unprecedented, it is only because the defendant's conduct is unprecedented.

Despite his search through history, the defendant has not identified a "similarly situated" person "against whom the evidence was as strong or stronger than that against" him, *Smith*, 231 F.3d at 810-11, who the Department of Justice chose not to prosecute. He also ignores the obvious comparators closer at hand: the hundreds of other individuals who have been prosecuted for their roles in the January 6th attack on the Capitol. *See* ECF No. 140 (Government's Opposition to Defendant's Motion to Strike Inflammatory Allegations from the Indictment) at 8 (collecting cases). And, like the defendant, the rioters and their co-conspirators were not prosecuted for their political beliefs or because of any other improper motivation—they were prosecuted, based on legitimate prosecutorial considerations, for their conduct. *Cf. United States v. Rhodes*, 610 F. Supp. 3d 29, 46-47 (D.D.C. 2022) ("[Defendants] seem to say that they are being prosecuted for exercising their First Amendment rights of expression. However, 'seditious conduct can always be punished,' and the indictment sufficiently pleads the offense." (citation and alterations omitted)); *United States v. Rodriguez*, No. 21-cr-246, 2022 WL 3910580, at *11 (D.D.C. Aug. 31, 2022) ("[I]t was defendants' criminal conduct, not their political beliefs, that formed the basis for the indictment." (citation omitted)).[1] Also like the defendant, these January 6 defendants engaged in serious criminal conduct that threatened the foundation of American democracy—as this Court

---

[1] *See also United States v. Mostofsky*, 579 F. Supp. 3d 9, 27 (D.D.C. 2021) ("Indeed, [the defendant] is not being charged for his views or his expression of them; rather, it is his actions in entering a restricted area in an alleged effort to impede the Electoral College certification that has landed him under indictment . . . ."); *United States v. Bozell*, No. 21-cr-216, 2022 WL 474144, at *7 n.6 (D.D.C. Feb. 16, 2022) ("Again, however, [the defendant] is not being prosecuted for the political views he may have possessed and communicated on January 6, but rather for the destructive acts he allegedly took to disrupt the January 6 Certification."); *United States v. Hostetter*, No. 21-cr-392, 2023 WL 4539842, at *1 (D.D.C. July 13, 2023) ("[The defendant] is not being prosecuted for engaging in protected First Amendment activity, and I am making my decision without regard to his political beliefs, which I believe he holds sincerely. [The defendant] has a right to believe whatever he likes about the 2020 Presidential Election, and to voice those opinions. But the First Amendment does not give anyone a right to obstruct or impede Congress by making it impossible for them to do their jobs safely.").

and others have concluded in rejecting their selective prosecution claims.  *See, e.g.*, *United States v. Judd*, 579 F. Supp. 3d 1, 8 (D.D.C. 2021) ("Even if the unique context of January 6 render[s] few defendants similarly situated to [the defendant], 'it is precisely because of that uniqueness' that the Court would 'find it difficult to fault' the Government's prosecution of him."); *United States v. Brock*, 628 F. Supp. 3d 85, 102 (D.D.C. 2022) ("The decision to file and pursue more serious charges based on the threat to government officials and employees is certainly a legitimate prosecutorial consideration.  Other factors, such as the alleged purpose of the January 6th defendants' actions—obstructing the certification of the Electoral College vote—would also justify differences in prosecutorial behavior."); *United States v. Rhodes,* No. 22-cr-15, 2022 WL 3042200, at *5 (D.D.C. Aug. 2, 2022) (citing defendant's "involvement in a concerted plan to use force to oppose the authority of the United States government and to obstruct an official proceeding"); *United States v. Miller*, No. 21-cr-119, ECF No. 67 (D.D.C. Dec. 21, 2021) (noting that the defendant's conduct "target[ed] a proceeding prescribed by the Constitution and established to ensure a peaceful transition of power").[2]

In sum, the defendant cannot establish, by clear evidence, that he was "singled out for prosecution from among others similarly situated."  *Blackley*, 986 F. Supp. at 617.

### 2.      The defendant fails to prove any discriminatory purpose

The defendant's theory of discriminatory purpose is that the incumbent president directed the defendant's prosecution to defeat him in the next election.  ECF No. 116 at 6.  The defendant fails to bring forth any evidence to support this claim.  That is because there is no such evidence:

---

[2] As an aside within his selective prosecution argument, the defendant asserts that "there remain unresolved questions about responsibility for missing evidence collected by a House committee that was 'privately' coordinating with prosecutors beginning in at least late 2021."  ECF No. 116 at 7.  The Government previously addressed and disposed of the defendant's assertions about "missing" materials in its Opposition to Defendant's Motion for Pre-Trial Rule 17(c) Subpoenas, ECF No. 119.

the incumbent president has no role in this case, and the career prosecutors handling this matter would not participate in this prosecution if it were otherwise. The defendant's false speculation that the incumbent president directed this prosecution amounts to an incorrect "personal conclusion[] based on anecdotal evidence," *Armstrong*, 517 U.S. at 470, and is insufficient to warrant discovery or dismissal on a selective prosecution claim.

