UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.  Case No. 1:23-cr-257-TSC

DONALD J. TRUMP,

    Defendant.
_____/

**PRESIDENT TRUMP'S REPLY IN SUPPORT OF MOTION FOR
EXTENSION OF TIME TO FILE PRETRIAL
MOTIONS RELATED TO DISCOVERY AND SUBPOENAS**

President Donald J. Trump, through counsel, respectfully submits this Reply in Support of his Motion for Extension of Time, Doc. 129 (the "Motion"), and states as follows:

**A.     An Extension is Appropriate for Outstanding Discovery Requests**

On the evening of Friday, November 3rd, the prosecution belatedly responded to a substantive discovery demand from President Trump that, *inter alia*, invited a meet-and-confer on several issues relating to outstanding discovery requests. For the reasons set forth in our original motion, and for the reasons below, we respectfully request a brief adjournment of time until November 17, 2023, to file any motions to compel related to these requests. This will allow the parties to confer, as the prosecution has offered, and limit briefing regarding any remaining discovery disputes.

Prior to filing his Motion, President Trump served two extensive letters on the prosecution demanding additional documents that were not produced in discovery provided to date, one of which was classified (the "October 15 Letter") and another that was unclassified (the "October 23 Letter"). On October 24, the prosecution provided a cursory, one-page response to the October 15 Letter, but did not respond to the October 23 Letter, either that day or during the following week.

1

Because of the pending deadline, on November 1, 2023, President Trump filed the instant Motion and requested a reasonable extension of time to confer with the prosecution and subsequently file any necessary motions to compel.

The purpose of the Motion was—and is—to give the parties the opportunity to resolve as much as possible by agreement before engaging in motion practice. The additional 10 days requested by President Trump will allow the parties to continue their discussions and will also allow President Trump's counsel to streamline any motions to compel, consistent with the responses we have received from the prosecution thus far and expected responses from the meet-and-confer process. Notably, the prosecution did not respond to President Trump's discovery demands until the same day they objected to the brief adjournment, and then had the audacity to argue that President Trump's "requests are designed to disrupt the trial date and delay the resolution of this matter," Doc. 137 (the "Response") at 1. Plainly, a 10-day extension of a motion deadline for unproduced discovery in November 2023 is not designed to disrupt or delay. To the contrary, the 10-day extension will promote efficiency and will limit motion practice before the Court.

On the evening of Friday, November 3—less than a week before the current deadline—the prosecution responded to the October 23 Letter. Putting aside the reflexive, unreasonable rejection of most of the discovery demands President Trump made, for approximately 24 of the requests from the October 23 Letter, the letter requested "additional information in an effort to better understand some of [the defense] requests," and asked for information regarding "the defense's theory of discoverability." However, that night, at 11:14 PM, the prosecution filed its Response, stating incorrectly—and contrary to its own letter from earlier that night—that "the parties have already conferred." Response at 6. That is not the truth.

Although it appears that motion practice will be necessary for President Trump to receive the full extent of the discovery to which he is entitled, it is possible that the parties can reach agreement on at least some issues after the President Trump's counsel are able to proffer to the prosecution the reason for our demands, as it requested in its response to us. This process is typical of most criminal cases, and there should be no surprise that President Trump seeks an opportunity to reach agreement with the prosecution short of motion practice. Therefore, President Trump respectfully requests the Court extend the time to file any motions directed to his October 15 and October 23 Letters to the end of next week—November 17, 2023. This brief extension will cause no prejudice to any party and will not affect any potential trial date.

**B.     Additional Motions May Be Required for Discovery Issues and Disputes**

Lacking sufficient time to review 13 million pages of discovery, President Trump does not and cannot know if other issues exist within the government's discovery productions, including missing documents, incomplete metadata, and other technical problems. President Trump requests the ability to raise motions directed to these key issues as he discovers them, and only to the extent we cannot resolve the requests through private negotiation. Contrary to the prosecution's suggestion, this does not result in an "indeterminate, unworkable schedule controlled by the defendant, rather than the Court." Response at 6. Rather, most major issues will be addressed in President Trump's forthcoming motion to compel, with his proposed safety valve for additional motions only applying to currently undiscovered issues. This will ensure the primary briefing remains on track, while allowing President Trump to address other discrete, but still important, discovery issues on the merits promptly after discovery. Similarly, with respect to the prosecution's ongoing productions, and to the extent the Court grants relief regarding the October 15 and 23

Letters, a safety valve will allow President Trump to raise additional issues with any later-produced documents.[1]

### C. More Time is Necessary for Rule 17(c) Subpoenas

By their terms, neither Rule 17(c) nor *United States v. Nixon* place deadlines on a defendant's right to request pretrial subpoenas. 418 U.S. 683 (1974). This is entirely logical, as the purpose of such subpoenas is to "expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) (citation omitted).

