**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:23-cr-00257-TSC |
| DONALD J. TRUMP, | |
| *Defendant*. | |

**PRESIDENT TRUMP'S REPLY IN SUPPORT OF HIS MOTION TO STRIKE
INFLAMMATORY ALLEGATIONS FROM THE INDICTMENT**

The prosecution falsely asserts that President Trump is "responsible for the events at the Capitol on January 6." Doc. 140, at 1.  However, the indictment does not charge President Trump with causing, or participating in, those events. Nor could it, as not a shred of evidence suggests President Trump called for any violence or asked anyone to enter the Capitol unlawfully. In fact, President Trump clearly and repeatedly called for "peaceful and patriotic" assembly, consistent with the finest ideals of our Country.  President Trump also authorized over ten thousand National Guard troops to prevent violence on January 6, 2021—protection that was denied by Democrat Speaker of the House, Nancy Pelosi, and Democrat Mayor of Washington D.C., Muriel Bowser. Thus, even these transparently partisan prosecutors could not obtain an indictment on that basis.

The prosecution now seeks to try President Trump for crimes the grand jury never charged, based on actions President Trump did not take, in a place he never was on January 6, by people he never directed, and opposite to actions he actually did take and statements he made.  All with the goal of inflaming and prejudicing the jury.

The prosecution may not do so. Allegations that third parties allegedly acted improperly will serve only to inflame and prejudice the jury and do not belong in the indictment against President Trump.  The Court should strike them.[1]

## BACKGROUND

On January 6, 2021, President Trump spoke to a crowd of peaceful supporters gathered at the White House Ellipse, about two miles from the Capitol.  During his speech, President Trump acknowledged that, after he was finished speaking, some members of the crowd would walk to the Capitol to "cheer on our brave senators and congressmen and women" and "peacefully and patriotically make [their] voices heard."

> Anyone you want, but I think right here, we're going to walk down to the Capitol, and **we're going to cheer on our brave senators and congressmen and women**, and we're probably not going to be cheering so much for some of them. . . .
>
> I know that everyone here will soon be marching over to the Capitol building **to peacefully and patriotically make your voices heard**. . . .
>
> So we're going to, we're going to walk down Pennsylvania Avenue. I love Pennsylvania Avenue.  And we're going to the Capitol, and we're going to try and give.
>
> The Democrats are hopeless — they never vote for anything.  Not even one vote.  But we're going to try and give our Republicans, the weak ones because the strong ones don't need any of our help.

---

[1] President Trump also intends to move *in limine* to preclude evidence relating to the challenged allegations.  The prosecution's opposition has previewed at least one basis for that motion, should it be necessary.  For instance, the prosecution claims protesters were "extraordinarily violent and destructive." Doc. 140, at 11.  Even if marginally relevant, which it is emphatically not, the danger of "unfair prejudice, confusing the issues, [or] misleading the jury," would far outweigh any probative value. F.R.E. 403. The fact that the prosecution even suggests that such inflammatory claims could have an appropriate place in the trial of President Trump only underscores the unfair and malicious way the Special Counsel is pursuing this case on behalf of the Biden Administration against its leading political opponent, President Trump.

> We're going to try and give them the kind of pride and boldness that
> they need to take back our country.[2]

President Trump made clear that he expected the electoral certification proceedings to take place,

with the Vice President and every Congressperson and Senator exercising the duties of their offices

as the Constitution provides.

> And Mike Pence is going to have to come through for us, and **if he
> doesn't**, that will be a, a sad day for our country because you're
> sworn to uphold our Constitution. . . .
>
> Today we see a very important event though.  **Because right over
> there, right there, we see the event going to take place**.  And I'm
> going to be watching. Because history is going to be made.  **We're
> going to see whether or not we have great and courageous
> leaders, or whether or not we have leaders that should be
> ashamed of themselves throughout history, throughout eternity
> they'll be ashamed**.
>
> And you know what?  **If they do the wrong thing**, we should never,
> ever forget that they did.  Never forget.  We should never ever
> forget.[3]

President Trump also repeatedly opposed destruction of monuments and other symbols of

American democracy, and he referenced stiff criminal penalties for doing so, which he had signed

into law.

