UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>       v.<br><br>**DONALD J. TRUMP**,<br><br>            Defendant. | Criminal Action No. 23-257 (TSC) |

**OPINION AND ORDER**

Before the court is Defendant's Motion for Pretrial Rule 17(c) Subpoenas. ECF No. 99 ("Motion"). The subpoenas would require federal government officials to produce records related to the House Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee"). For the reasons set forth below, the court will DENY the Motion.

I.   BACKGROUND

The Motion requests leave to issue subpoenas *duces tecum* to seven non-party individuals:

(1) the Archivist of the United States at the National Archives and Records Administration (NARA), (2) the Clerk of the House of Representatives, (3) the current Committee on House Administration, which is the successor entity to the January 6 Select Committee; (4) Richard Sauber, the Special Counsel to the President; (5) Johnathan Meyer, the General Counsel of the Department of Homeland Security; (6) Representative Barry Loudermilk, U.S. House of Representatives; and (7) Representative Bennie Thompson, U.S. House of Representatives.

*Id.* at 1.

Defendant's proposed subpoenas center on certain purportedly "Missing Materials" from the Select Committee's archives.[1] *See infra* Section III.A (discussing Defendant's definition of "Missing Materials"). The subpoenas group the requested records into six categories:

1. The Select Committee Missing Materials.

2. Records and communications regarding methods, practices, instructions, litigation holds, and/or policies regarding transfer, retention, archiving, or destruction of the Select Committee Missing Materials.

3. Records and communications regarding the loss or destruction of the Select Committee Missing Materials.

4. Communications with the Department of Justice or other law enforcement agencies related to the Select Committee Missing Materials.

5. Records and communications relating to any accommodations or agreements with the Executive Branch, including the Department of Justice, Department of Homeland Security, and White House, regarding the Select Committee Missing Materials.

6. Any other documents, communications, or records in any way pertaining to the Missing Materials.

Motion at 5; *see, e.g.*, ECF No. 99-5 at 4.

## II.   LEGAL STANDARD

Federal Rule of Criminal Procedure 17 governs the issuance of subpoenas in criminal cases. Under its subsection (c), the court "may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial." *United States v. Nixon*, 418 U.S. 683, 698 (1974) (quoting Fed. R. Crim. P. 17(c)). That subsection was "not intended to provide a means of discovery for criminal cases," but rather "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Id.* at 698–99 (citations omitted). Accordingly, Rule 17(c) subpoenas are not appropriate where the

---

[1] The Motion also refers to the "Missing Materials" as the "Missing Records." *See* Motion at 2.

moving party seeks materials "procurable reasonably in advance of trial by exercise of due diligence," or operate "as a general 'fishing expedition.'" *Id.* at 699–700. "Courts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16." *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980).

A pre-trial Rule 17(c) subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Nixon*, 418 U.S. at 700. "The first prong of this test—relevance—requires the Court to assess whether the documents sought have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (quoting Fed. R. Evid. 401). "If the documents are deemed relevant, the Court must then determine whether they would be admissible. This inquiry is largely governed by the Federal Rules of Evidence." *Id.* (citing Fed. R. Evid. 401–415, 801–807). Finally, the request must specify the records sought: While it may sometimes be impossible to "describe fully" the materials being sought, "courts will not approve a subpoena for documents based upon requests for disclosure from broad categories of documents." *Id.* (citing *Nixon*, 418 U.S. at 700; *United States v. North*, 708 F. Supp. 402, 404 (D.D.C. 1989)). "The burden of showing these standards" are met falls "on the party requesting the information." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 386 (2004) (citing *Nixon*, 418 U.S. at 699).

### III.   DISCUSSION

Defendant has not met his burdens with respect to his proposed Rule 17(c) subpoenas. He has not sufficiently justified his requests for either the "Missing Materials" themselves or the other five categories of documents related to them.

A. **"Missing Materials" category**

Defendant's proposed subpoenas define "Missing Materials" as certain records and communications that the Select Committee sent to the Executive Branch, including those "transmitted pursuant to the Sauber [ECF No. 99-3] and Meyer [ECF No. 99-4] letters dated December 30, 2002," as well as "the temporary committee records identified in footnote 1 of the Thompson letter [ECF No. 99-2]." ECF No. 99-5 at 2. "At a minimum," Defendant asserts, those records include several subcategories:

> [A] video recordings or [B] other transcriptions of witness interviews, [C] intelligence and other law enforcement information available to the Secret Service, [D] records identifying witnesses, and [E] other information the Select Committee deemed private or operational details pursuant to agreements with the White House and Department of Homeland Security. If the materials returned to the White House and Department of Homeland Security encompass [F] more materials than described in the letters, ["Missing Materials"] also includes those materials.

