IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:23-cr-00257-TSC |
| DONALD J. TRUMP, | |
| *Defendant*. | |

**PRESIDENT TRUMP'S REPLY IN SUPPORT OF MOTION
TO STAY PROCEEDINGS PENDING APPEAL**

    Hours before initiating proceedings before the Supreme Court in order to try to complicate President Trump's as-of-right appeal in the D.C. Circuit, the prosecution filed an opposition brief that ignores the Supreme Court's binding precedent and urges the Court to permit continued pretrial proceedings on a parallel track. *See* Doc. 182.  The prosecution's brief was ambiguous about what they had in mind, but today they filed a motion for a CIPA § 6 hearing, which the Court currently lacks jurisdiction to conduct, notwithstanding the prosecution's overlapping and still-pending CIPA § 5(b) motion, which the Court currently lacks jurisdiction to resolve.  *See* Doc. 184.  The only coherent principle that emerges from the prosecution's filings is based on strategic gamesmanship rather than the law:  On behalf of the Biden Administration, the prosecution will do everything that it can to rush to an unconstitutional and fundamentally unfair trial to try to prevent President Trump from winning the 2024 election, which he is currently leading.

    The prosecution's frivolous and unsupportable opposition demonstrates their improper motivation and their desperation.  The stay sought by President Trump is mandatory.  The Court "*must* stay its pre-trial and trial proceedings while the interlocutory appeal is ongoing." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023) (emphasis added).  The scope of the mandatory stay is also clear, as "the entire case is essentially 'involved in the appeal'" of a motion to dismiss based

on immunity grounds and double jeopardy principles. *Id.* (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). Thus, "[m]any district courts, faced with a similar appeal and motion to stay after having denied immunity, determine that a stay of *all* proceedings is required pending the outcome of appeal." *Root v. Liberty Emergency Physicians, Inc.*, 68 F. Supp. 2d 1086, 1089 (W.D. Mo. 1999). Indeed, a district court issued exactly the type of stay President Trump requests here in connection with President Clinton's appeal of the denial of his presidential immunity. *See Jones v. Clinton*, 879 F. Supp. 86, 87-88 (E.D. Ark. 1995) ("[U]pon the filing of a notice of appeal in an immunity case, '[j]urisdiction has been vested in the court of appeals and the district court should not act further.'" (quoting *Johnson v. Hay*, 931 F.2d 456, 459 n.2 (8th Cir. 1991))).

The Court must do the same. Until the appeal is resolved, any further district court proceedings would be "a nullity." *Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995). All existing deadlines are no longer in force, and this Court lacks authority to issue decisions on pending applications. To the extent circumstances arise that the prosecution believes warrant lifting the stay, they can seek such relief at that time. Unless that unlikely event happens, however, these proceedings must be—and are—stayed.

**ARGUMENT**

I.   **The Prosecution Concedes that the Court Lacks Jurisdiction to Proceed.**

The prosecution concedes, as it must, that "[t]he *Griggs* divestiture rule applies automatically upon the filing of a notice of appeal," and that the appeal "divests [the] district court of jurisdiction 'over those aspects of the case involved in the appeal.'" Doc. 182 at 1-2 (quoting *Griggs*, 559 U.S. at 58); *see also id.* at 3 (conceding that "divestiture occurred when the defendant filed his notice of appeal"). The prosecution also concedes that, "while the appeal is pending," President Trump "will not be subject to the burdens of litigation." *Id.* at 3 (cleaned up). It follows

2

from these concessions, and the binding precedent upon which they are based, that this case "must" be stayed pending appeal—including both trial and pretrial proceedings. *Coinbase*, 599 U.S. at 739.

## II.     Existing Deadlines and Pending Motions Are Stayed.

Due to the "automatic divestiture" of the Court's jurisdiction under *Griggs*, Doc. 182 at 1, all existing deadlines are not in effect and pending motions must be held in abeyance. This includes all existing deadlines and pretrial submissions, should they become necessary following the appeal, such as (and without limitation):

- Further briefing on President Trump's pending discovery motions, *see* Docs. 167, 169;

- Motions for Rule 17(c) subpoenas, *see* Doc. 146 at 3;

- Disclosures regarding any advice-of-counsel defense, *see* Doc. 147;

- CIPA § 6 submissions and hearings relating to the classified evidence described in President Trump's CIPA § 5 Notices, Docs. 121, 168, 184, and President Trump's anticipated objection to the sufficiency of the prosecution's CIPA § 4 summary;

- Expert witness disclosures, Doc. 39 ¶ 7;

- Suppression motions, *id.* ¶ 4;

- Motions *in limine*, *id.*;

- Proposed *voir dire* and jury instructions, *id.* ¶ 5;

- Exhibit lists and objections, *id.* ¶ 8;

- Witness lists, *id.* ¶ 9;

- Proposed written questionnaires for jury selection, *see* Doc. 130; and

- Trial, Doc. 39 ¶ 1.

The Court also lacks authority to address pending motions. Any decision would be, in effect, an advisory opinion regarding the Court's views on other aspects of this case that assumes

3

away critical flaws relating to immunity and double jeopardy issues that are now on appeal. Such decisions would result in unprecedented confusion with respect to procedural requirements that typically follow from orders that are based on appropriate exercises of jurisdiction, such as the time periods for reconsideration motions, mandamus petitions, and interlocutory appeals— including interlocutory appeals by the prosecution pursuant to CIPA § 7 of adverse rulings on CIPA motions like the one they filed today. The need to consider and potentially pursue these options is one of the "burdens of litigation" that may not be imposed on President Trump during this appeal. *United States v. Brizendine*, 659 F.2d 215, 219 (D.C. Cir. 1981).

Nor does Rule 37 lend support to the prosecution's lawless proposal. *See* Doc. 182 at 2.[1] The Rule simply "recognizes" the *Griggs* principle. *United States v. Jackson*, 848 F.3d 460, 464 (D.C. Cir. 2017). Rule 37(a)(2) authorizes a district court to "deny the motion" because "after a defendant notices an appeal, the district court loses jurisdiction over the case." *Id.* "Issuance of an indicative ruling is inappropriate where," as here, "it would place a district court in a position where it must predict the outcome of an appeal of its own decision and would do little to aid the . . . Circuit's consideration of the appeal." *United States v. Brennan*, 385 F. Supp. 3d 205, 208 (W.D.N.Y. 2019) (cleaned up); *see also United States v. O'Hara*, 2023 WL 5170320, at *2 (E.D. Ky. 2023) ("While the Court may act to aid the appellate process [pursuant to Rule 37(a)], it cannot take any action that would alter the case on appeal." (cleaned up)).

The Advisory Committee noted its expectation "that Criminal Rule 37 will be used primarily if not exclusively for newly discovered evidence motions under Criminal Rule 33(b)(1)

---

[1] Even a cursory review of the dockets in *United States v. Jefferson* and *United States v. McDade* demonstrates that those cases are also inapposite. *See* Doc. 182 at 2. Neither court addressed the *Griggs* issue raised by President Trump, as both defendants continued to participate in pretrial proceedings during the pendency of their appeals by, for example, filing motions.

4

(see *United States v. Cronic*, 466 U.S. 648, 667 n.42 (1984)), reduced sentence motions under Criminal Rule 35(b), and motions under 18 U.S.C. § 3582(c)." Fed. R. Crim. P. 37 Advisory Cmte. Note (2012). The types of motions cited by the Committee are based on post-conviction changed circumstances arising after the initiation of the appeal that are not present here. *See Brennan*, 385 F. Supp. 3d at 209 ("[T]he common application of Rule 37 would be in the post-conviction context.").[2] "Rule 37 does not attempt to define the circumstances in which an appeal limits or defeats the district court's authority to act in the face of a pending appeal." Fed. R. Crim. P. 37 Advisory Cmte. Note. *Griggs* and its progeny control. Under *Griggs*, the Court may not issue orders on pending motions because the entire case is part of the appeal.

Therefore, the citation to Rule 37 is yet another example of the prosecution failing in their obligation to "seek justice" by urging the Court to violate President Trump's rights. *United States v. Heldt*, 668 F.2d 1238, 1275 (D.C. Cir. 1981). The "sensible" course, *Coinbase*, 599 U.S. at 743, is for the parties and the Court to acknowledge the mandatory stay under *Griggs*. If a dispute arises in the future that the prosecution somehow believes falls outside the mandatory stay, the prosecution can ask the Court to lift the stay at that time.

### III.     The Prosecution Cannot Litigate Against President Trump in Absentia.

Ignoring these realities, and without legal authority, the prosecution proposes a bizarre one-sided proceeding in President Trump's absence during the appeal. In their dream world, notwithstanding the divestiture of jurisdiction, the prosecution would continue to file false motions with inaccurate descriptions of the evidence in order to harm President Trump's reputation and

---

[2] The Advisory Committee also cited *Cronic*, which involved an ineffective-assistance claim. *See* 466 U.S. at 650. Such claims are typically raised first in post-conviction district court proceedings. *See Massaro v. United States*, 538 U.S. 500, 501 (2003) ("[O]rdinarily [these claims] will be litigated in the first instance in the district court, the forum best suited to developing the facts necessary to determin[e] the adequacy of representation during an entire trial.").

bolster President Biden's losing campaign, *see* Docs. 181, 183, and the Court would "make headway" by issuing advisory opinions on motions it lacks jurisdiction to address. Doc. 182 at 1, 2. That approach is flatly inconsistent with what the Court has described as its "affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." 8/11/23 Tr. 5 (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 369 (1979)).[3] The politically motivated gamesmanship driving this request is illustrated by the prosecution's assertion that their purported plan to comply with the "pretrial schedule" is subject to "the length of the appellate process." *Id.* at 3. In other words, the prosecution asks the Court to unlawfully reserve jurisdiction over President Trump, while at the same time reserving for themselves the option of ignoring the Court's schedule if the appeal is not litigated in a manner that they deem to be sufficiently expedited.

This unprecedented suggestion contradicts the Supreme Court's recent admonition that "[i]t makes little sense for the litigation to continue in the district court while the appeal is pending," and "continuation of proceedings in the district court 'largely defeats the point of the appeal.'" *Coinbase*, 599 U.S. at 741, 743 (quoting *Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 505 (7th Cir. 1997)). Such a one-sided litigation, which would involve a prosecutor without a defendant, would be akin to "a lock without a key, a bat without a ball, a computer without a keyboard—in other words, not especially sensible." *Id.* at 743. The prosecution's nonsensical approach would add to, not eliminate, the "burdens of litigation" in a court that lacks jurisdiction over the matter.

---

[3] At the August 11, 2023 conference, SASC Windom expressed concerns about "try[ing] this case in the media," "us[ing] criminal discovery for political purposes," and "pollut[ing] the jury pool, whether purposely or not." 8/11/23 Tr. 8-9. The same logic counsels strongly against permitting the one-sided filings proposed by the prosecution during a period when the Court lacks jurisdiction to address them.

## IV. The Prosecution Does Not Act In The Public Interest.

Throughout these proceedings, the prosecution has regularly referenced the "public interest," which of course is nothing more than the partisan private interest of the Biden Administration in holding a show trial that falsely, unfairly, and unconstitutionally targets President Trump as he leads the 2024 Presidential race.

The Special Counsel was not elected or confirmed by the Senate. The prosecution has no mandate other than marching orders from President Biden. Under these circumstances, by wrongly invoking the interests of a public that the prosecution does not speak for, they disrespect the interests of hundreds of millions of Americans in an unfettered 2024 election—one in which President Trump is currently the leading candidate. The true public interest is in a legal proceeding based on traditional notions of due process and recognizing that all Presidents must "fearlessly and impartially" deal with "the duties of his office" protected by the shield of executive immunity. *Blassingame v. Trump*, 2023 WL 8291481, at *9 (D.C. Cir. 2023). For these reasons, "the public interest really is rooted in the *proper* resolution of the important issues raised in this case." *In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1, 6 (D.D.C 2002); *see also Sherman v. Trinity Teen Sols., Inc.*, 2022 WL 19039113, at *3 (D. Wyo. Dec. 6, 2022) (vacating deadlines and trial date in granting a stay pending appeal of class certification motion, relying in part on *In re Lorazepam*). Rushing to trial is antithetical to that interest. "'Haste makes waste' is an old adage. It has survived because it is right so often." *Kusay*, 62 F.3d at 195. Any trial devoid of due process and the careful consideration of all legal issues would lack legitimacy, and such a trial would cause further irreparable harm to a country already deeply divided and injured by the weaponization of law enforcement and the deterioration of our system of justice.

The prosecution's biased rush to judgment, first evidenced by the line prosecutors' November 2020 letter claiming without basis that fraud allegations relating to the 2020 election

7

were "false," must not be confused with support for the prosecution's inaccurate claim regarding "the public's strong interest in a prompt trial." Doc. 161-1 at 3; Doc. 182 at 2. Appellate proceedings relating to the Court's December 1, 2023 decision, including matters that the prosecution recently initiated before the Supreme Court, will necessarily detract from the amount of time the Court contemplated for pretrial proceedings in the August 28, 2023 scheduling order. Doc. 39. Insofar as a just outcome is the objective, this will necessarily delay the trial. Indeed, the Court has already noted that "[b]ackloading the pretrial schedule . . . will not serve the interests of justice." Doc. 82 at 4.

"[I]n cases of extraordinary public moment," like this one, a party "may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Landis v. North American Co.*, 299 U.S. 248, 256 (1936). That concern overrides the abbreviated trial schedule preferred by the prosecution and the Biden Administration. The public interest lies solely in holding proceedings consistent with due process, resolving legal issues correctly and in due course, and protecting the Chief Executive's ability to function vigorously and fearlessly. Issuing the requested stay—as required by law—is the only way to vindicate these interests.

**CONCLUSION**

The Court should stay all further proceedings in this case pending the outcome of President Trump's appeal of the Court's December 1, 2023, Memorandum Opinion and Order, Docs. 171, 172.

Dated: December 12, 2023                                    Respectfully submitted,

John F. Lauro, Esq.                                    */s/ Todd Blanche*
D.C. Bar No. 392830                                    Todd Blanche, Esq. (PHV)
jlauro@laurosinger.com                                 ToddBlanche@blanchelaw.com
Gregory M. Singer, Esq. (PHV)                          Emil Bove, Esq. (PHV)
gsinger@laurosinger.com                                Emil.Bove@blanchelaw.com
LAURO & SINGER                                         BLANCHE LAW PLLC
400 N. Tampa St., 15th Floor                           99 Wall St., Suite 4460
Tampa, FL 33602                                        New York, NY 10005
(813) 222-8990                                         (212) 716-1250

*Counsel for President Donald J. Trump*