IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DONALD J. TRUMP,<br><br>    *Defendant*. | Case No. 1:23-cr-00257-TSC |

**PRESIDENT DONALD J. TRUMP'S REPLY IN SUPPORT OF**
**MOTION FOR ORDER TO SHOW CAUSE**

    Having been caught knowingly, repeatedly, and blatantly violating this Court's Stay Order, Doc. 186, the Special Counsel and his assistants (the "prosecutors") offer no excuse. Instead, they engage in a failed attempt to re-write the record, claiming that the Stay Order prohibits only those "actions [that] require [a] response from the defendant." Doc. 193 at 2. As the prosecutors are fully aware, the Stay Order says nothing of the sort. Rather, the Stay Order expressly prohibits **"any further proceedings"** that: (1) "impose additional burdens of litigation" on President Trump or (2) "move this case towards trial." Doc. 186 at 2 (emphasis added). The prosecutors' filings and productions, Docs. 188, 191, attempt to achieve both of those unlawful goals. Accordingly, the Court should order the prosecutors to show cause why they should not be held in contempt.

ARGUMENT

**A. The Prosecutors' Actions Impose Burdens of Litigation on President Trump**

    The prosecutors argue that President Trump is not "obligated to review" or respond to the prosecutors' filings and discovery, and therefore faces no burden. Doc. 193 at 2. This is false. As an initial matter, President Trump must examine all documents the prosecutors file in this case, when they are filed, to determine whether and how he should respond. This is because both the prosecutors and the Court have taken the unsettled position that the Court may address and resolve

1

certain issues notwithstanding the Stay Order. Doc. 182 at 2 ("The Court should not assume at this juncture that no issue can arise that is not involved in the appeal."); Doc. 186 at 2 ("[T]he court does not understand the required stay of further proceedings to divest it of jurisdiction to enforce the measures it has already imposed to safeguard the integrity of these proceedings."). President Trump cannot know whether a filing relates, in whole or in part, to an issue that the prosecution contends is somehow "not involved in the appeal" without reviewing the full filing. Therefore, he must perform that review on receipt—an unquestionably burdensome task that the Stay Order and applicable law relieve him from performing. Likewise, where, as here, a filing violates the Stay Order, President Trump must preserve his rights by clarifying that he will not accept or substantively respond to the filing—a burden the prosecutors have already wrongly forced President Trump to carry multiple times. *See* Docs. 189, 189-1, 192.

Second, as the prosecutors are fully aware and no doubt intend, their filing of politically charged invective, such as the recently filed motion *in limine* (Doc. 191, the "MIL"), induces substantial negative media coverage against President Trump, burdening him both personally (by falsely impugning his character) and professionally (by undermining his leading campaign for the 2024 Presidential Election). Worse, the prosecutors publicize their untruthful arguments knowing that any press coverage will be entirely one-sided without President Trump's substantive responses. Just as the Stay Order shields President Trump from the burdens of trial and discovery, it protects him from these "other burdens of litigation" as well. *See Blassingame v. Trump*, 87 F.4th 1, 29 (D.C. Cir. 2023) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985)).

Although the prosecutors generically deny a political motivation, such words are empty. The prosecutors' filings, including the MIL, closely mirror the Biden Campaign's dishonest talking points—a fact the prosecutors do not and cannot deny. Doc. 192 at 6–8. The timing of the

prosecutors' filings, likewise, cannot be explained by the posture of this case (which is stayed), but instead synchronize with the Biden Campaign's recent media blitz, which relies on the same discredited appeals to emotion that pervade the prosecutors' filings. *See* David Smith, *[Fired-up Biden shows gloves are off in January 6 anniversary speech](#)*, THE GUARDIAN, Jan. 5, 2024 ("This time it's personal. On Friday Joe Biden tore into his predecessor Donald Trump as never before. He brimmed with anger, disdain and contempt.").

And once more, anonymous "sources familiar with what Smith's team has learned during its Jan. 6 probe" have resumed their deliberate and unlawful effort to damage President Trump through leaks of false and defamatory information. Katherine Faulders, Mike Levine, Alexander Mallin, and Will Steakin, *[Special counsel probe uncovers new details about Trump's inaction on Jan. 6: Sources](#)*, ABCNEWS, Jan. 7, 2024.

It is not a coincidence that the Biden Campaign, the prosecutors, and "sources" close to the prosecutors are all attempting to simultaneously flood the airwaves with matching anti-Trump rhetoric during the Stay. *See In re Domestic Airline Travel Antitrust Litig.*, No. MC 15-1404 (CKK), 2023 WL 5930973, at *9 (D.D.C. Sept. 12, 2023) ("[P]arallel action . . . gives rise to a suspicion of unlawful coordination." (citation omitted)).

Thus, the prosecutors' filings impose a prohibited burden on President Trump by wrongly—and very publicly—accusing him of committing a crime when the appellate courts should determine that he acted lawfully under applicable immunity principles. Such false accusations are irreparably harmful to President Trump's reputation and represent defamation *per se* in any other context. *See Grossman v. Goemans*, 631 F. Supp. 972, 974 (D.D.C. 1986). For the same reason, President Trump cannot ignore "the practical implications" of the prosecutors' unlawful actions, but must instead take "reasonable steps to defend [his] reputation," especially

considering the politically charged nature of this case and the prosecutors' filings. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1043, (1991) (opinion of Kennedy, J.). Given this, it is unsurprising that the prosecutors cannot cite a single case that has allowed continued motion and discovery practice during a stay.

Finally, the prosecutors' assertion that President Trump is not legally "obligated" to review discovery, Doc. 193 at 2, is meaningless. A defendant is never "obligated" to review discovery, *See* Fed. R. Crim. P. 16(a)(1). Moreover, and regardless, the prosecutors previously argued for an unconstitutionally rapid trial based on the idea that President Trump somehow should have identified and reviewed millions of publicly available documents before indictment, despite his obvious lack of any obligation to do so. Doc. 32 at 2–3. Although such documents represented only a small fraction of the total discovery in this matter (which includes many millions of non-public documents as well), the Court accepted this unconstitutional argument for a speedy trial, denying President Trump his rights to due process and to counsel with adequate time to prepare for trial. Doc. 38 at 28:22–29:1 ([The Court]: "You've known this was coming. Mr. Trump's counsel has known this was coming for some time. And I'm sure any able, diligent, zealous defense counsel would not have been sitting on their hands waiting for an indictment."). The prosecutors make no secret that they will attempt the same maneuver here, Doc. 182 at 1, thereby defeating the purpose of the Stay Order and unlawfully imposing an enormous burden on President Trump.

### B. The Prosecutors' Actions Attempt to Move This Case Toward Trial

The prosecutors bizarrely and inconsistently argue that their filings and productions do not move this case toward trial, Doc. 193 at 2, while simultaneously claiming that such filings and productions are necessary to ensure the "prompt resolution of this case," *id*. at 3; *see also* Doc. 188 (asserting production was necessary "to help ensure that trial proceeds promptly if and when the

4

mandate returns"); Doc. 191 at 1 n.1 (same). The prosecutors' embrace of Orwellian doubletalk aside, this argument defeats itself. If the filings and productions help prepare the case for trial and are necessary for a "prompt resolution," Doc. 193 at 2, then by definition they move the case toward trial. Indeed, the prosecutors present no reason for the filings and productions *other than* their unlawful desire to accelerate the trial schedule.

This stated intention is illogical, violates the Stay Order, and has no basis in law. The actions at issue—filing motions on the docket and producing additional discovery—are archetypical examples of proceedings that advance a criminal case toward trial. So much so that the Court used those exact proceedings to illustrate the Stay Order's prohibitions. Doc. 186 at 3. Although the prosecutors attempt to distinguish the Court's example by pointing to the word "requiring," that misses the point. "Requiring additional discovery or briefing" would violate the Stay Order *because* those activities "advance the case toward trial," not because they are required. So too, here. The prosecutors' MIL and discovery productions are admitted attempts to advance this case, and thus violate the Stay Order, regardless of whether President Trump is required to immediately respond.

### C. The Prosecutors' Remaining Arguments Are Meritless

The prosecutors claim that they do "not understand [the Stay Order] to prohibit either party from voluntarily complying with the Pretrial Order." Doc. 193 at 1. Nothing in the Stay Order suggests that it is optional. It explicitly and plainly stays "**any** further proceedings that would move this case towards trial or impose additional burdens of litigation on Defendant." Doc. 186 at 2 (emphasis added). This is entirely logical because, as explained above, the prosecutors' "voluntary" efforts to advance the case toward trial and impose burdens on President Trump harm him in the same manner as proceedings required by the Court. The protections provided by the

5

Stay Order—and mandated by law—would be meaningless if the prosecutors could circumvent them simply by characterizing their deleterious conduct as "voluntary."

Next, the prosecutors argue that the Stay Order silently excludes Rule 16 discovery from its ambit. Doc. 193 at 1. This is baseless. "[A]ny further proceedings" means "any further proceedings." Doc. 186 at 2. To the extent the prosecutors had any genuine confusion regarding the meaning of the word "any," they should have conferred in good faith with President Trump's counsel and asked for clarification from the Court. Indeed, seeking clarification about a court's order is routine, a fact these well-seasoned federal prosecutors know. Any claimed confusion now is nothing more than an *ex-post* cover for the prosecutors' intentional misconduct.

Finally, the prosecutors claim that they "informed the Court and the defendant" of their unlawful plans and "did what [they] said [they] would do" because the Court supposedly "did not forbid" such actions. Doc. 193 at 2. The prosecutors are wrong. The plain language of the Stay Order forbids the prosecutors' actions, notwithstanding their prior request for an exception. Any reasonable person would understand this to mean that the Court had considered and denied the prosecutors' request. And again, at the very least, the prosecutors should have, but did not, request clarification before violating the Stay Order and unlawfully burdening President Trump.

## CONCLUSION

The prosecutors claim they "never intentionally would violate . . . an order of the Court," yet have repeatedly done just that, without a shred of support and without asking for clarification. The prosecutors now brazenly promise to continue their misconduct unless the Court intervenes to enforce the plain and straightforward requirements of the Stay Order. Doc. 193 at 3. The Court should reject this blatant effort to undermine its authority and order the prosecutors to show cause why they should not be held in contempt.

6

Dated: January 12, 2024

Todd Blanche, Esq. (PHV)
toddblanche@blanchelaw.com
Emil Bove, Esq. (PHV)
Emil.Bove@blanchelaw.com
BLANCHE LAW
99 Wall St., Suite 4460
New York, NY 10005
(212) 716-1250

Respectfully submitted,

*/s/John F. Lauro*
John F. Lauro, Esq.
D.C. Bar No. 392830
jlauro@laurosinger.com
Gregory M. Singer, Esq. (PHV)
gsinger@laurosinger.com
Filzah I. Pavalon, Esq. (PHV)
fpavalon@laurosinger.com
LAURO & SINGER
400 N. Tampa St., 15th Floor
Tampa, FL 33602
(813) 222-8990
*Counsel for President Donald J. Trump*