UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>v.<br><br>**DONALD J. TRUMP**,<br><br>Defendant. | Criminal Action No. 23-257 (TSC) |

**MEMORANDUM OPINION**

The United States has charged former President Donald J. Trump with four counts of criminal conduct, which he is alleged to have committed during the waning days of his Presidency. *See* Indictment, ECF No. 1. He has moved to dismiss the charges against him based on selective and vindictive prosecutorial grounds. Mot. to Dismiss for Selective and Vindictive Prosecution, ECF No. 116 ("Motion"). For the following reasons, the court will DENY the motion.

**I.      BACKGROUND**

At the motion to dismiss stage, the court assumes the truth of the Indictment's allegations, a more fulsome account of which can be found in *United States v. Trump*, 23-cr-257 (TSC), 2023 WL 8359833, at *1–3 (D.D.C. Dec. 1, 2023), *vacated on other grounds*, 144 S. Ct. 2312 (2024). The Indictment charges Defendant with: Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371, Indictment ¶¶ 5–124; Conspiracy to Obstruct an Official Proceeding, in violation of 18 U.S.C. § 1512(k), Indictment ¶¶ 125–26; Obstruction of, and Attempt to Obstruct, an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2), 2, Indictment ¶¶ 127–28; and Conspiracy Against Rights, in violation of 18 U.S.C. § 241, Indictment ¶¶ 129–130.

At the outset, the court must address—as it has before—Defendant's improper reframing of the allegations against him. *See Trump*, 2023 WL 8359833, at *1–3. He declares that the Indictment amounts only to a Government "theory . . . that it is illegal to dispute the outcome of an election and work with others to propose alternate electors." Motion at 6. That description mischaracterizes his alleged conduct. Defendant is charged with knowingly making false statements in furtherance of criminal conspiracies and for obstruction of election certification proceedings. Indictment ¶¶ 6, 126, 128, 130; *Trump*, 2023 WL 8359833, at *18. The Indictment does not charge Defendant for publicly disputing the election outcome and merely "working with others" to propose alternate electors. Indeed, it expressly states:

> Defendant had a right, like every American, to speak publicly about the election and even to claim, falsely, that there had been outcome-determinative fraud during the election and that he had won. He was also entitled to formally challenge the results of the election through lawful and appropriate means . . . .

Indictment ¶ 3. At this stage, the court cannot accept Defendant's alternate narrative.

## II.  LEGAL STANDARD

The Government has "'broad discretion' as to whom to prosecute," *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982)), and which "cases to pursue," *United States v. Blackley*, 986 F. Supp. 616, 617 (D.D.C. 1997). "This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *Wayte*, 470 U.S. at 607. Accordingly, courts remain "properly hesitant to examine" the decision to prosecute, *id.* at 608, and will presume that prosecutors "have properly discharged their official duties," *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15 (1926)). However, prosecutorial discretion "is not 'unfettered'" and is "subject to constitutional

constraints." *Wayte*, 470 U.S. at 608 (quoting *United States v. Batchelder*, 442 U.S. 114, 125 (1979)).

A selective prosecution claim asks the court "to exercise judicial power over a 'special province' of the Executive." *Armstrong*, 517 U.S. at 464 (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)). The standard required to prevail is a "particularly demanding" one, and a defendant must provide "'clear evidence' displacing the presumption that a prosecutor has acted lawfully." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999) (quoting *Armstrong*, 517 U.S. at 463–65). A vindictive prosecution claim is based on the principle that the Fifth Amendment's Due Process Clause "prohibit[s] prosecutors from 'upping the ante'" against defendants "by filing increased charges in order to retaliate against a defendant for exercising a legal right." *United States v. Allgood*, 610 F. Supp. 3d 239, 246 (D.D.C. 2022) (quoting *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017)). To succeed on either claim, "a defendant must establish that the increased charge was 'brought *solely* to "penalize" [him] and could not be justified as proper exercise of prosecutorial discretion.'" *Slatten*, 865 F.3d at 799 (quoting *Goodwin*, 457 U.S. at 380 n.12).

### III.   SELECTIVE PROSECUTION

Defendant claims that "[p]ublic statements by [President] Biden and news reports sourced to government personnel with direct knowledge of the relevant events" are *prima facie* evidence that this prosecution is selective and vindictive. Motion at 6. In support, he attaches several exhibits: a *Washington Post* ("*Post*") article (Exh. 1), a *New York Times* ("*Times*") article (Exh. 2), and two of his own Truth Social posts (Exhs. 3 & 4). These exhibits, he contends, conclusively demonstrate that President Biden and the Special Counsel launched this prosecution to prevent him from becoming "the next President again." *Id.* at 2. The court cannot agree.

A. <u>**Establishing a Selective Prosecution Claim**</u>

To succeed on his selective prosecution claim, Defendant must satisfy a two-part test. *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000). First, he "must demonstrate that the federal prosecutorial policy 'had a discriminatory effect,'" *Armstrong*, 517 U.S. at 465 (quoting *Wayte*, 470 U.S. at 608), in that he was "singled out for prosecution from among others similarly situated," *Rossotti*, 211 F.3d at 144 (quoting *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983)). Put simply, Defendant must demonstrate that the government treated those "similarly situated" to him differently. *See Armstrong*, 517 U.S. at 470. Specifically, he must show that "there exist[s] persons who engaged in similar conduct [who] were not prosecuted." *Blackley*, 986 F. Supp. at 618; *see also United States v. Michel*, No. 19-cr-148-1, 2022 WL 4182342, at *6 (D.D.C. Sept. 13, 2022) (quoting *United States v. Khanu*, 664 F. Supp. 2d 28, 32 (D.D.C. 2009)) (holding that a similarly situated person "is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced").

Courts consider defendants to be similarly situated "only when their 'circumstances present no distinguishable legitimate prosecutorial factors that might justify different prosecutorial decisions between' them." *United States v. Bennett*, No. 21-312, 2023 WL 6847013, at *2 (D.D.C. Oct. 17, 2023) (formatting modified) (quoting *United States v. Judd*, 579 F. Supp. 3d 1, 4 (D.D.C. 2021)). "Legitimate prosecutorial factors include 'relative culpability, the strength of the case against particular defendants, willingness to cooperate, and the potential impact of a prosecution on related investigations.'" *United States v. Navarro*, 651 F. Supp. 3d 212, 235 (D.D.C. 2023) (quoting *Khanu*, 664 F. Supp. 2d at 32). For instance, in *Khanu*, the defendant was not similarly situated to his alleged co-conspirators because he "was more involved and took a leadership role," with "substantial control over . . . operations" that his

alleged co-conspirators did not have. *Khanu*, 664 F. Supp. 2d at 32. "Such factual distinctions" are critical in analyzing a selective prosecution claim. *Navarro*, 651 F. Supp. 3d at 236.

Second, a defendant must show that the prosecution "was motivated by a discriminatory purpose," *Armstrong*, 517 U.S. at 465 (quotation omitted), "based on race, religion or another arbitrary classification," *Rossotti*, 211 F.3d at 144, "including the exercise of protected statutory and constitutional rights," *Wayte*, 470 U.S. at 608. This may be shown through "direct evidence of intent or with 'evidence concerning the unequal application of the law, statistical disparities and other indirect evidence of intent.'" *Branch Ministries v. Rossotti*, 40 F. Supp. 2d 15, 21 (D.D.C. 1999) (quoting *Branch Ministries v. Richardson*, 970 F. Supp. 11, 17 (D.D.C. 1997)). In *United States v. Barnes*, for example, the defendant did not sufficiently demonstrate that his prosecution had a discriminatory purpose because he failed "to provide any evidence, beyond his own speculation, that he was prosecuted because of his speech." No. 18-mj-54, 2019 WL 5538550, at *8 (D.D.C. Oct. 24, 2019), *aff'd*, 481 F. Supp. 3d 15 (D.D.C. 2020); *see also Armstrong*, 517 U.S. at 470 (rejecting "personal conclusions based on anecdotal evidence").

B. <u>The Government Did Not Selectively Prosecute Defendant</u>

1. <u>Discriminatory Effect</u>

Defendant's proffered evidence of discriminatory effect consists of a single paragraph of legal conclusions the court has already rejected. His main contention is that other people have committed the same conduct without being prosecuted. Citing his earlier motions to dismiss, Defendant reasserts that there is a "track record of similar, unprosecuted, efforts" dating back to the 1800s to "dispute the outcome of an election and work with others to propose alternate electors." Motion at 6; *see also Trump*, 2023 WL 8359833, at *23. But the court has already explained that "Defendant is not being prosecuted for publicly contesting the results of the election; he is being prosecuted for knowingly making false statements in furtherance of a

criminal conspiracy and for obstruction of election certification proceedings." *Trump*, 2023 WL 8359833, at *23.

Nonetheless, Defendant suggests—without any support or analysis—that he is similarly situated to the individuals who publicly disputed the results in the elections to which he cites. *See* Motion at 6; Reply in Support of Mot. to Dismiss for Selective and Vindictive Prosecution, ECF No. 161, at 8–9 ("Reply"). In particular, he claims that he is being prosecuted for "protected speech relating to the very same strategy" employed by individuals involved in those elections, and that the Supreme Court has contemplated Congress "select[ing] among conflicting slates of electors." Motion at 6 (citing *Bush v. Gore*, 531 U.S. 98, 127 (2000) (Stevens, J., dissenting)).

Defendant has failed to establish that he is similarly situated to the individuals involved in those election disputes, none of whom faced

> any allegation that [they] engaged in criminal conduct to obstruct the electoral process. For instance, following the 2004 Presidential election, Representative Stephanie Tubbs Jones raised an objection to Ohio's electoral votes at the joint session; Senator Boxer signed the objection. As Representative Jones explained in a separate session, that objection was to allow "a necessary, timely, and appropriate opportunity to review and remedy . . . the right to vote." Ohio's electoral votes were then counted for President Bush. Defendant points to no allegation that Representative Jones' objection was in furtherance of a criminal conspiracy or designed to obstruct the electoral process.

*Trump*, 2023 WL 8359833, at *23 (quoting 151 Cong. Rec. 199 (Jan. 6, 2005)). By contrast, there is "a long history of prosecutions for interfering with the outcome of elections." *Id.*

Defendant's alleged criminal conduct here is "a material difference and a legitimate prosecutorial factor that distinguishes Defendant from" the individuals who publicly objected to earlier election results. *United States v. Navarro*, 627 F. Supp. 3d 1, 6 (D.D.C. 2022). Because "[s]uch factual distinctions matter," *id.*, and there is "no one to whom [D]efendant could be

Page **6** of **16**

compared in order to resolve the question of selection," it "follows that [D]efendant has failed to make out" the first step in his selective prosecution claim. *Att'y Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 946 (D.C. Cir. 1982).

2. Discriminatory Purpose

Defendant posits that the Government's prosecution is "driven by an unconstitutional discriminatory purpose" because: (1) President Biden's "publicly stated objective is to use the criminal justice system to incapacitate" him, (2) the prosecutorial team itself is biased, and (3) the Indictment improperly prosecutes Defendant's "beliefs" or "viewpoint." Motion at 6–8 (citations omitted).

In support, Defendant submits two newspaper articles, one from the *Post* and the other from the *Times*. *See* Motion at 13–30 (Exhs. 1–2). Citing anonymous sources, the articles explain the cautious pace and "bottom-up" approach that the Justice Department undertook before investigating or prosecuting Defendant and those in his "orbit" for conduct related to the 2020 election and the events of January 6, 2021. But Defendant contends that those articles show that "after prosecutors who are now part of the prosecution team were rebuffed while shopping the inappropriate investigation around to the FBI and the Postal Service," President Biden explained to his advisors that Defendant "should be prosecuted" and "urged the Attorney General to 'take decisive action'" to ensure that Defendant "does not become the next President again." Motion at 7.

The articles Defendant submitted do not establish that his prosecution was improperly motivated. In the first place, Defendant misreads the articles. The *Post* article does not indicate that the Justice Department shopped around its investigation to the FBI and Postal Service, but rather that in "probing evidence of a broad, Trump-led conspiracy to overturn the election," prosecutors took care to pursue concrete evidence of criminal activity through multiple avenues

before deciding whether to bring charges.  *See, e.g.*, Motion, Exh. 1 at 9–10 ("Windom would turn to consider the fake electors and discreetly inquire if another agency might help: the U.S. Postal Service . . . .  [T]here was evidence of a potential crime—mail fraud: Documents that appeared fraudulent had been submitted through the mail to the National Archives and signed by people the FBI could trace.").  That process reflects conscientious investigation, not political animus.  Overall, the article suggests that the Justice Department was especially cautious about investigating a political figure like Defendant.  *See, e.g., id.* at 5, 7.

Similarly, the articles do not suggest that President Biden "urged" Attorney General Garland to "take decisive action" against Defendant.  At most, the *Times* article reports that President Biden privately commented on one occasion that he believed President Trump should be prosecuted, and on one separate occasion that he wished the Attorney General would act "more like a prosecutor who is willing to take decisive action over the events of Jan. 6."  Motion, Exh. 2 at 2.  But there is no indication that President Biden ever expressed any such comments to the Attorney General or the Justice Department, much less that such comments actually resulted in politically motivated action.[1]  Indeed, the *Times* article repeatedly emphasizes that President Biden "never communicated his frustrations" to DOJ officials and publicly reiterated that he "has no role in investigative priorities or decisions."  *Id.*  It also notes that DOJ officials "felt only the pressure 'to do the right thing,' which meant that they 'follow the facts and the law wherever they may lead.'"  *Id.*

---

[1] Defendant claims that "[t]he Biden administration intentionally leaked these comments to the media in early 2022 so that President Biden could improperly provide instructions to and exert pressure on prosecutors and investigators without engaging in direct communications."  Reply at 5.  He provides no evidence for that claim.  The fact that someone shared those comments with the press does not show that the Biden Administration leaked them intentionally, nor that the sharer's intent was to politically pressure the Justice Department.

Defendant also relies on certain events in November 2022 that he claims manifest discriminatory intent. The first is a public comment made by President Biden on November 9, 2022, the day after the midterm elections. In response to a reporter's question about how to reassure global allies that "former President [Trump]" or "his political movement" will not "once again take power," President Biden is reported to have said: "Well, we just have to demonstrate that he will not take power by—if we—if he does run. I'm making sure he, under legitimate efforts of our Constitution, does not become the next President again."[2]

On its face, that statement suggests only that President Biden would vigorously campaign against Defendant should he choose to run for President again. But Defendant infers that it must have referred to this prosecution because on November 18, three days after Defendant "announced that he would run for a second term as President . . . , Biden's Justice Department appointed Jack Smith to oversee this case." Motion at 4. That inference is unfounded. As the Attorney General explained at the time, the Special Counsel's appointment was in response to "the former President's announcement that he is a candidate for President in the next election, and the sitting President's stated intention to be a candidate as well"—not any directive from President Biden.[3] In any event, the criminal investigation underlying this prosecution was already ongoing; all that the appointment changed was the structure of the investigative team— "allow[ing] prosecutors and agents to continue their work expeditiously, and to make decisions indisputably guided only by the facts and the law." *Id.*

---

[2] *Remarks by President Biden in Press Conference*, The White House (Nov. 9, 2022, 4:15 pm), https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/11/09/remarks-by-president-biden-in-press-conference-8/ [https://perma.cc/5KZ7-XGFZ].

[3] *Appointment of Special Counsel*, U.S. Dep't of Justice (Nov. 18, 2022), https://www.justice.gov/opa/pr/appointment-special-counsel-0 [https://perma.cc/ZH2S-3NK9].

Finding no evidence of discriminatory purpose in the sources Defendant cites, the court is left only with his unsupported assertions that this prosecution must be politically motivated because it coexists with his campaign for the Presidency. Motion at 2, 7; Reply at 1–2, 5, 7. Without more, that "is not evidence of discriminatory motive; it is speculation." *Navarro*, 627 F. Supp. 3d at 7; *see also Barnes*, 2019 WL 5538550, at *8 ("Mr. Hawkins fails to provide any evidence, beyond his own speculation, that he was prosecuted because of his speech. Therefore, Mr. Hawkins fails to establish the second prong of a selective prosecution claim."). Likewise, Defendant provides only speculation and his opinion that the Government indicted him "to suppress a viewpoint it does not wish to hear," Motion at 7 (quoting *United States v. Crowthers*, 456 F.2d 1074, 1079 (4th Cir. 1972)), rather than to dutifully enforce the criminal law, as the court is bound to presume, *Armstrong*, 517 U.S. at 463–64. In sum, there is no evidence that would lead the court to "infer that [prosecutorial] discretion has been abused," *McClesky v. Kemp*, 481 U.S. 279, 297 (1987), and the court will not dismiss this case on grounds of selective prosecution.

## IV.  VINDICTIVE PROSECUTION

### A. Establishing a Vindictive Prosecution Claim

Defendant contends that the charges should be dismissed for vindictive prosecution because they were only pursued after he publicly criticized the 2020 election and certain government officials. Motion at 8–9. A defendant may press this claim in either of two ways. *See Allgood*, 610 F. Supp. 3d at 246. He may submit "(i) evidence of the prosecutor's actual vindictiveness or (ii) evidence sufficient to establish a 'realistic likelihood of vindictiveness,' thereby raising a presumption the Government must rebut with objective evidence justifying its action." *United States v. Safavian*, 649 F. 3d 688, 692 (D.C. Cir. 2011) (per curiam) (quoting

*United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)).  Defendant's Motion satisfies neither option.

An actual vindictiveness claim must provide "objective evidence that the prosecutor's actions were designed to punish a defendant for asserting his legal rights."  *United States v. Meadows*, 867 F.3d 1305, 1311 (D.C. Cir. 2017) (quoting *United States v. Gary*, 291 F.3d 30, 34 (D.C. Cir. 2002)).  That showing is "normally exceedingly difficult to make."  *Id.* (citation omitted); *see also Meyer*, 810 F.2d at 1245.  And, as a threshold matter, the court "must find that a reasonable likelihood of vindictiveness exists."  *Gary*, 291 F.3d at 34.  To establish that "reasonable likelihood" in the pretrial context, a "defendant must present more than 'proof of a prosecutorial decision to increase charges after a defendant has exercised a legal right.'"  *United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 174–75 (D.D.C. 2020) (quoting *Meyer*, 810 F.2d at 1246).  Rather, a defendant must present evidence that the indictment is "more likely than not attributable to the vindictiveness on the part of the Government."  *Meadows*, 867 F.3d at 1311 (quotation omitted).

**B.  <u>The Government Did Not Vindictively Prosecute Defendant</u>**

Defendant claims this case "is a straightforward retaliatory response to" his "decisions as Commander In Chief in 2020, his exercising his constitutional rights to free speech and to petition for the redress of grievances, and his decision to run for political office."  Motion at 8.  Specifically, he contends that prosecutors "added additional charges in this District" after he "criticized the process and results of the 2020 election," along with "Biden and his family before, during, and after that election," and "the Special Counsel's Office after charges were filed against him in Florida," where he "exercised his constitutional right to plead not guilty."  *Id.* at 8–9.

Defendant has presented no evidence demonstrating a likelihood of vindictiveness. First, neither the articles he cites nor his Truth Social posts show that the prosecutorial team "upp[ed] the ante" by filing "increased charges in order to retaliate against" Defendant in response to his public criticism of the 2020 election, President Biden and his relatives, and the Special Counsel. *Slatten*, 865 F.3d at 798–99. Defendant claims that the Government's "motive is manifest" because of that criticism, but then fails to proffer a single evidentiary link between that criticism and his indictment. Motion at 8. "Absent some evidentiary predicate, direct or circumstantial . . . merely chanting the mantra of prosecutorial vindictiveness" does not carry Defendant's burden. *United States v. Ortiz-Santiago*, 211 F.3d 146, 150 (1st Cir. 2000).

Second, Defendant fails to show that the Government filed "additional" charges in this District because of his "not guilty" plea in Florida. He observes that the Special Counsel's Office filed the Southern District of Florida charges on June 8, 2023, to which he pleaded not guilty on June 13, 2023. Motion at 4. And he notes that following that plea "and his public criticisms" of the 2020 election and President Biden—expressed via his Truth Social account and through other mediums—"the Special Counsel's Office filed the indictment in this case on August 1, 2023." *Id.* at 4, 8.

Defendant's decision to enter a not guilty plea in Florida does not establish a realistic likelihood that this prosecution was vindictive. "[P]rosecutorial actions following 'routine invocations of procedural rights' do not normally give rise to presumptions of vindictiveness." *Oseguera Gonzalez*, 507 F. Supp. 3d at 177 (quoting *Meadows*, 867 F.3d at 1313). Thus, as the Supreme Court has held, "the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified." *Goodwin*, 457 U.S. at 382–83. Defendant's

constitutionally protected choice to proceed to trial in another matter did not prohibit the Special Counsel from pursuing criminal charges here, nor did it raise the red flag of vindictiveness. "Something more is necessary" to demonstrate a "realistic likelihood" that the prosecution here was driven by a desire to punish Defendant for pleading not guilty in a different case. *Oseguera Gonzalez*, 507 F. Supp. 3d at 177; *see also Meadows*, 867 F.3d at 1311.  Defendant has not made that showing.

Moreover, the charges in this case appear unrelated to those brought against Defendant in the Southern District of Florida, where Defendant was indicted for the unauthorized retention of classified documents and related offenses after he left office.  *See* Indictment, *United States v. Trump*, No. 23-cr-80101-AMC (S.D. Fla. June 8, 2023), ECF No. 3; *see also* Superseding Indictment, *id.* (S.D. Fla. July 27, 2023), ECF No. 85.  Those offenses are extraneous to Defendant's indicted conduct here—alleged efforts, towards the end of his Administration, to obstruct the electoral certification process.  The independent basis for and distinct prosecution of the charges in this case further weakens any inference that the Government brought these charges in retaliation for Defendant's "routine exercise of many pre-trial rights." *Slatten*, 865 F.3d at 799 (citing *Goodwin*, 457 U.S. at 381).  There is thus no "realistic likelihood" that the charges here represent the Government "upping the ante" after Defendant entered a plea of not guilty in Florida. *Blackledge v. Perry*, 417 U.S. 21, 27–28 (1974).

Third, and finally, Defendant claims that the sequence and timing of the events themselves sufficiently raise a presumption of vindictiveness.  Motion at 8–9.  Precedent squarely forecloses that line of reasoning.  The D.C. Circuit has explained that "a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption [of vindictiveness] in the pretrial context," *Meyer*, 810 F.2d at 1246, and that

the Supreme Court's "teaching is that this sequence of events, taken by itself, does not present a 'realistic likelihood of vindictiveness,'" *id.* (citing *Goodwin*, 457 U.S. at 381–84). There are sound reasons for that precedent. If vindictiveness could be established by new charges following a not guilty plea or a defendant's public criticism of the prosecution, then defendants could effectively immunize themselves from superseding indictments by taking such action. That cannot be the law.

Indeed, this case illustrates the hazards of relying solely on the timing of charges. Here, as the Government notes, "the investigation by career prosecutors was underway well before the defendant was charged or pleaded not guilty in the Southern District of Florida or criticized the Special Counsel's Office." Opp'n to Def.'s Mot. to Dismiss for Selective and Vindictive Prosecution, ECF No. 141, at 12. Defendant knew that because he "participated in pre-indictment litigation as early as June 2022." *Id.* (citing Gov't Resp. to Court Order, ECF No. 23, at 6). And Defendant's own proffered evidence—the *Post* and *Times* articles he attaches to his motion, which likewise predate the Indictment in this case—described the investigation into Defendant, which originated long before his not guilty plea in Florida or his public criticism of the current Administration. *See generally* Motion, Exhs. 1 & 2. Thus, contrary to the inference Defendant advances, the evidence plainly shows that the Government did not conjure up the four counts against Defendant in this case in the weeks after his indictment in Florida. Instead, the timing of this case's prosecution "is evidence only of restraint and careful pursuit of potential investigative leads, not vindictive prosecution," especially given that "probable cause [was] found by a grand jury for indictment." *Oseguera Gonzalez*, 507 F. Supp. 3d at 177.

The "critical question in this case, as in all others, is whether the defendant[] . . . [has] shown that all of the circumstances, when taken together, support a realistic likelihood of

vindictiveness and therefore give rise to a presumption." *Meyer*, 810 F.2d at 1246. After reviewing Defendant's evidence and arguments, the court cannot conclude that he has carried his burden to establish either actual vindictiveness or the presumption of it, and so finds no basis for dismissing this case on those grounds.

## V.     HEARING

Finally, Defendant asserts that he is entitled to a hearing on his Motion for the "opportunity to demonstrate that [the Government's] proffered evidence is pretextual." Motion at 9. Specifically, he argues that President "Biden's statements from the White House and leaked accounts of flaws in the underlying investigation require additional fact finding before these arguments can be resolved." *Id.*; *see also* Reply at 10–11. That argument is unavailing.

To justify further factual development, Defendant "must put forth 'some evidence tending to show the existence of the essential elements' of a selective prosecution claim." *Khanu*, 664 F. Supp. 2d at 31 (quoting *Armstrong*, 517 U.S. at 468). But the "justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468. And courts have applied the same standard to vindictive prosecution claims. *Osegueara Gonzalez*, 507 F. Supp. 3d at 176 (noting that courts have applied the "standard articulated in *Armstrong* . . . [in which] a defendant must provide some objective evidence tending to establish the vindictive prosecution defense in order to obtain discovery"); *see, e.g.*, *United States v. Bucci*, 582 F.3d 108, 113 (1st Cir. 2009); *United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001); *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000).

As discussed above, Defendant has proffered no meaningful evidence to satisfy this "correspondingly rigorous standard" to justify the additional factfinding he seeks. *See supra* Sections III.B., IV.B. Nor has he given any explanation of how a hearing would produce

material evidence to support his claims. Because Defendant has failed to carry his burdens, the court must deny his request for an evidentiary hearing. *See, e.g.*, *Khanu*, 664 F. Supp. 2d at 35.

## VI. CONCLUSION

For these reasons, the court will DENY Defendant's Motion to Dismiss for Selective and Vindictive Prosecution, ECF No. 116. A corresponding Order will accompany this Memorandum Opinion.

Date: August 3, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge
