```
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2
       * * * * * * * * * * * * * * *    )
 3     UNITED STATES OF AMERICA,        )    Criminal Action
                                        )     No. 23-00257
 4                    Plaintiff,        )
                                        )
 5        vs.                           )
                                        )
 6     DONALD J. TRUMP,                 )    Washington, D.C.
                                        )    September 5, 2024
 7                    Defendant.        )    10:01 a.m.
                                        )
 8     * * * * * * * * * * * * * * *    )

 9

10          TRANSCRIPT OF ARRAIGNMENT AND STATUS CONFERENCE
               BEFORE THE HONORABLE TANYA S. CHUTKAN
11                  UNITED STATES DISTRICT JUDGE

12

13     APPEARANCES:

14     FOR THE GOVERNMENT:      THOMAS WINDOM, ESQ.
                                MOLLY G. GASTON, ESQ.
15                              UNITED STATES ATTORNEY'S OFFICE
                                 FOR THE DISTRICT OF COLUMBIA
16                              601 D Street, Northwest
                                Washington, D.C. 20530
17

18     FOR THE DEFENDANT:       JOHN F. LAURO, ESQ.
                                GREGORY M. SINGER, ESQ.
19                              LAURO & SINGER
                                400 North Tampa Street
20                              15th Floor
                                Tampa, Florida 33602
21
                                TODD BLANCHE, ESQ.
22                              EMIL BOVE, ESQ.
                                BLANCHE LAW
23                              99 Wall Street
                                Suite 4460
24                              New York, New York 10005

25
```

REPORTED BY:              LISA EDWARDS, RDR, CRR
                          Official Court Reporter
                          United States District Court for the
                           District of Columbia
                          333 Constitution Avenue, Northwest
                          Washington, D.C. 20001

```
 1                THE COURTROOM DEPUTY:  Good morning, your Honor.

 2                We are on the record in Criminal Case 23-257, the

 3      United States of America versus Donald J. Trump.

 4                Starting with Government counsel, please approach

 5      the podium and state your appearance for the record.

 6                MR. WINDOM:  Good morning, your Honor.  Thomas

 7      Windom and Molly Gaston for the United States.  With us at

 8      counsel table is FBI Special Agent Jamie Garman.

 9                THE COURT:  Good morning.

10                MR. LAURO:  Good morning, your Honor.  Good to see

11      you again.

12                John Lauro on behalf of President Trump.  With me

13      is Todd Blanche, co-lead counsel, Greg Singer from my firm,

14      Emil Bove.  And also Will Sirmon, who's a paralegal with

15      Mr. Blanche's law firm.

16                THE COURT:  Good morning.  It's been almost a

17      year.  You look rested, Mr. Lauro.

18                MR. LAURO:  I am, your Honor.  But life was almost

19      meaningless without seeing you for a year.  So it's good to

20      see you again.

21                THE COURT:  Well, enjoy it while it lasts.

22                All right.  We are here -- before we begin, I'd

23      like to remind everyone that all electronic devices need to

24      be stowed and turned off and they're not to be taken out

25      during this hearing.
```

1          So we're here regarding the next steps in this

2     case.  All proceedings have been stayed, as they had to be

3     once the Court of Appeals took the appeal in this case on

4     the issue of immunity.

5          And so proceedings have been stayed since December

6     2023, when Mr. Trump pursued an interlocutory appeal of my

7     order denying his claim of presidential immunity from

8     criminal prosecution.

9          So the Supreme Court decided that appeal on July

10    the 1st of this year.  It held that conduct within the

11    president's exclusive constitutional authority is immune

12    from prosecution, that conduct within the outer perimeter of

13    the president's responsibilities is presumptively immune and

14    that the president's unofficial conduct receives no

15    immunity.

16         The Court therefore vacated the decisions below

17    and remanded with instructions to apply that standard to the

18    allegations here.  Jurisdiction returned to me on August the

19    2nd with the issuance of the mandate.

20         So the purpose of this hearing is twofold:  first,

21    to confirm Mr. Trump's arraignment for the superseding

22    indictment that was filed last week; and, second, to discuss

23    the schedule in this case going forward.

24         I don't intend to finalize a schedule at the

25    hearing, but I intend -- I want to hear from the parties and

1    I intend to issue a schedule as soon as possible afterwards.

2    I'm hoping today.

3              So let's start with the arraignment on the

4    superseding indictment, which a federal grand jury returned

5    on August 27th and the Court docketed as ECF No. 226.  The

6    superseding indictment charges Mr. Trump with the same four

7    criminal offenses that were originally charged.

8              And on Tuesday, pursuant to Federal Rule of

9    Criminal Procedure 10(b)(2), Mr. Trump and his counsel filed

10    a waiver of appearance for arraignment, affirming that he

11    received a copy of the superseding indictment and that the

12    plea is not guilty for all four counts.  And that is ECF

13    No. 230.

14              In a minute order I accepted that waiver and

15    indicated that I'd reaffirm it during this hearing, which is

16    what I'm doing now.

17              So at this point, I'd like to briefly confirm the

18    arraignment and Mr. Trump's waiver in open court, and I'll

19    ask defense counsel to affirm that everything is in order.

20              The four charges in the superseding indictment

21    are, one, conspiracy to defraud the United States in

22    violation of 18 USC Section 371; Count 2, conspiracy to

23    obstruct an official proceeding in violation of 18 USC

24    Section 1512(k) -- I'm not going to do a formal reading --

25    three, obstruction of and attempt to obstruct an official

```
1    proceeding in violation of 18 USC Section 1512(c)(2) and 2;

2    and conspiracy against rights in violation of 18 USC Section

3    241.

4               Mr. Lauro, I have Mr. Trump's signed waiver.  But

5    I'd like to confirm the details with you.

6               The waiver states that Mr. Trump received a copy

7    of the superseding indictment.  Is that correct?

8               MR. LAURO:  Yes, he has, your Honor.

9               THE COURT:  So Mr. Trump has reviewed the

10   superseding indictment and understands the substance of the

11   charges against him?

12              MR. LAURO:  Yes.  Correct.

13              THE COURT:  And Mr. Trump is entering a plea of

14   not guilty with respect to all four counts; is that correct?

15              MR. LAURO:  That is right.

16              THE COURT:  I assume the defense is also waiving a

17   full formal reading of the superseding indictment in this

18   hearing and that you're reserving all of his rights.  Is

19   that correct?

20              MR. LAURO:  We have.

21              THE COURT:  Okay.  Thank you.

22              I have accepted Mr. Trump's waiver, and so now

23   I'll consider his arraignment for the superseding indictment

24   to be complete.

25              All right.  So let's go over scheduling.  So
```

1    before we turn -- before I turn to the parties' proposals in

2    the joint status report for moving this case forward, I want

3    to review briefly where things stood before the immunity

4    appeal.

5              So let me start with the motions that were

6    pending.  First, there was Defendant's motion to dismiss

7    based on statutory grounds, which is Docket No. 114.

8              On August 3rd, I denied that motion without

9    prejudice, recognizing that the original indictment on which

10   it was based needed to be narrowed based on the Supreme

11   Court's decision.

12             The second is the Defendant's motion for selective

13   and vindictive prosecution, which was Docket No. 116.  I

14   denied that motion also on August the 3rd.

15             The third is the Defendant's motions to compel

16   discovery and for an order regarding the scope of the

17   prosecution team, which are Docket Nos. 167 and 170,

18   respectively.

19             The Defendant's reply briefs for those discovery

20   related motions had not yet been filed at the time of the

21   stay -- at the time of the stay which was mandatory based on

22   the appeal.  So the deadlines for those, I haven't reset

23   those yet.

24             Fourth, the Government's motion *in limine*, which

25   is Docket No. 191.  The opposition and reply briefs for that

1    motion also have not yet been filed.  And I stayed further

2    briefing on this motion for the time being.

3         And in addition, there are certain motions under

4    the Classified Information Procedures Act which were pending

5    during the appeal.  I resolved one of them in the past two

6    weeks, but those -- the rest are still pending.

7         Now, with regard to pending deadlines, at the time

8    of the appeal, the pretrial schedule also included a number

9    of deadlines for additional filings.  I'm going to briefly

10   list each of those along with about how much time remained

11   before the deadlines when the appeal was taken.

12        So expert witnesses -- this is all at the time the

13   appeal was taken and the case was stayed.  Expert witness

14   disclosures were due in five days.  Rule 17 subpoenas were

15   due in one week, with opposition briefs due two weeks later

16   and reply briefs due one week after that.

17        The exchange of exhibit lists was due in one week

18   and four days, with objections due ten days later and

19   replies due a week after that.

20        Motions *in limine* were due in three weeks, with

21   opposition briefs due 12 days later and replies due 12 days

22   after that.

23        Proposed voir dire questions and jury instructions

24   were due in about six weeks, as was the Defendant's notice

25   of whether he intended to rely on the advice-of-counsel

1    defense.

2              And the pretrial conference was set for about ten

3    weeks from the date of the appeal, with a witness list

4    exchange set for a week later and with trial set to begin a

5    week after that.

6              Obviously, all those deadlines have long since

7    passed.

8              I stayed them, actually, all during the pendency

9    of the appeal because, as you know, governing precedent

10   requires that during the pendency of an immunity challenge

11   the appellant not be subject to the burdens of litigation.

12   So I haven't reset those deadlines.

13             So let's turn to the parties' proposals on how to

14   move forward.

15             Now, you all submitted a status report on August

16   30th, with each side's views on how to structure the

17   pretrial schedule.  And the parties' proposals differ in

18   many respects.  But there's also some common ground.

19             Both sides identify largely the same issues that

20   need to be resolved in the coming weeks and months,

21   including the immunity remand, other potential grounds for

22   dismissal and certain discovery disputes.  And both sides

23   contemplate resolving at least some of those issues

24   concurrently.

25             I'm going to get into those details in a moment,

1    but I wanted to begin by at least recognizing the areas in

2    which we have agreement.

3            In addition, the parties also agree that the

4    Speedy Trial Act should continue to be tolled due to pending

5    motions.  And so -- I also agree with that, and for added

6    clarity, I will enter an order confirming that understanding

7    and expressly excluding the time from when the mandate

8    returned through the deadlines I set for filing other

9    motions.

10            So the Government proposes that we begin the

11    immunity determinations immediately by filing an opening

12    brief, explaining why the Supreme Court's new standard does

13    not apply to the allegations in the superseding indictment

14    or other evidence that the Government intends to offer at

15    trial.

16            Then the defense could file a response opposing

17    any of those positions and raising any additional immunity

18    claims, and the Government could file a reply.

19            The Government generally supports briefing other

20    potential motions concurrently with immunity but suggests

21    deferring consideration of any motion, asserting that the

22    grand jury that returned the superseding indictment was

23    exposed to immunized conduct.  Is that an accurate statement

24    of your position, Mr. Windom?

25            MR. WINDOM:  Yes, ma'am.

```
 1              THE COURT:  All right.  The defense proposes

 2     resolving pretrial issues in a different order and on a

 3     different timeline.  Their proposed schedule starts at the

 4     end of September, when the Government would be required to

 5     make evidentiary disclosures related to immunity.  Then,

 6     from October 25th through December 2nd, the parties would

 7     brief a motion to dismiss regarding the special counsel's

 8     appointment and funding.

 9              During December and January, the defense would

10     file its motion to dismiss based on presidential immunity,

11     supplement its statutory motion to dismiss and brief any

12     remaining discovery issues.

13              So as I see it, there are two main questions.  The

14     first is how to go about resolving the remanded immunity

15     issue, and the second is how to -- how that approach fits in

16     with the rest of the pretrial schedule.

17              So let's first talk about the immunity issue.

18     Setting aside exactly when that process happens in the

19     pretrial schedule or whether it happens concurrently with

20     other briefing, I just want to nail down what that approach

21     would look like.  So I have some questions for you,

22     Mr. Windom.

23              MR. WINDOM:  Yes, ma'am.

24              THE COURT:  The Government proposes filing an

25     opening brief defending the superseding indictment before
```

1    it's even been challenged by a motion to dismiss.

2              So that's not in the ordinary course.  Normally

3    there's a challenge filed by the defense, an opposition by

4    the Government and a reply by the defense.

5              So why should we depart from the ordinary course

6    here?

7              MR. WINDOM:  Sure.  I guess a couple things.

8              First of all, though it is typical practice that

9    the defense would file a motion to dismiss, I don't think

10   that we are in a typical situation.

11             We're in a place where the Supreme Court has

12   created new law.  We are in a place where there's a new

13   procedural posture for this Court, and the parties and the

14   Court should be striving to find what is the most efficient

15   and practical way forward.

16             As the Court knows, with any indictment, an

17   indictment does not include all of the information that may

18   be subject to pretrial litigation.  So, too, here, the

19   superseding indictment does not include all of the

20   categories of information that we believe may be subject to

21   immunity litigation.

22             That is why we propose to go first.  I would like

23   to tell you a little bit about what we anticipate filing in

24   our brief, but I want to start with a guiding principle.

25             A guiding principle here is that we should

1     structure a schedule that leads to only one additional

2     interlocutory appeal.  The defense's proposal requires

3     several different separate interlocutory appeals.  But we

4     think all immunity determinations should be handled at the

5     same time, simultaneously.  We know that there is going to

6     be an interlocutory appeal.  We're just trying to limit it

7     to one.

8              So what would our brief and what would our

9     approach look like?

10             What we anticipate filing in an opening brief is a

11    comprehensive discussion and description of both pled and

12    unpled facts.  What this would do would be to set the stage

13    so that all parties and the Court know the issues that the

14    Court needs to consider in order to make its fact-bound

15    determinations that the Supreme Court has required.

16             THE COURT:  Your proposal mentions the

17    Government's briefing would include a proffer about unpled

18    categories of evidence.  You just mentioned that.

19             Can you be a little more specific -- or is that

20    what you're getting to? -- about what that would look like?

21    I mean, are you talking about not just -- not the evidence

22    itself, obviously, but the form it would take, proffered

23    by -- in written form?  What are we talking about?

24             MR. WINDOM:  Sure.

25             So our initial view on it is this.  We didn't want

1    to get ahead of the Court to lay anything specifically out.

2         But here's what we are -- what we were thinking

3    and what we wanted to discuss with the Court:  We were

4    thinking a comprehensive brief where we would set forth the

5    facts.  What we would -- that part of the brief would

6    include things that are both in and outside the indictment.

7    We anticipate that the brief would have a substantial number

8    of exhibits.  Those exhibits would come in the form of

9    either grand jury transcripts, interview transcripts, 302s,

10   documentary exhibits, things of that nature, things that

11   would allow the Court to consider both the circumstances and

12   the content, form and context, all in the words of the

13   Supreme Court, that the Court needs to have in order to make

14   its determinations.

15        We also in that brief, in addition to the facts,

16   we would set forth for the Court why we believe that the

17   conduct that is in the brief is private in nature and is not

18   subject to immunity; and then with respect to the

19   allegations in the superseding indictment involving the vice

20   president, that the Supreme Court specifically talked about

21   with respect to a presumption of immunity, why we believe

22   that that presumption of immunity is rebutted.

23        We would -- the benefit of us going first, which

24   is what we are asking for, is that we would have everything

25   in one place.  The defense would know what the landscape

1    looks like, as would the Court.

2            And then we think that that would create a cleaner

3    docket both for your determinations and also for any

4    appellate court to review your determinations.

5            THE COURT:  All right.  So at this point, you

6    wouldn't anticipate proffering any actual evidence.  It

7    would be written submissions.  And then, should I feel that

8    I need further evidence, we would discuss that.  Is that

9    what you're talking about?

10            MR. WINDOM:  That's right, your Honor.

11            What we would -- understanding that we're in an

12    atypical situation and the Court has the discretion to form

13    whatever briefing schedule and whatever sequence it thinks

14    is most efficient and practical, what we believe is most

15    appropriate is to put forward papers and for -- just as the

16    Court would with anything else, you have the papers, review

17    the papers, decide whether the Court needs additional

18    information in order to make those determinations.  And at

19    that point, down the road, at the conclusion of the

20    briefing, we can have that discussion or the Court can

21    simply order, you want to see witnesses.  You want to have a

22    hearing.  You want to have argument.  Whatever the Court

23    needs in order to comply with what the Supreme Court has

24    required.

25            THE COURT:  In your joint status report, you

 1     indicate that the Government is prepared to file its opening

 2     immunity brief promptly at any time.

 3               Just to be clear, what are we talking about here?

 4     A few days?  Next week?

 5               MR. WINDOM:  Sure.

 6               What we have said is that we leave the specific

 7     date to the Court's discretion.  I wanted to give you a

 8     sense as to the process, though, that would be required for

 9     us to get from Point A to Point B.

10               We do actually have to write this thing.  We have

11     begun --

12               THE COURT:  You know, I never know, Mr. Windom.

13     You might have it there in your binder already.

14               MR. WINDOM:  I would be surprised by that.

15               We do have to write it.  That will take a little

16     bit of time.  But we have begun.  It is underway.  We have

17     to package the exhibits.

18               What we anticipate is that that process would take

19     two to three weeks, and we would suggest probably closer to

20     three.

21               THE COURT:  Well, I mean, if I would allow you to

22     request a date, what are we talking about here?  Three weeks

23     from today.

24               THE COURTROOM DEPUTY:  September 26th.

25               THE COURT:  The end of September?  Is that what

 1     we're talking about?

 2              MR. WINDOM:  Three weeks from today would be the

 3     26th.  Just to be clear, we want to leave the date to the

 4     Court's discretion.  In terms of what we would have to do to

 5     get there, that's about right.

 6              THE COURT:  So somewhere in the end of September

 7     is what we're talking about?

 8              MR. WINDOM:  Yes, ma'am.

 9              THE COURT:  Thank you.

10              Continue.

11              MR. WINDOM:  Just briefly on that, your Honor, in

12     terms of the timing of it, the defense has suggested it may

13     take a substantial amount of additional time for them to put

14     forward their information.  That's another reason for us to

15     go first, because we can do so promptly.

16              And any other questions the Court may have on

17     either immunity or the remainder of the motions, I'm happy

18     to answer them.

19              THE COURT:  Well, I do have some questions about

20     the other motions.  But I'll get to those.  I just want to

21     talk about the immunity motion right now.  Thank you.

22              MR. WINDOM:  Thank you.

23              THE COURT:  Mr. Lauro.  Your written submission

24     notes that the Government's proposal of filing an open brief

25     before a renewed motion to dismiss would be procedurally

1    irregular.  And that's true.  I just asked Mr. Windom about

2    that.

3            But beyond that, I mean, beyond the fact that -- I

4    mean, the federal rules and the local rules for filing

5    motions are obviously there for us to follow, but we

6    routinely depart from those rules, and I have in this case

7    in terms of briefing schedules frequently.

8            So beyond the fact that it's procedurally

9    irregular, is that in and of itself the problem?  Or is

10   there some other prejudice that you can articulate here?

11           MR. LAURO:  It's enormously prejudicial to

12   President Trump.  I can't imagine a more unfair protocol for

13   proceeding on these weighty issues that the Supreme Court

14   has suggested we should deal with deliberatively and

15   carefully.  The special counsel proposes a device which

16   turns the criminal rules on its head.

17           There are no special rules for the special

18   counsel.  And in particular what it denies us is an

19   opportunity to address some of the evidentiary issues that

20   have to be looked at initially in terms of discovery, which

21   we have outlined for the Court.

22           There's discovery issues that are outstanding that

23   we should have the ability to discuss with special counsel.

24   We have --

25           THE COURT:  Why can't you do that while the

1    briefing schedule is ongoing?  If I give the special counsel

2    the time they're asking, the three weeks they're asking, why

3    can't you discuss whatever discovery that you believe you

4    haven't been given that relates to immunity -- and I'm not

5    sure there is any.  And I'll ask Mr. Windom about it.

6              MR. LAURO:  Because --

7              THE COURT:  Wait.  Why can't you have that

8    discussion during the briefing schedule?  I mean, we can all

9    walk and chew gum at the same time.

10              MR. LAURO:  Well, because in order for us to

11    address what they submit, we have to have all the discovery.

12    In fairness, we need everything that we're entitled to under

13    Rule 16 and *Brady* and otherwise before we address these

14    issues.

15              The other thing that's the major problem is that

16    the Supreme Court has already decided that the information

17    between President Trump and Vice President Pence is an

18    official act.

19              THE COURT:  No.  I would disagree with you,

20    Mr. Lauro.  They have not decided that.  They have sent it

21    back to me --

22              MR. LAURO:  No.

23              THE COURT:  -- to figure that one out.

24              MR. LAURO:  Respectfully, Judge, they did.  They

25    sent it back to you to decide if the presumption has been

1   overcome and whether or not immunity applies.  But the Court

2   decided as an initial matter that it is --

3              THE COURT:  Right.  But it's not totally immune.

4              MR. LAURO:  That's what I've said, that that's an

5   official act.

6              So as a matter of -- as an initial matter, the

7   issue before the Court is whether or not the Government can

8   overcome the presumption, whether or not they can show that

9   there's no way, no possible way, that the lack of immunity

10  would result in an intrusion on an important presidential

11  function.

12             They can't show that.  And if, in fact, the

13  communications with Vice President Pence, which are all over

14  this indictment, if, in fact, those are immune, then that

15  entire indictment is improper and illegitimate.  And that's

16  a gateway issue that your Honor needs to decide right away.

17             That can be decided without an evidentiary

18  hearing.  That could be decided as a matter of law guided by

19  counsel, which is exactly what the Supreme Court suggested.

20             THE COURT:  I actually don't think so, Mr. Lauro.

21  The Supreme Court had the indictment before it.  They

22  decided -- they ruled on these three categories.  And

23  certainly conversations with an existing vice president may

24  be subject to the presumptive immunity that you talk about.

25             But one of the things I have to decide is whether,

 1    based on facts presented to me by the Government, those

 2    conversations, those contacts, are somehow outside of his

 3    official duties.

 4                MR. LAURO:  I --

 5                THE COURT:  And I don't think I can decide that as

 6    a matter of law.  I think I would be -- I would be risking

 7    reversal if I tried to decide that as a matter of law.

 8                MR. LAURO:  I would ask your Honor to

 9    reconsider --

10                THE COURT:  I'm risking reversal no matter what I

11    do.

12                MR. LAURO:  I would ask your Honor to reconsider

13    that opinion because the opinion made clear that those

14    discussions are an official act.  They're within the outer

15    perimeter of presidential functions.  They are presumed to

16    be immune.  And the Government has to overcome that

17    presumption.

18                THE COURT:  How do they overcome it without

19    evidentiary -- an evidentiary proffer?

20                MR. LAURO:  That is --

21                THE COURT:  They can't overcome it by legal

22    arguments.  I don't think they can.

23                MR. LAURO:  As an initial matter, that's the only

24    category of information that the Supreme Court decided was

25    presumptively immune.  And that issue can be decided as a

 1    matter of law for your Honor.  We can make submissions.  We

 2    can make necessary proffers.  But we don't need a full

 3    evidentiary hearing for that.

 4         The problem with that issue is, if in fact the

 5    communications are immune, then the entire indictment fails,

 6    because the entire indictment was based on immune

 7    information.  And the Supreme Court made very clear that if

 8    any immune information is being used in the charging

 9    instrument, then the whole indictment goes by the wayside.

10         So we have a possibility --

11         THE COURT:  I'm not sure that's my reading of the

12    case.  But, you know, it's subject to a lot of different

13    readings.

14         MR. LAURO:  Yeah.  But the reality is, your Honor,

15    is we may be dealing with an illegitimate indictment from

16    the get-go.  And your Honor has to make an initial

17    determination as to whether or not the legitimacy of the

18    indictment is intact before we ever get to evidentiary

19    briefing or the merits of any evidentiary hearing.

20         And that issue can be decided -- the Supreme Court

21    suggested not an evidentiary hearing with respect to that

22    issue, but guidance from counsel.  And we can provide that

23    to the Court without a full evidentiary hearing.  If you

24    look at the decision, the Court suggested that your Honor

25    consult with counsel.  We can provide any kind of proffer.

 1    We can provide any kind of legal argument.

 2            But that quintessentially is a legal, historic

 3    issue.

 4            THE COURT:  Why wouldn't that be in your

 5    opposition to the Government's opening brief?  What's wrong

 6    with that?

 7            MR. LAURO:  Because we get the opportunity to move

 8    to dismiss first under Rule 12.  Why should the Government

 9    get a special rule in this case that has never been

10    adopted --

11            THE COURT:  I'm not giving them a special rule;

12    I'm simply considering a different procedure for one motion.

13            In other words, you know, one way to look at the

14    Supreme Court's choice to vacate the lower court decisions

15    in a way is that your original motion to dismiss remains

16    unresolved.  That's one way to view it.

17            In that light, the Government's proposal is not so

18    different from the Court just taking supplemental briefing

19    on the motion.

20            MR. LAURO:  Well, what the Government proposes is

21    that your Honor make these decisions without a full

22    evidentiary hearing.

23            They've had the ability to subpoena witnesses.

24    They've had the ability to take people into the grand jury.

25    They've had the ability to interview witnesses.

1          We've not had a full and fair opportunity to

2     cross-examine.  So they're asking for an asymmetrical

3     protocol, where they submit information which we don't have

4     the ability to cross-examine.

5          THE COURT:  Wait.  But not all motions to dismiss

6     require an evidentiary hearing.

7          MR. LAURO:  No.  But this one does.

8          THE COURT:  Courts -- hold on.

9          Courts rule on these motions all the time based on

10    evidentiary proffers, based on testimony, exhibits,

11    transcripts, affidavits.  All the time.

12         I'm the one that's ultimately going to decide

13    whether I need to hear live evidence.  And I can do that

14    without having an opening brief from the defense, once

15    briefing is complete.

16         I mean, do you have any -- I mean, are you arguing

17    that I don't have the authority to have a briefing schedule

18    like this or just that I shouldn't do it?

19         MR. LAURO:  What I'm suggesting is the Court

20    should scrupulously follow the Supreme Court decision --

21         THE COURT:  I don't think they spoke to how I

22    structure my hearing on a motion to dismiss.

23         MR. LAURO:  What they did -- if I -- what they did

24    say is that we need a full and robust record so your Honor

25    can determine the context and also the content of these

1    issues.

2              We can't do that unless there's a full evidentiary

3    hearing.  It is incredibly unfair to one side where the

4    Government is able to proffer evidence --

5              THE COURT:  So you want witnesses and testimony

6    and cross --

7              MR. LAURO:  Ultimately, we --

8              THE COURT REPORTER:  I'm sorry.  I'm getting too

9    much overlap here, counsel.

10             MR. LAURO:  Sorry.

11             Ultimately, your Honor, we do want that.  But

12   first, we have to clarify these issues.  We want an orderly

13   process that does honor to the Supreme Court's ruling.  We

14   want a process that first deals with all the legal issues,

15   get those legal issues resolved.  Then we want a process

16   where we're entitled to full and fair discovery.  And then

17   we want a process where we go first and advance our

18   arguments now in light of the Supreme Court decision on how

19   to structure this motion to dismiss.

20             This is our motion.

21             THE COURT:  So what we're talking about is, you

22   know, motions briefing going into a year from today.  A year

23   from now.  Next fall.  Is that right?

24             MR. LAURO:  I don't think so at all.

25             THE COURT:  That's what your schedule proposes.

1          MR. LAURO:  It did not, respectfully, your Honor.

2     It did not suggest going into next fall, unless we need to.

3     We feel your Honor's going to dismiss this indictment after

4     you hear from us on our motion papers.

5          But the reality is that we're entitled to a

6     process that makes sense.  We certainly had time available

7     into the fall, but the issue here is an orderly process

8     whereby the Court decides these issues in accordance with

9     what the Supreme Court said, which is to deal with these

10    issues carefully, prudently and deliberatively.  And the

11    only way to do that is in an organized fashion, where you

12    deal with the legal issues first and then you get to the

13    factual issues.

14          THE COURT:  Well, but immunity is a legal issue.

15    I mean, as I read it, the Supreme Court's decision expects

16    us to resolve the immunity issue forthwith.

17          Prior Supreme Court precedent demands this.

18    *Hunter versus Bryant* states that.  Immunity needs to be

19    dealt with as early as possible, which is why, when the

20    Court of Appeals accepted the appeal on the immunity

21    challenge, all proceedings in this matter were stayed by

22    rule of the Court.

23          So your schedule -- under your schedule, we

24    wouldn't even begin briefing immunity until December.  Why?

25          MR. LAURO:  Because, first of all, we would have

1    all of the issues relating to documentation concerning

2    discovery in advance.  We would be filing our briefing as a

3    result of the information that we received from the

4    Government, because that's going to have to structure how we

5    file our additional information.

6            But the issues here, your Honor, at least

7    initially, can be decided on a legal basis.  Obviously,

8    there's some room for your Honor's determination as to the

9    timing.  But the structure, the sequencing, makes perfect

10   sense in terms of the way we proposed it.

11           These important issues, which the Supreme Court

12   has said are of great magnitude to the country, should not

13   be decided by an asymmetrical proffer from the Government

14   without President Trump's ability under due process, the

15   Fifth Amendment and the Sixth Amendment, to meet these

16   witnesses and cross-examine them.

17           That would be an inherently unfair and inequitable

18   process.

19           THE COURT:  It's not unfair in the sense that you

20   don't get an opportunity to address the issues.  You're just

21   doing it in a different sequence.  There's nothing

22   inherently violative of due process by the Government filing

23   an open brief and your getting an advance look at their

24   arguments, have a chance to respond and address them.  The

25   Government replies.  And if you want to file a sur-reply,

1    you can ask for leave to file a sur-reply.  But there's

2    nothing inherently unfair in that.  It's just a matter of

3    who goes first.

4        MR. LAURO:  Well, it's incredibly unfair in the

5    sense that they're able to put in the public record at this

6    very sensitive time in our nation's history --

7        THE COURT:  Ah.

8        MR. LAURO:  -- which we can't ignore, that they're

9    able to, you know, basically load up on what they think this

10   case is about without our ability to meet those factual

11   assertions with the right to cross-examine.

12       The other issue that's very problematic here, your

13   Honor, which we've not addressed, most of this information

14   is under seal.  So if we're going to go that route, then

15   we're going to have to have at least some determination

16   among counsel as to what is unsealed and what is not

17   unsealed.  If we're going to go that proffer route, we're

18   certainly going to put in the record a number of documents

19   which we believe are incredibly exculpatory, which are now

20   currently under seal.

21       And we would have a right to do that during this

22   sensitive time.

23       But this process --

24       THE COURT:  Wait.  Wait.

25       MR. LAURO:  Yes.

1          THE COURT:  Let's just -- let's just discuss what

2     the sensitive time is.

3          I understand there is an election impending, and

4     I've said before and I say again that the electoral process

5     and the timing of the election and what needs to happen

6     before or shouldn't happen before the election is not

7     relevant here.

8          This Court is not concerned with the electoral

9     schedule.  Yes, there's an election coming.  But the

10    sensitive time that you're talking about, if you're talking

11    about the timing of legal issues and the timing of

12    evidentiary issues in relation to when the election is,

13    that's not -- that's nothing I'm going to consider.

14         MR. LAURO:  I'm not asking you to consider it.

15    But the courts have routinely said that courts should not be

16    drawn into election disputes.  And there is an inherent

17    unfairness in the legal process --

18         THE COURT:  Oh, I am definitely not getting drawn

19    into an election dispute.

20         MR. LAURO:  Right.  And what I'm saying is that

21    this process is inherently unfair, particularly during this

22    sensitive time that we're in.

23         And it turns -- what it does is eliminate our

24    ability, our ability to structure the issues in the way that

25    we believe they should be structured in a motion to dismiss.

1          We're entitled to that under the federal rules.

2     We have a new Supreme Court ruling, never before

3     anticipated.  We have to look at a number of discovery

4     issues now in light of the fact of this ruling.

5          We've had 14 million pages of documents that we've

6     had to look through.

7          THE COURT:  But if you need -- excuse me.  If you

8     need discovery -- if what you're saying is we need discovery

9     on immunity before we can address immunity, your own

10    proposed schedule sets deadlines for immunity-related

11    motions to compel simultaneous to the immunity motion to

12    dismiss itself.

13         MR. LAURO:  That's right.  But we've been able to

14    hopefully work out some of these issues with the Government.

15    And we anticipate that in good faith we'll deal with those.

16    We have outstanding issues that we will bring to their

17    attention.  We have every reason to think the special

18    counsel will be cooperative.

19         But we need that discovery.  In fact, we've had a

20    number of discovery issues that you typically have in a

21    criminal case that have not been resolved because of this

22    stay.  All of that, in fairness to your Honor, needs to be

23    resolved.

24         What is the rush to judgment that the special

25    counsel is suggesting?  That's exactly the problem the

1    Supreme Court recognized in its decision.  There's something

2    unseemly about a rush to judgment only in this case.

3              THE COURT:  This case has been pending for over a

4    year.

5              MR. LAURO:  I understand.

6              THE COURT:  We're hardly sprinting to a finish

7    line here.  We all know, we all know that whatever my ruling

8    on immunity is, it's going to be appealed and the taking of

9    that appeal will again stay this case.

10             So no one here is under any illusion that we're

11   sprinting towards any particular trial date.  We can't even

12   really contemplate a trial date because of the looming

13   appellate issues.

14             So, you know, there's no rush to judgment here.

15   But there is a recognition, like any criminal case, it's

16   going to proceed in the normal course.  And we have had a

17   year, a year, of a stay.  And there needs to be some forward

18   motion in this case, regardless of when the election is

19   scheduled.

20             MR. LAURO:  No one is denying that and no one is

21   disputing that.

22             But this superseding indictment is one week old.

23   And we start anew.  And we have to address those issues.  We

24   also start with a new Supreme Court ruling that changed the

25   complexion of this case completely.

1          Now the special counsel suggests, as they did

2     previously, that they can move at a breakneck speed.  To

3     submit something in three weeks and then not give us a full

4     and fair opportunity to respond I would suggest is a rush to

5     judgment.  That's exactly what the Supreme Court --

6          THE COURT:  Well, Mr. Lauro --

7          MR. LAURO:  -- said should never happen.

8          THE COURT:  First of all, three weeks is not

9     exactly breakneck speed.

10         Second of all, I -- we haven't discussed how much

11    time you need.  You can have time to respond.  In fact, this

12    actually works to your benefit, because while they're taking

13    three weeks to prepare their opening brief, you can gather

14    your thoughts and take -- you know, the Supreme Court

15    decision came out two months ago.  You can have additional

16    time during those three weeks and then the other time that I

17    give you to properly respond to their opening briefs.  I

18    don't think this is prejudicial to you at all.

19         MR. LAURO:  It's a quagmire.  It's completely --

20    it's completely prejudicial, because they're going to have

21    to decide what they're going to unseal and we're going to

22    unseal immediately very important grand jury information

23    that is directly exonerative of President Trump.  And it's

24    been hidden from this Court and from the public from the

25    very beginning.

1          And we're going to create a full and complete

2    record of all of that grand jury testimony because we think

3    it's relevant.  And we're going to get it on the record

4    immediately because it needs to be on the record.

5          And that includes FBI 302s; that includes a number

6    of grand jury presentations; that includes the way in which

7    the Government presented this case to the grand jury.  All

8    of that needs to become public.  And that's what we will

9    intend to do if that's what -- if that's the way the

10   Government wants to proceed.

11         But for them to selectively decide how they want

12   to portray their case before we move to dismiss is

13   completely contrary to the Rules of Criminal Procedure.  It

14   shows fundamental unfairness never before seen in a district

15   court.

16         And it's exactly the kind of proceeding that the

17   Supreme Court said should never take place, and it's the

18   reason that the Supreme Court, I believe, in part ruled as

19   it did, that these issues are very important.  They need to

20   be developed with some legal care in a very transparent and

21   careful way.

22         This is not behind-the-envelope -- or

23   back-of-the-envelope jurisprudence.  This has to be done in

24   a very, very deliberative way.

25         What we're suggesting is your Honor deal with the

1    legal issues first in accordance with the Supreme Court

2    ruling and then turn to the merits of the evidentiary issues

3    that need to be developed.  That way, it's structured.  If

4    your Honor decides -- and your Honor may very well decide --

5    that the information relating to Vice President Pence is not

6    only presumptively immune, but immune, then that indictment

7    has to be dismissed.

8         Why do we go through merits arguments on

9    presidential immunity when as an initial matter the Court

10   can dismiss this case right away?  And that's exactly what

11   the Supreme Court said you should look at.  Let's deal with

12   the gateway issues first.  And that's the way the Court

13   structured the opinion.

14        THE COURT:  Well, when the Supreme Court

15   considered this case, Mr. Lauro, they had the original

16   indictment in front of them, which set forth all the

17   communications with the former vice president that are --

18   that you're talking about.

19        They could have ruled then that the indictment was

20   so permeated with those kinds of contacts that it should

21   be -- that it couldn't hold up.  They didn't.  They sent it

22   back to me to make certain findings, not just with regard to

23   those communications, but with regard to all the allegations

24   in the indictment.

25        So I'm not sure that I agree with you that as a

1    matter of law I could just dismiss the indictment based on

2    the Supreme Court's -- dismiss the superseding indictment

3    based on the Supreme Court's decision at all.

4         MR. LAURO:  Of course you can.  Because the

5    Supreme Court -- and the ruling is clear, crystal clear --

6    has already decided that the communications with Vice

7    President Pence are official acts within the outer perimeter

8    of the presidential responsibility.  That is the case law of

9    this case right now.

10        The only issue with respect to Vice President

11   Pence is whether or not they can overcome the presumption of

12   immunity, which is an incredibly high bar.  They have to

13   show that under no circumstances, under no circumstances is

14   there any intrusion with respect to the authority and

15   responsibility of the presidency in light of those

16   communications.

17        That's an incredibly high bar.  Your Honor can

18   decide that as a legal issue guided by counsel.  We can make

19   whatever proffers are necessary.

20        If your Honor decides that that is immune, then

21   the whole indictment craters.  It goes away.  Because the

22   Supreme Court decision made very clear you can't use

23   immunized testimony with respect to an indictment or

24   otherwise at trial.

25        So this is a logical way for the Court to deal

1    with these issues.

2            What they're suggesting -- and I don't think your

3    Honor is suggesting it, but asking questions about it -- is

4    that we leapfrog over the legal issues.  We get --

5            THE COURT:  That's not what I'm suggesting.

6            MR. LAURO:  No.  I'm not suggesting you're

7    suggesting it.  I'm suggesting that's what they're

8    suggesting.

9            THE COURT:  I actually don't think that's what

10   they're suggesting.

11           MR. LAURO:  Well, they are in this respect:

12   They're suggesting they leapfrog into merits-based argument

13   over all the official acts.  Right?  They're going to do

14   their big proffer.

15           All of that is wasted time if your Honor decides

16   initially that the Pence communications are immune and they

17   didn't overcome the presumption.

18           We can avoid months and months of briefing by your

19   Honor dealing with the gateway issue first.  That's exactly

20   what the Supreme Court said you should be doing.

21           THE COURT:  All right.  I think I've -- you've

22   made your argument on that point.

23           The Government proposes briefing some of the

24   motions to dismiss concurrently, with alternating filing

25   deadlines so the parties aren't just waiting around for a

1    few weeks waiting for the opposing briefs to come in.

2              And so what's your objection to that approach?

3              MR. LAURO:  Well, first of all, we have to have

4    all the issues resolved in terms of the evidence issues and

5    the discovery issues.

6              THE COURT:  But --

7              MR. LAURO:  That has to be resolved initially,

8    your Honor.  We need the discovery that we've requested.  We

9    need -- we're going to have some followup.  There's some

10   discovery that we don't even have access to yet because of

11   technical issues.  We need to resolve those.

12             THE COURT:  Wait.  Because of technical issues?

13   As I recall, before this case was stayed we were having

14   technical issues with regard to people's security clearance.

15   Those haven't been dealt with?

16             MR. LAURO:  Your Honor, it's not just on that.

17   But when you have a case with 14 million pages of documents

18   and hours and hours of videotape, there are discovery

19   issues.  Those discovery issues were stayed almost a year

20   ago.  We were just litigating the case for something like --

21   I don't know -- 45, 50 days.  And you expect us to resolve

22   all of this -- the discovery issues?  In fact, we're still

23   getting discovery.  We got discovery, you know, throughout

24   that period.

25             We have to go over that.  We have to look at it.

1    It's going to affect our ability to respond to those issues.

2           We're being put in an incredibly unfair position

3    for no reason at all in light of a Supreme Court decision

4    that said there needs to be fairness on both sides.  These

5    are momentous issues.  We're talking about the presidency of

6    the United States.  And we're entitled --

7           THE COURT:  I'm not talking about the presidency

8    of the United States; I'm talking about a four-count

9    criminal indictment.

10          MR. LAURO:  We're talking about presidential

11   immunity, which was the subject of *U.S. v. Trump*.  And the

12   Supreme Court spent a great deal of time --

13          THE COURT:  I understand, Mr. Lauro.

14          MR. LAURO:  -- about the presidency, and that's

15   what we're talking about.

16          THE COURT:  But the subtext of your argument here

17   about these sensitive times and the desire not to have any

18   evidentiary briefing before, you know, this year, it strikes

19   me that what you're trying to do is affect the presentation

20   of evidence in this case so as not to impinge on an

21   election.  And I'm not considering that.  That's not going

22   to be a factor I consider at all in my decision.

23          MR. LAURO:  That's exactly not what I suggested.

24   When I was talking about the presidency of the United

25   States, I spoke about the presidency of the United States as

1    described in the Supreme Court ruling, which said these are

2    grave issues that will affect the republic going forward.

3    And they should be dealt with in a very, very careful way.

4          And your Honor mischaracterized what I said.  I

5    did not suggest that that was connected to any political

6    campaign.  What I did say is that these are weighty issues

7    that need to be decided carefully.  That's what the Supreme

8    Court said.

9          The decisions here will not just affect this case;

10   it'll affect the republic going forward.  These are grave

11   and important issues.

12         THE COURT:  All right.  Thank you.

13         All right.  I will -- I've heard the arguments of

14   both sides.

15         Mr. Windom, did you want to respond?

16         MR. WINDOM:  Your Honor, with the Court's

17   indulgence, I'd like to make just five quick points in

18   response to the defense's argument here.

19         First of all, the defense raised a number of times

20   discovery.  Big reveal here:  There's no additional

21   discovery that we anticipate.

22         THE COURT:  Yes.  That was my question.

23         MR. WINDOM:  Yes, ma'am.  There's no additional

24   discovery that we anticipate during the pendency of whatever

25   briefing schedule the Court orders.

1    Two days ago -- so, as your Honor pointed out, the

2    superseding indictment was returned last week.  Two days

3    ago, we provided to the defense the grand jury transcripts

4    and the attendant exhibits that underlie the return of that

5    superseding indictment.  They have that.

6    So that's with respect to the discovery.  The

7    technical issues, I'm not exactly certain.  We haven't

8    received exactly what those are.  So those are things that

9    can be worked through.

10    It seems inappropriate to delay the immunity

11    determination while the defense comes up with an

12    indeterminate discovery demand on issues that have not been

13    raised with the Government yet.

14    That's the first point, discovery.

15    The second point, the motion to dismiss that the

16    defense says should happen with respect to the vice

17    president's allegations in the superseding indictment:  The

18    Supreme Court's opinion was all about fact determinations.

19    It was all about doing a fact-bound analysis of all of this.

20    So it is -- it would be impossible for the Court

21    to review what information -- or if the grand jury was

22    exposed to immunized information and whether there was

23    prejudice to that effect without reviewing all of the

24    information that the grand jury looked at, which includes

25    the information that we expect to put forward that may or

1    may not have been pled in the indictment that discusses the

2    content, form, context and circumstances.

3            THE COURT:  How much of that information do you

4    anticipate is going to be under seal?

5            MR. WINDOM:  So that's a good question.  We don't

6    know the specific answer to that.

7            But I do know this:  A year ago, we spent a

8    considerable amount of time going through a protective order

9    and making sure it could stand time.  Paragraphs 11 and 12

10    specifically deal with this situation the defense counsel

11    has raised.  It is the Court that will decide what is

12    unsealed from the sensitive discovery.  It is not the

13    defense or the Government that will do that.

14            We anticipate, consistent with the protective

15    order, that any filing of sensitive material would occur

16    first with a motion for leave to file under seal.  The

17    parties and the Court can determine thereafter what gets

18    released into the public record in redacted form.

19            So that was -- thank you.  That's actually -- the

20    protective order issue was a third point.

21            But going back just briefly to what the defense

22    says, they want to take up the Pence information first,

23    calling it a legal issue.

24            What the defense has done is read one line from

25    the Supreme Court opinion, but not the next line.  The

1    Supreme Court never says if the Pence allegations are

2    immune, the indictment must go away.

3              The Supreme Court says, in the next line

4    thereafter:  And the parties and the District Court must

5    ensure that sufficient allegations support the indictment's

6    charges without such conduct.  It is not an automatic

7    dismissal of the indictment.

8              So that is the third point.

9              The fourth point, with respect to speed and haste

10   and all that:  The Supreme Court opinion, as you pointed

11   out, came out two months ago.  The superseding indictment

12   was returned last week, and largely it is a slimmer version

13   of the original indictment.

14             We strike -- the grand jury struck almost 40

15   paragraphs from the original indictment, nine full pages.

16             And the remainder of the changes involve mainly

17   framing and showing that the information was -- the conduct

18   was private.

19             I want to point out just as a data point for your

20   Honor, on July 10th of this year, the Defendant, in his

21   New York State criminal case, the Defendant and two of the

22   attorneys sitting at this table filed a 52-page motion to

23   vacate his state criminal conviction on the grounds of a

24   Supreme Court opinion that came out nine days before.

25   Fifty-two pages covering an entire trial record in nine

1    days.

2            The defense can move comprehensively, quickly and

3    well.  So can we.  And the Court should consider that in

4    setting its schedule.

5            The final piece, your Honor --

6            THE COURT:  Congratulations, Mr. Blanche.

7            MR. WINDOM:  The final piece, your Honor:  We're

8    not asking for any sort of special rule.  Whether you call

9    it supplemental briefing, whether you call it the Court's

10    inherent discretion as we put in our papers to order

11    briefing, whether you call it a Rule 12(b)(1) motion for a

12    request for determinations prior to trial, there are

13    different procedural vehicles to the extent that the Court

14    needs to point to anything, which we don't think it does,

15    given its inherent discretion.

16            Those are my responses to Mr. Lauro's argument.

17    I'm happy to answer any questions you may have.

18            THE COURT:  That's fine.  Thank you.

19            MR. WINDOM:  Thank you, your Honor.

20            MR. LAURO:  Your Honor, may I respond briefly?

21            THE COURT:  Briefly.

22            MR. LAURO:  Yes, your Honor.

23            THE COURT:  I don't need any more rhetoric on how

24    serious and grave this is.

25            MR. LAURO:  It's not rhetoric, your Honor; it's

1    what the Supreme Court ruling provided for.  It's part of --

2            THE COURT:  And I have the ruling.

3            MR. LAURO:  I know, your Honor.  I'm entitled to

4    argue, I believe, based on what the Supreme Court said.  So

5    it's not rhetoric; it's called legal argument.

6            And one thing I want to mention is that in the

7    Supreme Court ruling, it said that we therefore remand to

8    the District Court to assess in the first instance, with

9    appropriate input from the parties, whether a prosecution

10   involving Mr. Trump's alleged attempts to influence the vice

11   president's oversight of the certifying process in his

12   capacity as president of the Senate would pose any danger of

13   intrusion on the authority and function of the Executive

14   Branch.

15           The first instance, the very first thing your

16   Honor needs to do, is decide whether or not that presumption

17   is overcome.

18           THE COURT:  But why does that have to happen

19   separately from my consideration of the other immunity

20   issues?

21           MR. LAURO:  Because if your Honor decides that it

22   is immune, then the entire indictment, which is almost

23   wholly based on information from Vice President Pence and

24   the discussions, that entire indictment would then be

25   unlawful.

1          THE COURT:  But why can't I address that in one

2     opinion?  In other words --

3          MR. LAURO:  Because --

4          THE COURT:  Wait.  Why can't the Government file

5     its opening brief, and you respond saying, you know, Look,

6     you don't need to go any further.  You don't need to look at

7     all this other stuff.  Just consider the former vice

8     president's -- the contacts with Mr. Trump, and they're

9     subject to presumptive immunity.  They haven't overcome it.

10    The whole indictment goes out.

11          I can rule on that issue alone.  Why does it have

12    to be piecemeal?  Other than, you know, extend the schedule?

13          MR. LAURO:  It's not to extend the schedule.  If

14    you decide -- no.  If you decide this issue, then all of

15    that briefing never has to take place.  Why should we engage

16    in months and months of briefing and litigation and cost to

17    the parties and cost to the Court when your Honor needs to

18    decide this gateway issue, and once it's decided, it can end

19    the case right then and there?

20          If your Honor decides -- maybe, you know, the

21    Supreme Court had something different in mind; but clearly,

22    this is what they wrote in their opinion, that this is --

23          THE COURT:  And from that passage you argue that

24    the entire indictment hinges on the immunity of the contacts

25    with the former vice president?  Is that your basis for that

1    argument?

2            MR. LAURO:  No.  My argument is the latter part of

3    the Supreme Court decision, which says that this Court

4    cannot use any immunized testimony with respect to the trial

5    of this matter or the indictment.

6            So they made a calculated risk.  Their bet was

7    that the vice presidential material would not be held immune

8    by your Honor.

9            They're going to lose that bet ultimately one way

10   or another because that -- those conversations were immune.

11   Once they're immune, they relied so heavily on those vice

12   presidential conversations that it tanks the entire

13   indictment.

14           So not only -- and we haven't talked about the

15   illegitimacy of Mr. Smith, which we will.

16           THE COURT:  Oh, we will.

17           MR. LAURO:  But we have an illegitimate

18   prosecutor.  We have an illegitimate indictment.  And we

19   have illegitimate issues, legal issues, that were raised in

20   that indictment.

21           And what we're suggesting, your Honor, is to

22   simply follow the rules, the criminal rules, but also most

23   importantly follow what the Supreme Court decided.

24           THE COURT:  So you're saying, then, Mr. Lauro,

25   even if I said, Okay, I want the defense to file an opening

1    brief, as we do -- you know, as we commonly do in motions

2    practice, that your opening brief should be limited to the

3    subject of the vice presidential -- the former vice

4    president's testimony?

5           MR. LAURO:  Exactly, your Honor, because that's a

6    gateway issue.

7           Now, we may have other, you know, related legal

8    issues.  But that's exactly the gateway issue that the

9    Supreme Court said in writing your Honor should decide as an

10   initial matter.

11          And I'm taking the Court literally.  I'm an

12   originalist.  I mean, I look at what they write and I

13   believe what they write and I think what they write is what

14   they want to write.

15          And that's exactly what they're directing your

16   Honor to do.  And it makes sense, because once you decide

17   that legal issue, everything else falls in place.  And then

18   we can go to the merits of whether or not other items are

19   immune or not immune.

20          But as an initial matter, you have to decide

21   whether this indictment is actually legitimate or not.  And

22   our position right now, it's wholly illegitimate because of

23   the vice president issue.

24          THE COURT:  Okay.  Well, you may be an

25   originalist, Mr. Lauro, but I'm a trial judge.  And I've got

1    to follow the instructions --

2         MR. LAURO:  All we're asking --

3         THE COURT -- and the remand of the Supreme Court.

4    I don't believe that's what I was instructed to do by the

5    Supreme Court.

6         All right.  Let me talk about the remainder of the

7    pretrial schedule.

8         I want to hear from the parties about the

9    defense's anticipated motions to dismiss, discovery issues

10    and some other pretrial matters.  So let's go down one by

11    one.

12         Okay.  You just touched on this, Mr. Lauro.  The

13    defense has a proposed motion regarding the special

14    counsel's appointment and funding, since that's the first

15    thing in the schedule that you suggest.  So I have a couple

16    questions for you about that motion.

17         First of all, all dispositive motions in this case

18    were due back in October of 2023, well before the stay in

19    this case.  And the defense did not file a motion

20    challenging the special counsel's appointment or funding

21    then, probably for the very good reason that there's D.C.

22    Circuit precedent on that.

23         But my first question to you is:  Why wouldn't

24    that motion be untimely?

25         The second is -- well, let me hear your response

 1    to that first.

 2          MR. LAURO:  We did not file it at the time

 3    obviously because of the *Miller* decision in the D.C. Circuit

 4    that held against that position.

 5          But since that time, Justice Thomas wrote a very

 6    persuasive concurrence that suggested that the special

 7    counsel does not have authority.  And in addition, another

 8    judge, a very respected judge in the Southern District of

 9    Florida, wrote a decision dismissing the special counsel's

10    case on appointments clause basis and also on

11    appropriations.

12          In light of that, that's a fundamentally

13    jurisdictional issue that you don't raise.

14          THE COURT:  Well, if you argue that that's a

15    jurisdictional issue, what's your authority for that, that

16    it's a jurisdictional issue?  I mean --

17          MR. LAURO:  It's -- I'm sorry.

18          THE COURT:  Go ahead.

19          MR. LAURO:  It's fundamental to whether or not a

20    private citizen such as Jack Smith can indict a former

21    president.  And it is a critical issue that now has to be

22    decided by the Court in light of Justice Thomas's interest

23    in this issue, and also in light of what the judge decided

24    in the Southern District of Florida.

25          THE COURT:  Well --

1          MR. LAURO:  So there's certainly no waiver here.

2    I don't think your Honor could find a waiver of a

3    jurisdictional issue.

4          I understand procedurally you had certain

5    deadlines.  But those deadlines for the most part I think

6    have to be readjusted in light of the --

7          THE COURT:  A lot of them do.  But this is one of

8    the ones that expired well before the appeal in this case.

9    It's not really relevant to the Supreme Court's decision on

10   immunity.

11         You want to file this because there's dicta in a

12   concurrence -- there's binding D.C. Circuit precedent on

13   this issue.  You have dicta in a concurrence written by

14   Justice Thomas and you have an opinion filed by another

15   district judge in another circuit which frankly this Court

16   doesn't find particularly persuasive.

17         So that's your basis for seeking to file that

18   motion?

19         MR. LAURO:  Your Honor, we couldn't file the

20   motion because of the Circuit Court decision --

21         THE COURT:  So is your argument that another

22   district judge in Florida, that opinion plus dicta in a

23   concurrence in the Supreme Court, those two things combine

24   to warrant me going against binding D.C. Circuit precedent?

25         MR. LAURO:  What I'm saying is that the Court

1    should consider this issue, and Justice Thomas in effect

2    directed us to raise this issue and suggested that we do it

3    immediately in light of his view in that concurrence.

4            THE COURT:  He directed you to do that?

5            MR. LAURO:  Well, I shouldn't say he absolutely

6    said, you know, "Do it."  But when you read that opinion,

7    it's absolutely clear that that's something that we have to

8    do now to preserve this issue.

9            THE COURT:  Well, I certainly don't read the

10   opinion that way.

11           MR. LAURO:  Well, we have to file a motion.  I

12   know your Honor's going to decide it based on the leading

13   D.C. Circuit issue.  But I mean, fundamentally, we have to

14   be permitted to at least file that motion because it goes to

15   the very core of whether Jack Smith has legitimacy in this

16   case.

17           THE COURT:  Well, I will say this.

18           Well, Mr. Windom, did you want to respond?

19           MR. WINDOM:  Just to the point, your Honor, that

20   Mr. Lauro suggested that they could not have filed the

21   motion because of the D.C. Circuit opinion.

22           Defendants in this courthouse do that all the time

23   and say that they're doing so in order to preserve rights

24   notwithstanding binding Circuit precedent.

25           That did not happen in this case.  They knew about

 1    the issue.  They had the opportunity to argue it before.

 2    They are suggesting that a lone justice's concurrence

 3    somehow has reopened the door for this.  It is the same

 4    issue that the D.C. Circuit already ruled on.

 5            Now, so long as it does not affect the briefing

 6    schedule with respect to the immunity determination, it is

 7    hard to see how the Government is substantively prejudiced

 8    by the Court extending the deadline in order to have that

 9    issue resolved at this early stage.

10            That said, I still do not see a basis for why the

11    Defendant should not be found to have waived their ability

12    to file this motion on the prior deadline.

13            THE COURT:  All right.  I do think that this

14    motion could have been filed prior to the deadline.  But I

15    don't think that adherence to that deadline is particularly

16    useful to anyone here.

17            So I'm going to allow the defense to file a motion

18    for leave -- to file that motion.  And in that motion for

19    leave, I want you to articulate to me the reasons why you

20    think you have enough to make a credible argument that

21    binding D.C. precedent does not foreclose that motion.

22            MR. LAURO:  Absolutely, your Honor.  We'll do

23    that.

24            As a further note, it's a new indictment, so we

25    feel we would be able to raise a motion --

1         THE COURT:  That's why I'm going to let you do it.

2         MR. LAURO:  Thank you, your Honor.

3         THE COURT:  There's no use, you know, talking

4    about a deadline that was over a year ago.

5         Okay.  I'll include a deadline for that

6    leave-to-file request in my scheduling order.

7         All right.  Now, the defense states that it will

8    potentially seek dismissal regarding the grand jury's

9    consideration of immunized evidence.

10        So, Mr. Lauro, I just want to make sure I'm

11   understanding the mechanics of this.  Are you contemplating

12   filing a motion to dismiss based on grand jury exposure to

13   immunized evidence that would be separate from a general

14   motion to dismiss based on immunity?  Or is it just that in

15   your general immunity motion to dismiss you plan to argue

16   that Mr. Trump's alleged conduct involving former Vice

17   President Pence's immunity -- well, you already said that

18   you believe the entire superseding indictment has to be

19   dismissed based on that.

20        So I guess as the first question, are you -- is

21   your motion going to be based on other grand jury evidence,

22   that the grand jury was exposed to other immune evidence, or

23   just the Vice President Pence evidence?

24        MR. LAURO:  Yes, your Honor.  We anticipate the

25   Vice President Pence piece specifically.  We've not looked

1    at the grand jury information.  We just got it.  We're

2    uploading it and looking at it right now.  But we anticipate

3    as I've argued before that it's focused on the vice

4    presidential issue.

5            There may be somewhat ancillary issues, but that's

6    our main focus.  Correct, your Honor.

7            THE COURT:  Okay.  Is it your -- and you've sort

8    of said this a couple times.  But your position is if the

9    evidence with regard to the contacts with former Vice

10   President Pence is out, the whole indictment falls.  Is that

11   your argument?

12           MR. LAURO:  Yes, your Honor, based on the Supreme

13   Court decision.  Because the Court has already said it's an

14   official act.  If your Honor decides that the presumption is

15   not overcome, then it's immune.  And then the fact that they

16   used immune evidence in connection with the grand jury

17   presentation means that the entire indictment is infected

18   with that immunity, and as a result the entire indictment

19   should be dismissed.

20           That's what the Supreme Court says.

21           THE COURT:  Any response to that?

22           MR. WINDOM:  So in addition, your Honor, to what I

23   said before with respect to the staging of having separate

24   immunity motions and separate appeals, it seems that what

25   Mr. Lauro is suggesting is a two-step process.  First, the

1    Court must make those immunity determinations.  If

2    there's -- if there was no immune conduct, then there's no

3    basis to dismiss an indictment for the grand jury having

4    been exposed to immune conduct.

5          So the Court should take up the immunity issues

6    first.

7          There can be a motion to dismiss in which, as I

8    previously read the line from the Supreme Court and other

9    D.C. Circuit precedent and other persuasive opinions from

10   this Court, as to whether and on what basis an indictment

11   would have to be dismissed even if there were exposure to

12   such conduct.

13         But we see that as kind of two separate things.

14   First, immunity.  And then a determination as to whether

15   dismissal is appropriate because of some prejudice.

16         THE COURT:  All right.  Thank you.

17         Let's talk about the statutory motion to dismiss,

18   the motion to dismiss on statutory grounds.

19         As I mentioned earlier, that motion was fully

20   briefed, but had not been decided while the case was -- I

21   had not issued an opinion on it while the case was stayed.

22   I'm not saying I hadn't drafted one.

23         When jurisdiction returned, I denied that motion

24   without prejudice and deferred further briefing because the

25   Supreme Court had explicitly directed that at least some

1    parts of the original indictment on which the statutory

2    motion was based would have to be dismissed.

3            So I assume the parties would want to revise their

4    arguments.

5            Now we have a superseding indictment, however.

6    And both parties seem to suggest that we could move forward

7    with at least briefing a revised or supplemental version of

8    the statutory motion before immunity is fully resolved.  So

9    I'm actually considering just vacating my original dismissal

10    of the statutory motion and accepting -- opening it up for

11    supplemental briefing in light of the superseding

12    indictment.

13            That seems to make the most sense to me.

14            Do you have an objection to that, Mr. Lauro?

15            MR. LAURO:  I don't, your Honor.

16            I think the *Fischer* issue now of course comes back

17    to the Court with --

18            THE COURT:  I'm going to get to that one.

19            MR. LAURO:  Okay.

20            THE COURT:  But as far as the statutory motion to

21    dismiss?

22            MR. LAURO:  Yes.  The only thing I would

23    suggest -- and I don't know how special counsel feels -- but

24    with respect to statutory briefing, I think immunity

25    questions should be resolved by the Court first before we

1    get to the other statutory issues.  I don't know how your

2    Honor wants to handle that sequentially.

3            THE COURT:  That may be so.  But I don't think --

4    again, I think we can do briefing concurrently.  I agree

5    with you.  Everything -- immunity is a linchpin here.  But I

6    think we can -- we don't have to do everything sequentially.

7    I think we can do a number of the matters concurrently.

8            MR. LAURO:  We have no objection to that, your

9    Honor, if that's your preference.

10           THE COURT:  Mr. Windom?

11           MR. WINDOM:  That makes sense to us, your Honor.

12           I think what our position is, generally speaking,

13   that the briefing can run concurrent to the immunity

14   determinations.  It's our position that none of these other

15   issues they've raised would be subject to interlocutory

16   appeal.  What is most important to us is that immunity be

17   decided all at once, simultaneously; and should the Court

18   decide that it wants to rule on these other things at the

19   same time, so be it.

20           THE COURT:  I agree.  We have consensus.

21           All right.  Now, with regard to *Fischer*,

22   Mr. Lauro, your schedule contemplates filing a supplement to

23   the statutory motion as you said in light of *Fischer*.

24           I take it you want to supplement or revise your

25   original arguments based on changes in the superseding

1    indictment.  Do you have a preference for -- to frame the

2    briefing as a supplement to the original briefs or just

3    you're going to file a renewed motion to dismiss based on

4    *Fischer*?

5                MR. LAURO:  If your Honor is going to open up all

6    the issues on the statutory motion to dismiss, then I would

7    suggest we file a new brief totally rather than

8    supplemental.

9                THE COURT:  When I say "open up all the issues," I

10   mean, as far as I can see it, the reason I suggested

11   supplemental briefing is because the -- I mean, you know,

12   the statutory argument remains.  And now you have *Fischer*

13   that you can include in your supplemental briefing.  And you

14   can also address the superseding indictment.

15               You think you need a new motion for that?

16               MR. LAURO:  Well, we have a new indictment.  So

17   we'd have to file a new motion.

18               THE COURT:  But you keep saying new indictment.

19   It's the same charges, though.

20               MR. LAURO:  Yes.

21               THE COURT:  It's a slimmed-down version.  It's not

22   more stuff; it's less.

23               MR. LAURO:  Right.  I don't anticipate any

24   material deviations with respect to the other statutory

25   grounds in terms of why we move to dismiss.

1          But certainly with respect to *Fischer*, it's going

2     to be a whole new brief.  It has to be in light of --

3          THE COURT:  Well, that's your supplemental brief.

4          MR. LAURO:  Yeah.  Yeah.

5          THE COURT:  All right.  So I'm inclined to vacate

6     my denial of the statutory motion, which was without

7     prejudice, and allow renewed or supplemental briefing while

8     we're still resolving immunity issues.  And I'll put that in

9     my scheduling order.

10          So the final set of issues that was discussed in

11     the joint status report all relate to discovery.  So,

12     Mr. Lauro, your proposed schedule begins with a deadline for

13     mandatory Government disclosures related to presidential

14     immunity.  Just to be clear, are you thinking -- when you

15     say that, are you talking about evidence that would tend to

16     prove or disprove that Mr. Trump's alleged conduct was

17     official?  Is that what you're referring to?

18          MR. LAURO:  Yes, your Honor.  What we're focused

19     on initially is the discovery relating to immunity.  And

20     that's really what we have previously discussed with special

21     counsel, that we would focus on those issues.  But we do

22     think that to the extent there is *Brady* material relating to

23     the issue of immunity, that needs to be disclosed with

24     respect to any kind of exonerative material or material that

25     tends to assist us in connection with that briefing that

1    needs to be disclosed.

2              And we suggested --

3              THE COURT:  So -- I'm sorry.  Finish.

4              MR. LAURO:  We suggested by September 30th that

5    the Government fulfill that obligation.

6              THE COURT:  So, I mean, *Brady* is an ongoing

7    obligation.  I take it very seriously.  And the Government

8    knows that.  I made that very clear.

9              But do you have any reason to believe there

10   actually is discovery on this issue that hasn't already been

11   turned over to you?

12             MR. LAURO:  I'm assuming so, because the

13   Government never had to really look at issues relating to

14   immunity before in terms of amassing all the information

15   that they looked at.

16             We have 14 million pages of documents.  This case

17   is enormous.  So I'm assuming that the Government is going

18   to take a fresh look at what discovery they have and, if

19   they have any, turn it over.  We're still getting discovery

20   in this case.  And as a result, I would hope that they --

21   and I'm sure they will -- take their obligation seriously.

22             But in addition, we need to look at this discovery

23   with an eye towards the immunity issues now.  And we also

24   have these unresolved discovery issues that need to be

25   addressed by the parties and by the Court as well.

1           THE COURT:  Well, there was -- there are some

2     discovery motions that were pending at the time of the stay.

3     And I understand that.

4           But your proposed schedule also contemplates

5     discovery and potentially a motion to compel evidence

6     related to immunity at the same time as the parties brief

7     the immunity motion itself.

8           Given that motions to dismiss are typically

9     resolved assuming the truth of the indictment's allegations,

10    do you anticipate that I'll need to look beyond the

11    allegations, beyond the -- at evidence in order to resolve

12    the immunity motion?

13          MR. LAURO:  Well, obviously, we'd like to get as

14    much discovery as we can get.  And we also anticipate the

15    good faith of all the parties in terms of getting that

16    discovery.  We'll have the opportunity to look at it.  It'll

17    certainly frame our motion to dismiss, if necessary.

18          But the motion to dismiss is going to be a very

19    legally based argument.

20          THE COURT:  So is it your position that I will

21    need to engage in any kind of fact-finding?

22          MR. LAURO:  Not on a motion to dismiss, no.

23          THE COURT:  Okay.  I just wanted to make that

24    clear.  We have two discovery-related motions that you

25    already filed that are pending:  the motion to compel and

1    the motion regarding the scope of the prosecution team.

2    Those are just awaiting reply briefs from you.

3         And since those are almost fully briefed, I mean,

4    it does seem to me to make sense to resolve them sooner

5    rather than later rather than leaving them hanging.

6         Do you have any objection to that?

7         MR. LAURO:  Absolutely not, your Honor.  We

8    anticipated that our reply would address any of the issues

9    relating to immunity in particular, to direct your Honor's

10   attention to the immunity issues.

11        But we can have a reply that more broadly

12   addresses all the issues.

13        THE COURT:  All right.  Because as you -- you were

14   not subject to the burdens of litigation during the stay,

15   but I was.  And so I have given some consideration to that.

16   But I will -- we are awaiting reply briefs on that.  So I

17   will set a deadline for the reply briefs.

18        MR. LAURO:  That's fine, your Honor.

19        There's also a CIPA issue, which I don't think I

20   need to discuss publicly, but it's still pending as well.

21        THE COURT:  Yes.  Yes.

22        Okay.  Mr. Windom.  Some followup questions

23   related to the defense's proposed deadline for

24   immunity-based evidentiary disclosures.

25        Do you anticipate making any such disclosures?

1          MR. WINDOM:  No, ma'am.

2          THE COURT:  Do you have any reason to believe that

3     there's exculpatory evidence or -- that you haven't looked

4     for?

5          MR. WINDOM:  No, ma'am.  You can set the deadline

6     for today.  We have nothing further to provide.  I want to

7     speak on that just very briefly.

8          We took from the very beginning of this case an

9     extremely comprehensive view of what should be produced in

10    discovery.

11         We have met our discovery obligations, *Brady*,

12    *Jencks*, *Giglio*, Rule 16.  We do not anticipate any

13    additional disclosures.

14         Nor has the defense -- and they've averted [sic]

15    to it at least twice today -- suggested to us what specific

16    other information they think that we have that we need to

17    produce with respect to immunity.

18         To the extent that the defense does that with

19    specificity, we're happy to consider that.  But in the

20    abstract, to say there's discovery obligations that need to

21    be fulfilled, we have done so.

22         THE COURT:  All right.  I'm going to assume that

23    the parties will continue to meet and confer and discuss

24    potential discovery issues, outstanding discovery issues

25    that the defense believes, based on the review of what

1    they've had so far and the superseding indictment, that

2    there is areas that they believe relevant evidence or

3    *Brady*-related evidence may lie.  They can certainly request

4    that from you all.  If you need assistance resolving that,

5    you can come to me.  But I'm going to let you all continue

6    to meet and confer on those issues.

7          MR. WINDOM:  Your Honor, may I make a point about

8    the pending discovery motions?

9          THE COURT:  Yes.

10          MR. WINDOM:  So there are two:  the scope of the

11    prosecution team and then other general discovery documents.

12          In their papers, the defense suggested the Court

13    should just take up the scope of the prosecution team.

14          In our opposition brief, which is ECF 181, we

15    pointed out that there is no way to disentangle the two

16    questions, that they must be considered together.

17          So we would request that whatever reply brief the

18    defense intends to file, it be a reply to both of the

19    discovery motions.  And to the extent they intend to raise

20    new issues, like they may have just suggested with respect

21    to immunity, to the extent that we need to come back to the

22    Court and ask for leave to file a sur-reply, we may do so.

23          THE COURT:  I agree.

24          Mr. Lauro, when you file your reply brief, I

25    intend to consider both the motion to compel and the motion

1    regarding the scope of the prosecution team in one opinion.

2    So your reply brief should deal with both of those.

3              MR. LAURO:  Yes, your Honor.

4              THE COURT:  And again, if there's additional

5    discovery issues that relate to immunity, we can deal with

6    those as well later on.

7              All right.  I will take all of these into

8    consideration as I draft the scheduling order.

9              Now, finally, I want to ask the parties about some

10   information that is not in the joint status report, which is

11   a schedule for resolving trial-related issues and resetting

12   a trial date itself.

13             Now, obviously, neither party suggested a schedule

14   for resolving the Government's pending motion *in limine* or

15   any of the usual pretrial matters.  And that's probably for

16   the very good reason that the issue of immunity will stop

17   these proceedings once again.

18             So I mean, it's sort of an exercise in futility at

19   this point to talk about setting a trial date or so on,

20   because that's not going to depend on me or my schedule.

21             I assume that both sides are in agreement with

22   that?

23             MR. LAURO:  Yes, your Honor.

24             MR. WINDOM:  Yes, ma'am.

25             THE COURT:  All right.  That's all I have.

1           I thank everyone for their preparation today.

2    I'll take your written and your oral submissions under

3    consideration.  I'll issue a scheduling order as soon as

4    possible.

5           Anything else I need to address at this time,

6    Mr. Windom?

7           MR. WINDOM:  Not from the Government, your Honor.

8           THE COURT:  Mr. Lauro?

9           MR. LAURO:  Not from us, your Honor.

10          THE COURT:  Thank you all.

11          MR. WINDOM:  Thank you.

12          (Proceedings adjourned at 11:16 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                            **<u>CERTIFICATE</u>**

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4     certify that the foregoing constitutes a true and accurate

5     transcript of my stenographic notes, and is a full, true,

6     and complete transcript of the proceedings produced to the

7     best of my ability.

8

9

10                   Dated this 5th day of September, 2024.

11

12              <u>/s/ Lisa Edwards, RDR, CRR</u>
                Official Court Reporter
13              United States District Court for the
                  District of Columbia
14              333 Constitution Avenue, Northwest
                Washington, D.C. 20001
15

16

17

18

19

20

21

22

23

24

25

## /

/s [1] - 67:12

## 1

10(b)(2 [1] - 5:9
10005 [1] - 1:24
10:01 [1] - 1:7
10th [1] - 42:20
11 [1] - 41:9
114 [1] - 7:7
116 [1] - 7:13
11:16 [1] - 66:12
12 [4] - 8:21, 23:8, 41:9
12(b)(1 [1] - 43:11
14 [3] - 30:5, 37:17, 60:16
1512(c)(2 [1] - 6:1
1512(k [1] - 5:24
15th [1] - 1:20
16 [2] - 19:13, 63:12
167 [1] - 7:17
17 [1] - 8:14
170 [1] - 7:17
18 [4] - 5:22, 5:23, 6:1, 6:2
181 [1] - 64:14
191 [1] - 7:25
1st [1] - 4:10

## 2

2 [2] - 5:22, 6:1
20001 [2] - 2:3, 67:14
2023 [2] - 4:6, 48:18
2024 [2] - 1:6, 67:10
20530 [1] - 1:16
226 [1] - 5:5
23-00257 [1] - 1:3
23-257 [1] - 3:2
230 [1] - 5:13
241 [1] - 6:3
25th [1] - 11:6
26th [2] - 16:24, 17:3
27th [1] - 5:5
2nd [2] - 4:19, 11:6

## 3

302s [2] - 14:9, 33:5
30th [2] - 9:16, 60:4
333 [2] - 2:3, 67:14
33602 [1] - 1:20
371 [1] - 7:14
3rd [2] - 7:8, 7:14

## 4

40 [1] - 42:14
400 [1] - 1:19
4460 [1] - 1:23
45 [1] - 37:21

## 5

5 [1] - 1:6
50 [1] - 37:21
52-page [1] - 42:22
5th [1] - 67:10

## 6

601 [1] - 1:16

## 9

99 [1] - 1:23

## A

a.m [2] - 1:7, 66:12
ability [12] - 18:23, 23:23, 23:24, 23:25, 24:4, 27:14, 28:10, 29:24, 38:1, 52:11, 67:7
able [5] - 25:4, 28:5, 28:9, 30:13, 52:25
absolutely [4] - 51:5, 51:7, 52:22, 62:7
abstract [1] - 63:20
accepted [3] - 5:14, 6:22, 26:20
accepting [1] - 56:10
access [1] - 37:10
accordance [2] - 26:8, 34:1
accurate [2] - 10:23, 67:4
Act [2] - 8:4, 10:4
act [4] - 19:18, 20:5, 21:14, 54:14
Action [1] - 1:3
acts [2] - 35:7, 36:13
actual [1] - 15:6
added [1] - 10:5
addition [6] - 8:3, 10:3, 14:15, 49:7, 54:22, 60:22
additional [11] - 8:9, 10:17, 13:1, 15:17, 17:13, 27:5, 32:15,
39:20, 39:23, 63:13, 65:4
address [11] - 18:19, 19:11, 19:13, 27:20, 27:24, 30:9, 31:23, 45:1, 58:14, 62:8, 66:5
addressed [2] - 28:13, 60:25
addresses [1] - 62:12
adherence [1] - 52:15
adjourned [1] - 66:12
adopted [1] - 23:10
advance [2] - 25:17, 27:2, 27:23
advice [1] - 8:25
advice-of-counsel [1] - 8:25
affect [6] - 38:1, 38:19, 39:2, 39:9, 39:10, 52:5
affidavits [1] - 24:11
affirm [1] - 5:19
affirming [1] - 5:10
afterwards [1] - 5:1
Agent [1] - 3:8
ago [7] - 32:15, 37:20, 40:1, 40:3, 41:7, 42:11, 53:4
agree [6] - 10:3, 10:5, 34:25, 57:4, 57:20, 64:23
agreement [2] - 10:2, 65:21
ahead [2] - 14:1, 49:18
allegations [9] - 4:18, 10:13, 14:19, 34:23, 40:17, 42:1, 42:5, 61:9, 61:11
alleged [3] - 44:10, 53:16, 59:16
allow [4] - 14:11, 16:21, 52:17, 59:7
almost [6] - 3:16, 3:18, 37:19, 42:14, 44:22, 62:3
alone [1] - 45:11
alternating [1] - 36:24
amassing [1] - 60:14
Amendment [2] - 27:15
AMERICA [1] - 1:3
America [1] - 3:3
amount [2] - 17:13, 41:8

analysis [1] - 40:19
ancillary [1] - 54:5
AND [1] - 1:10
anew [1] - 31:23
answer [3] - 17:18, 41:6, 43:17
anticipate [17] - 12:23, 13:10, 14:7, 15:6, 16:18, 30:15, 39:21, 39:24, 41:4, 41:14, 53:24, 54:2, 58:23, 61:10, 61:14, 62:25, 63:12
anticipated [3] - 30:3, 48:9, 62:8
appeal [17] - 4:3, 4:6, 4:9, 7:4, 7:22, 8:5, 8:8, 8:11, 8:13, 9:3, 9:9, 13:2, 13:6, 26:20, 31:9, 50:8, 57:16
appealed [1] - 31:8
appeals [2] - 13:3, 54:24
Appeals [2] - 4:3, 26:20
appearance [2] - 3:5, 5:10
aPPEARANCES [1] - 1:13
appellant [1] - 9:11
appellate [2] - 15:4, 31:13
applies [1] - 20:1
apply [2] - 4:17, 10:13
appointment [3] - 11:8, 48:14, 48:20
appointments [1] - 49:10
approach [5] - 3:4, 11:15, 11:20, 13:9, 37:2
appropriate [3] - 15:15, 44:9, 55:15
appropriations [1] - 49:11
areas [2] - 10:1, 64:2
argue [5] - 44:4, 45:23, 49:14, 52:1, 53:15
argued [1] - 54:3
arguing [1] - 24:16
argument [15] - 15:22, 23:1, 36:12, 36:22, 38:16, 39:18, 43:16, 44:5, 46:1, 46:2, 50:21, 52:20, 54:11, 58:12, 61:19
arguments [7] - 21:22, 25:18, 27:24,

34:8, 39:13, 56:4, 57:25
arraignment [5] - 4:21, 5:3, 5:10, 5:18, 6:23
ARRAIGNMENT [1] - 1:10
articulate [2] - 18:10, 52:19
aside [1] - 11:18
asserting [1] - 10:21
assertions [1] - 28:11
assess [1] - 44:8
assist [1] - 59:25
assistance [1] - 64:4
assume [4] - 6:16, 56:3, 63:22, 65:21
assuming [3] - 60:12, 60:17, 61:9
asymmetrical [2] - 24:2, 27:13
attempt [1] - 55:25
attempts [1] - 44:10
attendant [1] - 40:4
attention [2] - 30:17, 62:10
ATTORNEY'S [1] - 1:15
attorneys [1] - 42:22
atypical [1] - 15:12
August [5] - 4:18, 5:5, 7:8, 7:14, 9:15
authority [6] - 4:11, 24:17, 35:14, 44:13, 49:7, 49:15
automatic [1] - 42:6
available [1] - 26:6
Avenue [2] - 2:3, 67:14
averted [1] - 63:14
avoid [1] - 36:18
awaiting [2] - 62:2, 62:16

## B

back-of-the-envelope [1] - 33:23
bar [2] - 35:12, 35:17
based [26] - 7:7, 7:10, 7:21, 11:10, 21:1, 22:6, 24:9, 24:10, 35:1, 35:3, 36:12, 44:4, 44:23, 51:12, 53:12, 53:14, 53:19, 53:21, 54:12, 56:2, 57:25, 58:3, 61:19, 62:24, 63:25

**basis** [7] - 27:7, 45:25, 49:10, 50:17, 52:10, 55:3, 55:10
**become** [1] - 33:8
**BEFORE** [1] - 1:10
**begin** [5] - 3:22, 9:4, 10:1, 10:10, 26:24
**beginning** [2] - 32:25, 63:8
**begins** [1] - 59:12
**begun** [2] - 16:11, 16:16
**behalf** [1] - 3:12
**behind** [1] - 33:22
**behind-the-envelope** [1] - 33:22
**believes** [1] - 63:25
**below** [1] - 4:16
**benefit** [2] - 14:23, 32:12
**best** [1] - 67:7
**bet** [2] - 46:6, 46:9
**between** [1] - 19:17
**beyond** [5] - 18:3, 18:8, 61:10, 61:11
**big** [2] - 36:14, 39:20
**binder** [1] - 16:13
**binding** [4] - 50:12, 50:24, 51:24, 52:21
**bit** [2] - 12:23, 16:16
**BLANCHE** [1] - 1:21, 1:22
**Blanche** [2] - 3:13, 43:6
**Blanche's** [1] - 3:15
**bound** [2] - 13:14, 40:19
**Bove** [1] - 3:14
**BOVE** [1] - 1:22
**Brady** [5] - 19:13, 59:22, 60:6, 63:11, 64:3
**Brady-related** [1] - 64:3
**Branch** [1] - 44:14
**breakneck** [2] - 32:2, 32:9
**brief** [29] - 10:12, 11:7, 11:11, 11:25, 12:24, 13:8, 13:10, 14:4, 14:5, 14:7, 14:15, 14:17, 16:2, 17:24, 23:5, 24:14, 27:23, 32:13, 45:5, 47:1, 47:2, 58:7, 59:2, 59:3, 61:6, 64:14, 64:17, 64:24, 65:2
**briefed** [2] - 55:20, 62:3
**briefing** [36] - 8:2,

10:19, 11:20, 13:17, 15:13, 15:20, 18:7, 19:1, 19:8, 22:19, 23:18, 24:15, 24:17, 25:22, 26:24, 27:2, 36:18, 36:23, 38:18, 39:25, 43:9, 43:11, 45:15, 45:16, 52:5, 55:24, 56:7, 56:11, 56:24, 57:4, 57:13, 58:2, 58:11, 58:13, 59:7, 59:25
**briefly** [8] - 5:17, 7:3, 8:9, 17:11, 41:21, 43:20, 43:21, 63:7
**briefs** [11] - 7:19, 7:25, 8:15, 8:16, 8:21, 32:17, 37:1, 58:2, 62:2, 62:16, 62:17
**bring** [1] - 30:16
**broadly** [1] - 62:11
**Bryant** [1] - 26:18
**burdens** [2] - 9:11, 62:14
**BY** [1] - 2:1

## C

**calculated** [1] - 46:6
**campaign** [1] - 39:6
**cannot** [1] - 46:4
**capacity** [1] - 44:12
**care** [1] - 33:20
**careful** [2] - 33:21, 39:3
**carefully** [3] - 18:15, 26:10, 39:7
**Case** [1] - 3:2
**case** [40] - 4:2, 4:3, 4:23, 7:2, 8:13, 18:6, 22:12, 23:9, 28:10, 30:21, 31:2, 31:3, 31:9, 31:15, 31:18, 31:25, 33:7, 33:12, 34:10, 34:15, 35:8, 35:9, 37:13, 37:17, 37:20, 38:20, 39:9, 42:21, 45:19, 48:17, 48:19, 49:10, 50:8, 51:16, 51:25, 55:20, 55:21, 60:16, 60:20, 63:8
**categories** [3] - 12:20, 13:18, 20:22
**category** [1] - 21:24
**certain** [5] - 8:3, 9:22, 34:22, 40:7, 50:4
**certainly** [8] - 20:23,

26:6, 28:18, 50:1, 51:9, 59:1, 61:17, 64:3
**CERTIFICATE** [1] - 67:1
**certify** [1] - 67:4
**certifying** [1] - 44:11
**challenge** [3] - 9:10, 12:3, 26:21
**challenged** [1] - 12:1
**challenging** [1] - 48:20
**chance** [1] - 27:24
**changed** [1] - 31:24
**changes** [2] - 42:16, 57:25
**charged** [1] - 5:7
**charges** [5] - 5:6, 5:20, 6:11, 42:6, 58:19
**charging** [1] - 22:8
**chew** [1] - 19:9
**choice** [1] - 23:14
**CHUTKAN** [1] - 1:10
**CIPA** [1] - 62:19
**Circuit** [10] - 48:22, 49:3, 50:12, 50:20, 50:24, 51:13, 51:21, 51:24, 52:4, 55:9
**circuit** [1] - 50:15
**circumstances** [4] - 14:11, 35:13, 41:2
**citizen** [1] - 49:20
**claim** [1] - 4:7
**claims** [1] - 10:18
**clarify** [1] - 25:12
**clarity** [1] - 10:6
**Classified** [1] - 8:4
**clause** [1] - 49:10
**cleaner** [1] - 15:2
**clear** [11] - 16:3, 17:3, 21:13, 22:7, 35:5, 35:22, 51:7, 59:14, 60:8, 61:24
**clearance** [1] - 37:14
**clearly** [1] - 45:21
**closer** [1] - 16:19
**co** [1] - 3:13
**co-lead** [1] - 3:13
**COLUMBIA** [2] - 1:1, 1:15
**Columbia** [2] - 2:2, 67:13
**combine** [1] - 50:23
**coming** [2] - 9:20, 29:9
**common** [1] - 9:18
**commonly** [1] - 47:1
**communications** [7] - 20:13, 22:5, 34:17,

34:23, 35:6, 35:16, 36:16
**compel** [5] - 7:15, 30:11, 61:5, 61:25, 64:25
**complete** [4] - 6:24, 24:15, 33:1, 67:6
**completely** [4] - 41:25, 32:19, 32:20, 33:13
**complexion** [1] - 31:25
**comply** [1] - 15:23
**comprehensive** [3] - 13:11, 14:4, 63:9
**comprehensively** [1] - 43:2
**concerned** [1] - 29:8
**concerning** [1] - 27:1
**conclusion** [1] - 15:19
**concurrence** [6] - 49:6, 50:12, 50:13, 50:23, 51:3, 52:2
**concurrent** [1] - 57:13
**concurrently** [6] - 9:24, 10:20, 11:19, 36:24, 57:4, 57:7
**conduct** [12] - 4:10, 4:12, 4:14, 10:23, 14:17, 42:6, 42:17, 53:16, 55:2, 55:4, 55:12, 59:16
**confer** [2] - 63:23, 64:6
**CONFERENCE** [1] - 1:10
**conference** [1] - 9:2
**confirm** [3] - 4:21, 5:17, 6:5
**confirming** [1] - 10:6
**congratulations** [1] - 43:6
**connected** [1] - 39:5
**connection** [2] - 54:16, 59:25
**consensus** [1] - 57:20
**consider** [11] - 6:23, 13:14, 14:11, 29:13, 29:14, 38:22, 43:3, 45:7, 51:1, 63:19, 64:25
**considerable** [1] - 41:8
**consideration** [6] - 10:21, 44:19, 53:9, 62:15, 65:8, 66:3

**considered** [2] - 34:15, 64:16
**considering** [3] - 23:12, 38:21, 56:9
**consistent** [1] - 41:14
**conspiracy** [3] - 5:21, 5:22, 6:2
**constitutes** [1] - 67:4
**Constitution** [2] - 2:3, 67:14
**constitutional** [1] - 4:11
**consult** [1] - 22:25
**contacts** [5] - 21:2, 34:20, 45:8, 45:24, 54:9
**contemplate** [2] - 9:23, 31:12
**contemplates** [2] - 57:22, 61:4
**contemplating** [1] - 53:11
**content** [3] - 14:12, 24:25, 41:2
**context** [3] - 14:12, 24:25, 41:2
**continue** [1] - 10:4, 17:10, 63:23, 64:5
**contrary** [1] - 33:13
**conversations** [4] - 20:23, 21:2, 46:10, 46:12
**conviction** [1] - 42:23
**cooperative** [1] - 30:18
**copy** [2] - 5:11, 6:6
**core** [1] - 51:15
**correct** [5] - 6:7, 6:12, 6:14, 6:19, 54:6
**cost** [2] - 45:16, 45:17
**counsel** [23] - 3:4, 3:8, 3:13, 5:9, 5:19, 8:25, 18:15, 18:18, 18:23, 19:1, 20:19, 22:22, 22:25, 25:9, 28:16, 30:18, 30:25, 32:1, 35:18, 41:10, 49:7, 56:23, 59:21
**counsel's** [4] - 11:7, 48:14, 48:20, 49:9
**count** [1] - 38:8
**Count** [1] - 5:22
**country** [1] - 27:12
**counts** [2] - 5:12, 6:14
**couple** [3] - 12:7, 48:15, 54:8

**course** [5] - 12:2, 12:5, 31:16, 35:4, 56:16

**court** [4] - 5:18, 15:4, 23:14, 33:15

**COURT** [115] - 1:1, 3:9, 3:16, 3:21, 6:9, 6:13, 6:16, 6:21, 11:1, 11:24, 13:16, 15:5, 15:25, 16:12, 16:21, 16:25, 17:6, 17:9, 17:19, 17:23, 18:25, 19:7, 19:19, 19:23, 20:3, 20:20, 21:5, 21:10, 21:18, 21:21, 22:11, 23:4, 23:11, 24:5, 24:8, 24:21, 25:5, 25:8, 25:21, 25:25, 26:14, 27:19, 28:7, 28:24, 29:1, 29:18, 30:7, 31:3, 31:6, 32:6, 32:8, 34:14, 36:5, 36:9, 36:21, 37:6, 37:12, 38:7, 38:13, 38:16, 39:12, 39:22, 41:3, 43:6, 43:18, 43:21, 43:23, 44:2, 44:18, 45:1, 45:4, 45:23, 46:16, 46:24, 47:24, 48:3, 49:14, 49:18, 49:25, 50:7, 50:21, 51:4, 51:9, 51:17, 52:13, 53:1, 53:3, 54:7, 54:21, 55:16, 56:18, 56:20, 57:3, 57:10, 57:20, 58:9, 58:18, 58:21, 59:3, 59:5, 60:3, 60:6, 61:1, 61:20, 61:23, 62:13, 62:21, 63:2, 63:22, 64:9, 64:23, 65:4, 65:25, 66:8, 66:10

**Court** [119] - 2:1, 2:2, 4:3, 4:9, 4:16, 5:5, 12:11, 12:13, 12:14, 12:16, 13:13, 13:14, 13:15, 14:1, 14:3, 14:11, 14:13, 14:16, 14:20, 15:1, 15:12, 15:16, 15:17, 15:20, 15:22, 15:23, 17:16, 18:13, 18:21, 19:16, 20:1, 20:7, 20:19, 20:21, 21:24, 22:7, 22:20, 22:23, 22:24, 23:18, 24:19, 24:20, 25:18, 26:8, 26:9, 26:17, 26:20, 26:22, 27:11, 29:8, 30:2, 31:1, 31:24, 32:5,

32:14, 32:24, 33:17, 33:18, 34:1, 34:9, 34:11, 34:12, 34:14, 35:5, 35:22, 35:25, 36:20, 38:3, 38:12, 39:1, 39:8, 39:25, 40:20, 41:11, 41:17, 41:25, 42:1, 42:3, 42:4, 42:10, 42:24, 43:3, 43:13, 44:1, 44:4, 44:7, 44:8, 45:17, 45:21, 46:3, 46:23, 47:9, 47:11, 48:3, 48:5, 49:22, 50:15, 50:20, 50:23, 50:25, 52:8, 54:13, 54:20, 55:1, 55:5, 55:8, 55:10, 55:25, 56:17, 56:25, 57:17, 60:25, 64:12, 64:22, 67:12, 67:13

**Court's** [13] - 7:11, 10:12, 16:7, 17:4, 23:14, 25:13, 26:15, 35:2, 35:3, 39:16, 40:18, 43:9, 50:9

**courthouse** [1] - 51:22

**COURTROOM** [2] - 3:1, 16:24

**courts** [4] - 24:8, 24:9, 29:15

**covering** [1] - 42:25

**craters** [1] - 35:21

**create** [2] - 15:2, 33:1

**created** [1] - 12:12

**credible** [1] - 52:20

**criminal** [9] - 4:8, 5:7, 18:16, 30:21, 31:15, 38:9, 42:21, 42:23, 46:22

**Criminal** [4] - 1:3, 3:2, 5:9, 33:13

**critical** [1] - 49:21

**cross** [5] - 24:2, 24:4, 25:6, 27:16, 28:11

**cross-examine** [4] - 24:2, 24:4, 27:16, 28:11

**CRR** [3] - 2:1, 67:3, 67:12

**crystal** [1] - 35:5

**D**

**D.C** [13] - 1:6, 1:16, 2:3, 48:21, 49:3,

50:12, 50:24, 51:13, 51:21, 52:4, 52:21, 55:9, 67:14

**danger** [1] - 44:12

**data** [1] - 42:19

**date** [8] - 9:3, 16:7, 16:22, 17:3, 31:11, 31:12, 65:12, 65:19

**Dated** [1] - 67:10

**days** [11] - 8:14, 8:18, 8:21, 16:4, 37:21, 40:1, 40:2, 42:24, 43:1

**deadline** [10] - 52:8, 52:12, 52:14, 52:15, 53:4, 53:5, 59:12, 62:17, 62:23, 63:5

**deadlines** [11] - 7:22, 8:7, 8:9, 8:11, 9:6, 9:12, 10:8, 30:10, 36:25, 50:5

**deal** [11] - 18:14, 26:9, 26:12, 30:15, 33:25, 34:11, 35:25, 38:12, 41:10, 65:2, 65:5

**dealing** [2] - 22:15, 36:19

**deals** [1] - 25:14

**dealt** [3] - 26:19, 37:15, 39:3

**December** [4] - 4:5, 11:6, 11:9, 26:24

**decide** [21] - 15:17, 19:25, 20:16, 20:25, 21:5, 21:7, 24:12, 32:21, 33:11, 34:4, 35:18, 41:11, 44:16, 45:14, 45:18, 47:9, 47:16, 47:20, 51:12, 57:18

**decided** [20] - 4:9, 19:16, 19:20, 20:2, 20:17, 20:18, 20:22, 21:24, 21:25, 22:20, 27:7, 27:13, 35:6, 39:7, 45:18, 46:23, 49:22, 49:23, 55:20, 57:17

**decides** [7] - 26:8, 34:4, 35:20, 36:15, 44:21, 45:20, 54:14

**decision** [17] - 7:11, 22:24, 24:20, 25:18, 26:15, 31:1, 32:15, 35:3, 35:22, 38:3, 38:22, 46:3, 49:3, 49:9, 50:9, 50:20, 54:13

**decisions** [4] - 4:16,

23:14, 23:21, 39:9

**Defendant** [4] - 1:7, 42:20, 42:21, 52:11

**DEFENDANT** [1] - 1:18

**Defendant's** [5] - 7:6, 7:12, 7:15, 7:19, 8:24

**Defendants** [1] - 51:22

**defending** [1] - 11:25

**defense** [31] - 5:19, 6:16, 9:1, 10:16, 11:1, 11:9, 12:3, 12:4, 12:9, 14:25, 17:12, 24:14, 39:19, 40:3, 40:11, 40:16, 41:10, 41:13, 41:21, 41:24, 43:2, 46:25, 48:13, 48:19, 52:17, 53:7, 63:14, 63:18, 63:25, 64:12, 64:18

**defense's** [4] - 13:2, 39:18, 48:9, 62:23

**deferred** [1] - 55:24

**deferring** [1] - 10:21

**definitely** [1] - 29:18

**defraud** [1] - 5:21

**delay** [1] - 40:10

**deliberative** [1] - 33:24

**deliberatively** [2] - 18:14, 26:10

**demand** [1] - 40:12

**demands** [1] - 26:17

**denial** [1] - 59:6

**denied** [3] - 7:8, 7:14, 55:23

**denies** [1] - 18:18

**denying** [2] - 4:7, 31:20

**depart** [2] - 12:5, 18:6

**DEPUTY** [2] - 3:1, 16:24

**described** [1] - 39:1

**description** [1] - 13:11

**desire** [1] - 38:17

**details** [2] - 6:5, 9:25

**determination** [6] - 22:17, 27:8, 28:15, 40:11, 52:6, 55:14

**determinations** [11] - 10:11, 13:4, 13:15, 14:14, 15:3, 15:4, 15:18, 40:18, 43:12, 55:1, 57:14

**determine** [2] - 24:25, 41:17

**developed** [2] - 33:20, 34:3

**deviations** [1] - 58:24

**device** [1] - 18:15

**devices** [1] - 3:23

**dicta** [3] - 50:11, 50:13, 50:22

**differ** [1] - 9:17

**different** [9] - 11:2, 11:3, 13:3, 22:12, 23:12, 23:18, 27:21, 43:13, 45:21

**dire** [1] - 8:23

**direct** [1] - 62:9

**directed** [3] - 51:2, 51:4, 55:25

**directing** [1] - 47:15

**directly** [1] - 32:23

**disagree** [1] - 19:19

**disclosed** [2] - 59:23, 60:1

**disclosures** [6] - 8:14, 11:5, 59:13, 62:24, 62:25, 63:13

**discovery** [52] - 7:16, 7:19, 9:22, 11:12, 18:20, 18:22, 19:3, 19:11, 25:16, 27:2, 30:3, 30:8, 30:19, 30:20, 37:5, 37:8, 37:10, 37:18, 37:19, 37:22, 37:23, 39:20, 39:21, 39:24, 40:6, 40:12, 40:14, 41:12, 48:9, 59:11, 59:19, 60:10, 60:18, 60:19, 60:22, 60:24, 61:2, 61:5, 61:14, 61:16, 61:24, 63:10, 63:11, 63:20, 63:24, 64:8, 64:11, 64:19, 65:5

**discovery-related** [1] - 61:24

**discretion** [5] - 15:12, 16:7, 17:4, 43:10, 43:15

**discuss** [8] - 4:22, 14:3, 15:8, 18:23, 19:3, 29:1, 62:20, 63:23

**discussed** [3] - 32:10, 59:10, 59:20

**discusses** [1] - 41:1

**discussion** [3] - 13:11, 15:20, 19:8

**discussions** [2] - 21:14, 44:24

**disentangle** [1] - 64:15

**dismiss** [37] - 7:6, 11:7, 11:10, 11:11, 12:1, 12:9, 17:25, 23:8, 23:15, 24:5, 24:22, 25:19, 26:3, 29:25, 30:12, 33:12, 34:10, 35:1, 35:2, 36:24, 40:15, 48:9, 53:12, 53:14, 53:15, 55:3, 55:7, 55:17, 55:18, 56:21, 58:3, 58:6, 58:25, 61:8, 61:17, 61:18, 61:22
**dismissal** [5] - 9:22, 42:7, 53:8, 55:15, 56:9
**dismissed** [5] - 34:7, 53:19, 54:19, 55:11, 56:2
**dismissing** [1] - 49:9
**dispositive** [1] - 48:17
**disprove** [1] - 59:16
**dispute** [1] - 29:19
**disputes** [2] - 9:22, 29:16
**disputing** [1] - 31:21
**District** [7] - 2:2, 2:2, 42:4, 44:8, 49:8, 49:24, 67:13
**district** [4] - 33:14, 50:15, 50:22, 67:13
**DISTRICT** [4] - 1:1, 1:1, 1:11, 1:15
**Docket** [4] - 7:7, 7:13, 7:17, 7:25
**docket** [1] - 15:3
**docketed** [1] - 5:5
**documentary** [1] - 14:10
**documentation** [1] - 27:1
**documents** [5] - 28:18, 30:5, 37:17, 60:16, 64:11
**Donald** [1] - 3:3
**DONALD** [1] - 1:6
**done** [3] - 33:23, 41:24, 63:21
**door** [1] - 52:3
**down** [4] - 11:20, 15:19, 48:10, 58:21
**draft** [1] - 65:8
**drafted** [1] - 55:22
**drawn** [2] - 29:16, 29:18
**due** [15] - 8:14, 8:15, 8:16, 8:17, 8:18, 8:19, 8:20, 8:21, 8:24, 10:4, 27:14, 27:22, 48:18

**during** [12] - 3:25, 5:15, 8:5, 9:8, 9:10, 11:9, 19:8, 28:21, 29:21, 32:16, 39:24, 62:14
**duties** [1] - 21:3

### E

**early** [2] - 26:19, 52:9
**ECF** [3] - 5:5, 5:12, 6:3
**EDWARDS** [2] - 2:1, 67:3
**Edwards** [1] - 67:12
**effect** [2] - 40:23, 51:1
**efficient** [2] - 12:14, 15:14
**either** [2] - 14:9, 17:17
**election** [9] - 29:3, 29:5, 29:6, 29:9, 29:12, 29:16, 29:19, 31:18, 38:21
**electoral** [2] - 29:4, 29:8
**electronic** [1] - 3:23
**eliminate** [1] - 29:23
**Emil** [1] - 3:14
**EMIL** [1] - 1:22
**end** [4] - 11:4, 16:25, 17:6, 45:18
**engage** [2] - 45:15, 61:21
**enjoy** [1] - 3:21
**enormous** [1] - 60:17
**enormously** [1] - 18:11
**ensure** [1] - 42:5
**enter** [1] - 10:6
**entering** [1] - 6:13
**entire** [10] - 20:15, 22:5, 22:6, 42:25, 44:22, 44:24, 45:24, 46:12, 53:18, 54:17, 54:18
**entitled** [6] - 19:12, 25:16, 26:5, 30:1, 38:6, 44:3
**envelope** [2] - 33:22, 33:23
**ESQ** [6] - 1:14, 1:14, 1:18, 1:18, 1:21, 1:22
**evidence** [22] - 10:14, 13:18, 13:21, 15:6, 15:8, 24:13, 25:4, 37:4, 38:20,

53:9, 53:13, 53:21, 53:22, 53:23, 54:9, 54:16, 59:15, 61:5, 61:11, 63:3, 64:2, 64:3
**evidentiary** [18] - 11:5, 18:19, 20:17, 21:19, 22:3, 22:18, 22:19, 22:21, 22:23, 23:22, 24:6, 24:10, 25:2, 29:12, 34:2, 38:18, 62:24
**exactly** [14] - 11:18, 20:19, 30:25, 32:5, 32:9, 33:16, 34:10, 36:19, 38:23, 40:7, 40:8, 47:5, 47:8, 47:15
**examine** [4] - 24:2, 24:4, 27:16, 28:11
**exchange** [2] - 8:17, 9:4
**excluding** [1] - 10:7
**exclusive** [1] - 4:11
**exculpatory** [2] - 28:19, 63:3
**excuse** [1] - 30:7
**Executive** [1] - 44:13
**exercise** [1] - 65:18
**exhibit** [1] - 8:17
**exhibits** [6] - 14:8, 14:10, 16:17, 24:10, 40:4
**existing** [1] - 20:23
**exonerative** [2] - 32:23, 59:24
**expect** [2] - 37:21, 40:25
**expects** [1] - 26:15
**expert** [2] - 8:12, 8:13
**expired** [1] - 50:8
**explaining** [1] - 10:12
**explicitly** [1] - 55:25
**exposed** [2] - 10:23, 40:22, 53:22, 55:4
**exposure** [2] - 53:12, 55:11
**expressly** [1] - 10:7
**extend** [2] - 45:12, 45:13
**extending** [1] - 52:8
**extent** [5] - 43:13, 59:22, 63:18, 64:19, 64:21
**extremely** [1] - 63:9
**eye** [1] - 60:23

### F

**fact** [14] - 13:14, 18:3, 18:8, 20:12, 20:14, 22:4, 30:4, 30:19, 32:11, 37:22, 40:18, 40:19, 54:15, 61:21
**fact-bound** [2] - 13:14, 40:19
**fact-finding** [1] - 61:21
**factor** [1] - 38:22
**facts** [4] - 13:12, 14:5, 14:15, 21:1
**factual** [2] - 26:13, 28:10
**fails** [1] - 22:5
**fair** [3] - 24:1, 25:16, 32:4
**fairness** [3] - 19:12, 30:22, 38:4
**faith** [2] - 30:15, 61:15
**fall** [3] - 25:23, 26:2, 26:7
**falls** [2] - 47:17, 54:10
**far** [3] - 56:20, 58:10, 64:1
**fashion** [1] - 26:11
**FBI** [2] - 3:8, 33:5
**federal** [3] - 5:4, 18:4, 30:1
**Federal** [1] - 5:8
**few** [2] - 16:4, 37:1
**Fifth** [1] - 27:15
**fifty** [1] - 42:25
**fifty-two** [1] - 42:25
**figure** [1] - 19:23
**file** [28] - 10:16, 10:18, 11:10, 12:9, 16:1, 27:5, 27:25, 28:1, 41:16, 45:4, 46:25, 48:19, 49:2, 50:11, 50:17, 50:19, 51:11, 51:14, 52:12, 52:17, 52:18, 53:6, 58:3, 58:7, 58:17, 64:18, 64:22, 64:24
**filed** [10] - 4:22, 5:9, 7:20, 8:1, 12:3, 42:22, 50:14, 51:20, 52:14, 61:25
**filing** [13] - 10:8, 10:11, 11:24, 12:23, 13:10, 17:24, 18:4, 27:2, 27:22, 36:24, 41:15, 53:12, 57:22

**filings** [1] - 8:9
**final** [3] - 43:5, 43:7, 59:10
**finalize** [1] - 4:24
**finally** [1] - 65:9
**findings** [1] - 34:22
**fine** [2] - 43:18, 62:18
**finish** [2] - 31:6, 60:3
**firm** [2] - 3:13, 3:15
**first** [36] - 4:20, 7:6, 11:14, 11:17, 12:8, 12:22, 14:23, 17:15, 23:8, 25:12, 25:14, 25:17, 26:12, 26:25, 28:3, 32:8, 34:1, 34:12, 36:19, 37:3, 39:19, 40:14, 41:16, 41:22, 44:8, 44:15, 48:14, 48:17, 48:23, 49:1, 53:20, 54:25, 55:6, 55:14, 56:25
**Fischer** [6] - 56:16, 57:21, 57:23, 58:4, 58:12, 59:1
**fits** [1] - 11:15
**five** [2] - 8:14, 39:17
**Floor** [1] - 1:20
**Florida** [4] - 1:20, 49:9, 49:24, 50:22
**focus** [2] - 54:6, 59:21
**focused** [2] - 54:3, 59:18
**follow** [5] - 18:5, 24:20, 46:22, 46:23, 48:1
**followup** [2] - 37:9, 62:22
**FOR** [4] - 1:1, 1:14, 1:15, 1:18
**foreclose** [1] - 52:21
**foregoing** [1] - 67:4
**form** [7] - 13:22, 13:23, 14:8, 14:12, 15:12, 41:2, 41:18
**formal** [2] - 5:24, 6:17
**former** [7] - 34:17, 45:7, 45:25, 47:3, 49:20, 53:16, 54:9
**forth** [3] - 14:4, 14:16, 34:16
**forthwith** [1] - 26:16
**forward** [11] - 4:23, 7:2, 9:14, 12:15, 15:15, 17:14, 31:17, 39:2, 39:10, 40:25, 56:6
**four** [6] - 5:6, 5:12,

5:20, 6:14, 8:18, 38:8
  **four-count** [1] - 38:8
  **fourth** [2] - 7:24,
42:9
  **frame** [2] - 58:1,
61:17
  **framing** [1] - 42:17
  **frankly** [1] - 50:15
  **frequently** [1] - 18:7
  **fresh** [1] - 60:18
  **front** [1] - 34:16
  **fulfill** [1] - 60:5
  **fulfilled** [1] - 63:21
  **full** [12] - 6:17, 22:2,
22:23, 23:21, 24:1,
24:24, 25:2, 25:16,
32:3, 33:1, 42:15,
67:5
  **fully** [1] - 55:19,
56:8, 62:3
  **function** [2] - 20:11,
44:13
  **functions** [1] - 21:15
  **fundamental** [2] -
33:14, 49:19
  **fundamentally** [2] -
49:12, 51:13
  **funding** [3] - 11:8,
48:14, 48:20
  **futility** [1] - 65:18

## G

  **Garman** [1] - 3:8
  **GASTON** [1] - 1:14
  **Gaston** [1] - 3:7
  **gateway** [6] - 20:16,
34:12, 36:19, 45:18,
47:6, 47:8
  **gather** [1] - 32:13
  **general** [3] - 53:13,
53:15, 64:11
  **generally** [2] - 10:19,
57:12
  **get-go** [1] - 22:16
  **Giglio** [1] - 63:12
  **given** [4] - 19:4,
43:15, 61:8, 62:15
  **governing** [1] - 9:9
  **Government** [33] -
3:4, 10:10, 10:14,
10:18, 10:19, 11:4,
11:24, 12:4, 16:1,
20:7, 21:1, 21:16,
23:8, 23:20, 25:4,
27:4, 27:13, 27:22,
27:25, 30:14, 33:7,
33:10, 36:23, 40:13,
41:13, 45:4, 52:7,

59:13, 60:5, 60:7,
60:13, 60:17, 66:7
  **GOVERNMENT** [1] -
1:14
  **Government's** [6] -
7:24, 13:17, 17:24,
23:5, 23:17, 65:14
  **grand** [19] - 5:4,
10:22, 14:9, 23:24,
32:22, 33:2, 33:6,
33:7, 40:3, 40:21,
40:24, 42:14, 53:8,
53:12, 53:21, 53:22,
54:1, 54:16, 55:3
  **grave** [3] - 39:2,
39:10, 43:24
  **great** [2] - 27:12,
38:12
  **Greg** [1] - 3:13
  **GREGORY** [1] - 1:18
  **ground** [1] - 9:18
  **grounds** [5] - 7:7,
9:21, 42:23, 55:18,
58:25
  **guess** [2] - 12:7,
53:20
  **guidance** [1] - 22:22
  **guided** [2] - 20:18,
35:18
  **guiding** [2] - 12:24,
12:25
  **guilty** [2] - 5:12, 6:14
  **gum** [1] - 19:9

## H

  **handle** [1] - 57:2
  **handled** [1] - 13:4
  **hanging** [1] - 62:5
  **happy** [3] - 17:17,
43:17, 63:19
  **hard** [1] - 52:7
  **hardly** [1] - 31:6
  **haste** [1] - 42:9
  **head** [1] - 18:16
  **hear** [5] - 4:25,
24:13, 26:4, 48:8,
48:25
  **heard** [1] - 39:13
  **hearing** [15] - 3:25,
4:20, 4:25, 5:15, 6:18,
15:22, 20:18, 22:3,
22:19, 22:21, 22:23,
23:22, 24:6, 24:22,
25:3
  **heavily** [1] - 46:11
  **held** [3] - 4:10, 46:7,
49:4
  **hereby** [1] - 67:3

**hidden** [1] - 32:24
  **high** [2] - 35:12,
35:17
  **hinges** [1] - 45:24
  **historic** [1] - 23:2
  **history** [1] - 28:6
  **hold** [2] - 24:8, 34:21
  **Honor** [74] - 3:1, 3:6,
3:10, 3:18, 6:8, 15:10,
17:11, 20:16, 21:8,
21:12, 22:1, 22:14,
22:16, 22:24, 23:21,
24:24, 25:11, 26:1,
27:6, 28:13, 30:22,
33:25, 34:4, 35:17,
35:20, 36:3, 36:15,
36:19, 37:8, 37:16,
39:4, 39:16, 40:1,
42:20, 43:5, 43:7,
43:19, 43:20, 43:22,
43:25, 44:4, 44:16,
44:21, 45:17, 45:20,
46:8, 46:21, 47:5,
47:9, 47:16, 50:2,
50:19, 51:19, 52:22,
53:2, 53:24, 54:6,
54:12, 54:14, 54:22,
55:16, 57:2, 57:9,
57:11, 58:5, 59:18,
62:7, 62:18, 64:7,
65:3, 65:23, 66:7,
66:9
  **honor** [1] - 25:13
  **Honor's** [4] - 26:3,
27:8, 51:12, 62:9
  **HONORABLE** [1] -
1:10
  **hope** [1] - 60:20
  **hopefully** [1] - 30:14
  **hoping** [1] - 5:2
  **hours** [2] - 37:18
  **hunter** [1] - 26:18

## I

  **identify** [1] - 9:19
  **ignore** [1] - 28:8
  **illegitimacy** [1] -
46:15
  **illegitimate** [6] -
20:15, 22:15, 46:17,
46:18, 46:19, 47:22
  **illusion** [1] - 31:10
  **imagine** [1] - 18:12
  **immediately** [4] -
40:11, 32:22, 33:4,
51:3
  **immune** [25] - 4:11,
4:13, 20:3, 20:14,

21:16, 21:25, 22:5,
22:6, 22:8, 34:6,
35:20, 36:16, 42:2,
44:22, 46:7, 46:10,
46:11, 47:19, 53:22,
54:15, 54:16, 55:2,
55:4
  **immunity** [73] - 4:4,
4:7, 4:15, 7:3, 9:10,
9:21, 10:11, 10:17,
10:20, 11:5, 11:10,
11:14, 11:17, 12:21,
13:4, 14:18, 14:21,
14:22, 16:2, 17:17,
17:21, 19:4, 20:1,
20:9, 20:24, 26:14,
26:16, 26:18, 26:20,
26:24, 30:9, 30:10,
30:11, 31:8, 34:9,
35:12, 38:11, 40:10,
44:19, 45:9, 45:24,
50:10, 52:6, 53:14,
53:15, 53:17, 54:18,
54:24, 55:1, 55:5,
55:14, 56:8, 56:24,
57:5, 57:13, 57:16,
59:8, 59:14, 59:19,
59:23, 60:14, 60:23,
61:6, 61:7, 61:12,
62:9, 62:10, 62:24,
63:17, 64:21, 65:5,
65:16
  **immunity-based** [1]
- 62:24
  **immunity-related** [1]
- 30:10
  **immunized** [6] -
10:23, 35:23, 40:22,
46:4, 53:9, 53:13
  **impending** [1] - 29:3
  **impinge** [1] - 38:20
  **important** [6] -
20:10, 27:11, 32:22,
33:19, 39:11, 57:16
  **importantly** [1] -
46:23
  **impossible** [1] -
40:20
  **improper** [1] - 20:15
  **inappropriate** [1] -
40:10
  **inclined** [1] - 59:5
  **include** [6] - 12:17,
12:19, 13:17, 14:6,
53:5, 58:13
  **included** [1] - 8:8
  **includes** [4] - 33:5,
33:6, 40:24
  **including** [1] - 9:21
  **incredibly** [6] - 25:3,

28:4, 28:19, 35:12,
35:17, 38:2
  **indeterminate** [1] -
40:12
  **indicate** [1] - 16:1
  **indicated** [1] - 5:15
  **indict** [1] - 49:20
  **indictment** [70] -
4:22, 5:4, 5:6, 5:11,
5:20, 6:7, 6:10, 6:17,
6:23, 7:9, 10:13,
10:22, 11:25, 12:16,
12:17, 12:19, 14:6,
14:19, 20:14, 20:15,
20:21, 22:5, 22:6,
22:9, 22:15, 22:18,
26:3, 31:22, 34:6,
34:16, 34:19, 34:24,
35:1, 35:2, 35:21,
35:23, 38:9, 40:2,
40:5, 40:17, 41:1,
42:2, 42:7, 42:11,
42:13, 42:15, 44:22,
44:24, 45:10, 45:24,
46:5, 46:13, 46:18,
46:20, 47:21, 52:24,
53:18, 54:10, 54:17,
54:18, 55:3, 55:10,
56:1, 56:5, 56:12,
58:1, 58:14, 58:16,
58:18, 64:1
  **indictment's** [2] -
42:5, 61:9
  **indulgence** [1] -
39:17
  **inequitable** [1] -
27:17
  **infected** [1] - 54:17
  **influence** [1] - 44:10
  **information** [26] -
12:17, 12:20, 15:18,
17:14, 19:16, 21:24,
22:7, 22:8, 24:3, 27:3,
27:5, 28:13, 32:22,
34:5, 40:21, 40:22,
40:24, 40:25, 41:3,
41:22, 42:17, 44:23,
54:1, 60:14, 63:16,
65:10
  **Information** [1] - 8:4
  **inherent** [3] - 29:16,
43:10, 43:15
  **inherently** [4] -
27:17, 27:22, 28:2,
29:21
  **initial** [8] - 13:25,
20:2, 20:6, 21:23,
22:16, 34:9, 47:10,
47:20
  **input** [1] - 44:9

73

instance [2] - 44:8, 44:15
instructed [1] - 48:4
instructions [3] - 4:17, 8:23, 48:1
instrument [1] - 22:9
intact [1] - 22:18
intend [6] - 4:24, 4:25, 5:1, 33:9, 64:19, 64:25
intended [1] - 8:25
intends [2] - 10:14, 64:18
interest [1] - 49:22
interlocutory [5] - 4:6, 13:2, 13:3, 13:6, 57:15
interview [2] - 14:9, 23:25
intrusion [3] - 20:10, 35:14, 44:13
involve [1] - 42:16
involving [3] - 14:19, 44:10, 53:16
irregular [2] - 18:1, 18:9
issuance [1] - 4:19
issue [4] - 4:4, 5:1, 11:15, 11:17, 20:7, 20:16, 21:25, 22:4, 22:20, 22:22, 23:3, 26:7, 26:14, 26:16, 28:12, 35:10, 35:18, 36:19, 41:20, 41:23, 45:11, 45:14, 45:18, 47:6, 47:8, 47:17, 47:23, 49:13, 49:15, 49:16, 49:21, 49:23, 50:3, 50:13, 51:1, 51:2, 51:8, 51:13, 52:1, 52:4, 52:9, 54:4, 56:16, 59:23, 60:10, 62:19, 65:16, 66:3
issued [1] - 55:21
issues [78] - 9:19, 9:23, 11:2, 11:12, 13:13, 18:13, 18:19, 18:22, 19:14, 25:1, 25:12, 25:14, 25:15, 26:8, 26:10, 26:12, 26:13, 27:1, 27:6, 27:11, 27:20, 29:11, 29:12, 29:24, 30:4, 30:14, 30:16, 30:20, 31:13, 31:23, 33:19, 34:1, 34:2, 34:12, 36:1, 36:4, 37:4, 37:5, 37:11, 37:12, 37:14, 37:19, 37:22, 38:1, 38:5, 39:2, 39:6,

39:11, 40:7, 40:12, 44:20, 46:19, 47:8, 48:9, 54:5, 55:5, 57:1, 57:15, 58:6, 58:9, 59:8, 59:10, 59:21, 60:13, 60:23, 60:24, 62:8, 62:10, 62:12, 63:24, 64:6, 64:20, 65:5, 65:11
it'll [2] - 39:10, 61:16
items [1] - 47:18
itself [5] - 13:22, 18:9, 30:12, 61:7, 65:12

**J**

Jack [2] - 49:20, 51:15
Jamie [1] - 3:8
January [1] - 11:9
Jencks [1] - 63:12
John [1] - 3:12
JOHN [1] - 1:18
joint [4] - 7:2, 15:25, 59:11, 65:10
JUDGE [1] - 1:11
Judge [1] - 19:24
judgment [4] - 30:24, 31:2, 31:14, 32:5
July [2] - 4:9, 42:20
jurisdiction [2] - 4:18, 55:23
jurisdictional [4] - 49:13, 49:15, 49:16, 50:3
jurisprudence [1] - 33:23
jury [19] - 5:4, 8:23, 10:22, 14:9, 23:24, 32:22, 33:2, 33:6, 33:7, 40:3, 40:21, 40:24, 42:14, 53:12, 53:21, 53:22, 54:1, 54:16, 55:3
jury's [1] - 53:8
Justice [4] - 49:5, 49:22, 50:14, 51:1
justice's [1] - 52:2

**K**

keep [1] - 58:18
kind [6] - 22:25, 23:1, 33:16, 55:13, 59:24, 61:21

kinds [1] - 34:20
knows [2] - 12:16, 60:8

**L**

lack [1] - 20:9
landscape [1] - 14:25
largely [2] - 9:19, 42:12
last [3] - 4:22, 40:2, 42:12
lasts [1] - 3:21
latter [1] - 46:2
Lauro [20] - 3:12, 3:17, 6:4, 17:23, 19:20, 20:20, 32:6, 34:15, 38:13, 46:24, 47:25, 48:12, 51:20, 53:10, 54:25, 56:14, 57:22, 59:12, 64:24, 66:8
LAURO [91] - 1:18, 1:19, 3:10, 3:18, 6:8, 6:12, 6:15, 6:20, 18:11, 19:6, 19:10, 19:22, 19:24, 20:4, 21:4, 21:8, 21:12, 21:20, 21:23, 22:14, 23:7, 23:20, 24:7, 24:19, 24:23, 25:7, 25:10, 25:24, 26:1, 26:25, 28:4, 28:8, 28:25, 29:14, 29:20, 30:13, 31:5, 31:20, 32:7, 32:19, 35:4, 36:6, 36:11, 37:3, 37:7, 37:16, 38:10, 38:14, 38:23, 43:20, 43:22, 43:25, 44:3, 44:21, 45:3, 45:13, 46:2, 46:17, 47:5, 48:2, 49:2, 49:17, 49:19, 50:1, 50:19, 50:25, 51:5, 51:11, 52:22, 53:2, 53:24, 54:12, 56:15, 56:19, 56:22, 57:8, 58:5, 58:16, 58:20, 58:23, 59:4, 59:18, 60:4, 60:12, 61:13, 61:22, 62:7, 62:18, 65:3, 65:23, 66:9
Lauro's [1] - 43:16
law [8] - 3:15, 12:12, 20:18, 21:6, 21:7, 22:1, 35:1, 35:8
LAW [1] - 1:22
lay [1] - 14:1

lead [1] - 3:13
leading [1] - 51:12
leads [1] - 13:1
leapfrog [2] - 36:4, 36:12
least [8] - 9:23, 10:1, 27:6, 28:15, 51:14, 55:25, 56:7, 63:15
leave [8] - 16:6, 17:3, 28:1, 41:16, 52:18, 52:19, 53:6, 64:22
leave-to-file [1] - 53:6
leaving [1] - 62:5
legal [19] - 21:21, 23:1, 23:2, 25:14, 25:15, 26:12, 26:14, 27:7, 29:11, 29:17, 33:20, 34:1, 35:18, 36:4, 41:23, 44:5, 46:19, 47:7, 47:17
legally [1] - 61:19
legitimacy [2] - 22:17, 51:15
legitimate [1] - 47:21
less [1] - 58:22
lie [1] - 64:3
life [1] - 3:18
light [13] - 23:17, 25:18, 30:4, 35:15, 38:3, 49:12, 49:22, 49:23, 50:6, 51:3, 56:11, 57:23, 59:2
limine [3] - 7:24, 8:20, 65:14
limit [1] - 13:6
limited [1] - 47:2
linchpin [1] - 57:5
line [5] - 31:7, 41:24, 41:25, 42:3, 55:8
Lisa [1] - 67:12
LISA [2] - 2:1, 67:3
list [2] - 8:10, 9:3
lists [1] - 8:17
literally [1] - 47:11
litigating [1] - 37:20
litigation [5] - 9:11, 12:18, 12:21, 45:16, 62:14
live [1] - 24:13
load [1] - 28:9
local [1] - 18:4
logical [1] - 35:25
lone [1] - 52:2
look [18] - 3:17, 11:21, 13:9, 13:20, 22:24, 23:13, 27:23, 30:3, 30:6, 34:11, 37:25, 45:6, 47:12, 60:13, 60:18, 60:22,

61:10, 61:16
Look [1] - 45:5
looked [5] - 18:20, 40:24, 53:25, 60:15, 63:3
looking [1] - 54:2
looks [1] - 15:1
looming [1] - 31:12
lose [1] - 46:9
lower [1] - 23:14

**M**

ma'am [7] - 10:25, 11:23, 17:8, 39:23, 63:1, 63:5, 65:24
magnitude [1] - 27:12
main [2] - 11:13, 54:6
major [1] - 19:15
mandate [2] - 4:19, 10:7
mandatory [2] - 7:21, 59:13
material [6] - 41:15, 46:7, 58:24, 59:22, 59:24
matter [16] - 20:2, 20:6, 20:18, 21:6, 21:7, 21:10, 21:23, 22:1, 26:21, 28:2, 34:9, 35:1, 46:5, 47:10, 47:20
matters [3] - 48:10, 57:7, 65:15
mean [16] - 13:21, 16:21, 18:3, 18:4, 19:8, 24:16, 26:15, 47:12, 49:16, 51:13, 58:10, 58:11, 60:6, 62:3, 65:18
meaningless [1] - 3:19
means [1] - 54:17
mechanics [1] - 53:11
meet [4] - 27:15, 28:10, 63:23, 64:6
mention [1] - 44:6
mentioned [2] - 13:18, 55:19
mentions [1] - 13:16
merits [5] - 22:19, 34:2, 34:8, 36:12, 47:18
merits-based [1] - 36:12
met [1] - 63:11

**might** [1] - 16:13
**Miller** [1] - 49:3
**million** [3] - 30:5,
37:17, 60:16
**mind** [1] - 45:21
**minute** [1] - 5:14
**mischaracterized** [1]
- 39:4
**Molly** [1] - 3:7
**MOLLY** [1] - 1:14
**moment** [1] - 9:25
**momentous** [1] -
38:5
**months** [7] - 9:20,
32:15, 36:18, 42:11,
45:16
**morning** [5] - 3:1,
3:6, 3:9, 3:10, 3:16
**most** [8] - 12:14,
15:14, 28:13, 46:22,
50:5, 56:13, 57:16
**motion** [75] - 7:6,
7:8, 7:12, 7:14, 7:24,
8:1, 8:2, 10:21, 11:7,
11:10, 11:11, 12:1,
12:9, 17:21, 17:25,
23:12, 23:15, 23:19,
24:22, 25:19, 25:20,
26:4, 29:25, 30:11,
31:18, 40:15, 41:16,
42:22, 43:11, 48:13,
48:16, 48:19, 48:24,
50:18, 50:20, 51:11,
51:14, 51:21, 52:12,
52:14, 52:17, 52:18,
52:21, 52:25, 53:12,
53:14, 53:15, 53:21,
55:7, 55:17, 55:18,
55:19, 55:23, 56:2,
56:8, 56:10, 56:20,
57:23, 58:3, 58:6,
58:15, 58:17, 59:6,
61:5, 61:7, 61:12,
61:17, 61:18, 61:22,
61:25, 62:1, 64:25,
65:14
**motions** [25] - 7:5,
7:15, 7:20, 8:3, 8:20,
10:5, 10:9, 10:20,
17:17, 17:20, 18:5,
24:5, 24:9, 25:22,
30:11, 36:24, 47:1,
48:9, 48:17, 54:24,
61:2, 61:8, 61:24,
64:8, 64:19
**move** [7] - 9:14,
23:7, 32:2, 33:12,
43:2, 56:6, 58:25
**moving** [1] - 7:2
**MR** [116] - 3:6, 3:10,

3:18, 6:8, 6:12, 6:15,
6:20, 10:25, 11:23,
12:7, 13:24, 15:10,
16:5, 16:14, 17:2,
17:8, 17:11, 17:22,
18:11, 19:6, 19:10,
19:22, 19:24, 20:4,
21:4, 21:8, 21:12,
21:20, 21:23, 22:14,
23:7, 23:20, 24:7,
24:19, 24:23, 25:7,
25:10, 25:24, 26:1,
26:25, 28:4, 28:8,
28:25, 29:14, 29:20,
30:13, 31:5, 31:20,
32:7, 32:19, 35:4,
36:6, 36:11, 37:3,
37:7, 37:16, 38:10,
38:14, 38:23, 39:16,
39:23, 41:5, 43:7,
43:19, 43:20, 43:22,
43:25, 44:3, 44:21,
45:3, 45:13, 46:2,
46:17, 47:5, 48:2,
49:2, 49:17, 49:19,
50:1, 50:19, 50:25,
51:5, 51:11, 51:19,
52:22, 53:2, 53:24,
54:12, 54:22, 56:15,
56:19, 56:22, 57:8,
57:11, 58:5, 58:16,
58:20, 58:23, 59:4,
59:18, 60:4, 60:12,
61:13, 61:22, 62:7,
62:18, 63:1, 63:5,
64:7, 64:10, 65:3,
65:23, 65:24, 66:7,
66:9, 66:11
**must** [4] - 42:2, 42:4,
55:1, 64:16

# N

**nail** [1] - 11:20
**narrowed** [1] - 7:10
**nation's** [1] - 28:6
**nature** [2] - 14:10,
14:17
**necessary** [3] - 22:2,
35:19, 61:17
**need** [33] - 3:23,
9:20, 15:8, 19:12,
22:2, 24:13, 24:24,
26:2, 30:7, 30:8,
30:19, 32:11, 33:19,
34:3, 37:8, 37:9,
37:11, 39:7, 43:23,
45:6, 58:15, 60:22,
60:24, 61:10, 61:21,
62:20, 63:16, 63:20,

64:4, 64:21, 66:5
**needed** [1] - 7:10
**needs** [17] - 13:14,
14:13, 15:17, 15:23,
20:16, 26:18, 29:5,
30:22, 31:17, 33:4,
33:8, 38:4, 43:14,
44:16, 45:17, 59:23,
60:1
**never** [9] - 16:12,
23:9, 30:2, 32:7,
33:14, 33:17, 42:1,
45:15, 60:13
**new** [13] - 10:12,
12:12, 30:2, 31:24,
52:24, 58:7, 58:15,
58:16, 58:17, 58:18,
59:2, 64:20
**New** [3] - 1:24, 42:21
**next** [6] - 4:1, 16:4,
25:23, 26:2, 41:25,
42:3
**nine** [3] - 42:15,
42:24, 42:25
**none** [1] - 57:14
**normal** [1] - 31:16
**normally** [1] - 12:2
**North** [1] - 1:19
**Northwest** [3] - 1:16,
2:3, 67:14
**Nos** [1] - 7:17
**note** [1] - 52:24
**notes** [2] - 17:24,
67:5
**nothing** [4] - 27:21,
28:2, 29:13, 63:6
**notice** [1] - 8:24
**notwithstanding** [1]
- 51:24
**number** [8] - 8:8,
14:7, 28:18, 30:3,
30:20, 33:5, 39:19,
57:7

# O

**objection** [4] - 37:2,
56:14, 57:8, 62:6
**objections** [1] - 8:18
**obligation** [3] - 60:5,
60:7, 60:21
**obligations** [2] -
63:11, 63:20
**obstruct** [2] - 5:23,
5:25
**obstruction** [1] -
5:25
**obviously** [7] - 9:6,
13:22, 18:5, 27:7,

49:3, 61:13, 65:13
**occur** [1] - 41:15
**October** [2] - 11:6,
48:18
**OF** [4] - 1:1, 1:3,
1:10, 1:15
**offenses** [1] - 5:7
**offer** [1] - 10:14
**OFFICE** [1] - 1:15
**official** [11] - 5:23,
5:25, 19:18, 20:5,
21:3, 21:14, 35:7,
36:13, 54:14, 59:17,
67:12
**Official** [1] - 2:1
**old** [1] - 31:22
**once** [7] - 4:3, 24:14,
45:18, 46:11, 47:16,
57:17, 65:17
**one** [30] - 5:21, 8:5,
8:15, 8:16, 8:17, 13:1,
13:7, 14:25, 19:23,
20:25, 23:12, 23:13,
23:16, 24:7, 24:12,
25:3, 31:10, 31:20,
31:22, 41:24, 44:6,
45:1, 46:9, 48:10,
48:11, 50:7, 55:22,
56:18, 65:1
**ones** [1] - 50:8
**ongoing** [2] - 19:1,
60:6
**open** [5] - 5:18,
17:24, 27:23, 58:5,
58:9
**opening** [12] - 10:11,
11:25, 13:10, 16:1,
23:5, 24:14, 32:13,
32:17, 45:5, 46:25,
47:2, 56:10
**opinion** [16] - 21:13,
34:13, 40:18, 41:25,
42:10, 42:24, 45:2,
45:22, 50:14, 50:22,
51:6, 51:10, 51:21,
55:21, 65:1
**opinions** [1] - 55:9
**opportunity** [7] -
18:19, 23:7, 24:1,
27:20, 32:4, 52:1,
61:16
**opposing** [2] - 10:16,
37:1
**opposition** [6] -
7:25, 8:15, 8:21, 12:3,
23:5, 64:14
**oral** [1] - 66:2
**order** [23] - 4:7, 5:14,
5:19, 7:16, 10:6, 11:2,
13:14, 14:13, 15:18,

15:21, 15:23, 19:10,
41:8, 41:15, 41:20,
43:10, 51:23, 52:8,
53:6, 59:9, 61:11,
65:8, 66:3
**orderly** [2] - 25:12,
26:7
**orders** [1] - 39:25
**ordinary** [2] - 12:2,
12:5
**organized** [1] - 26:11
**original** [9] - 7:9,
23:15, 34:15, 42:13,
42:15, 56:1, 56:9,
57:25, 58:2
**originalist** [2] -
47:12, 47:25
**originally** [1] - 5:7
**otherwise** [2] -
19:13, 35:24
**outer** [3] - 4:12,
21:14, 35:7
**outlined** [1] - 18:21
**outside** [2] - 14:6,
21:2
**outstanding** [3] -
18:22, 30:16, 63:24
**overcome** [10] -
20:1, 20:8, 21:16,
21:18, 21:21, 35:11,
36:17, 44:17, 45:9,
54:15
**overlap** [1] - 25:9
**oversight** [1] - 44:11
**own** [1] - 30:9

# P

**package** [1] - 16:17
**pages** [5] - 30:5,
37:17, 42:15, 42:25,
60:16
**papers** [6] - 15:15,
15:16, 15:17, 26:4,
43:10, 64:12
**Paragraphs** [1] -
41:9
**paragraphs** [1] -
42:15
**paralegal** [1] - 3:14
**part** [5] - 14:5, 33:18,
44:1, 46:2, 50:5
**particular** [3] -
18:18, 31:11, 62:9
**particularly** [3] -
29:21, 50:16, 52:15
**parties** [4] - 4:25,
10:3, 11:6, 12:13,
13:13, 36:25, 41:17,

42:4, 44:9, 45:17, 48:8, 56:3, 56:6, 60:25, 61:6, 61:15, 63:23, 65:9
**parties'** [3] - 7:1, 9:13, 9:17
**parts** [1] - 56:1
**party** [1] - 65:13
**passage** [1] - 45:23
**passed** [1] - 9:7
**past** [1] - 8:5
**Pence** [12] - 19:17, 20:13, 34:5, 35:7, 35:11, 36:16, 41:22, 42:1, 44:23, 53:23, 53:25, 54:10
**Pence's** [1] - 53:17
**pendency** [1] - 9:8, 9:10, 39:24
**pending** [11] - 7:6, 8:4, 8:6, 8:7, 10:4, 31:3, 61:2, 61:25, 62:20, 64:8, 65:14
**people** [1] - 23:24
**people's** [1] - 37:14
**perfect** [1] - 27:9
**perimeter** [3] - 4:12, 21:15, 35:7
**period** [1] - 37:24
**permeated** [1] - 34:20
**permitted** [1] - 51:14
**persuasive** [3] - 49:6, 50:16, 55:9
**piece** [3] - 43:5, 43:7, 53:25
**piecemeal** [1] - 45:12
**place** [6] - 12:11, 12:12, 14:25, 33:17, 45:15, 47:17
**Plaintiff** [1] - 1:4
**plan** [1] - 53:15
**plea** [2] - 5:12, 6:13
**pled** [2] - 13:11, 41:1
**plus** [1] - 50:22
**podium** [1] - 3:5
**point** [15] - 5:17, 15:5, 15:19, 36:22, 40:14, 40:15, 41:20, 42:8, 42:9, 42:19, 43:14, 51:19, 64:7, 65:19
**Point** [2] - 16:9
**pointed** [3] - 40:1, 42:10, 64:15
**points** [1] - 39:17
**political** [1] - 39:5
**portray** [1] - 33:12
**pose** [1] - 44:12

**position** [8] - 10:24, 38:2, 47:22, 49:4, 54:8, 57:12, 57:14, 61:20
**positions** [1] - 10:17
**possibility** [1] - 22:10
**possible** [4] - 5:1, 20:9, 26:19, 66:4
**posture** [1] - 12:13
**potential** [3] - 9:21, 10:20, 63:24
**potentially** [2] - 53:8, 61:5
**practical** [2] - 12:15, 15:14
**practice** [2] - 12:8, 47:2
**precedent** [8] - 9:9, 26:17, 48:22, 50:12, 50:24, 51:24, 52:21, 55:9
**preference** [2] - 57:9, 58:1
**prejudice** [6] - 7:9, 18:10, 40:23, 55:15, 55:24, 59:7
**prejudiced** [1] - 52:7
**prejudicial** [3] - 18:11, 32:18, 32:20
**preparation** [1] - 66:1
**prepare** [1] - 32:13
**prepared** [1] - 16:1
**presentation** [2] - 38:19, 54:17
**presentations** [1] - 33:6
**presented** [2] - 21:1, 33:7
**preserve** [2] - 51:8, 51:23
**presidency** [6] - 35:15, 38:5, 38:7, 38:14, 38:24, 38:25
**President** [15] - 3:12, 18:12, 19:17, 20:13, 27:14, 32:23, 34:5, 35:7, 35:10, 44:23, 53:17, 53:23, 53:25, 54:10
**president** [7] - 14:20, 20:23, 34:17, 44:12, 45:25, 47:23, 49:21
**president's** [7] - 4:11, 4:13, 4:14, 40:17, 44:11, 45:8, 47:4
**presidential** [12] - 4:7, 11:10, 20:10,

21:15, 34:9, 35:8, 38:10, 46:7, 46:12, 47:3, 54:4, 59:13
**presumed** [1] - 21:15
**presumption** [9] - 14:21, 14:22, 19:25, 20:8, 21:17, 35:11, 36:17, 44:16, 54:14
**presumptive** [2] - 20:24, 45:9
**presumptively** [3] - 4:13, 21:25, 34:6
**pretrial** [10] - 8:8, 9:2, 9:17, 11:2, 11:16, 11:19, 12:18, 48:7, 48:10, 65:15
**previously** [3] - 32:2, 55:8, 59:20
**principle** [2] - 12:24, 12:25
**private** [3] - 14:17, 42:18, 49:20
**problem** [4] - 18:9, 19:15, 22:4, 30:25
**problematic** [1] - 28:12
**procedural** [2] - 12:13, 43:13
**procedurally** [3] - 17:25, 18:8, 50:4
**procedure** [1] - 23:12
**Procedure** [2] - 5:9, 33:13
**Procedures** [1] - 8:4
**proceed** [2] - 31:16, 33:10
**proceeding** [4] - 5:23, 6:1, 18:13, 33:16
**proceedings** [5] - 4:2, 4:5, 26:21, 65:17, 67:6
**Proceedings** [1] - 66:12
**process** [18] - 11:18, 16:8, 16:18, 25:13, 25:14, 25:15, 25:17, 26:6, 26:7, 27:14, 27:18, 27:22, 28:23, 29:4, 29:17, 29:21, 44:11, 54:25
**produce** [1] - 63:17
**produced** [2] - 63:9, 67:6
**proffer** [7] - 13:17, 21:19, 22:25, 25:4, 27:13, 28:17, 36:14
**proffered** [1] - 13:22
**proffering** [1] - 15:6

**proffers** [3] - 22:2, 24:10, 35:19
**promptly** [2] - 16:2, 17:15
**properly** [1] - 32:17
**proposal** [4] - 13:2, 13:16, 17:24, 23:17
**proposals** [3] - 7:1, 9:13, 9:17
**propose** [1] - 12:22
**proposed** [8] - 8:23, 11:3, 27:10, 30:10, 48:13, 59:12, 61:4, 62:23
**proposes** [7] - 10:10, 11:1, 11:24, 18:15, 23:20, 25:25, 36:23
**prosecution** [9] - 4:8, 4:12, 7:13, 7:17, 44:9, 62:1, 64:11, 64:13, 65:1
**prosecutor** [1] - 46:18
**protective** [3] - 41:8, 41:14, 41:20
**protocol** [2] - 18:12, 24:3
**prove** [1] - 59:16
**provide** [4] - 22:22, 22:25, 23:1, 63:6
**provided** [2] - 40:3, 44:1
**prudently** [1] - 26:10
**public** [4] - 28:5, 32:24, 33:8, 41:18
**publicly** [1] - 62:20
**purpose** [1] - 4:20
**pursuant** [1] - 5:8
**pursued** [1] - 4:6
**put** [8] - 15:15, 17:13, 28:5, 28:18, 38:2, 40:25, 43:10, 59:8

**Q**

**quagmire** [1] - 32:19
**questions** [11] - 8:23, 11:13, 11:21, 17:16, 17:19, 36:3, 43:17, 48:16, 56:25, 62:22, 64:16
**quick** [1] - 39:17
**quickly** [1] - 43:2
**quintessentially** [1] - 23:2

**R**

**raise** [4] - 49:13, 51:2, 52:25, 64:19
**raised** [5] - 39:19, 40:13, 41:11, 46:19, 57:15
**raising** [1] - 10:17
**rather** [3] - 58:7, 62:5
**RDR** [3] - 2:1, 67:3, 67:12
**read** [6] - 26:15, 41:24, 51:6, 51:9, 55:8
**reading** [3] - 5:24, 6:17, 22:11
**readings** [1] - 22:13
**readjusted** [1] - 50:6
**reaffirm** [1] - 5:15
**reality** [2] - 22:14, 26:5
**really** [4] - 31:12, 50:9, 59:20, 60:13
**reason** [9] - 17:14, 30:17, 33:18, 38:3, 48:21, 58:10, 60:9, 63:2, 65:16
**reasons** [1] - 52:19
**rebutted** [1] - 14:22
**received** [4] - 5:11, 6:6, 27:3, 40:8
**receives** [1] - 4:14
**recognition** [1] - 31:15
**recognized** [1] - 31:1
**recognizing** [2] - 7:9, 10:1
**reconsider** [2] - 21:9, 21:12
**record** [10] - 3:2, 3:5, 24:24, 28:5, 28:18, 33:2, 33:3, 33:4, 41:18, 42:25
**redacted** [1] - 41:18
**referring** [1] - 59:17
**regard** [6] - 8:7, 34:22, 34:23, 37:14, 54:9, 57:21
**regarding** [7] - 4:1, 7:16, 11:7, 48:13, 53:8, 62:1, 65:1
**regardless** [1] - 31:18
**relate** [2] - 59:11, 65:5
**related** [10] - 7:20, 11:5, 30:10, 47:7, 59:13, 61:6, 61:24, 62:23, 64:3, 65:11

**relates** [1] - 19:4
**relating** [6] - 27:1, 34:5, 59:19, 59:22, 60:13, 62:9
**relation** [1] - 29:12
**released** [1] - 41:18
**relevant** [4] - 29:7, 33:3, 50:9, 64:2
**relied** [1] - 46:11
**rely** [1] - 8:25
**remainder** [3] - 17:17, 42:16, 48:6
**remained** [1] - 8:10
**remaining** [1] - 11:12
**remains** [2] - 23:15, 58:12
**remand** [3] - 9:21, 44:7, 48:3
**remanded** [2] - 4:17, 11:14
**remind** [1] - 3:23
**renewed** [3] - 17:25, 58:3, 59:7
**reopened** [1] - 52:3
**replies** [3] - 8:19, 8:21, 27:25
**reply** [17] - 7:19, 7:25, 8:16, 10:18, 12:4, 27:25, 28:1, 62:2, 62:8, 62:11, 62:16, 62:17, 64:17, 64:18, 64:22, 64:24, 65:2
**report** [5] - 7:2, 9:15, 15:25, 59:11, 65:10
**REPORTED** [1] - 2:1
**REPORTER** [1] - 25:8
**Reporter** [2] - 2:1, 67:12
**republic** [2] - 39:2, 39:10
**request** [5] - 16:22, 43:12, 53:6, 64:3, 64:17
**requested** [1] - 37:8
**require** [1] - 24:6
**required** [4] - 11:4, 13:15, 15:24, 16:8
**requires** [2] - 9:10, 13:2
**reserving** [1] - 6:18
**reset** [2] - 7:22, 9:12
**resetting** [1] - 65:11
**resolve** [5] - 26:16, 37:11, 37:21, 61:11, 62:4
**resolved** [11] - 8:5, 9:20, 25:15, 30:21, 30:23, 37:4, 37:7,

52:9, 56:8, 56:25, 61:9
**resolving** [7] - 9:23, 11:2, 11:14, 59:8, 64:4, 65:11, 65:14
**respect** [20] - 6:14, 14:18, 14:21, 22:21, 35:10, 35:14, 35:23, 36:11, 40:6, 40:16, 42:9, 46:4, 52:6, 54:23, 56:24, 58:24, 59:1, 59:24, 63:17, 64:20
**respected** [1] - 49:8
**respectfully** [2] - 19:24, 26:1
**respectively** [1] - 7:18
**respects** [1] - 9:18
**respond** [9] - 27:24, 32:4, 32:11, 32:17, 38:1, 39:15, 43:20, 45:5, 51:18
**response** [4] - 10:16, 39:18, 48:25, 54:21
**responses** [1] - 43:16
**responsibilities** [1] - 4:13
**responsibility** [2] - 35:8, 35:15
**rest** [2] - 8:6, 11:16
**rested** [1] - 3:17
**result** [4] - 20:10, 27:3, 54:18, 60:20
**return** [1] - 40:4
**returned** [7] - 4:18, 5:4, 10:8, 10:22, 40:2, 42:12, 55:23
**reveal** [1] - 39:20
**reversal** [2] - 21:7, 21:10
**review** [5] - 7:3, 15:4, 15:16, 40:21, 63:25
**reviewed** [1] - 6:9
**reviewing** [1] - 40:23
**revise** [2] - 56:3, 57:24
**revised** [1] - 56:7
**rhetoric** [3] - 43:23, 43:25, 44:5
**rights** [3] - 6:2, 6:18, 51:23
**risk** [1] - 46:6
**risking** [2] - 21:6, 21:10
**road** [1] - 15:19
**robust** [1] - 24:24
**room** [1] - 27:8
**route** [2] - 28:14,

28:17
**routinely** [2] - 18:6, 29:15
**rule** [7] - 23:9, 23:11, 24:9, 26:22, 43:8, 45:11, 57:18
**Rule** [6] - 5:8, 8:14, 19:13, 23:8, 43:11, 63:12
**ruled** [4] - 20:22, 33:18, 34:19, 52:4
**Rules** [1] - 33:13
**rules** [8] - 18:4, 18:6, 18:16, 18:17, 30:1, 46:22
**ruling** [11] - 25:13, 30:2, 30:4, 31:7, 31:24, 34:2, 35:5, 39:1, 44:1, 44:2, 44:7
**run** [1] - 57:13
**rush** [4] - 30:24, 31:2, 31:14, 32:4

## S

**schedule** [31] - 4:23, 4:24, 5:1, 8:8, 9:17, 11:3, 11:16, 11:19, 13:1, 15:13, 19:1, 19:8, 24:17, 25:25, 26:23, 29:9, 30:10, 39:25, 43:4, 45:12, 45:13, 48:7, 48:15, 52:6, 57:22, 59:12, 61:4, 65:11, 65:13, 65:20
**scheduled** [1] - 31:19
**schedules** [1] - 18:7
**scheduling** [5] - 6:25, 53:6, 59:9, 65:8, 66:3
**scope** [5] - 7:16, 62:1, 64:10, 64:13, 65:1
**scrupulously** [1] - 24:20
**seal** [4] - 28:14, 28:20, 41:4, 41:16
**second** [6] - 4:22, 7:12, 11:15, 32:10, 40:15, 48:25
**Section** [4] - 5:22, 5:24, 6:1, 6:2
**security** [1] - 37:14
**see** [8] - 3:10, 3:20, 11:13, 15:21, 52:7, 52:10, 55:13, 58:10
**seeing** [1] - 3:19

**seek** [1] - 53:8
**seeking** [1] - 50:17
**seem** [2] - 56:6, 62:4
**selective** [1] - 7:12
**selectively** [1] - 33:11
**Senate** [1] - 44:12
**sense** [9] - 16:8, 26:6, 27:10, 27:19, 28:5, 47:16, 56:13, 57:11, 62:4
**sensitive** [8] - 28:6, 28:22, 29:2, 29:10, 29:22, 38:17, 41:12, 41:15
**sent** [3] - 19:20, 19:25, 34:21
**separate** [5] - 13:3, 53:13, 54:23, 54:24, 55:13
**separately** [1] - 44:19
**September** [7] - 1:6, 11:4, 16:24, 16:25, 17:6, 60:4, 67:10
**sequence** [2] - 15:13, 27:21
**sequencing** [1] - 27:9
**sequentially** [2] - 57:2, 57:6
**serious** [1] - 43:24
**seriously** [2] - 60:7, 60:21
**set** [11] - 9:2, 9:4, 10:8, 13:12, 14:4, 14:16, 34:16, 59:10, 62:17, 63:5
**sets** [1] - 30:10
**setting** [3] - 11:18, 43:4, 65:19
**several** [1] - 13:3
**show** [3] - 20:8, 20:12, 35:13
**showing** [1] - 42:17
**shows** [1] - 33:14
**sic** [1] - 63:14
**side** [1] - 25:3
**side's** [1] - 9:16
**sides** [5] - 9:19, 9:22, 38:4, 39:14, 65:21
**signed** [1] - 6:4
**simply** [5] - 15:21, 23:12, 46:22
**simultaneous** [1] - 30:11
**simultaneously** [2] - 13:5, 57:17
**SINGER** [2] - 1:18, 1:19

**Singer** [1] - 3:13
**Sirmon** [1] - 3:14
**sitting** [1] - 42:22
**situation** [3] - 12:10, 15:12, 41:10
**six** [1] - 8:24
**Sixth** [1] - 27:15
**slimmed** [1] - 58:21
**slimmed-down** [1] - 58:21
**slimmer** [1] - 42:12
**Smith** [3] - 46:15, 49:20, 51:15
**somewhat** [1] - 54:5
**somewhere** [1] - 17:6
**soon** [2] - 5:1, 66:3
**sooner** [1] - 62:4
**sorry** [4] - 25:8, 25:10, 49:17, 60:3
**sort** [3] - 43:8, 54:7, 65:18
**Southern** [2] - 49:8, 49:24
**speaking** [1] - 57:12
**special** [18] - 11:7, 18:15, 18:17, 18:23, 19:1, 23:9, 23:11, 30:17, 30:24, 32:1, 43:8, 48:13, 48:20, 49:6, 49:9, 56:23, 59:20
**Special** [1] - 3:8
**specific** [5] - 13:19, 16:6, 41:6, 63:15
**specifically** [4] - 14:1, 14:20, 41:10, 53:25
**specificity** [1] - 63:19
**speed** [3] - 32:2, 32:9, 42:9
**Speedy** [1] - 10:4
**spent** [2] - 38:12, 41:7
**sprinting** [2] - 31:6, 31:11
**stage** [2] - 13:12, 52:9
**staging** [1] - 54:23
**stand** [1] - 41:9
**standard** [2] - 4:17, 10:12
**start** [5] - 5:3, 7:5, 12:24, 31:23, 31:24
**starting** [1] - 3:4
**starts** [1] - 11:3
**State** [1] - 42:21
**state** [2] - 3:5, 42:23
**statement** [1] - 10:23

**states** [3] - 6:6, 26:18, 53:7

**STATES** [4] - 1:1, 1:3, 1:11, 1:15

**States** [9] - 2:2, 3:3, 3:7, 5:21, 38:6, 38:8, 38:25, 67:13

**status** [5] - 7:2, 9:15, 15:25, 59:11, 65:10

**STATUS** [1] - 1:10

**statutory** [15] - 7:7, 11:11, 55:17, 55:18, 56:1, 56:8, 56:10, 56:20, 56:24, 57:1, 57:23, 58:6, 58:12, 58:24, 59:6

**stay** [8] - 7:21, 30:22, 31:9, 31:17, 48:18, 61:2, 62:14

**stayed** [9] - 4:2, 4:5, 8:1, 8:13, 9:8, 26:21, 37:13, 37:19, 55:21

**stenographic** [1] - 67:5

**step** [1] - 54:25

**steps** [1] - 4:1

**still** [6] - 8:6, 37:22, 52:10, 59:8, 60:19, 62:20

**stood** [1] - 7:3

**stop** [1] - 65:16

**stowed** [1] - 3:24

**Street** [3] - 1:16, 1:19, 1:23

**strike** [1] - 42:14

**strikes** [1] - 38:18

**striving** [1] - 12:14

**struck** [1] - 42:14

**structure** [7] - 9:16, 13:1, 24:22, 25:19, 27:4, 27:9, 29:24

**structured** [3] - 29:25, 34:3, 34:13

**stuff** [2] - 45:7, 58:22

**subject** [11] - 9:11, 12:18, 12:20, 14:18, 20:24, 22:12, 38:11, 45:9, 47:3, 57:15, 62:14

**submission** [1] - 17:23

**submissions** [3] - 15:7, 22:1, 66:2

**submit** [3] - 19:11, 24:3, 32:3

**submitted** [1] - 9:15

**subpoena** [1] - 23:23

**subpoenas** [1] - 8:14

**substance** [1] - 6:10

**substantial** [2] -

14:7, 17:13

**substantively** [1] - 52:7

**subtext** [1] - 38:16

**sufficient** [1] - 42:5

**suggest** [8] - 16:19, 26:2, 32:4, 39:5, 48:15, 56:6, 56:23, 58:7

**suggested** [16] - 17:12, 18:14, 20:19, 22:21, 22:24, 38:23, 49:6, 51:2, 51:20, 58:10, 60:2, 60:4, 63:15, 64:12, 64:20, 65:13

**suggesting** [15] - 24:19, 30:25, 33:25, 36:2, 36:3, 36:5, 36:6, 36:7, 36:8, 36:10, 36:12, 46:21, 52:2, 54:25

**suggests** [2] - 10:20, 32:1

**Suite** [1] - 1:23

**superseding** [26] - 4:21, 5:4, 5:6, 5:11, 5:20, 6:7, 6:10, 6:17, 6:23, 10:13, 10:22, 11:25, 12:19, 14:19, 31:22, 35:2, 40:2, 40:5, 40:17, 42:11, 53:18, 56:5, 56:11, 57:25, 58:14, 64:1

**supplement** [4] - 11:11, 57:22, 57:24, 58:2

**supplemental** [9] - 42:18, 43:9, 56:7, 56:11, 58:8, 58:11, 58:13, 59:3, 59:7

**support** [1] - 42:5

**supports** [1] - 10:19

**Supreme** [63] - 4:9, 7:10, 10:12, 12:11, 13:15, 14:13, 14:20, 15:23, 18:13, 19:16, 20:19, 20:21, 21:24, 22:7, 22:20, 23:14, 24:20, 25:13, 25:18, 26:9, 26:15, 26:17, 27:11, 30:2, 31:1, 31:24, 32:5, 32:14, 33:17, 33:18, 34:1, 34:11, 34:14, 35:2, 35:3, 35:5, 35:22, 36:20, 38:3, 38:12, 39:1, 39:7, 40:18, 41:25, 42:1, 42:3, 42:10, 42:24, 44:1,

44:4, 44:7, 45:21, 46:3, 46:23, 47:9, 48:3, 48:5, 50:9, 50:23, 54:12, 54:20, 55:8, 55:25

**sur** [3] - 27:25, 28:1, 64:22

**sur-reply** [3] - 27:25, 28:1, 64:22

**surprised** [1] - 16:14

---

## T

**table** [2] - 3:8, 42:22

**Tampa** [2] - 1:19, 1:20

**tanks** [1] - 46:12

**TANYA** [1] - 1:10

**team** [5] - 7:17, 62:1, 64:11, 64:13, 65:1

**technical** [4] - 37:11, 37:12, 37:14, 40:7

**ten** [2] - 8:18, 9:2

**tend** [1] - 59:15

**tends** [1] - 59:25

**terms** [9] - 17:4, 17:12, 18:7, 18:20, 27:10, 37:4, 58:25, 60:14, 61:15

**testimony** [6] - 24:10, 25:5, 33:2, 35:23, 46:4, 47:4

**THE** [121] - 1:1, 1:10, 1:14, 1:15, 1:18, 3:1, 3:9, 3:16, 3:21, 6:9, 6:13, 6:16, 6:21, 11:1, 11:24, 13:16, 15:5, 15:25, 16:12, 16:21, 16:24, 16:25, 17:6, 17:9, 17:19, 17:23, 18:25, 19:7, 19:19, 19:23, 20:3, 20:20, 21:5, 21:10, 21:18, 21:21, 22:11, 23:4, 23:11, 24:5, 24:8, 24:21, 25:5, 25:8, 25:21, 25:25, 26:14, 27:19, 28:7, 28:24, 29:1, 29:18, 30:7, 31:3, 31:6, 32:6, 32:8, 34:14, 36:5, 36:9, 36:21, 37:6, 37:12, 38:7, 38:13, 38:16, 39:12, 39:22, 41:3, 43:6, 43:18, 43:21, 43:23, 44:2, 44:18, 45:1, 45:4, 45:23, 46:16, 46:24, 47:24, 48:3, 49:14, 49:18, 49:25, 50:7, 50:21,

51:4, 51:9, 51:17, 52:13, 53:1, 53:3, 54:7, 54:21, 55:16, 56:18, 56:20, 57:3, 57:10, 57:20, 58:9, 58:18, 58:21, 59:3, 59:5, 60:3, 60:6, 61:1, 61:20, 61:23, 62:13, 62:21, 63:2, 63:22, 64:9, 64:23, 65:4, 65:25, 66:8, 66:10

**thereafter** [2] - 41:17, 42:4

**therefore** [2] - 4:16, 44:7

**they've** [6] - 23:23, 23:24, 23:25, 57:15, 63:14, 64:1

**thinking** [3] - 14:2, 14:4, 59:14

**thinks** [1] - 15:13

**third** [3] - 7:15, 41:20, 42:8

**THOMAS** [1] - 1:14

**Thomas** [4] - 3:6, 49:5, 50:14, 51:1

**Thomas's** [1] - 49:22

**thoughts** [1] - 32:14

**three** [12] - 5:25, 8:20, 16:19, 16:20, 16:22, 17:2, 19:2, 20:22, 32:3, 32:8, 32:13, 32:16

**throughout** [1] - 37:23

**timeline** [1] - 11:3

**timing** [5] - 17:12, 27:9, 29:5, 29:11

**today** [7] - 5:2, 16:23, 17:2, 25:22, 63:6, 63:15, 66:1

**Todd** [1] - 3:13

**TODD** [1] - 1:21

**together** [1] - 64:16

**tolled** [1] - 10:4

**took** [2] - 4:3, 63:8

**totally** [2] - 20:3, 58:7

**touched** [1] - 48:12

**towards** [2] - 31:11, 60:23

**TRANSCRIPT** [1] - 1:10

**transcript** [2] - 67:5, 67:6

**transcripts** [4] - 14:9, 24:11, 40:3

**transparent** [1] - 33:20

**trial** [12] - 9:4, 10:15,

31:11, 31:12, 35:24, 42:25, 43:12, 46:4, 47:25, 65:11, 65:12, 65:19

**Trial** [1] - 10:4

**trial-related** [1] - 65:11

**tried** [1] - 21:7

**true** [3] - 18:1, 67:4, 67:5

**Trump** [13] - 3:3, 3:12, 4:6, 5:6, 5:9, 6:6, 6:9, 6:13, 18:12, 19:17, 32:23, 38:11, 45:8

**TRUMP** [1] - 1:6

**Trump's** [8] - 4:21, 5:18, 6:4, 6:22, 27:14, 44:10, 53:16, 59:16

**truth** [1] - 61:9

**trying** [2] - 13:6, 38:19

**Tuesday** [1] - 5:8

**turn** [5] - 7:1, 9:13, 34:2, 60:19

**turned** [2] - 3:24, 60:11

**turns** [2] - 18:16, 29:23

**twice** [1] - 63:15

**two** [16] - 8:5, 8:15, 11:13, 16:19, 32:15, 40:1, 40:2, 42:11, 42:21, 42:25, 50:23, 54:25, 55:13, 61:24, 64:10, 64:15

**two-step** [1] - 54:25

**twofold** [1] - 4:20

**typical** [2] - 12:8, 12:10

**typically** [2] - 30:20, 61:8

---

## U

**U.S** [1] - 38:11

**ultimately** [4] - 24:12, 25:7, 25:11, 46:9

**under** [14] - 8:3, 19:12, 23:8, 26:23, 27:14, 28:14, 28:20, 30:1, 31:10, 35:13, 41:4, 41:16, 66:2

**underlie** [1] - 40:4

**underway** [1] - 16:16

**unfair** [8] - 18:12, 25:3, 27:17, 27:19, 28:2, 28:4, 29:21,

38:2
  **unfairness** [2] - 29:17, 33:14
  **UNITED** [4] - 1:1, 1:3, 1:11, 1:15
  **united** [1] - 2:2
  **United** [8] - 3:3, 3:7, 5:21, 38:6, 38:8, 38:24, 38:25, 67:13
  **unlawful** [1] - 44:25
  **unless** [2] - 25:2, 26:2
  **unofficial** [1] - 4:14
  **unpled** [2] - 13:12, 13:17
  **unresolved** [2] - 23:16, 60:24
  **unseal** [2] - 32:21, 32:22
  **unsealed** [3] - 28:16, 28:17, 41:12
  **unseemly** [1] - 31:2
  **untimely** [1] - 48:24
  **up** [9] - 28:9, 34:21, 40:11, 41:22, 55:5, 56:10, 58:5, 58:9, 64:13
  **uploading** [1] - 54:2
  **USC** [4] - 5:22, 5:23, 6:1, 6:2
  **useful** [1] - 52:16
  **usual** [1] - 65:15

**V**

  **vacate** [3] - 23:14, 42:23, 59:5
  **vacated** [1] - 4:16
  **vacating** [1] - 56:9
  **vehicles** [1] - 43:13
  **version** [3] - 42:12, 56:7, 58:21
  **versus** [2] - 3:3, 26:18
  **vice** [13] - 14:19, 20:23, 34:17, 40:16, 44:10, 45:7, 45:25, 46:7, 46:11, 47:3, 47:23, 54:3
  **Vice** [10] - 19:17, 20:13, 34:5, 35:6, 35:10, 44:23, 53:16, 53:23, 53:25, 54:9
  **videotape** [1] - 37:18
  **view** [4] - 13:25, 23:16, 51:3, 63:9
  **views** [1] - 9:16
  **vindictive** [1] - 7:13
  **violation** [4] - 5:22,

5:23, 6:1, 6:2
  **violative** [1] - 27:22
  **voir** [1] - 8:23
  **vs** [1] - 1:5

**W**

  **wait** [6] - 19:7, 24:5, 28:24, 37:12, 45:4
  **waiting** [2] - 36:25, 37:1
  **waived** [1] - 52:11
  **waiver** [8] - 5:10, 5:14, 5:18, 6:4, 6:6, 6:22, 50:1, 50:2
  **waiving** [1] - 6:16
  **walk** [1] - 19:9
  **Wall** [1] - 1:23
  **wants** [3] - 33:10, 57:2, 57:18
  **warrant** [1] - 50:24
  **Washington** [4] - 1:6, 1:16, 2:3, 67:14
  **wasted** [1] - 36:15
  **wayside** [1] - 22:9
  **week** [11] - 4:22, 8:15, 8:16, 8:17, 8:19, 9:4, 9:5, 16:4, 31:22, 40:2, 42:12
  **weeks** [15] - 8:6, 8:15, 8:20, 8:24, 9:3, 9:20, 16:19, 16:22, 17:2, 19:2, 32:3, 32:8, 32:13, 32:16, 37:1
  **weighty** [2] - 18:13, 39:6
  **whereby** [1] - 26:8
  **whole** [5] - 22:9, 35:21, 45:10, 54:10, 59:2
  **wholly** [2] - 44:23, 47:22
  **WINDOM** [28] - 1:14, 3:6, 10:25, 11:23, 12:7, 13:24, 15:10, 16:5, 16:14, 17:2, 17:8, 17:11, 17:22, 39:16, 39:23, 41:5, 43:7, 43:19, 51:19, 54:22, 57:11, 63:1, 63:5, 64:7, 64:10, 65:24, 66:7, 66:11
  **Windom** [11] - 3:7, 10:24, 11:22, 16:12, 18:1, 19:5, 39:15, 51:18, 57:10, 62:22, 66:6
  **witness** [2] - 8:13, 9:3

  **witnesses** [6] - 8:12, 15:21, 23:23, 23:25, 25:5, 27:16
  **words** [3] - 14:12, 23:13, 45:2
  **works** [1] - 32:12
  **write** [6] - 16:10, 16:15, 47:12, 47:13, 47:14
  **writing** [1] - 47:9
  **written** [5] - 13:23, 15:7, 17:23, 50:13, 66:2
  **wrote** [3] - 45:22, 49:5, 49:9

**Y**

  **year** [13] - 3:17, 3:19, 4:10, 25:22, 31:4, 31:17, 37:19, 38:18, 41:7, 42:20, 53:4
  **York** [3] - 1:24, 42:21