**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

    v.

DONALD J. TRUMP,

        *Defendant*.

Case No. 1:23-cr-00257-TSC

**PRESIDENT DONALD J. TRUMP'S OMNIBUS REPLY**
**IN FURTHER SUPPORT OF DISCOVERY MOTIONS**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

DISCUSSION ............................................................................................................................... 3

I.     The Special Counsel's Refusal To Acknowledge Applicable Defenses Underscores The Need For Judicial Intervention........................................................................................................ 3

    A.     Presidential Immunity .................................................................................................... 3

        1.     The Court Should Not Permit Presidential Immunity Briefing Until Discovery Disputes Are Resolved....................................................................................................... 3

        2.     The Special Counsel Must Produce All Evidence Relating To The Official Context Surrounding The False Allegations In The Superseding Indictment ................................. 5

    B.     Local Criminal Rule 5.1.................................................................................................. 8

    C.     *Mens Rea* Defense........................................................................................................ 10

    D.     Mitigating Evidence Relating To Third Parties ........................................................... 12

II.     The Special Counsel's Position Regarding The Prosecution Team Is Lawless ............... 13

    A.     Improper Prosecution Team Restrictions Lead To Systemic Discovery Violations ..... 13

    B.     Agency Contributions To The Special Counsel Are A Highly Relevant Considerations 14

    C.     The "Close-Alignment" Caselaw Rejects The Special Counsel's Arbitrary Line Drawing Regarding DOJ And FBI ....................................................................................... 15

    D.     The Special Counsel Cannot Ignore Easy Access To Relevant Files Of The J6 Committee, DOD, ODNI, And CIA..................................................................................... 17

    E.     Intelligence Community Support To The Special Counsel Further Establishes The Prosecution Team's Access To Relevant Materials............................................................. 19

III.     The Prosecution's Affirmative Search Obligations...................................................... 20

IV.     The Court Should Compel Disclosures In Response To President Trump's Specific Requests ...................................................................................................................................... 21

    A.     The Special Counsel Exaggerates The Rule 16 Materiality Standard .......................... 21

    B.     *Giglio* Disclosures Relating To Vice President Pence ................................................. 23

    C.     Inconsistent Assertions By Government Actors ........................................................... 24

    D.     Evidence Of Foreign Influence And Foreign Interference ........................................... 25

    E.     The SolarWinds Hack .................................................................................................. 26

    F.     Requests For Security At The Capitol ......................................................................... 26

    G.     FISA Abuses................................................................................................................. 27

V.     The Court Should Not Tolerate The Special Counsel's Deflections................................. 28

    A.     Evidence Of Bias And Misconduct.............................................................................. 28

B.   Government Agents At The Capitol ................................................................................. 29

C.   Unsupported Cumulativeness Arguments ....................................................................... 29

D.   Evidentiary Significance Of Media Reports ................................................................... 30

CONCLUSION ......................................................................................................................... 30

**<u>INTRODUCTION</u>**

This case should be dismissed.  Promptly.  That is the only just course of action consistent with (1) the Supreme Court's decision in *Trump v. United States*; (2) the critically important institutional interests that support the Presidential immunity doctrine; and (3) the stubborn reliance by the Special Counsel's Office on allegations relating to Vice President Pence that are, at least, presumptively immune.  Dismissal is required to protect the integrity of the Presidency and the upcoming election, as well as the Constitutional rights of President Trump and the American people.  There are also ongoing discovery violations in this case that implicate Presidential immunity and other strong defenses, including the Office's failure to produce exculpatory evidence concerning the flaws with this prosecution and the Office's false allegations.  Therefore, President Trump respectfully submits this Omnibus Reply in further support of the pending motions for an order regarding the scope of the prosecution team, ECF Nos. 166-1, 169 (the "Prosecution Team Motion") and to compel discovery, ECF No. 167 (the "Compel Motion"), and in response to the Office's Omnibus Opposition brief, ECF No. 181 (the "Opposition").[1]

The Special Counsel's Office conducted its initial, disputed discovery review in this case at a time when the Office wholly denied the existence of Presidential immunity.  The Supreme Court's recent decision established important parameters for the procedural and substantive consideration of this defense that the Office could not possibly have accounted for when the bulk of discovery was collected and produced.  The Office cannot meet their obligations by arguing that they took a broad approach to discovery at the outset, which is not true, and insisting that their

---

[1] President Trump submitted a September 19, 2024 Classified Supplement to the CISO this afternoon.  President Trump does not concede any of the issues raised in the opening briefing supporting the Prosecution Team Motion and the Compel Motion, but has prioritized certain of those issues in the reply submissions based on the current procedural posture.

initial collection adequately encompassed discoverable information relating to Presidential immunity, which is incorrect.  In the absence of a new case-file review based on a lawfully defined prosecution team and consistent with the Office's affirmative search obligations, the prosecutors are in no position to make valid public claims defending the Superseding Indictment in an unprecedented filing next week that is inconsistent with Rule 12, President Trump's Constitutional right to defend himself, and the Supreme Court's suggestion that proceedings on remand be conducted in a straightforward and orderly fashion.

These concerns are amplified by the fact that the Special Counsel's Office has repeatedly misstated the law and mischaracterized their discovery obligations in the Opposition, including by disregarding this District's Local Criminal Rule 5.1.  These are serious problems, which present "unique risks to the effective functioning of government." *Trump v. United States*, 144 S. Ct. 2312, 2331 (2024) (cleaned up).  Accordingly, President Trump respectfully submits that the Court should (1) order the Office to perform the searches and disclosures demanded in President Trump's discovery motions, and (2) reconsider the September 5, 2024 scheduling order, ECF No. 233,[2] by rejecting the Office's lawless request to file a public defense of their defective Superseding Indictment before they are in compliance with their discovery obligations.

---

[2] "The Federal Rules of Criminal Procedure do not address the legal standard applicable to motions to reconsider interlocutory decisions, but courts in this District have applied the as justice requires standard under Federal Rule of Civil Procedure 54(b)." *United States v. Purdy*, 2024 WL 2720444, at *2 (D.D.C. 2024) (cleaned up).  The relevant standard "amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Id.* (cleaned up).  President Trump respectfully submits that the requested reconsideration is appropriate under the relevant circumstances presented here, which are that the Special Counsel's Office is not in compliance with discovery obligations regarding the historic and first-impression application of the Presidential immunity doctrine in this case.

## DISCUSSION

**I.    The Special Counsel's Refusal To Acknowledge Applicable Defenses Underscores The Need For Judicial Intervention**

These remanded proceedings require careful consideration of the Presidential immunity defense based on an intervening Supreme Court decision that post-dated the initial discovery review by the Special Counsel's Office.  In the Opposition, the Special Counsel's Office also repeatedly mischaracterizes and minimizes important discovery obligations and applicable defenses.  The most significant of these errors are addressed below, and they illustrate that the Court cannot continue to credit the Office's conclusory representations of discovery compliance.

**A.  Presidential Immunity**

**1.   The Court Should Not Permit Presidential Immunity Briefing Until Discovery Disputes Are Resolved**

The Court should revisit the September 5, 2024 scheduling order in light of the baseless legal positions taken by the Special Counsel's Office in the Opposition, as well as related arguments at the September 5 status conference, which are inconsistent with key tenets of the Supreme Court's decision in *Trump*.

The *Trump* Court prescribed the resolution of threshold legal questions prior to the sort of evidentiary submission apparently contemplated by the Special Counsel's Office on September 26, 2024.  One such question is whether Presidential immunity "must be absolute."  144 S. Ct. at 2327; *see also id.* ("[W]e need not and do not decide whether that immunity must be absolute, or instead whether a presumptive immunity is sufficient.").  While the Supreme Court concluded that President Trump is "entitled, at a minimum, to a presumptive immunity from prosecution for all his official acts," *id.* at 2347, President Trump will establish as a matter of law that Presidential immunity for official acts must be absolute and that presumptive immunity is not "sufficient" to achieve the underlying purposes of the doctrine, *id.* at 2327.  This follows from the fact that

3

"[c]riminally prosecuting a President for official conduct undoubtedly poses a far greater threat of intrusion on the authority and functions of the Executive Branch than simply seeking evidence in his possession," and the resulting "danger" from such a prosecution is "greater than" the risks that led the Supreme Court to "recognize absolute Presidential immunity from civil damages liability." *Id.* at 2330.  President Trump is entitled to present this legal argument in connection with a Rule 12(b) motion before the Office proceeds with a prejudicial and unwarranted advocacy piece setting forth their biased views about the case.

A second threshold legal question, which highlights another defect in the Superseding Indictment, arises from the central role that the Special Counsel's Office has assigned to allegations relating to interactions between President Trump and Vice President Pence.  The Supreme Court already concluded that the Office's allegations relating to Vice President Pence "involve official conduct" and that President Trump "is at least presumptively immune from prosecution for such conduct."  144 S. Ct. at 2336.  On this issue, "[t]he question then becomes whether that presumption of immunity is rebutted under the circumstances."  *Id.* at 2337 (cleaned up).  The Office cannot meet its burden of rebutting the presumption because the use of this evidence in a criminal prosecution will "pose dangers of intrusion on the authority and functions of the Executive Branch."  *Id.* at 2337.  President Trump is entitled to an opportunity to prevail on this issue as a matter of law pursuant to Rule 12(b) before the Office makes a filing that has no basis in law or the Federal Rules of Criminal Procedure, which will amount to an improper motion for summary judgment in the court of public opinion.

These threshold legal issues are dispositive because prosecutors may not even "seek[] to charge" a former President by relying on evidence of official acts.  *Trump*, 144 S. Ct. at 2331.  Presidents "cannot be indicted based on conduct for which they are immune from prosecution."

*Id.* at 2340.  Because the Special Counsel's Office did just that by relying on false and exaggerated allegations relating to Vice President Pence, the Superseding Indictment was void *ab initio.*  The Court may not further "adjudicate" such a prosecution.  *Id.* at 2328.  The Presidential immunity defense is intended to guard against "the possibility of an extended proceeding alone."  *Id.* at 2344.  Thus, prolonging proceedings in this case without addressing these dispositive threshold issues— especially through invasive factual probes of President Trump's official acts—is itself a violation of the Presidential immunity doctrine.  The harms to the "institution of the Presidency" resulting from this violation are exacerbated by the current schedule.  *Id.* at 2341.  This is so due to the fact that the Office's planned filing in defense of the defective Superseding Indictment, before President Trump has had an opportunity to obtain and review all required discovery, will add to "the peculiar public opprobrium that attaches to [these] criminal proceedings" as the election rapidly approaches.  *Id.* at 2331.

## 2. The Special Counsel Must Produce All Evidence Relating To The Official Context Surrounding The False Allegations In The Superseding Indictment

All documents supporting President Trump's Presidential immunity defense are discoverable under *Brady*, Rule 16(a)(1)(E), and Local Criminal Rule 5.1.  Because the scope of the prosecution team is disputed, and because the Special Counsel's Office has independent affirmative obligations to search for such evidence, it cannot be true that prior discovery efforts by the Office are adequate to account for the features of this defense recently identified by the Supreme Court.

For example, among other requirements, the Presidential immunity defense necessitates discovery regarding the government's prior positions on the scope of "core" and "outer perimeter" Executive authority, *Trump*, 144 S. Ct. at 2327, 2331; and information relating to actual or threatened "dangers of intrusion on the authority and functions of the Executive Branch," *id.* at

2337 (cleaned up).[3]  The government regularly addresses the scope and breadth of Presidential

authority in public and private settings.[4]  Disclosures relating to those positions are necessary under

*Trump*, and discovery regarding the government's views on issues bearing on a valid defense is

not unprecedented.  In *United States v. Poindexter*, which the Special Counsel's Office cites, the

court required production of "all documents prepared by the Executive Branch regarding the

applicability of the Boland Amendment to the NSC,"[5] including documents that—irrespective of

the defendant's awareness—"indicate[d] that Executive Branch officials and members of the NSC"

had reached conclusions that were consistent with the defense theory.  727 F. Supp. 1470, 1476

(D.D.C. 1989); Opp'n at 7.  In *United States v. George*, which the Office also cites, the Independent

Counsel produced materials that are similar to the items sought by President Trump, including "the

eight Presidential Findings related to either Iran or the Contras," "all of the deliberative and

advisory documents related to each Finding," and 5,600 cables that related to "CIA support for

certain activities directed at Nicaragua."  786 F. Supp. 56, 60 (D.D.C. 1992); Opp'n at 7.  Privileges

the government may hold over this information are qualified, they cannot be invoked in a blanket

fashion, and they must give way to the important countervailing interests identified by the Supreme

Court in *Trump*.

---

[3] Although the discoverability of these issues is a basic application of *Brady* and Rule 16(a)(1)(E), President Trump will transmit specific immunity-related discovery requests to the Special Counsel's Office.  President Trump reserves the right to seek further relief regarding such requests as appropriate.

[4] *See, e.g.*, Brief for United States as Amicus Curiae in Blassingame v. Trump, Nos. 22-5069, 22-7030, 22-7031, at 1-2 (D.C. Cir. Mar. 2, 2023); Authority of the FBI to Override International Law in Extraterritorial Law Enforcement Activities, 13 Op. O.L.C. 163, 176 (1989).

[5] The Boland Amendment "prohibited certain government agencies and entities from expending funds to support the military or paramilitary operations of the Contras."  *Poindexter*, 727 F. Supp. at 1476 n.10.

The Presidential immunity defense also requires further discovery regarding the "context" in which the alleged conduct took place. *Trump*, 144 S. Ct. at 2340. For example, President Trump's "core" authority included "important foreign relations responsibilities" vital to his role as Commander in Chief, such as "overseeing . . . intelligence gathering." *Id.* at 2327; *see also* Art. II, § 2, cl. 1. Evidence relating to the exercise of this authority by President Trump and Executive Branch subordinates he supervised in connection with efforts to protect the integrity of the 2020 election from foreign adversaries, and to assess the impact on the election by those adversaries, provide context for all his election-related actions, and is therefore relevant to the issue of whether President Trump's alleged actions involved official acts and are subject to immunity. Thus, the Presidential immunity defense supports pending discovery requests relating to the 2016 Election ICA, the 2020 Election ICA, and related source materials, which are further discussed in the Classified Supplement. *See, e.g.*, Compel Motion at 24-27.

Any evidence of bias and hostility toward President Trump harbored by the prosecution team is discoverable and must be produced. If the Court addresses presumptive Presidential immunity—which it should not because that immunity must be absolute as stated above—a prosecution driven by improper bias and hostility toward "the only person who alone composes a branch of government" would pose "dangers of intrusion on the authority and functions of the Executive Branch," and would result in a situation where the Special Counsel's Office cannot rebut the presumption. *Trump*, 144 S. Ct. at 2329, 2331-32 (cleaned up); *see also id.* at 2346 (reasoning that, "[w]ithout immunity," it could become "routine" for "[a]n enterprising prosecutor in a new administration" to "assert that a previous President violated that broad statute," which would result in the "enfeebling of the Presidency"). Therefore, the Special Counsel's Office must make disclosures on these issues under *Trump*.

President Trump is also entitled to "context" disclosures bearing on his "extraordinary power to speak to his fellow citizens and on their behalf," "including by speaking forcefully or critically, in ways that the President believes would advance the public interest." *Trump*, 144 S. Ct. at 2340. Similar discovery is still ongoing in *Blassingame*, and will continue into next month. Thus, it is hard to believe that the Special Counsel's Office completed the necessary review in the time since *Trump* was decided on July 1, 2024, and that doubt is supported by the fact that the Office has not produced additional discovery beyond grand jury material relating to the Superseding Indictment.

### B. Local Criminal Rule 5.1

The Court cannot trust discovery compliance representations by the Special Counsel's Office because it is clear from the Opposition that the Office has ignored Local Criminal Rule 5.1. *See United States v. Sutton*, 2022 WL 2383974, at *8-9 (D.D.C. 2022) (discussing "[t]he government's obligation under Local Criminal Rule 5.1"). Pursuant to this Rule, the Office must promptly collect and produce information that is "inconsistent" with their unsustainable theory of the case, information that tends to establish "articulated and legally cognizable defense[s]" such as Presidential immunity and challenges to the intent element of each pending charge, and information that "casts doubt on the credibility or accuracy of any evidence," such as Intelligence Community Assessments ("ICAs") in 2016 and 2020. Local Criminal Rule 5.1(b).

Next, "[i]t is demonstrably not the responsibility of a prosecutor to test the credibility or trustworthiness of an exculpatory statement given by a witness or to weigh that statement against their assessment of the inculpatory evidence in the case." *Sutton*, 2022 WL 2383974, at *7 (cleaned up). Thus, the Special Counsel's Office cannot defeat discoverability under Local Criminal Rule 5.1 and other authorities by crediting their false theory that President Trump

engaged in "deliberate actions that caused the attack," mischaracterizing contrary information as "rumors," and foisting a pretrial burden on President Trump to establish that he "earnestly" credited any of the myriad exculpatory classified details that the Office is improperly seeking to keep from the defense and the public.  Opp'n at 27-28.

Elsewhere in the Opposition, the Office makes meritless arguments opposing disclosures based on the Federal Rules of Evidence, which are blatantly inconsistent with Local Criminal Rule 5.1.  *Compare* Opp'n at 26, 44, 45 (citing Rule 403), *with* Local Criminal Rule 5.1(a) ("This requirement applies regardless of whether the information would itself constitute admissible evidence.").[6]  As another example, the Office opposes bias-related disclosures by contending that such evidence is not "automatically admissible at trial."  Opp'n at 43.  During case-file reviews within the prosecution team, once scope is resolved, the Special Counsel's Office may not look ahead to potential rulings at a trial that should never occur to avoid disclosures they were required to make at the outset of this case.

These types of arguments are part of the reason why the Supreme Court rejected the Special Counsel's "assurances" that prosecutors "will not permit political or baseless prosecutions from advancing in the first place . . . ."  *Trump*, 144 S. Ct. at 2344; *see also id.* ("We do not ordinarily decline to decide significant constitutional questions based on the Government's promises of good faith.").  The Court must remedy these failures by the Special Counsel's Office before the case moves ahead to evidentiary proceedings, if necessary.

---

[6] *Accord* Justice Manual § 9-5.001(C)(3) ("[T]he disclosure requirement of this section applies to information regardless of whether the information subject to disclosure would itself constitute admissible evidence.").

## C. *Mens Rea* Defense

President Trump emphatically rejects the allegations by the Special Counsel's Office that he acted with scienter at any time and is entitled to discovery in support of this defense. The appropriate scope of that discovery is much broader than the Office has acknowledged, which further supports President Trump's position that they are currently in violation of their discovery obligations. Although the focus of the Court must now be on immunity, where motive is irrelevant, President Trump is entitled to discovery in support of his other defenses. The appropriate scope of that discovery is much broader than the Office has acknowledged, which further supports President Trump's position that they are currently in violation of their discovery obligations.

In *Poindexter*, the court required discovery on a defendant's challenge to the intent elements of obstruction and false-statements counts, where part of that defense was based on the theory that the underlying activities of the National Security Council were legal. 727 F. Supp. at 1475 ("Evidence regarding the absence of motive is usually admitted to negate specific intent."); *see also United States v. Fernandez*, 913 F.2d 148, 164 (4th Cir. 1990) (reasoning that former CIA status chief was entitled to evidence to help explain "his understanding of the world in which he worked"). The allegations in the Superseding Indictment are even broader. The Special Counsel's Office has framed the charges around "claims of election fraud," and they baselessly insist that President Trump knew there was no such fraud. ECF No. 226 ¶ 8. Therefore, President Trump is entitled to documents and information demonstrating the opposite; that he had "no such motive because he reasonably believed" that fraud had been perpetrated. *Poindexter*, 727 F. Supp. at 1475.

Like the prosecutor in *Poindexter*, the Special Counsel's Office seeks to improperly restrict discovery on President Trump's defenses based on a narrow construction of the Superseding Indictment and myopic focus on their allegation of "outcome-determinative" fraud. ECF No. 226

¶ 2; Opp'n at 19.  The *Poindexter* court "decided to reject" that approach, as this Court should here.  727 F. Supp. at 1475 & n.9 (reasoning that prosecutors' mixed-motive theory "does not negate defendant's right to the discovery of documents that will support his version of the events").  Whether or not the prosecutors regard evidence as "outcome-determinative," information relating to election fraud is discoverable in this case.  That proposition holds even if the prosecutors personally believe, albeit incorrectly, that the information was limited to "rumors."  Opp'n at 28.

*Poindexter* also refutes the argument of the Special Counsel's Office that President Trump must demonstrate that he was "aware of" certain information in order for it to be discoverable.  Opp'n at 19.  For example, the court held that "documents regarding the knowledge of other high government officials" were discoverable, even as to "former President Reagan and then Vice President Bush."  *Poindexter*, 727 F. Supp. at 1476-77.  The court reasoned that, irrespective of the defendant's knowledge of those documents or their contents, the items "may be material to a defense of lack of specific intent for several reasons."  *Id.* at 1477.  These rulings apply here, where the Special Counsel's Office readily concedes, for example, that President Trump acted with "the full intelligence community apparatus at his disposal" during the relevant time period.  Opp'n at 28.  While President Trump's knowledge of certain facts may be pertinent to future admissibility determinations, it is improper to saddle the defense with an evidentiary burden at this phase of the case.  *See, e.g.*, *id.* at 28 (seeking to evade discovery obligations "[u]ntil the defendant can show he earnestly bought into foreign disinformation and establish which foreign rumors were of specific concern to him").  The defense is entitled to information that "will play an important role in *uncovering* admissible evidence."  *United States v. Bingert Sturgeon*, 2023 WL 3203092, at *2 (D.D.C. 2023) (cleaned up).

### D.  Mitigating Evidence Relating To Third Parties

The Special Counsel's Office largely ignores President Trump's valid defense theories regarding intent, and frames many of those arguments in terms of "third-party guilt."  Opp'n at 26. This is an additional viable defense theory against the Office's unsupported charges, and their efforts to avoid discovery on this issue are misguided at best.

It is irrelevant to the scope of discovery obligations, as noted above, that the Special Counsel's Office believes President Trump's "third-party guilt argument contravenes Rule 403." Opp'n at 26; *see also United States v. Kim*, 2013 WL 3866542, at *4 n.7 (D.D.C. 2013) ("Evidence need not be admissible at trial to be at least helpful to the Defendant in identifying a potential third party perpetrator.").  Thus, the cases the Office cites, which involve evidentiary rulings in connection with trials, do not justify their efforts to suppress discoverable evidence.  Opp'n at 26.

In order to be discoverable, documents and information need not conclusively establish "third party guilt." Opp'n at 26.  Information relating to conduct by third parties is discoverable where, for example, it is inconsistent with the prosecution's theory of the case or mitigates the seriousness of their allegations.  *See* Local Criminal Rule 5.1(b)(1)-(2); *see also, e.g.*, *United States v. Chansley*, 2023 WL 4637312, at *8 (D.D.C. 2023) (reasoning that evidence is "[f]avorable" under *Brady* where it "tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses" (cleaned up)).

For the reasons stated in the Classified Supplement, it is neither "speculative" nor "far fetched" for President Trump to demand specific, existing evidence that refutes the Office's false allegation that President Trump, alone, "create[d] an intense national atmosphere of mistrust and anger, and erod[ed] public faith in the administration of the election."  Opp'n at 27; ECF No. 226 ¶ 2. By claiming that President Trump's defense to these allegations is "at best, a counterfactual

guess," Opp'n at 27, the Office adopts a position in a public filing that they cannot sustain in the SCIF—as they are well aware in connection with their desperate and meritless efforts to avoid relevant Intelligence Community holdings relating to third-party mitigation evidence.

## II.   The Special Counsel's Position Regarding The Prosecution Team Is Lawless

The Prosecution Team Motion seeks to require the Special Counsel's Office to review, collect, and disclose evidence required by their basic discovery obligations and President Trump's defense theories from relevant individuals at entities that assisted the Office and are well within the Office's reach.  The Office's attempts to avoid these requirements are unpersuasive.

### A.  Improper Prosecution Team Restrictions Lead To Systemic Discovery Violations

At the outset, the Special Counsel's Office finds President Trump's prosecution-team arguments "confusing[]" and accuses the defense of seeking to "camouflage" a nefarious legal strategy.  Opp'n at 1.  These are troubling claims from an Office that is seeking to cloak itself in a presumption of regularity, as the scope of the prosecution team is a threshold question for prosecutors' discovery compliance.

Nor are President Trump's prosecution-team arguments "abstract" or "theoretical[]." Opp'n at 12.  Defining the prosecution team is, literally, "Step 1" for "Gathering and Reviewing Discoverable Information."  Justice Manual § 9-5.002.  The definition sets the scope of mandatory case-file reviews of, for example, "'[s]ubstantive' case-related communications" involving prosecutors, agents, and witnesses.  *Id.*  Those case-file reviews, focused on relevant personnel at agencies within the scope of a lawfully defined prosecution team, are supposed to drive the prosecutors' disclosures under, *inter alia*, *Brady*, *Giglio*, the Jencks Act, and Rule 16.

To date, the Office has used an unlawfully narrow definition of the prosecution team to try to justify declining to produce discoverable documents and information that is plainly accessible

to them and, in several instances, refusing to even look for those materials.  This is especially problematic with respect to anticipated Presidential immunity litigation.  In addition to the fact that the Office refused to acknowledge the defense at all during their initial discovery reviews, they have not looked for discoverable information in places that are obviously significant—such as at DOJ, ODNI, CIA, and DOD.

### B.  Agency Contributions To The Special Counsel Are Highly Relevant Considerations

The Special Counsel's Office strenuously objects to the common-sense proposition that "whether another entity actually contributed to the investigation by locating evidence or assisted in some other way" is relevant to the scope of the prosecution team for purposes of discovery.  *Compare United States v. Michel*, 2023 WL 7140001, at *1 (D.D.C. 2023), *with* Opp'n at 4-5.  The Office credits President Trump with "creating" this "new test."  Opp'n at 4.  But defense counsel cannot take all the credit for the groundbreaking decision to quote from this District's caselaw.

The Justice Manual substantially tracks *Michel* by instructing prosecutors—under a heading titled, "Where to look: The Prosecution Team"—that "factors to be considered in determining whether to review potentially discoverable information from another federal agency" include whether the agency "played an active role in the prosecution" or "shared resources," and "[w]hether the prosecutor has obtained other information and/or evidence from the agency." Justice Manual § 9-5.002; *see also Michel*,  2023 WL 7140001, at *1 n.1 (citing "a similar test laid out in Department of Justice regulations").  Local Criminal Rule 5.1(e) is even broader: the term "government" is defined to "include[] federal, state, and local law-enforcement officers and other government officials who have participated in the investigation and prosecution of the offense(s) with which the defendant is charged."  Thus, the Court should put to rest any doubt about whether

the nature and extent of an agency's contributions to an investigation are relevant to the scope of the prosecution team.

### C. The "Close-Alignment" Caselaw Rejects The Special Counsel's Arbitrary Line Drawing Regarding DOJ And FBI

At least superficially, the Special Counsel's Office seems to prefer what they refer to as the "'closely aligned' test." Opp'n at 2. The cases from which that "test" arise, however, do not excuse the Office's ongoing discovery violations.

In *United States v. Brooks*, the D.C. Circuit surveyed caselaw and concluded that prosecutors have a "duty to search" for discoverable materials at agencies that are "closely aligned with the prosecution." 966 F.2d 1500, 1503 (D.C. Cir. 1992) (cleaned up). In the very same sentence, the *Brooks* panel explained that "in each case the court has found the bureaucratic boundary too weak to limit the duty." *Id.* The Special Counsel's Office also cites *United States v. Libby* in support of their preferred "test," but the opinion offers no support for their conduct in this case. Opp'n at 2. In *Libby*, the court concluded that the CIA and the Office of the Vice President ("OVP") were part of the prosecution team. 429 F. Supp. 2d 1, 11 (D.D.C. 2006). That result was appropriate where (1) the prosecutors "were well aware at the outset of this investigation that both of these entities had documents pertinent to the investigation"; (2) there was a "rather free flow of documents" between the prosecution and "both the OVP and the CIA"; and (3) those documents were "used to investigate" the defendant. *Id.*

The Special Counsel's Office ignores the reasoning in these opinions and urges the Court to conclude that the prosecutors responsible for this case have no discovery obligations with respect to files at the D.C. U.S. Attorney's Office—where some of the very same prosecutors worked on the investigation that led to this case. Opp'n at 10; *see also id.* at 35 (arguing that searches that January 6 prosecutions involved "different cases, from a different office"). For

example, in February 2022, while Senior Assistant Special Counsel Windom was still targeting President Trump from the D.C. U.S. Attorney's Office, he communicated with NARA-OIG, which is a conceded member of the prosecution team in this case, regarding the purported "referral" that drove the Florida investigation.[7]  The communication is an apt example of the overlapping nature of these entities' relationships and interactions in connection with their common objective: unjust pursuit of President Trump.  The Office should not be permitted to invoke bureaucratic boundaries and pretend that these relationships do not exist now that it is time to comply with President Trump's Constitutional rights.

The Office makes a similar meritless claim with respect to DOJ components that participated in the investigation, such as the Office of the Attorney General, the Public Integrity Section, and the National Security Division.  *See Libby*, 429 F. Supp. at 9 ("'[T]he government cannot compartmentalize the Department of Justice and permit it to bring a charge affecting a government employee in the Post Office and use him as its principal witness, but deny having access to the Post Office files.'" (quoting *United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir. 1973)).  President Trump does not advance a "monolithic view of the government," or suggest searches at "every agency in the Executive Branch," by pointing out that members of the Special Counsel's Office should be required to review relevant case files at offices where the very same prosecutors worked on the same investigation.  Opp'n at 3-4 (cleaned up).

Along the same lines, the Special Counsel's Office draws a false distinction based on an illusory bureaucratic boundary between "prosecution team members who are part of the FBI's Washington Field Office" and "other individual agents in that office [who] may have worked on

---

[7] *See* ECF No. 469-1 at 57, *United States v. Trump*, No. 23 Cr. 80101 (S.D. Fla. Apr. 22, 2024); *see also* ECF No. 469 at 12, *United States v. Trump*, No. 23 Cr. 80101 (S.D. Fla. Apr. 22, 2024).

charged Capitol breach cases." Opp'n at 12. The Office finds it "anodyne," Opp'n at 11, that "open-file discovery does not relieve the government of its *Brady* obligations." *United States v. Hsia*, 24 F. Supp. 2d 14, 29 (D.D.C. 1998). But they assume, without justification, that all discoverable materials were included in "global discovery" for other defendants not charged in this case, and that the Office has complied with *Brady* and Rule 16 in this case because those "other individual agents" must have done so previously. Opp'n at 10, 12. That is wrong. The Office cannot discharge their discovery obligations to President Trump by relying on decisions made years ago by prosecutors and "other individual agents" who were not focused on the allegations and charges against President Trump, his defenses, or the Supreme Court's recent ruling. *See United States v. Jain*, 2020 WL 6047812, at *1 (S.D.N.Y. 2020) (finding that "the failure to timely produce this data" resulted from, *inter alia*, "failure of the successor case agent to review the entirety of the case file and failure of a prosecutor to make prudent and timely inquiries of the original and successor case agents"); *see also United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) ("The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided . . . .").

### D.  The Special Counsel Cannot Ignore Easy Access To Relevant Files Of The J6 Committee, DOD, ODNI, And CIA

The Special Counsel's Office also invokes the concept of "easy access," but that does not help them because they have had such access to relevant materials from the Select Committee to Investigate the January 6th Attack on the United States Capitol ("J6 Committee") and the other entities at issue in the Prosecution Team Motion. Opp'n at 3, 14 (citing *United States v. Griffith*, 1993 WL 119164, at *5 (D.C. Cir. 1993).

In *Griffith*, the D.C. Circuit found that records were not within the "control" of the prosecutors because the materials were located at the D.C. Youth Services Administration, as

opposed to "the United States Attorney's Office or another government office that would allow the prosecutors easy access."  1993 WL 119164, at *5.  There was no suggestion that the Youth Services Administration had provided materials to the prosecutors or assisted them in any way.

In stark contrast is *Poindexter*.  There, in response to the prosecutors' assertion that they had no "obligation to secure and produce Presidential or Vice Presidential diaries or notes," the court found it "clear" that "the government cannot be compartmentalized for purposes of Rule 16 as readily as the Independent Counsel suggests."  727 F. Supp. at 1477.  Courts are "more concerned" about "the government's ease of access to the documents sought" and "fairness to the defendant," than "the physical possession of the prosecutor."  *Id.*  "More importantly," "a prosecutor who has had access to documents in other agencies in the course of his investigation cannot avoid his discovery obligations by selectively leaving the materials with the agency once he has reviewed them."  *Id.* at 1478.

The "easy access" proposition from *Griffith*, and the analysis in *Poindexter* and *Libby*, support President Trump's position regarding the J6 Committee, ODNI, CIA, and DOD.  The Special Counsel's Office has "sought and received a variety of documents" from the J6 Committee and, as discussed in the Classified Supplement, ODNI, CIA, and DOD.  *Libby*, 429 F. Supp. 2d at 11.  With respect to the J6 Committee, which consisted of "other government officials" under Local Criminal Rule 5.1(e), the Office obtained a large volume of unclassified documents.  Thus, there is no basis for the Office's refusal to request, obtain, review, and produce discoverable materials relating to the same witnesses and events from the Committee's classified holdings.

The volume of documents obtained by the Special Counsel's Office from ODNI and the CIA is smaller.  As discussed in the Classified Supplement, however, the materials and the timing of their production are significant.  Therefore, it would "clearly conflict with the purpose and

spirit" of the discovery rules to allow the prosecutors to "leave other documents with these entities that are . . . material to the preparation of the defense." *Libby*, 429 F. Supp. 2d at 11. Under *Poindexter*, the Office should not be able to "selectively" refuse to seek or review additional materials in connection with their discovery obligations.

### E.  Intelligence Community Support To The Special Counsel Further Establishes The Prosecution Team's Access To Relevant Materials

In addition to the direct contributions to this case by ODNI and CIA, parts of the Intelligence Community have supported lawfare against President Trump in a manner that is relevant to the scope of the prosecution team.

This support included extensive assistance to DOJ and the FBI in connection with the unlawful raid at Mar-a-Lago, which targeted President Trump and was approved by the Attorney General, DOJ leadership, and FBI headquarters in August 2022.[8] Beginning in February 2023, the Special Counsel's Office and the FBI re-searched the items that were improperly seized in Florida for use in this case. The Office re-produced some of those materials to President Trump in connection with these proceedings, and apparently intends to use them at any trial.

The coordination between the prosecution team and the Intelligence Community relating to these events is not "implied." Opp'n at 16. When President Trump challenged the Mar-a-Lago raid, DOJ asserted, in a filing signed by a National Security Division Supervisor who now works at the Office, that:

> DOJ and [ODNI] are currently facilitating a classification review of these materials, and ODNI is leading an Intelligence Community assessment of the potential risk to national security that would result from the disclosure of these materials.

---

[8] *See* ECF No. 469 at 26-27 & n.11, *United States v. Trump*, No. 23 Cr. 80101 (S.D. Fla. Apr. 22, 2024).

ECF No. 48 at 19-20, *Trump v. United States*, No. 22 Civ. 81294 (S.D. Fla. Aug. 30, 2022).  In another filing, DOJ stated flatly that "[t]he Intelligence Community's review and assessment cannot be readily segregated from [DOJ's] and [FBI's] activities in connection with the ongoing criminal investigation."  ECF No. 69 at 3, *Trump v. United States*, No. 22 Civ. 81294 (S.D. Fla. Sept. 8, 2022); *see also id.* at 12 (describing classification review as "closely interconnected with" the areas of inquiry of DOJ's and the FBI's ongoing criminal investigation).  Whereas in this case the Office resists disclosures regarding classification reviews, the Office produced in the Florida case hundreds of pages of documents relating to their coordination with the Intelligence Community in connection with that process.[9]  Thus, if "precise delineation of the investigative teams within the Office is immaterial," Opp'n at 9, that is only because it is clear that these prosecutors worked closely with the Intelligence Community in a manner that now requires the Office to review holdings at ODNI and the CIA for discoverable material.

## III.   The Prosecution's Affirmative Search Obligations

Even if the Special Counsel's Office had established that one of the entities at issue should be excluded from the scope of the prosecution team, which they have not done, that conclusion would not end the inquiry into their review obligations for purposes of discovery.  The Office has an independent obligation to search for the types of exculpatory evidence identified by President Trump, including through Prudential Search Requests.  *See* Justice Manual § 9-90.210(B).

Courts have enforced these search obligations where, as here, the defense establishes a reasonable basis for believing that discoverable materials are housed in the targeted files.  *See* Prosecution Team Motion at 8, 28-29 (citing *Kim, Safavian, Karake, Oseguera Gonzalez*); *see*

---

[9] *See, e.g.*, ECF No. 165 at 7, *United States v. Trump*, No. 23 Cr. 80101 (S.D. Fla. Sept. 27, 2023) (disclosing that upcoming production would include "information related to the classification reviews conducted in the case").

*also, e.g.*, *United States v. Alahmedalabdaloklah*, 94 F.4th 782, 815 (9th Cir. 2023) ("[T]he district court ordered the Government to search for the requested information and provide a written response . . . ."); *Brooks*, 966 F.2d at 1504 (remanding with an instruction to the district court to issue "a directive to the prosecution to examine the files").   Reasonable prosecutors often undertake these searches on their own as a result of their obligation to seek truth.  *United States v. Yunis*, 867 F.2d 617, 619 (D.C. Cir. 1989) ("[A] multi-agency search was initiated to locate other materials pertaining to surveillance of the defendant" (cleaned up)).   Even the Special Counsel's Office, in the Florida case, publicly acknowledged conducting Prudential Search Requests to satisfy their discovery obligations.[10]   There is no valid basis for failing to do so here.

## IV.   The Court Should Compel Disclosures In Response To President Trump's Specific Requests

In addition to the obligations of the Special Counsel's Office to search for discoverable information, President Trump has made specific demands in the Compel Motion and the Classified Supplement.  Similar to the Office's approach to the prosecution-team dispute, they have ignored applicable law governing their obligations, deflected from the evidence in the record without assurances about facts exclusively in their possession, and refused to budge even an inch closer to justice in this case by turning over any of the materials at issue.

### A.  The Special Counsel Exaggerates The Rule 16 Materiality Standard

In response to President Trump's specific requests, the Special Counsel's Office does not appear to dispute the defense's framing of the legal standards governing their *Brady* obligations. *See* Compel Motion at 5-6.  Instead, they focus attention on Rule 16(a)(1)(E) and overstate the materiality standard.  Opp'n at 7-8.

---

[10] ECF No. 218 at 50, *United States v. Trump*, No. 23 Cr. 80101 (S.D. Fla. Nov. 1, 2023) ("Your Honor, in our – in ECF-173, we acknowledge that we did PSRs. . . .")

Prosecutors have a "broad obligation," based on "myriad sources," to "disclose favorable evidence – without regard to its 'materiality' – 'as soon as reasonably possible after its existence is known.'" *Sutton*, 2022 WL 2383974, at *9 (quoting Local Criminal Rule 5.1(a)).  Materiality is normally "not a heavy burden." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (cleaned up).  The standard is met "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Id.* (cleaned up).  Binding precedent establishing President Trump's right to information that will assist in "uncovering admissible evidence" is another reason to ignore the affinity of the Special Counsel's Office for pretrial Rule 403 analysis as a mechanism for suppressing discoverable materials.

The Special Counsel's Office also makes passing reference to the "relevant" and "helpful" standard applied in connection with CIPA § 4 motions.  *See* Opp'n at 8; *see also Yunis*, 867 F.2d at 622-24.  However, "*Brady* information is plainly subsumed within the larger category of information that is 'at least helpful' to the defendant," and "information can be helpful" under *Yunis* "without being 'favorable' in the *Brady* sense." *United States v. Mejia*, 448 F.3d 436, 456-57 (D.C. Cir. 2006).  Moreover, the "helpful" requirement only comes into play after the government successfully invokes the state-secrets privilege, which requires more than unsworn assertions from line prosecutors in response to a discovery motion.  *See United States v. Abu-Jihaad*, 630 F.3d 102, 141 n.34 (2d Cir. 2010).  In any event, courts applying this standard "should, of course, err on the side of protecting the interests of the defendant." *United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998); *see also Mejia*, 448 F.3d at 458 ("[W]e have applied the 'at least helpful' test in a fashion that gives the defendants the benefit of the doubt.").

**B.** *Giglio* **Disclosures Relating To Vice President Pence**

The opposition by the Special Counsel's Office to President Trump's demand for *Giglio* information relating to Vice President Pence's classified-information mishandling is meritless, and their suppression of this evidence must be addressed promptly in light of Vice President Pence's significance to the Presidential immunity defense.  *See* Opp'n at 41-42.

Elsewhere in the Opposition, the Office seeks a pat on the back for having complied with their legal obligation to collect and disclose electronic communications involving "senior Department of Justice leadership during the defendant's administration."  Opp'n at 13.  As to materials at DOJ relating to Vice President Pence, however, the Office claims to lack access.  They do so despite the fact that the same National Security Division at DOJ that improperly targeted President Trump participated in the investigation of Vice President Pence.[11]  The above-referenced NSD supervisor who appeared in the Florida litigation relating to the Mar-a-Lago raid, as well as one of his direct reports and at least one more NSD line attorney, all now work for the Special Counsel.  Nevertheless, the Office represents to the Court that President Trump "has the same public information about the matter [relating to Vice President Pence] as does the Special Counsel's Office."  Opp'n at 41.  That is a facially ridiculous claim, which only serves as another illustration of these prosecutors' unethical approach to discovery.

The Special Counsel's Office then suggests that the public reports relating to Vice President Pence are "mere accusations" that "cannot" be used for impeachment.  Opp'n at 41 (citing *United States v. Maynard*, 476 F.2d 1170, 1174 (D.C. Cir. 1973)).  In this regard, prosecutors who are ethically required to do justice would have the Court believe that these so-called "accusations" in

---

[11] NSD supervises any investigation, like the one relating to Vice President Pence, that touches on national security issues.  *See* Justice Manual 9-90.010.

the media are just that—unproven allegations with no basis in fact.  The Court should test that representation.  Because if the media "accusations" do have a basis in fact, the facts are subject to *Giglio*.

Vice President Pence's classified-information handling violations do not fit the "general rule" discussed in *Maynard*.  476 F.2d at 1174.  If Vice President Pence committed crimes that DOJ elected not to prosecute for discretionary reasons, that benefit must be disclosed.  This is one of the "certain situations" where "external facts" support a "specific bias, or motive to testify in a particular way" that is "admissible to impeach a witness."  *Id.*  The Special Counsel's Office quibbles with the probative force of impeachment material they falsely claim to have no specific knowledge of, but that is not an excuse for ignoring their *Giglio* obligations.  *See Cone v. Bell*, 556 U.S. 449, 470 n.15 (2009) ("As we have often observed, the prudent prosecutor will err on the side of transparency, resolving doubtful questions in favor of disclosure.").  The proper course is to disclose the impeachment material and then file a motion to preclude this line of cross-examination, which the Office will lose if and when we get to that point.  The Office has ignored their duty in that regard, as well as others, and the Court must enforce it.

**C.  Inconsistent Assertions By Government Actors**

The flippant response by the Special Counsel's Office to President Trump's demand for statements by officials that are inconsistent with the Office's theory of this case is equally meritless.  Opp'n at 34-37.

This demand is not limited to "publicly available court documents."  Opp'n at 35.  With respect to members of the prosecution team at the D.C. U.S. Attorney's Office and relevant components of DOJ and the FBI, the search obligation also requires a review of private "substantive case-related communications."    Justice Manual § 9-5.002.    Where such

communications involve statements that are inconsistent with the Office's theory of the case, they could potentially be admissible at a trial or a hearing as party admissions or on estoppel theories. The Office undoubtedly disagrees, but they cannot escape the fact that such statements could "play an important role in uncovering admissible evidence." *Lloyd*, 992 F.2d at 351 (cleaned up).  This is particularly true with respect to any evidentiary litigation concerning Presidential immunity, where, for example, President Trump could rely on testimony from current or former government officials who disagree with the Office's anticipated position on issues such as whether the prosecution "pose[s] dangers of intrusion on the authority and functions of the Executive Branch." *Trump*, 144 S. Ct. at 2337 (cleaned up).

### D.  Evidence Of Foreign Influence And Foreign Interference

To resist President Trump's demands for discovery regarding foreign influence, including related reports and assessments, the Special Counsel's Office adopts an artificial distinction between "influence" and "interference."  *See* Opp'n at 19-24; Compel Motion at 26-29.  The Office's flawed position is based on crediting statements in the 2020 Election ICA and by certain of their witnesses, which President Trump disputes and are not a basis for withholding evidence.

As explained in the Classified Supplement, a witness who is eminently qualified to speak on the subject was not as sanguine as the Special Counsel's Office about the influence/interference line-drawing exercise.  The Superseding Indictment does not rely on this false dichotomy either, and instead refers more generally to the concept of "election fraud," which encompasses "influence" and "interference" as used by the Office in the Opposition.  *E.g.*, ECF No. 226 ¶ 8.  To try to bolster the type of contested factual advocacy that cannot justify withholding evidence, the Office quotes from the "Key Judgments" in the 2020 Election ICA as if they were binding appellate precedent.  Opp'n at 21.  But the ICA itself acknowledges that "[j]udgments are not intended to

imply that we have proof that shows something to be a fact."  ECF No. 167-6 at 16.  President Trump's position is also supported by the "Minority Review" in the ICA as well as whistleblower reporting and Dr. Zulauf's congressional submission, which are all topics for which the Office is seeking to suppress discoverable classified details that must be disclosed for purposes of impeaching the "judgments" they seek to credit.  *See* Compel Motion at 15-16.

### E.  The SolarWinds Hack

It is demonstrably false, as is clear from the Classified Supplement, that the SolarWinds hack is "completely unrelated" to the evidence.  Opp'n at 29.  The position of the Special Counsel's Office is largely based on assessments made when the events were unfolding and the magnitude of the hack was not understood.  *See* Compel Motion at 30-31.  Compounding the uncertainty, the SEC later took the position that SolarWinds misled the public, including during late 2020 and early 2021.  *See* ECF No. 167-3; *see also In re SolarWinds Corp. Sec. Litig.*, 595 F. Supp. 3d 573, 580 (W.D. Tex. 2022) (noting additional investigations by state Attorneys General and DOJ concerning SolarWinds' "alleged misconduct").  That is exactly why disclosures on this issue are necessary.  The uncertainty about the impact of the hack during the relevant period served as a reasonable basis for good-faith doubts by President Trump and others about the accuracy of the "judgments" in the 2020 Election ICA and related reporting, and evidence regarding the hack is also discoverable so that the defense can use it to challenge the Office's favored proof.

### F.  Requests For Security At The Capitol

The Special Counsel's Office opposes President Trump's demand for disclosures regarding security requests and the timing of the National Guard's deployment on January 6 on meritless grounds.  Opp'n at 37-39.  Security-related disclosures are discoverable irrespective of President Trump's knowledge because these materials provide relevant context for determining the scope of

official acts and dangers of intrusion on the Executive Branch for purposes of Presidential immunity.  The responsive evidence also mitigates the Office's made-up theory of culpability by demonstrating, for example, that President Trump's federal subordinates exercised delegated Executive power in a way that refutes the Office's crusade to blame President Trump for these events.

The Special Counsel's Office also contends that their decision to produce what they view as a substantial volume of unclassified materials meets their obligations on this issue.  *See* Opp'n at 38.  This argument ignores the fact that many of the likely custodians of evidence on this issue at the federal level, such as White House and DOD personnel, used classified channels to communicate about security needs and engage in related planning activities.  There is no indication that the Office attempted to review any such materials beyond what they selectively collected from General Milley.  Thus, their claims of discovery compliance cannot be credited.

### G.  FISA Abuses

The Special Counsel's Office argues that President Trump's demand for information relating to FISA abuses is a "Rule 403-barred sideshow the defendant wants to bring to the trial's main stage."  Opp'n at 44.  In addition to the improper reliance on Rule 403 in discovery litigation, the Office yet again betrays a stubborn refusal to consider potential defenses that could impact their politically motivated "stage."  The Intelligence Community commonly relies on FISA-derived information to make assessments such as those in the 2016 and 2020 Election ICAs.  To the extent government officials have abused the FISA process to collect that information, those misdeeds are discoverable to facilitate defense efforts to challenge the reliability of the ICAs.  This issue is concededly not without complications and associated sensitivities, but the Office's

invocation of an inapposite evidentiary rule to support a reflexive refusal to even review the responsive materials and inform the Court of the details is not an acceptable approach.

## V.     The Court Should Not Tolerate The Special Counsel's Deflections

Criminal defendants face severe information deficits in connection with discovery litigation, and that challenge is even more pronounced in cases such as this one involving classified information.  Under these circumstances, the Court should not tolerate the efforts by the Special Counsel's Office to deflect relevant considerations and elide the underlying details.

### A.  Evidence Of Bias And Misconduct

President Trump has identified strong indications that members of the prosecution team are motivated in this case by improper bias and political motivations.  *See* Compel Motion at 15-16, 34-36.  A more recent report by DOJ's Office of the Inspector General, which is a conceded part of the prosecution team here, provides further cause for concern about prosecutors' improper bias and hostility toward President Trump—including from an attorney who was a supervisor at the D.C. U.S. Attorney's Office at the relevant time, and now works at the Special Counsel's Office.[12]

Apart from the since-resolved selective prosecution motion, *Kyles* and its progeny serve as an independent basis for the discoverability of such information in order to impeach the integrity of the investigation or the witnesses at trial.  For the reasons stated above, so too does the Presidential immunity doctrine.  Rather than assuring the Court and President Trump that relevant case-related communications have been reviewed and reflect no such animus or other discoverable information, if that is true, the Special Counsel's Office offers meritless distinctions and seeks to evade these authorities.  *See* Opp'n at 42.  That is not a viable approach to discovery in this case.

---

[12] DOJ Inspector General, An Investigation of Allegations Concerning the Department of Justice's Handling of the Government's Sentencing Recommendation in *United States v. Roger Stone* (July 2024), https://oig.justice.gov/sites/default/files/reports/24-081.pdf.

## B. Government Agents At The Capitol

One straightforward reply to President Trump's demand for disclosures relating to government agents present at the U.S. Capitol on January 6 would be to explain, if true, that there are no responsive materials. The Special Counsel's Office did not do so. Another way to address this demand would be to try to invoke some form of the informant's privilege and obtain a protective order pursuant to Rule 16(d) or CIPA § 4. The Office does not take that approach, either. Instead, they rely on inapposite "admissibility" principles, and reveal their politically motivated colors by offering an unsupported analogy between President Trump and a "bank robber." Opp'n at 40. These requested disclosures are responsive to Local Criminal Rule 5.1(b) and basic *Brady* principles because information relating to undercover activities is "inconsistent" with the Office's efforts to lay exclusive blame on President Trump, the activities of those operatives would "mitigate the charged offense(s)," and these materials would "cast doubt on the credibility [and] accuracy" of the evidence the Office is relying upon to promote its preferred narrative.

## C. Unsupported Cumulativeness Arguments

With respect to the J6 Committee and in several other places, the Special Counsel's Office resists President Trump's discovery demands based on the inaccurate claim that in addition to discoverability, the defense must establish that evidence is not "cumulative." Opp'n at 18 n.8; *see also, e.g.*, *id.* at 33. General overlap mischaracterized as cumulativeness does not defeat discoverability. Even if public summaries touch on the subject matter of certain of President Trump's discovery demands, the defense is not required to "use abbreviated and lifeless substitutions for this crucial evidence." *Fernandez*, 913 F.2d at 164.

The case cited by the Office in support of this argument, *United States v. Cousin*, 2022 WL 314853 (D. Mass. 2022), is not to the contrary. Opp'n at 7. In *Cousin*, the court did not take the prosecutors' word for it. There was a hearing on the defendant's motion to compel, and the

cumulativeness finding was also based in part on concessions in the defendant's motion.  2022 WL 314853, at *2; *see also id.* at *21 (referencing defense motion at "Docket Entry # 182").  Critically, the Office has not indicated that they reviewed any of the materials at issue.  Their failure to do so leaves them without a factual basis to affirmatively argue cumulativeness.  That is likely why they instead repeatedly make passive, incorrect arguments suggesting that the defense must make this showing with respect to materials we do not have.[13]  The Court should reject this ploy.

### D.  Evidentiary Significance Of Media Reports

The Special Counsel's Office repeatedly denigrates President Trump's reliance on a "newspaper article" as part of the defense showing that personnel from the D.C. U.S. Attorney's Office, DOJ, and the FBI's Washington Field Office must be considered part of the prosecution team.  Opp'n at 5, 11, 17 (referring to ECF No. 116-1).  However, well-sourced media coverage relating to the Office's targeting of President Trump has disclosed numerous details regarding improper tactics and coordination that typically are not disclosed to a defendant.  If pertinent portions of the reporting are inaccurate, they should say so.  But they cannot undermine President Trump's position by casting aspersions at news reports they created through their own leaks.

## <u>CONCLUSION</u>

For the foregoing reasons, and those in the opening motion papers and the Classified Supplements, the Court should (1) grant the relief requested in the Prosecution Team Motion and the Compel Motion, and (2) reconsider and pause the current schedule until the Special Counsel's Office establishes that they are in compliance with their discovery obligations.

---

[13] *See* Opp'n at 18 n.8 (claiming that President Trump "fail[ed]" to show "how such classified material would not be cumulative"); *id.* at 29 (claiming that President Trump sought to "evade a cumulative analysis"); *id.* at 33 ("[T]he defendant does not explain how such information is not cumulative."); *id.* at 38 ("The defendant does not specify what else exists that would not be cumulative.").

Dated: September 19, 2024

Respectfully submitted,

*/s/ John F. Lauro / Gregory Singer*
John F. Lauro, Esq.
D.C. Bar No. 392830
jlauro@laurosinger.com
Gregory M. Singer, Esq. (PHV)
gsinger@laurosinger.com
LAURO & SINGER
400 N. Tampa St., 15th Floor
Tampa, FL 33602
(813) 222-8990

*/s/ Todd Blanche / Emil Bove*
Todd Blanche, Esq. (PHV)
ToddBlanche@blanchelaw.com
Emil Bove, Esq. (PHV)
Emil.Bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall St., Suite 4460
New York, NY 10005
(212) 716-1250

*Counsel for President Donald J. Trump*