IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:23-cr-00257-TSC |
| DONALD J. TRUMP, | |
| *Defendant*. | |

**PRESIDENT DONALD J. TRUMP'S OPPOSITION TO SPECIAL COUNSEL'S MOTION FOR OVERSIZED "OPENING IMMUNITY BRIEF"**

**I.    Introduction**

President Donald J. Trump respectfully submits this opposition to the motion by the Special Counsel's Office for permission to file a 180-page "opening immunity brief." ECF No. 237 (the "Motion") at 1. The Motion is a new development illustrating the unprecedented and irregular nature of the Office's approach on remand, as they are seeking permission to file a document that would quadruple the standard page limits in this District. The Office cites no case in which such relief was granted, just as they cited no authority for the previous request to file a free-standing brief relating to Presidential immunity that is not responsive to a pending defense motion. The proposed approach is fundamentally unfair, as the Office would attempt to set a closed record for addressing unfiled defense motions by crediting their own untested assessments of purported evidence, denying President Trump an opportunity to confront their witnesses, and preventing the defense from obtaining discovery. The hypocrisy of this proposed approach is demonstrated by the Office's earlier arguments—in this case and in Florida—that using discovery materials in public filings could taint the jury pool and bias potential witnesses. Their requests are also inconsistent with the Federal Rules of Criminal Procedure, and the Court should reject them until threshold legal questions identified by the Supreme Court are addressed and discovery is complete.

1

Today, the Special Counsel's Office informed President Trump that they wish to file a sur-reply relating to President Trump's pending discovery motions. They should focus on that document and on complying with their obligations rather than pushing this filing to support their politically motivated agenda. The "opening immunity brief," as described in the Motion, would be an improper Special Counsel report masked as a superfluous filing seeking advisory opinions in a criminal case. *See* 28 C.F.R. § 600.8. The document would violate the Presidential immunity doctrine, taint the integrity of these proceedings, increase the First Amendment harms resulting from the Gag Order, and violate the Justice Manual. Accordingly, for the reasons set forth below, the Court should deny the Motion and grant President Trump's request to reconsider the current schedule, *see* ECF No. 235 at 2 n.2, 3-5.[1]

## II. Discussion

The Court does not need 180 pages of "great assistance" from the Special Counsel's Office to develop the record necessary to address President Trump's Presidential immunity defense. Mot. at 2. Calling the document "factbound" does not make it so. *Id.* The Office aims to proffer their untested and biased views to the Court and the public as if they are conclusive. This is contrary to law, procedure, and custom. Courts frequently develop factual records to resolve legal questions in criminal cases by focusing on defendants' actual motions and narrowly addressing disputed issues. There is no basis for abandoning those procedures in this case. Just the opposite—adherence to procedure and protocol is necessary to ensure fairness and justice.

Allowing the Special Counsel's Office to litter the docket sheet with an unnecessary tome would be inconsistent with the fact that there are dispositive threshold legal questions identified in

---

[1] If the Motion is granted, President Trump reserves the right to seek corresponding relief with respect to page limits and the ability to file a sur-reply.

*Trump v. United States* that can and should be resolved first.  *See* ECF No. 235 at 4-6.  These defects in the prosecution arise from, among other things, the absolute nature of immunity, the immunity attaching to the Office's allegations relating to Vice President Pence, and "serious questions" regarding "whether the Attorney General has violated that structure by creating an office of the Special Counsel that has not been established by law" that "must be answered before this prosecution can proceed."  *Trump v. United States*, 144 S. Ct. 2312, 2352 (Thomas, J. concurring); *see also* ECF No. 235 at 3-5.  In effect, the Office would be seeking an advisory opinion on unraised legal issues the Court may never reach, which is inconsistent with the roles played by Article III courts and prosecutors bound by the rule of law.

The Motion, and the underlying plan to file an "opening immunity brief," is particularly improper because the Special Counsel's Office has not complied with their discovery obligations. President Trump has a due process right to prompt production of exculpatory evidence, and the Office is also currently violating requirements under Rule 16 and Local Criminal Rule 5.1 that material evidence be disclosed.  *See* Fed. R. Crim. P. 2 ("These rules are to be interpreted to provide for the *just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration*, and to eliminate unjustifiable expense and delay." (emphasis added)). The reliability of the Office's proposed immunity-related filing is deeply suspect in light of the fact that they have not conducted required searches for exculpatory evidence, much less produced that evidence.

*Brady*, Rule 16, and Local Criminal Rule 5.1 are among the "safeguards" that the Special Counsel's Office represented to the Supreme Court would provide "rigorous protections" for

3

President Trump.[2]  On remand, however, the Office is violating these protections and has instead articulated an unacceptable, extralegal "guiding principle" of "structur[ing] a schedule that leads to only one additional interlocutory appeal." 9/5/24 Tr. 12-13.  That is simply code for the Office's continued preference for the type of "highly expedited" proceedings prior to the 2024 Presidential election that the Supreme Court has already criticized.  *Trump*, 144 S. Ct. at 2332.  There is no other explanation for the Office's insistence on moving forward with their oversized "opening immunity brief" before live discovery disputes are addressed, which is a process that was going to take significant time even before the Office elected to seek leave to file a sur-reply.  Given these disputes, it is troubling to see the Office try to chart such an irregular path for this case—immediately—at the outset of these remanded proceedings.

The path preferred by the Special Counsel's Office would result in an independent violation of the Presidential immunity doctrine by exacerbating "the peculiar public opprobrium that attaches to criminal proceedings." *Trump*, 144 S. Ct. at 2331.  A 180-page filing would be the embodiment of the type of improper "extended proceeding" that the Supreme Court forbid as an "impediment[] to the effective functioning of government." *Id.* at 2344 (cleaned up).  The Court may not "adjudicate" superfluous Presidential immunity issues, including by allowing the Office to file this monstrosity, if President Trump can establish at the outset that immunity requires dismissal of the entire case. *Id.* at 2328.  The Office wants desperately to bar President Trump from the opportunity to make that showing so that they can improperly air their biased list of grievances.

---

[2] Brief for the United States, *Trump v. United States*, No. 23-939 (S. Ct. Apr. 8, 2024), *available at* https://www.supremecourt.gov/DocketPDF/23-939/306999/20240408191803801_United%20States%20v.%20Trump%20final%20for%20filing.pdf.

The superfluous filing would impact potential witnesses and taint the jury pool. These are concerns the Special Counsel's Office has relied upon in other contexts, but their current approach largely ignores them. For example, in support of the Office's motion for a protective order, they argued that President Trump has "no right to publicly release discovery material, because the discovery process is designed to ensure a fair process before the Court, not to provide the defendant an opportunity to improperly press his case in the court of public opinion." ECF No. 15 at 4. Now it is the Office that wishes to press their case to drive public opinion rather than justice.

Previously, the Office contended that it would be improper to "disseminate evidence such as snippets of witness interview recordings—no matter how short, misleading, or unlikely to be admissible at trial under the Federal Rules of Evidence—and claim that it supports some position the defendant later may make in pre-trial motions or at trial." ECF No. 15 at 5-6. Now the Office seeks permission to file a free-standing 180-page document, as well as an "appendix," doing just that. Mot. at 2. Although the Office contemplates redactions to some parts of the filing, earlier in the case they argued that even materials marked "nonsensitive" under the Protective Order have "the potential to pollute the jury pool," could "affect the fair administration of justice," and "damage[e] reputations of witnesses." 8/11/23 Tr. at 9, 12, 26, 28. In the Southern District of Florida, based on similar arguments, the Office sought to maintain under seal any reference to the substance of a witness's statement and even a proposed jury questionnaire.[3] When the Office disagreed with factual arguments by President Trump—which would surely be the defense reaction to the filing the Office hopes to make this week—the Office sought an unconstitutional gag order that would have barred President Trump from making arguments that they did not like, but that are protected campaign speech under the First Amendment, based on the contention that President

---

[3] ECF No. 267 at 1-2, *United States v. Trump*, No. 23 Cr. 80101 (S.D. Fla. Jan. 18, 2024).

Trump's advocacy threatened the integrity of the proceedings.[4]  Each of these positions, in this case and in Florida, illustrates that the Office's current application and the underlying strategy are not pursued in good faith.

The requested 180-page brief would be tantamount to a premature and improper Special Counsel report.  *See* 28 C.F.R. § 600.8.  The report would be premature because we have not reached "the conclusion of the Special Counsel's work," except in Florida, where a federal court properly concluded that Smith lacks authority to conduct any proceedings at all, as President Trump will demonstrate in this case pursuant to the Court's existing schedule.  *Id.* § 600.8(c).  The report would be improper because it will present legal conclusions contrary to the presumption of innocence that present privacy concerns for potential witnesses and uncharged parties.  This is a long-recognized problem with such documents.  During hearings that led to the expiration of the Independent Counsel Act, Attorney General Reno explained that "the report requirement cuts against many of the most basic traditions and practices of American law enforcement.  Under our system, we presume innocence and we value privacy."[5]  The DOJ release accompanying the 1999 regulations the Office is currently purporting to follow provides that any report will be "handled as a confidential document," 64 Fed. Reg. 37,038-01, 37,041 (July 9, 1999), with public disclosure left to the Attorney General pursuant to 28 C.F.R. § 600.9.  In this case, including through the Motion, the Special Counsel's Office is seeking to release voluminous conclusions to the public,

---

[4] ECF No. 665, *United States v. Trump*, No. 23 Cr. 80101 (S.D. Fla. July 5, 2024).

[5] Statement of Janet Reno Attorney General Before the Committee on Governmental Affairs United States Senate Concerning the Independent Counsel Act (Mar. 17, 1999), *available at* www.justice.gov/archive/ag/testimony/1999/aggovern031799.htm#:~:text=The%20regulations% 20that%20are%20now,to%20respond%20to%20your%20questions.

without allowing President Trump to confront their witnesses and present his own, to ensure the document's public release prior to the 2024 Presidential election.

The strategy reflected by the Motion would increase the irreparable harm caused by the Gag Order in this case. False, public allegations by the Special Counsel's Office, presented through a document that has no basis in the traditional criminal justice process, will undoubtedly enter the dialogue around the election. The Gag Order prevents President Trump from explaining in detail why the Office's selective and biased account is inaccurate without risking contempt penalties. While the D.C. Circuit modified and addressed the Gag Order previously, the court was careful to note that "the general election is almost a year away, and will long postdate the trial in this case." *United States v. Trump*, 88 F.4th 990, 1018 (D.C. Cir. 2023). Circumstances have changed drastically: President Trump is the leading candidate in the Presidential election, which is just weeks away. The Office cannot be permitted to issue a massive and misleading public statement that is not responsive to a defense motion, and risks adverse impacts to the integrity of these proceedings, while simultaneously insisting on an unconstitutional prior restraint on President Trump's ability to respond to their inaccurate assertions while he is campaigning.

The huge public filing that the Motion portends would also violate the Justice Manual, which prohibits "Actions that *May* Have an Impact on an Election." Justice Manual § 9-85.500 (emphasis added). "Federal prosecutors and agents may never select the timing of any action, including investigative steps, criminal charges, or statements, for the purpose of affecting any election, or for the purpose of giving an advantage or disadvantage to any candidate or political

party." *Id.* Separately, prior to this case, DOJ followed an "Unwritten 60-Day Rule" summarized as follows[6]:

- Former FBI Director Jim Comey: "[W]e avoid taking any action in the run up to an election, if we can avoid it." DOJ-OIG Report at 17.

- Former Attorney General Loretta Lynch: "[I]n general, the practice has been not to take actions that might have an impact on an election, even if it's not an election case or something like that." *Id.* at 18.

- Former Deputy Attorney General Sally Yates: "To me if it were 90 days off, and you think it has a significant chance of impacting an election, unless there's a reason you need to take that action now you don't do it." *Id.* at 18.

Departures from these practices should never be countenanced because they risk allowing prosecutors to impact national elections, but the situation is even worse here where the Special Counsel's Office is seeking to do so by turning criminal procedure on its head in order to file a 180-page false hit piece. *See Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) ("The Supreme Court has repeatedly instructed courts to carefully consider the importance of preserving the status quo on the eve of an election."). "[O]nce the election occurs, there can be no do-over and no redress" for the voters or President Trump. *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014).

III. **Conclusion**

For all of these reasons, the Court should deny the Motion and reconsider the September 5, 2024 scheduling order, ECF No. 233, by rejecting the Office's lawless request to file a 180-page

---

[6] A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election, U.S. Dep't of Justice Office of Inspector General (June 2018) (the "DOJ-OIG Report") at 17-18, *available at* https://s3.documentcloud.org/documents/4515884/DOJ-OIG-2016-Election-Final-Report.pdf.

public defense of their defective Superseding Indictment before they are in compliance with their discovery obligations.

Dated: September 23, 2024                    Respectfully submitted,

*/s/ John F. Lauro / Gregory Singer*          */s/ Todd Blanche / Emil Bove*
John F. Lauro, Esq.                          Todd Blanche, Esq. (PHV)
D.C. Bar No. 392830                          ToddBlanche@blanchelaw.com
jlauro@laurosinger.com                       Emil Bove, Esq. (PHV)
Gregory M. Singer, Esq. (PHV)                Emil.Bove@blanchelaw.com
gsinger@laurosinger.com                      BLANCHE LAW PLLC
LAURO & SINGER                               99 Wall St., Suite 4460
400 N. Tampa St., 15th Floor                 New York, NY 10005
Tampa, FL 33602                              (212) 716-1250
(813) 222-8990

*Counsel for President Donald J. Trump*