IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DONALD J. TRUMP,<br><br>            *Defendant*. | Case No. 1:23-cr-00257-TSC<br><br>**UNDER SEAL** |

**PRESIDENT DONALD J. TRUMP'S OPPOSITION TO
SPEIAL COUNSEL'S SEALING MOTION**

### I.    Introduction

President Donald J. Trump respectfully submits this opposition to the motion by the Special Counsel's Office proposing redactions to their so-called "Motion for Immunity Determinations," which they have re-styled[1] in an unsuccessful effort to mask the fact that there is no basis in federal criminal procedure or the Constitution for a filing that attempts to usurp control and presentation of a defendant's defense in a criminal case.  ECF No. 246 (the "Motion"); *see also* ECF No. 243 at 1 (acknowledging the "atypical sequence" of the scheduled filings).[2]

The Special Counsel's Office recently told the Court that "we spent a considerable amount of time going through a protective order and making sure it could stand time."  ECF No. 232, 9/5/24 Tr. 41.  However, the Motion reflects a largely unexplained about-face on materials the

---

[1] For example, in a September 21, 2024 filing, the Special Counsel's Office referred to the Presidential immunity filing more aptly as a superfluous "opening immunity brief," which is not responsive to any defense motion.  ECF No. 237 at 1.

[2] Pursuant to the Court's September 27, 2024 Minute Order, President Trump has submitted this filing to the Special Counsel's Office and the Court for temporary sealing.  President Trump does not believe continued sealing of this filing is necessary.  The defense will promptly meet and confer with the Office regarding any additional redactions consistent with the Court's ruling.

1

Office designated "Sensitive" pursuant to that Protective Order, and does not adequately address the implications for witnesses, potential jurors, and the integrity of the proceedings.

The true motivation driving the efforts by the Special Counsel's Office to disseminate witness statements that they previously sought to lock down is as obvious as it is inappropriate. The Office wants their politically motivated manifesto to be public, contrary to the Justice Manual and longstanding DOJ norms in cases not involving President Trump, in the final weeks of the 2024 Presidential election while early voting has already begun throughout the United States. Having criticized President Trump for, according to the Office, trying to "litigate this case in the media" and "improperly press his case in the court of public opinion," ECF No. 15 at 3-4, the Office is seeking to do just that, in violation of the very restrictions they previously claimed were essential to the "fair administration of justice," ECF No. 10 at 3. While the Presidential immunity filing contains few, if any, new allegations not already covered in other politically motivated and inaccurate lawfare efforts that President Trump's opponents have improperly funded and disseminated, it is irresponsible for the prosecutors to so quickly abandon the safety and privacy interests that they previously assigned great weight in this case and in the Southern District of Florida. Accordingly, the Court should require the Office to make consistent redactions regarding identity-related information and to show cause why their proposed public disclosure of voluminous purportedly sensitive witness statements will not pose risks to potential witnesses and unfairly prejudice the adjudication of this case.

II. **Discussion**

President Trump has no objection to redacting the names of individuals who are not specifically identified in the Superseding Indictment. *See* Mot. at 3. However, in numerous instances, the redactions and pseudonyms proposed by the Special Counsel's Office fail to

meaningfully mitigate the privacy and safety issues the Office references in the Motion and has previously discussed at length. This use of functionally impotent redactions is flatly inconsistent with the Office's approach to other filings here and in the Southern District of Florida, where they sought to anonymize even "Ancillary Names"—"individuals who, at best, have an ancillary relationship with the case"—based on privacy concerns.[3] Therefore, to the extent the Court is inclined to grant the identity-related portion of the Motion, the Office should be required to redact all references to the titles and positions held by the witnesses who are not specifically named in the Superseding Indictment. As this issue repeats itself numerous times throughout the Office's sprawling brief, the burden of applying these redactions in the first instance should revert to the Office.

The Special Counsel's Office also takes an inconsistent position with respect to materials the Office previously designated as "Sensitive" pursuant to the Protective Order, which are summarized and quoted at length in the filing. These materials include "grand jury testimony, materials obtained through sealed search warrants, transcripts and reports of witness interviews, and materials obtained from other governmental entities." Mot. at 1. Last August, the Office demanded a Protective Order that they said was designed to "prevent" the "improper dissemination or use of discovery materials, including to the public." ECF No. 10 at 3. Part of the basis for the demand, they said, was to avoid a "harmful chilling effect on witnesses" and dissemination of information that could "adversely affect the fair administration of justice in this case." *Id.* At the hearing relating to the Protective Order, the Court acknowledged the "affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity," and the "obligation to prevent what the Supreme Court called in *Sheppard v. Maxwell* 'a carnival atmosphere of unchecked publicity

---

[3] ECF No. 348 at 10, *United States v. Trump*, No. 23 Cr. 80101 (S.D. Fla. Feb. 28, 2024).

and trial by media rather than our constitutionally established system of trial by impartial jury.'" ECF No. 29, 8/11/23 Tr. 5, 71 (quoting 384 U.S. 333, 358 (1966)).

The resulting Protective Order prohibits the "disclos[ure] of Sensitive Materials *or their contents*," and makes no allowance for the filing of "Sensitive Materials" on the public docket absent the Court's authorization. *See* ECF No. 28 ¶¶ 3, 11 (emphasis added). President Trump has abided by these restrictions for over a year. Yet now, in advance of predictable national news coverage, the Office seeks to disseminate protected content of Sensitive Materials, including direct quotations and summaries, while the gag order restricts President Trump's ability to fully address the details of the filing on the campaign trail.

The Special Counsel's Office bears the burden of obtaining authorization to disclose sensitive information, as a "contrary rule would turn the principles of discovery on their head."[4] The Office's showing on this issue is unsatisfying at best. In the Motion, the Office concedes that the privacy interests at stake are "substantial" and argues that the Court's reasoning regarding redactions to their earlier gag order motion "remains true" because the Office's concerns have "not abated." Mot. at 5-6. In that prior sealing motion, the Office addressed these issues by seeking more restrictions than it is requesting now, including full redaction of "excerpts from witness interview transcripts." ECF No. 55 at 2.

Likewise, in contrast to the current Motion, the Special Counsel's Office argued in the Southern District of Florida that even summaries of "likely witness testimony" and records that

---

[4] ECF No. 294 at 9, *United States v. Trump*, No. 23 Cr. 80101 (S.D. Fla. Feb. 8, 2024) ("[W]hile the protective order permits the defendants to seek Court approval when the Government's agreement has been withheld . . . , that procedure presupposes that the burden is on the defendants to justify the basis for publicly disclosing presumptively confidential discovery material— including by justifying the basis for revealing the identities of witnesses and the substance of their expected testimony.").

constitute "paradigmatic Jencks Act materials" should "*remain out of the public realm until a hearing or trial*, because of safety concerns and so as not to influence the testimony of other witnesses or the jury pool."[5] In a separate filing, the Office represented to that court that disclosure of "the substance of the statements [witnesses] made to the FBI or the grand jury" could "expos[e] them to significant and immediate risks of threats, intimidation, and harassment."[6] The Office considered those risks to be "needless" and "intolerable."[7] They took those positions categorically, and without regard to whether the contents of the materials were "important[t]" to a motion. Mot. at 7 n.1.

Now that public disclosure serves their politically motivated mission, the Special Counsel's Office takes a different view. The Office believes President Trump's Constitutional rights to impartial jurors and fair proceedings—to say nothing of witness privacy and even safety—all take a back seat to the Office's political goals. Indeed, the Office's implicit position is that all of these important considerations must give way to their objective of providing voters across the country immediate access to an unprecedented filing, with no legal basis, which just so happens to retread

---

[5] ECF No. 278 at 2, *United States v. Trump*, No. 23 Cr. 80101 (S.D. Fla. Feb. 2, 2024) (emphasis added); *see also id.* ECF No. 267 at 2 (arguing that prior production of contested materials "in no way dilutes the rationale for keeping the materials out of public view," "safety of prospective witnesses is a prime concern," and "[p]ublic disclosure of witness identities or their statements in advance of trial also risks infecting the testimony of other witnesses or unnecessarily influencing the jury pool"); *id.* ECF No. 140 at 2 ("Public disclosure of those materials in advance of trial could influence the jury pool or affect the testimony of others.").

[6] ECF No. 294 at 1, *United States v. Trump*, No. 23 Cr. 80101 (S.D. Fla. Feb. 8, 2024).

[7] ECF No. 294 at 8, *United States v. Trump*, No. 23 Cr. 80101 (S.D. Fla. Feb. 8, 2024); *see also id.* ECF No. 316 at 1 (arguing that disclosure of contested materials would "unnecessarily expose potential witnesses to very real dangers of harassment, intimidation, and reprisal"); *id.* ECF No. 348 at 2 (arguing that "the potential for threats to and harassment of Government witnesses in this case is real" and "a public preview of a witness's testimony could influence the testimony of other witnesses and is inconsistent with the Jencks Act").

false allegations against the leading candidate for the Presidency during early voting for the 2024 election. Contrary to the Office's claim, courts routinely rely on sealed or redacted materials to resolve legal issues where the "content[s]" under seal are of "importance" to the application. Mot. at 7 n.1; *see also, e.g.*, *United States v. Todd*, 2024 WL 3566223, at *3 n.5 (D.D.C. 2024). Prosecutors all over the country, including from the Office in this very case, regularly seek that type of sealing relief, and there is no legal "importance" exception to the concerns the Office cited to justify the Protective Order. The civil case cited by the Office, *Metlife, Inc. v. Financial Stability Oversight Council*, does not suggest otherwise. Mot. at 7-8. In fact, *Metlife* did not involve any of the safety, privacy, and due process and Sixth Amendment considerations implicated by the Motion.

### III.  Conclusion

For the foregoing reasons, the Court should require the Special Counsel's Office to (1) make complete, consistent redactions regarding identity-related information in the "Motion for Immunity Determinations" and the related Appendix, and (2) show cause why their proposed public disclosure of voluminous purportedly sensitive witness statements is consistent with the risks of witness safety, potential juror taint, and the integrity of the proceedings that they have cited

previously to this Court and in the Southern District of Florida. The defense will promptly meet and confer with the Office regarding any additional redactions consistent with the Court's ruling.

Dated: October 1, 2024                    Respectfully submitted,

<u>/s/ *John F. Lauro / Gregory Singer*</u>      <u>/s/ *Todd Blanche / Emil Bove*</u>
John F. Lauro, Esq.                       Todd Blanche, Esq. (PHV)
D.C. Bar No. 392830                       ToddBlanche@blanchelaw.com
jlauro@laurosinger.com                    Emil Bove, Esq. (PHV)
Gregory M. Singer, Esq. (PHV)             Emil.Bove@blanchelaw.com
gsinger@laurosinger.com                   BLANCHE LAW PLLC
LAURO & SINGER                            99 Wall St., Suite 4460
400 N. Tampa St., 15th Floor              New York, NY 10005
Tampa, FL 33602                           (212) 716-1250
(813) 222-8990

                                          *Counsel for President Donald J. Trump*