The defendant also claims that he is being prosecuted because "biased prosecutors pursued charges despite the evidence, rather than based on it." ECF No. 116 at 1. Here, the defendant relies primarily upon hearsay from unnamed sources cited in an April 2022 *New York Times* article and a June 2023 *Washington Post* article. ECF No. 116-1 at 2; ECF 116-2 at 1. Even if the defendant's cited articles said what he claims, they would be insufficient. *See Khanu*, 664 F. Supp. at 34 ("'Because discretion is essential to the criminal process, we would demand exceptionally clear proof before we would infer that the discretion has been abused.'" (quoting *McCleskey v. Kemp*, 481 U.S. 279, 297 (1987)). But in order even to make his frivolous claim, the defendant resorts to misstating what the articles actually say. For example, the defendant claims that the *Post* article says that "one prosecutor violat[ed] DOJ rules and ethical norms by forecasting the investigation in a television interview on *60 Minutes*" and that "the Attorney General felt 'boxed in' by the onslaught." ECF No. 116 at 1. The defendant fails to advise the Court that the referenced "investigation" discussed on *60 Minutes* pertained not to the defendant, but instead to whether "some rioters engaged in sedition"; that the Attorney General was faced with a decision about "seditious conspiracy charges – or to tough questions if they didn't bring them," not any prosecution of the defendant, who in any event is not charged with seditious conspiracy; and that the referenced prosecutor who appeared on *60 Minutes* left his role in March 2021, more than two years before the defendant was indicted and more than nineteen months before the Special Counsel was appointed. The fact that the defendant must mischaracterize even the flimsy support he offers

the Court demonstrates the inadequacy of his allegations.   The defendant's "conclusory statement[s]" about the basis for this prosecution are "not 'evidence' of anything," *Brock*, 628 F. Supp. 3d at 103 (quoting *Armstrong*, 517 U.S. at 468), much less the clear evidence necessary to justify dismissal of the indictment.

### B.      The Vindictive Prosecution Claim Is Unfounded

The defendant does not allege actual vindictiveness, which would have required him to present "objective evidence" of "genuine animus" that was the sole basis for the prosecution. *Maddox*, 238 F.3d at 446; *Sanders*, 211 F.3d at 717.   That, of course, is because the indictment is predicated on facts and law, not animus.   Instead, deploying bombastic rhetoric rather than legal argument, the defendant claims that the sequence of events by itself manifests "a presumption of vindictiveness."   ECF No. 116 at 8-9.   His claim is meritless.

First, the defendant suggests that a presumption of vindictiveness should apply because, in his telling, he was charged because he "criticized the process and results of the 2020 election."  *Id.* at 8.   That is false, and the defendant offers no evidence to establish otherwise.   The defendant is not entitled to a presumption of vindictiveness based on a bald and baseless allegation.  *See United States v. Ortiz-Santiago*, 211 F.3d 146, 150 (1st Cir. 2000) ("Absent some evidentiary predicate, direct or circumstantial—and we discern none in the appellant's wholly conclusory presentation— merely chanting the mantra of prosecutorial vindictiveness gets a defendant nowhere.").

Second, the defendant reports that he "criticized [the incumbent president] and his family before, during, and after the [2020] election," ECF No. 116 at 8–9, presumably to demonstrate that the incumbent president has a "personal stake" in the prosecution that would support a presumption of vindictiveness, *Goodwin*, 457 U.S. at 383.   As discussed above, however, the incumbent president has no part in this prosecution, and none of the career prosecutors on this case have a

- 11 -

"personal stake" in the outcome. *Id.* at 381. The defendant therefore cannot obtain a presumption of vindictiveness on this score either.

Third, the defendant asserts that the indictment was the vindictive result of the defendant pleading not guilty to his earlier federal indictment in the Southern District of Florida and thereafter criticizing the Special Counsel. ECF Nos. 116 at 9, 116-3, 116-4. But again, the defendant provides no proof to support his claim. He merely points to a coincidental sequence of events, which is insufficient to support a presumption of vindictiveness. *See United States v. Bucci*, 582 F.3d 108, 114 (1st Cir. 2009) ("'evidence of suspicious timing alone does not indicate prosecutorial animus'") (quoting *United States v. Cooper*, 461 F.3d 850, 856 (7th Cir. 2006)). In any event, the timing of the indictment in this case was far from suspicious. The prosecution did not materialize out of thin air on August 1, 2023, when the grand jury returned the indictment. Rather, the investigation by career prosecutors was underway well before the defendant was charged or pleaded not guilty in the Southern District of Florida or criticized the Special Counsel's Office. As the defendant knows from discovery, the lengthy and thorough investigation involved career prosecutors and professional law enforcement agents interviewing hundreds of witnesses, obtaining and reviewing millions of pages of documents from subpoenas and search warrants, and ultimately securing an indictment from a grand jury composed of citizens of this District. Indeed, the defendant is well-familiar with the lengthy duration of the investigation, having participated in pre-indictment litigation as early as June 2022. ECF No. 23 at 6. *See Oseguera Gonzalez*, 507 F. Supp. 3d at 177 ("[T]he decision by the government to forbear prosecution over a period of several years . . . is evidence only of restraint and careful pursuit of investigative leads, not vindictive prosecution, when probable cause is subsequently found by a grand jury for indictment.").

Moreover, the "nature of the right" the defendant points to here is not indicative of vindictiveness. "The invocation of procedural rights," such as the right to plead not guilty, "is an

integral part of the adversary process in which our criminal justice system operates." *Goodwin*, 457 U.S. at 381-82.  For this reason, the Supreme Court has found it "unrealistic to assume that a prosecutor's probable response" would be "to seek to penalize and to deter" a defendant who did so.  *Id.* at 381.  Indeed, the Supreme Court has specifically "made clear that the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified."  *Id.* at 382–83.  Such a presumption would effectively lead in every case involving a superseding indictment to dismissal on vindictive prosecution grounds.  And the conclusion is even stronger here, where the subsequent charging decision is based on evidence of entirely separate criminal conduct in a different federal district.  Likewise, the defendant's disparaging comments about the Department of Justice cannot possibly form the basis for a presumption of vindictiveness.  If that were the case, the presumption would apply whenever a defendant chose to criticize the prosecution.  Such a rule would transform the application of the presumption from the "rare case" to a ubiquity.  *Id.* at 385 n.19.  Thus, the defendant offers no evidence of "a realistic likelihood of vindictiveness" that would be "applicable in all cases."  *Id.* at 381, 384.

In light of the serious conduct alleged in the indictment, the charges against the defendant are "fully justified as a legitimate response," *Goodwin*, 457 U.S. at 373, and the defendant has provided no basis to determine that his charges were based on impermissible vindictiveness.  The record proves that the indictment resulting from the investigation was not the vindictive result of the defendant's political views or having pleaded not guilty to another federal indictment—it was the result of a careful examination of the facts and considered judgment about the application of the law.  *See Goodwin*, 457 U.S. at 372 ("[A]n individual certainly may be penalized for violating the law[.]").  The Court should deny the defendant's vindictive prosecution claim.

**C.      The Court Should Deny the Defendant's Request for a Hearing in Which to Repeat his Misleading and Baseless Claims**

Having failed to satisfy his burden to bring forth any factual support for his claims, the defendant contends nevertheless that he is entitled to a hearing and "additional fact finding before these arguments can be resolved."  ECF No. 116 at 9.  Tellingly, however, the defendant does not provide the Court with even the roughest sketch of what this "fact finding" would entail or uncover. The defendant cannot come close to meeting the high bar to justify discovery on his selective or vindictive prosecution claims.  *See Bass*, 536 U.S. at 863; *Irish People, Inc.*, 684 F.2d at 947.  The Court should reject the defendant's request for a hearing as an end-run around the "rigorous" tests for discovery, just as the Court should preclude the defendant from later amplifying his same unfounded claims of selective or vindictive prosecution in the form of a motion to compel.

**III.     Conclusion**

This prosecution stands upon the bedrock principle of equal justice under law.   The defendant's sweeping claims of selective and vindictive prosecution are unsupported by any evidence and lack any merit.   The Court should deny the defendant's motion to dismiss the indictment, deny his request for a hearing, and deny any request for discovery on these claims.

Respectfully submitted,

JACK SMITH
Special Counsel

By:      /s/ Thomas P. Windom
         Thomas P. Windom
         Molly Gaston
         Senior Assistant Special Counsels
         950 Pennsylvania Avenue NW
         Room B-206
         Washington, D.C. 20530