The prosecution does not explain how a device explicitly designed to "expedite the trial," *id.*, would somehow "disrupt the trial date and delay the resolution of this matter," Response at 1. Nor can it. It is undisputed that President Trump may seek subpoenas returnable at trial, and that Rule 17(c) simply permits him to obtain responsive materials in advance to facilitate timely review. If anything, arbitrarily preventing President Trump from requesting such documents anytime between November 9 and the potential trial would be the cause of delay, as all the documents would flood in at once, and President Trump would have a due process right to review them before any testimony commences.[2]

---

[1] The prosecution acknowledges that it has not yet satisfied its discovery obligations, but argues that its rolling productions should not affect the Court's consideration of this Motion. Response, at 5-6. Contrary to the prosecution's suggestion, these ongoing productions confirm the need for the requested extensions, as President Trump plainly cannot move to compel based on documents he has not received. Moreover, the prosecution's characterization of these rolling productions as "a small percentage of the total discovery provided," Response, at 6, demonstrates the overwhelming size of the discovery, further supporting the need for reasonable extensions.

[2] The prosecution concedes that estimating the quantity of responsive documents is an "imperfect exercise," but it nonetheless asserts, without explanation, that "any subpoena returns are unlikely to be as extensive as the [President Trump] suggests." Response at 7. To the contrary, given the enormous amount of discovery the prosecution itself produced, it appears likely that any subpoena returns will be similarly extensive. Indeed, even if the subpoenas resulted in materials just 10% the size of the prosecution's total production, that would still include approximately 1.3 million

### D. Due Process and the Sixth Amendment Require the Requested Extensions

The prosecution has spent nearly three years investigating President Trump, expending tens of millions of dollars assembling what is, undoubtedly, the largest team of attorneys and agents ever tasked with prosecuting a single person. Taking full advantage of this resource imbalance, the prosecution dumped nearly 13 million pages of discovery on President Trump and demanded an immediate trial.

Now, the prosecution argues against a modest extension of a motion deadline that the Rules allow the Court to extend *without good cause*, Fed. R. Crim. P. 12(c)(1), and which will have no effect on any potential trial date. In support, the prosecution argues President Trump should have already fully reviewed all 13 million pages of discovery, in the most important criminal case in the history of the United States, in scarcely more than 2 months. For the reasons stated above, and in the Motion, these contentions are specious and meritless.

However, the prosecution's response also speaks volumes for what it omits: any discussion of President Trump's inalienable rights to due process and counsel.

"[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). "The right to counsel afforded under the Sixth Amendment means the effective assistance of counsel and *effective assistance requires time for preparation*." *Hintz v. Beto*, 379

---

pages—by itself more documents than even the most complicated criminal cases typically see in total.

Relatedly, the prosecution complains that allowing 17(c) subpoenas closer to trial would "conflict with other deadlines, such as turning over exhibit lists (December 18) and filing *in limine* motions (December 27)." Response at 7 n.4. However, requiring production at the potential trial, instead of any time pretrial, only exacerbates this concern.

F.2d 937, 941 (5th Cir. 1967) (citing *Powell v. State of Alabama*, 287 U.S. 45, 71 (1932); *Roberts v. United States*, 325 F.2d 290 (5th Cir. 1963)) (emphasis added).

The inevitable consequence of refusing a continuance of the discovery motions deadline would be to deprive the defense of essential pretrial discovery and preparation. "It is the manifest duty of the courts to vindicate those guarantees" of due process "and to accomplish that it is essential that all relevant and admissible evidence be produced." *Nixon*, 418 U.S. at 711. "Rule 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor." *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir. 1988) (citing *California v. Trombetta*, 467 U.S. 479, 485 (1984)). If this guarantee is to mean anything, the defense must have adequate time to review all of the evidence—including exculpatory evidence President Trump may be required to seek through motion(s) to compel because the prosecution has thus far suppressed it. *See Bowman Dairy*, 341 U.S. at 220; *see also In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 897 (D.C. Cir. 1999) (rejecting argument that defense should have been required to subpoena exculpatory information because "the prosecutor is responsible for any favorable evidence known to the others acting on the government's behalf in the case . . ."); *United States v. Iverson*, 648 F.2d 737, 739 (D.C. Cir. 1981) (holding that "the primary obligation for the disclosure of matters which are essentially in the prosecutorial domain lies with the government").

From the beginning of this case, the prosecution's sole focus has been on promoting a rush to trial, knowing full well that President Trump and his attorneys could not possibly prepare under a condensed pretrial schedule. The prosecution attempted to bury the defense in discovery while opposing any effort by President Trump to appropriately defend himself or subject the prosecution to "the crucible of meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 656

(1984). Without question, by all concerned, President Trump is being treated differently—and more harshly—than any other party in the history of the American criminal justice system.

Meanwhile, the prosecution knew this case would involve complicated constitutional and statutory defenses as well as factual defenses that would require extensive discovery from, among others, hundreds of witnesses, several government agencies, and multiple state governments. The Response discusses some of the efforts the defense has undertaken to defend this case, and the many issues yet to be resolved before trial, as though President Trump's entirely legitimate efforts to defend himself somehow supports a condensed pretrial schedule. Response, at 2. Just the opposite, the prosecution's continued manipulation of the devices of justice counsel for more time—not less—for President Trump to raise appropriate motions.[3]

Indeed, the prosecution's consistent refusal to recognize President Trump's rights to due process and counsel reveals its transparent goal—defeating the Biden Administration's main, leading political rival, President Donald J. Trump, through a show trial, knowing full well that they cannot do so at the ballot box. It is clear that a political show trial by a successor regime bent on vengeance instead of justice will not advance the rule of law. *See also* Awol K. Allo, *The 'Show' in the 'Show Trial': Contextualizing the Politicization of the Courtroom*, 15 Barry L. Rev. 41, 65-66 (Fall 2010) ("[A]ny procedural or substantive deviance or misapplication of due process rights might make a show trial . . . the process of prior planning can be achieved through several strategies ranging from a deliberate and systemic amendment of substantive and procedural rules to a covert

---

[3] The prosecution casts President Trump's inability to review discovery within its unrealistic schedule as a "robotic incantation of an argument he unsuccessfully has made at least three times." Response, at 3. The prosecution avoids addressing this issue on the merits, because it is fully aware that the defense cannot review 13 million pages of discovery in two months. Preventing adequate preparation is, in fact, the prosecution's strategic goal. And the reason the defense keeps raising this issue is because it is a serious violation of President Trump's Fifth and Sixth Amendment rights, pervading and incurably tainting all aspects of this proceeding.

or overt act undermining the judicial process.").[4] The prosecution, by its very actions, has now delegitimized these legal proceedings, resulting in irreparable harm to our country and legal system.

The primary consideration here is the one the prosecution ignores; whether the accused's rights are vindicated or oppressed by the pretrial schedule. President Trump did not create this truncated schedule and should not have to forgo his rights to motion practice because the prosecution feels rushed by the upcoming election.

For these reasons, President Trump respectfully requests the Court grant the Motion.

Dated: November 6, 2023

Todd Blanche, Esq. (PHV)
toddblanche@blanchelaw.com
Emil Bove, Esq. (PHV)
Emil.Bove@blanchelaw.com
BLANCHE LAW
99 Wall St., Suite 4460
New York, NY 10005
(212) 716-1250

Respectfully submitted,

/s/ John F. Lauro
John F. Lauro, Esq.
D.C. Bar No. 392830
jlauro@laurosinger.com
Gregory M. Singer, Esq. (PHV)
gsinger@laurosinger.com
Filzah I. Pavalon, Esq. (PHV)
fpavalon@laurosinger.com
LAURO & SINGER
400 N. Tampa St., 15th Floor
Tampa, FL 33602
(813) 222-8990

*Counsel for President Donald J. Trump*

---

[4] Here, seeking to deprive President Trump of his rights to effective assistance of counsel, to compel discovery, and to use of Rule 17(c) is a telltale characteristic of a political show trial, which often includes: 1) denying the defendant the right to tell another version of events that could force the prosecution to yield control over the story told by trial; 2) defense counsel who are not afforded time to prepare sufficiently, and so could not mount an adequate defense; 3) denial of the right to obtain exculpatory evidence, which includes the right to subpoena defense witnesses and relevant records; and 4) denial of the right to challenge the prosecution's evidence.