> And don't worry, we will not take the name off the Washington
> Monument.  We will not cancel culture.
>
> You know they wanted to get rid of the Jefferson Memorial.  Either
> take it down or just put somebody else in there.  I don't think that's
> going to happen.  It damn well better not.  Although, with this
> administration, if this happens, it could happen.  You'll see some
> really bad things happen.

---

[2] *Read Trump's Jan. 6 Speech, A Key Part of Impeachment Trial*, NPR (Feb. 10, 2021), at
https://www.npr.org/2021/02/10/966396848/read-trumps-jan-6-speech-a-key-part-of-
impeachment-trial (emphasis added).

[3] *Id.* (emphasis added).

> They'll knock out Lincoln too, by the way. They've been taking his statue down. **But then we signed a little law. You hurt our monuments, you hurt our heroes, you go to jail for 10 years, and everything stopped. You notice that? It stopped. It all stopped.**[4]

President Trump also expressed love for the United States and optimism about the country's future.

> As this enormous crowd shows, we have truth and justice on our side. **We have a deep and enduring love for America in our hearts. We love our country**.

> We have overwhelming pride in this great country and we have it deep in our souls. Together, we are determined to defend and preserve government of the people, by the people and for the people.

> **Our brightest days are before us**. Our greatest achievements, still away.[5]

The Secret Service and the FBI estimated that at least 120,000 Americans gathered on the Mall for President Trump's speech.[6] Government agencies estimated that about 1,200 people—at most 1% of the size of the crowd gathered to listen to President Trump—entered the Capitol, and a smaller percentage than that committed violent acts.[7] Thus, we can easily conclude that well over 99% of the attendees at President Trump's speech did not engage in the events at the Capitol.

---

[4] *Id.* (emphasis added).

[5] *Id.* (emphasis added).

[6] William M. Arkin, *Exclusive: Classified Documents Reveal the Number of January 6 Protestors*, NEWSWEEK (Dec. 23, 2021), *at* https://www.newsweek.com/exclusive-classified-documents-reveal-number-january-6-protestors-1661296. The January 6 Committee estimated the crowd on the Mall at 53,000, while President Trump estimated it at 250,000. *Compare Final Report*, SELECT COMMITTEE TO INVESTIGATE THE JANUARY 6TH ATTACK ON THE UNITED STATES CAPITOL (Dec. 22, 2022), 585, at https://www.govinfo.gov/content/pkg/GPO-J6-REPORT/pdf/GPO-J6-REPORT.pdf *with Read Trump's Jan. 6 Speech, A Key Part of Impeachment Trial*, NPR (Feb. 10, 2021), at https://www.npr.org/2021/02/10/966396848/read-trumps-jan-6-speech-a-key-part-of-impeachment-trial (emphasis added).

[7] *Id.* ("[T]he facts seem to indicate that as few as one percent of the people who were there fit the label of insurrectionist.").

Moreover, as the Indictment recognizes, a crowd had gathered at the Capitol *before* President Trump finished speaking, further proving he had nothing to do with those events.

Recognizing a large crowd would be attending his speech, President Trump sought in advance to have law enforcement fully engaged and to mobilize the National Guard to ensure a safe event.[8]  According to General Mark Milley's testimony to the Department of Defense's Inspector General, President Trump made the request for military presence three days before January 6:

> Mr. Miller and GEN Milley met with the President at the White House at 5:30 p.m.  The primary topic they discussed was unrelated to the scheduled rally.  GEN Milley told us that at the end of the meeting, the President told Mr. Miller that there would be a large number of protestors on January 6, 2021, and Mr. Miller should ensure sufficient National Guard or Soldiers would be there to make sure it was a safe event.  Gen Milley told us that Mr. Miller responded, "We've got a plan and we've got it covered."[9]

Retired U.S. Army Lt. General Keith Kellogg confirmed General Milley's testimony.[10]  According to General Kellogg, "[o]n 3 Jan the President asked the Def Dept to deploy NG troops into DC for J6 contingencies."[11]  President Trump's efforts to ensure full security were resisted by the Mayor

---

[8] *Review of the DOD's Role, Responsibilities, and Actions to Prepare for and Respond to the Protest and Its Aftermath at the U.S. Capitol Campus on January 6, 2021*, U.S. DEPARTMENT OF DEFENSE INSPECTOR GENERAL (Nov. 16, 2021, 31, *at* https://media.defense.gov/2021/Nov/19/2002896088/-1/-1/1/DODIG-2022-039%20V2%20508.PDF.

[9] *Id.*

[10] Ryan Morgan, *Gen. Kellogg: Trump did request Nat'l Guard troops on Jan. 6th; asks Congress to release his testimony*, AMERICAN MILITARY NEWS (Aug. 5, 2022), *at* https://americanmilitarynews.com/2022/08/gen-kellogg-trump-did-request-natl-guard-troops-on-jan-6th-asks-congress-to-release-his-testimony/.

[11] *Id.* (internal quotation marks omitted).

of the District of Columbia, Democrat Speaker of the House Nancy Pelosi, and other Democratic Congressional leadership.

Despite exhaustive investigation, the FBI found no evidence that President Trump was responsible for the actions at the Capitol on January 6.  Just the opposite, after seven months of investigation, a report revealed that "the FBI has so far found no evidence that [President Trump] or people directly around him were involved in organizing the violence, . . ."[12]  After investigating for more than one year—including by interviewing thousands of individuals and collecting "hundreds of thousands of phone calls, text messages, social media postings and other documents"[13]—the FBI still found no evidence connecting President Trump to the actions at the Capitol on January 6.[14]  "[D]espite many breathless stories about conversations, texts and secret meetings" blaming President Trump for the events on January 6, there was simply no evidence to be found.[15]

---

[12] Mark Hosenball and Sarah N. Lynch, *Exclusive: FBI finds scant evidence U.S. Capitol attack was coordinated – sources*, REUTERS (Aug. 20, 2021), *at* https://www.reuters.com/world/us/exclusive-fbi-finds-scant-evidence-us-capitol-attack-was-coordinated-sources-2021-08-20/.

[13] William M. Arkin, *Donald Trump Didn't Run the January 6 Riot.  So Why Did It Happen?*, NEWSWEEK (Jan. 6, 2022), *at* https://www.newsweek.com/donald-trump-didnt-run-january-6-riot-so-why-did-it-happen-1661335.

[14] Carol D. Leonnig and Aaron C. Davis, *FBI resisted opening probe into Trump's role in Jan. 6 for more than a year*, THE WASHINGTON POST (June 19, 2023), *at* https://www.washingtonpost.com/investigations/2023/06/19/fbi-resisted-opening-probe-into-trumps-role-jan-6-more-than-year/.

[15] William M. Arkin, *Donald Trump Didn't Run the January 6 Riot.  So Why Did It Happen?*, NEWSWEEK (Jan. 6, 2022), *at* https://www.newsweek.com/donald-trump-didnt-run-january-6-riot-so-why-did-it-happen-1661335.

Nonetheless, in April 2022, President Biden directed the Department of Justice to prosecute his leading opponent for the presidency through a calculated leak to the New York Times by more than a dozen of his aides and allies:

> The attorney general's deliberative approach has come to frustrate Democratic allies of the White House and, at times, President Joe Biden himself. As recently as late last year, Biden confided to his inner circle that he believed former President Donald Trump was a threat to democracy and should be prosecuted, according to two people familiar with his comments. … [Biden] has said privately that he wanted Garland to act less like a ponderous judge and more like a prosecutor who is willing to take decisive action over the events of Jan. 6, 2021. . . . This article is based on interviews with more than a dozen people, including officials in the Biden administration and people with knowledge of the president's thinking, all of whom asked for anonymity to discuss private conversations.

Doc. 116-2, at 2. Within days of President Biden's directive to the Department of Justice, the FBI opened an investigation into the "electors scheme" that ultimately resulted in this Indictment. *See, e.g.*, Doc. 116 at 3-4; Doc. 116-1.[16]

## **ARGUMENT**

### I.     **References to actions at the Capitol on January 6 are not relevant to any charges against President Trump.**

Language in an indictment may be stricken if it is not relevant and it is prejudicial and inflammatory. *See United States v. Singhal*, 876 F. Supp. 2d 82, 103 (D.D.C. 2012) (striking references to "insider trading" because the "references are highly prejudicial to defendants because they reference a current hot topic in U.S. law that the defendants are not even charged with in this case"); *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998). The Indictment does not

---

[16] Carol D. Leonnig and Aaron C. Davis, *FBI resisted opening probe into Trump's role in Jan. 6 for more than a year*, THE WASHINGTON POST (June 19, 2023), *at* https://www.washingtonpost.com/investigations/2023/06/19/fbi-resisted-opening-probe-into-trumps-role-jan-6-more-than-year/.

charge President Trump with insurrection, incitement, or any other charge relating to the actions at the Capitol on January 6. The prosecution admits this fact. Doc. 139, at 49. The prosecution has also conceded elsewhere that none of the charges against President Trump include an element of an incitement offense:

> None of the offenses charged here—18 U.S.C. § 371, 18 U.S.C. §§ 1512(c)(2) and (k), and 18 U.S.C. § 241—has as an element any of the required elements for an incitement offense. And the elements of the charged offenses—*e.g.*, defeating a federal government function through deceit under Section 371, obstruction of an "official proceeding" under Section 1512, and deprivation of rights under Section 241—are nowhere to be found in the elements of a violation of Section 2383 or any other potential incitement offense.

*Id.* at 61-62. The prosecution has thus *admitted* that the incitement allegations littered throughout its opposition to the motion to strike are not relevant to any of the charges brought against President Trump. Nor has the prosecution explained how allegations regarding the January 6 protests are relevant to the elements of the charges that it chose to bring.

Indeed, the January 6 cases relied on by the prosecution do not support its contention that "actions at the Capitol are relevant and probative evidence" of the charged conduct. Doc. 140, at 2. Several of the cases did not involve any of the charges brought against President Trump, rendering any relevance analysis inapplicable to this case. *See, e.g.*, *United States v. Griffith*, No. CR 21-244-2, 2023 WL 2043223, at *1 (D.D.C. Feb. 16, 2023) (charges under 18 U.S.C. §§ 1752(a)(1), 1752(a)(2); 40 U.S.C. §§ 5104(e)(2)(D), 5104(e)(2)(G)); *United States v. MacAndrew*, No. CR 21-730, 2022 WL 17961247, at *1 (D.D.C. Dec. 27, 2022) (same). Those cases that did include at least one charge brought against President Trump (as well as charges not brought against him) all involved defendants who were personally present at the Capitol. Those are the types of cases that the Attorney General specifically carved out of the Special Counsel's authority in Order No. 5559-2022: "This authorization does not apply to . . . future investigations

and prosecutions of individuals for offenses they committed while physically present on the Capitol grounds on January 6, 2021." Actual presence has been emphasized as an important factor in the relevance analysis. *See, e.g.*, *United States v. Stedman*, No. CR 21-383 (BAH), 2023 WL 3303818, at *2 (D.D.C. May 8, 2023) ("defendant's knowing joinder of a broader crowd is probative of his participation in a venture that interfered with a congressional proceeding").

Meanwhile, the prosecution's false assertion that President Trump is somehow, "responsible for the events at the Capitol on January 6," and that, "[t]hat day was the culmination of [President Trump's] criminal conspiracies to overturn the legitimate results of the presidential election," Doc. 140 at 1, is contradicted by the position taken by the Department of Justice in countless prosecutions of protestors who were present at the Capitol on January 6.

Consider, for example, the prosecution of Dustin Thompson. In its cross-examination of Mr. Thompson, who testified in his own defense, the government emphasized that Mr. Thompson's actions on January 6 were his own, and not caused by anything President Trump had or had not done:

> Q. Now you mentioned that you had, before January 6th, listened to previous rallies of the president's, right?
>
> A. I have.
>
> * * *
>
> Q. After you listened to those other Trump rallies, did you go commit any crimes?
>
> A. I wasn't attending any of those, but no.
>
> Q. Okay. So the answer is no, you didn't go commit any other crimes?
>
> A. Correct.
>
> Q. Notwithstanding that former President Trump was very passionate during those speeches, right?
>
> A. Yes.
>
> Q. He said a lot about how the election was being stolen at those speeches, didn't he?
>
> A. He did.

9

\* \* \*

> ***Q. And again, when the president, the former president referred to the election
> as stolen during that time, you didn't go do anything about it, right?***
>
> ***A. I wasn't asked to.  He didn't make any suggestions at that time on what to do
> about the situation, just that he wasn't going to concede, and that he was
> going to fight it.***

> Q. Okay.  So you had heard all those things before January 6th, 2021, right?
>
> A. Correct.
>
> Q. When you heard it on January 6th, none of it was new?
>
> A. None of what was new?
>
> Q. That the – that he wasn't going to concede, you had already heard that before
> that day, right?
>
> A. Yes.
>
> Q. And you'd already heard that the election, you know, that he had said the
> election was going to be stolen or had been stolen . . .?
>
> A. Yea, this is the last ditch effort, this is the way I looked at it.
>
> Q. So the answer is yes, you had heard that before January 6th?
>
> A. Yes.
>
> Q. None of that was new to you on the morning of January 6th?
>
> A. No, I was aware of it.

Tr. T. at 518-520, *United States v. Thompson*, No. 21-cr-161 (D.D.C. Aug. 8, 2022) (ECF No. 108)

(emphasis added).  The government then proceeded to remind the jury that President Trump did

not cause Mr. Thompson to commit the crimes with which he had been charged:

- "And President Trump wasn't there standing right next to you, was he?"

  *Id.*, at 524;

- "[President Trump] didn't force you to go [to the Capitol].  He didn't force

  you to walk every step of the way to the Capitol building, did he?"  *Id.*;

- "And President Trump wasn't standing next to you at the doors to the

  Capitol building forcing you to go inside, was he?"  *Id.*, at 527;

- "You'd agree with me that not once during that hour long speech did President Trump say it is now legal to steal from the United States Capitol building?" *Id.* at 535;

In the government's summation at trial, it specifically argued that President Trump's conduct leading up to and on January 6 was irrelevant:

> [I]t is essentially irrelevant in this case what you think about President Trump's conduct on that day. . . .

Tr. T. at 595-596, *United States v. Thompson*, No. 21-cr-161 (Aug. 8, 2022) (ECF No. 109). Moreover, the government asserted, "President Trump didn't hold his hand as he walked down to the Capitol to loot and defile the Senate parliamentarian's office, when he stole those things." *Id.*, at 612.

As another example, take the government's prosecution of Oath Keepers' founder Stewart Rhodes for seditious conspiracy.  According to the indictment returned against Mr. Rhodes, he allegedly led this group before, during, and after January 6, 2021, without any involvement or prompting from President Trump. Superseding Indictment, *United States v. Rhodes*, 22-cr-15 (D.D.C. June 22, 2022) (ECF No. 167).  Specifically, at Mr. Rhodes's detention hearing, the Court asked the government:  "Is it the government's contention that had there not been a mob of people at the Capitol that day, say, The Ellipse rally had simply ended, there hadn't been a mob that marched down to the Capitol, would this group of individuals led by Mr. Rhodes still intend to try and enter the Capitol building, even without a mob present?"  Hr'g T. at 12-13, *United States v. Rhodes*, No. 22-cr-15 (D.D.C. March 2, 2022) (ECF No. 53).   In response to which, the government represented:

> Your Honor, the evidence is that they talked about the need to go to the Capitol grounds.
>
> * * *

The defendant also made clear in that same message "[that President Trump] must know that if he fails to act, we will.  He has to understand that we will have no choice."

* * *

So there is clearly – there were clearly messages that we have directly from the phone evidence that show an intent to be on the Capitol grounds, an intent to make those in Congress uncomfortable, ***and an intent to fight to stop that result with or without somebody like President Trump calling them into action.***

* * *

And we think it's critical, Your Honor, that the defendant is not only saying these words at this time and ***that these words are not contingent upon anything the President may do***.  In fact, he's suggesting the President, he thinks, ***is not going to call groups like the militia*** – militia like the Oath Keepers groups or similar groups to his side, but that he is doing this while gathering leaders in this conspiracy with him, while amassing firearms.

*Id.*, at 12-22 (emphasis added).

In summation at Mr. Rhodes's trial, the government reiterated that the events on January 6

happened *despite* President Trump, not because of him:

Now, to be clear, ladies and gentlemen, the government has not alleged here that as early as November, these defendants had their eyes on January 6th, because how could they, they did not know at that point that it would get that far.  They hoped against hope that President Trump or someone would intercede to stop the election results before it had to get that far.

But you know that as things transpired and things moved forward into the month of December, it seemed less and less likely that that was going to happen, and it seemed more and more likely that the defendants would have to take matters into their own hands.

* * *

Mr. Rhodes was clear in these open letters that if President Trump didn't take action, he and his co-conspirators would.

***The President didn't take action.***  No one did step in to throw out the results of the elections and hold a new one.  And so Mr. Rhodes and his co-conspirators began focusing on the steps they would take to take action themselves.

> So that is why you know, ladies and gentlemen, that as November
> transpired into [December], this agreement by the defendants to oppose
> the lawful transfer of power by force began to have this second or more
> crystallized focus of stopping [the] certification proceeding that was
> scheduled to happen on January 6th, and to prevent members of Congress
> from doing their duties that day to certify the election.

Tr. T. at 9921-23, *United States v. Rhodes*, No. 22-cr-15 (D.D.C. Nov. 18, 2022) (emphasis added).

For the prosecution to now reverse course, and dishonestly claim that President Trump is responsible, despite not charging him and previously denying his culpability, is entirely specious.

The prosecution also does not deny or distinguish any of the cases cited by President Trump in which courts in this District struck allegations in an indictment that did not relate to a charge against the defendant. *See, e.g.*, *id.* at 2-3 (citing *United States v. Trie*, 21 F. Supp. 2d 7, 20 (D.D.C. 1998); *United States v. Espy*, 23 F. Supp. 2d 1, 11 (D.D.C. 1998)). The prosecution cites multiple decisions in which the evidence at issue related to the actual defendant's other actions, not actions by third parties like those who entered the Capitol. *See United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998); *United States v. Roberson*, 581 F. Supp. 3d 65, 76 (D.D.C. 2022); *United States v. Wilkins*, 538 F. Supp. 3d 49, 73 (D.D.C. 2021). The only case cited by the prosecution involving actions by third parties involved events "mentioned in passing" that "did not become the focus of the trial" and included "no in-depth discussion." *United States v. Looking Cloud*, 419 F.3d 781, 787 (8th Cir. 2005). Yet the prosecution here has cynically made January 6 the heart of its case, which is the opposite of *Looking Cloud*.

Finally, the prosecution pretends that relevance already has been recognized. Contrary to the prosecution's claims, Doc. 140, at 6, President Trump's Motion to Strike is consistent with other filings identified by the prosecution. It is true, as stated by both the Motion to Strike and the motion for leave to serve Rule 17(c) subpoenas, Doc. 99, that the Indictment raises certain allegations about January 6. The Motion to Strike seeks to remove those allegations, and the

13

prosecution cites no authority for the suggestion that President Trump is precluded from proceeding in the alternative by seeking to collect evidence to defend himself against those unfair allegations should the Court permit them to be presented to the jury.  Had President Trump not proceeded in parallel with these motions, the prosecution surely would have argued that he waived at least one of his options.  Statements in President Trump's other filings recognize only what the Indictment alleges, which this Motion seeks to strike.

## II.    The January 6 allegations are not relevant to motive or intent.

As an alternative relevance ground, the prosecution argues that its allegations relating to January 6 "help[] show the defendant's motive and intent."  Doc. 140, at 9.  This argument is meritless.

Despite three pages of narrative, the prosecution only suggests that one of the paragraphs that is subject to the Motion to Strike is appropriate for this purpose: paragraph 111, which relates to a social media post by President Trump concerning Mike Pence.  Paragraph 111 does not show motive or intent as it relates to the actions at the Capitol.  To the contrary, it reflects protected speech by the President of the United States regarding the integrity of the 2020 election, which was a matter he had every right, and indeed a duty, to be concerned about.  The fact that the prosecution resorts to Rule 404(b) to defend its allegations illustrates how far afield these claims are to the charges actually alleged in the Indictment.

## III.    The January 6 allegations are not relevant to provide "context."

As a final, futile, attempt to establish relevance, the prosecution argues that the actions at the Capitol on January 6 provide "necessary context for all the charged conduct."  Doc. 140, at 12. Nevertheless, again, the prosecution did not charge President Trump with any crime relating to the actions at the Capitol, such as insurrection or incitement.  Actions by others—whom the

prosecution does not claim were part of any of the alleged conspiracies—do not provide any context for the actions based on which President Trump is charged.

The breadth of the Indictment's January 6 allegations also stretches far beyond providing "context" and "background." The prosecution claims that "[d]etails about the actions of the crowd at the Capitol explain events that the defendant set in motion." Doc. 140, at 12. However, President Trump is not charged with triggering the events at the Capitol; the prosecution carefully avoided doing so. Despite the lack of evidence, the prosecution seeks to attribute guilt to President Trump for crimes it did not charge based on the actions of others. This is an effort to cause unfair pretrial prejudice by including irrelevant allegations in the charging instrument, rather than irrelevant "context."

The challenged allegations' lack of relevance to the charges against President Trump is further demonstrated by the Indictment itself. The Indictment claims that President Trump "and his co-conspirators committed one or more of the acts to effect the object of the conspiracy alleged" in a list of paragraphs. Doc. 1, ¶ 124. The Indictment omits Paragraphs 10(d), 105, 106, 107, 108, 109, 110, 112, or 113 from this list. Thus, the prosecution does not claim that the actions at the Capitol on January 6 were "acts to effect the object of the conspiracy," an admission that these paragraphs lack relevance to the charged conduct.

As the court in the *Wilkins* case cited by the prosecution explained, allowing admission of issues "utterly tangential to the core issues before the Court . . . risks allowing the trial to devolve into a mini-trial." 538 F. Supp. 3d 49, 74 (D.D.C. 2021). Collateral allegations of actions not involving President Trump and not relating to any element of the charged offenses are inflammatory and prejudicial, and should therefore be stricken.

15

**IV.     Prejudice has resulted, and will continue, from the inflammatory allegations.**

Even if the prosecution is correct that the Court "does not provide the jury a copy of the indictment," Doc. 140, 5, the challenged paragraphs remain prejudicial to President Trump because these inflammatory allegations are being presented to the jury pool.  The prosecution's reliance on *United States v. Hedgepeth*, 434 F.3d 609, 613 (3d Cir. 2006), is easily dispatched.  Doc. 140, at 5.  In *Hedgepeth*, the Third Circuit based its decision to deny a claim of prejudice on "the absence of any evidence that the jury was exposed to the third superseding indictment," which the defendant did not contest.  *Id.*  Voluminous evidence exists here that the jury pool has been, and continues to be, exposed to the Indictment and its inflammatory and prejudicial allegations, through media coverage relating to the case.  This ongoing exposure is another reason that the allegations should be struck.

## CONCLUSION

The Indictment's allegations about the actions at the Capitol on January 6, 2021 are not relevant because they do not involve President Trump or relate to elements of any charge against President Trump.  These allegations are inflammatory and prejudicial because their purpose is to attack President Trump's character through false allegations that will require a mini-trial and are collateral to the charges the prosecution filed.  President Trump respectfully requests that the Court grant the Motion to Strike.

Dated: November 15, 2023                    Respectfully submitted,

                                            */s/ John F. Lauro*
Todd Blanche, Esq. (PHV)                    John F. Lauro, Esq.
toddblanche@blanchelaw.com                  D.C. Bar No. 392830
Emil Bove, Esq. (PHV)                       jlauro@laurosinger.com
Emil.Bove@blanchelaw.com                    Gregory M. Singer, Esq. (PHV)
BLANCHE LAW                                 gsinger@laurosinger.com
99 Wall St., Suite 4460                     Filzah I. Pavalon, Esq. (PHV)
New York, NY 10005                          fpavalon@laurosinger.com
(212) 716-1250                              LAURO & SINGER
                                            400 N. Tampa St., 15th Floor
                                            Tampa, FL 33602
                                            (813) 222-8990

                                            *Counsel for President Trump*