*Id.*

According to the letters Defendant cites, however, the Select Committee did not actually send any material under most of those subcategories. As the Government notes, the Sauber and Meyer letters describe transmitting only written transcriptions of witness interviews, not any other records. Sauber Letter, ECF No. 99-3 at 1 (transmitting only "interview transcripts"); Meyer Letter, ECF No. 99-4 at 1, 2 (transmitting only "interview transcripts"); *see* Opp'n to Motion, ECF No. 119 at 6. And the Thompson letter's first footnote only identifies written transcripts of interviews, along with corresponding video recordings. Thompson Letter, ECF No. 99-2 at 1 n.1 (mentioning "video recordings of transcribed interviews or depositions" and their "written transcripts"); *see* Opp'n to Motion at 6. Thus, between what the Sauber and Meyers letters transmitted and what the Thompson letter footnote described, the subpoenas' definition of "Missing Materials" only reaches the (A) and (B) subcategories noted above.

Defendant does not contest that conclusion. *See* Reply in Support of Motion, ECF No. 127. The court accordingly need not consider the remaining subcategories.

With regard to the subpoena *duces tecum* for the written interview transcripts—subcategory (B)—the Government represents that it "obtained these materials from the Select Committee, the White House, and the Secret Service, and it produced them to the defendant in its first discovery production more than two months ago," itemized in a source log. Opp'n to Motion at 6. Defendant does not dispute that report. *See* Reply in Support of Motion. The written transcripts are thus "procurable reasonably in advance of trial by exercise of due diligence" and therefore a Rule 17(c) subpoena for those transcripts is unnecessary. *Nixon*, 418 U.S. at 699.

That leaves subcategory (A), the video recordings of the Select Committee witness interviews, the written transcripts of which have already been produced to the defense. Defendant has not established their relevance. The Motion suggests that the recordings could be used for the "[i]mpeachment of witnesses." Motion at 9. "Evidence that can impeach a witness's memory and truthfulness, and therefore credibility, would be relevant." *United States v. Fitzsimons*, 342 F.R.D. 18, 20 (D.D.C. 2022) (citation omitted). But Defendant provides no basis for concluding that the video recordings contain any such impeachment evidence. "This falls well short of his burden. The relevance prong is not satisfied merely because a defendant can articulate what they hope to find in the subpoenaed evidence." *Id.* at 21; *see Libby*, 432 F. Supp. 2d at 34–45 (quashing Rule 17(c) subpoenas "simply seeking to examine general categories of documents with the hope that they contain information that may be helpful"). Rather, the movant must make "a sufficient preliminary showing," *Nixon*, 418 U.S. at 700, to allow the court to find "a reasonable likelihood the documents contained relevant evidence,"

*Fitzsimons*, 342 F.R.D. at 21.  For example, Defendant could have used the written transcripts of the interviews which he already possesses to identify particular portions of video recordings where "a witness's demeanor, tone, and expression" would likely provide impeaching evidence, Reply in Support of Motion at 4 n.2; or he could have proffered some other reason to believe that the video recordings would do so.  The Motion does not even make that attempt.  Accordingly, Defendant has not carried his burden in justifying the issuance of the subpoenas with respect to any of the "Missing Materials."[2]

**B. Remaining five categories**

Defendant likewise fails to meet his burden for the remaining five categories of records that he seeks.  Those categories cover documents and communications "in any way pertaining to the Missing Materials," including their storage, loss, or transfer.  *See* Motion at 5; *id.* at 8–9.  Defendant does not state with any specificity the information that he seeks in those records, repeating only that it is important and related to the events and people associated with the Select Committee's work and therefore the January 6, 2021 attack.  *Id.* at 9–11.  The broad scope of the records that Defendant seeks, and his vague description of their potential relevance, resemble less "a good faith effort to obtain identified evidence" than they do "a general 'fishing expedition' that attempts to use the [Rule 17(c) subpoena] as a discovery device."  *United States v. Binh Tang Vo*, 78 F. Supp. 3d 171, 180 (D.D.C. 2015) (quoting *Cuthbertson*, 630 F.2d at 144); *see also id.* at 181.  "[I]f the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will

---

[2] The Government argues that the video recordings are categorically irrelevant at this time because (1) the written transcripts render them "superfluous," and (2) that seeking them before the exchange of witness lists would be "at best, premature."  Opp'n to Motion at 7.  Because Defendant has failed to satisfy his initial burden, however, the court need not reach those two arguments.

turn up, this is a sure sign that the subpoena is being misused." *Libby*, 432 F. Supp. 2d at 31 (quoting *United States v. Noriega,* 764 F. Supp. 1480, 1493 (S.D. Fla. 1991)). Defendant has not justified the issuance of a Rule 17(c) subpoena for the five additional categories of records related to the "Missing Materials."

## IV.  CONCLUSION

For these reasons, the court hereby DENIES Defendant's Motion for Pretrial Rule 17(c) Subpoenas, ECF No. 99.

Date: November 27, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge