IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DONALD J. TRUMP,<br><br>           *Defendant*. | Case No. 1:23-cr-00257-TSC |

**PRESIDENT DONALD J. TRUMP'S SUPPLEMENT TO MOTION TO DISMISS**

**I.     Introduction**

President Donald J. Trump respectfully submits this supplement to the pending motion to dismiss based on statutory grounds, ECF No. 114 (the "Motion"), and incorporates all previous statutory and Constitutional arguments, *see id*; ECF No. 113, as applied to the Superseding Indictment.

The Superseding Indictment stretches generally applicable statutes beyond their breaking point based on false claims that President Trump is somehow responsible for events at the Capitol on January 6, 2021. The Special Counsel's Office seeks to assign blame for events President Trump did not control and took action to protect against. The Special Counsel blatantly ignores the fact that federal prosecutors have taken the opposite position in this District.[1] It is apparently of no consequence, to the Office and those who support their efforts, that former Speaker of the House Nancy Pelosi was caught on a previously undisclosed video accepting "responsibility" for

---

[1] *See, e.g.*, ECF No. 56 at 2, *United States v. Carpenter*, No. 21 Cr. 305 (D.D.C. Dec. 21, 2022) ("Nor can there be any reasonable claim that President Trump intended to or actually authorized the Defendant's particular criminal conduct."); *id.* at 3 ("The Defendant will be unable to identify any remarks made by former President Trump that authorized that illegal conduct.").

the events at the Capitol.[2]  Even one of the Office's star witnesses, General Mark Milley, acknowledged long before charges were brought in this case that President Trump had instructed the Defense Department on January 3, 2021 to "make sure that you have sufficient National Guard or Soldiers to make sure it's a safe event."[3]

However, one thing the Special Counsel's Office cannot ignore or hide from is binding precedent.  The Supreme Court's decision in *Fischer v. United States*, 144 S. Ct. 2176 (2024), is yet another key application of the rule of law to reject lawfare overreach targeting President Trump.  *See, e.g.*, *Trump v. United States*, 144 S. Ct. 2312 (2024); *Trump v. Anderson*, 601 U.S. 100 (2024).  *Fischer* requires the dismissal of Counts Two and Three of the Superseding Indictment, and its logic fatally undermines Counts One and Four as well.

Section 1512(c)(2) was enacted in response to corporate document shredding that bears no resemblance to the allegations in the Superseding Indictment.  Under *Fischer*, the Office may not use the statute as a catchall provision to criminalize otherwise-lawful activities selectively mischaracterized as obstructive by those with opposing political views.  As *Fischer* confirms, § 1512(c)(2) requires proof of evidence impairment coupled with corrupt intent.  Once stripped of President Trump's official acts subject to immunity and protected First Amendment political advocacy, the Superseding Indictment lacks sufficient factual allegations to support either element as required by Counts Two and Three.  President Trump expressed sincere and valid concerns about the integrity of the 2020 election pursuant to his authority as the Chief Executive.  He was

---

[2] Press Release, H. Comm. on Admin., Nancy Pelosi Contradicts Her Own Narrative of January 6, HBO Footage Shows (June 11, 2024), https://cha.house.gov/2024/6/nancy-pelosi-contradicts-her-own-narrative-of-january-6-hbo-footage-shows.

[3] U.S. Dep't of Def. Office of Inspector Gen., Transcript of Interview of General Mark A. Milley (Apr. 8, 2021) at 23, https://app.box.com/s/w1mdlicby1o9wrcpfhtdoxi9aljwptos/file/1640163916382.

part of open, public discussion regarding use of contingent slates of electors in a manner consistent with historical practice and contemplated by the then-existing version of the Electoral Count Act ("ECA"). The congressional record from January 6 reflects lawful debates on certificate objections contemplated by the ECA, as well as acknowledgement of the historical precedent for the contingent slates. There is no precedent for a criminal prosecution based on such a record.

Under these circumstances, the Special Counsel's Office cannot establish the required nexus between alleged obstruction and any "evidence" used in the certification proceeding, or that anyone acted with corrupt intent. *Fischer* forecloses the Office's efforts to rely on events at the Capitol on January 6 to support charges under § 1512(c), as the Superseding Indictment does not sufficiently allege that President Trump impaired, or intended to impair, the integrity or availability of any document or other object used in any official proceeding. The limiting interpretation that the *Fischer* Court applied to § 1512(c) also strongly supports President Trump's narrower interpretation of § 371, as charged in Count One, and § 241, as charged in Count Four. Accordingly, for the reasons set forth below, as well as in the Motion, the Superseding Indictment should be dismissed.

## II.   Discussion

### A.   *Fischer v. United States*

In *Fischer*, the Supreme Court rejected the "unbounded" interpretation of § 1512(c)(2) relied upon by the Biden-Harris DOJ, which threatened to "override Congress's careful delineation of which penalties were appropriate for which offenses." 144 S. Ct. at 2187. The petitioner in *Fischer* was charged with a violation of § 1512(c)(2) based on allegations that he was part of a "crowd" that "trespassed into the Capitol," "was involved in a physical confrontation with law enforcement," and "delayed the certification process" on January 6. 144 S. Ct. at 2182. The

Supreme Court overruled a divided panel of the D.C. Circuit, 64 F.4th 329, and held that the § 1512(c)(2) charge was properly dismissed.

Dismissal was appropriate because § 1512(c)(2) cannot be used as a "catchall provision that reaches far beyond the document shredding and similar scenarios that prompted the legislation in the first place." *Fischer*, 144 S. Ct. at 2186. "To prove a violation of Section 1512(c)(2), the Government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding, or attempted to do so." *Id.* at 2190. The *Fischer* Court rejected the government's "novel interpretation" because it would wrongly "criminalize a broad swath of prosaic conduct, exposing activists and lobbyists alike to decades in prison." *Id.* at 2189. "Those peculiar results underscore[d] the implausibility of the Government's interpretation." *Id.* (cleaned up).

Before *Fischer* was decided, the Biden-Harris DOJ had used § 1512(c)(2) to either charge or convict 259 people relating to events on January 6. DOJ "continues to assess" many of those cases, but has already acknowledged thus far that the decision severely undermined their position in at least 100 of them.[4] Specifically, so far as has been disclosed, the decision forced prosecutors to consent to the dismissal of § 1512(c)(2) convictions in 40 cases that had been adjudicated before the Supreme Court issued *Fischer*, and to abandon § 1512(c)(2) charges for 60 more of those defendants.[5] President Trump's case should be among the next to be abandoned and, if not, then it should be dismissed.

---

[4] Press Release, U.S. Attorney's Office for the Dist. of Columbia, 44 Months Since the Jan. 6 Attack on U.S. Capitol (Sept. 6, 2024), https://www.justice.gov/usao-dc/44-months-jan-6-attack-us-capitol.

[5] *Id.*

### B. *Fischer* Mandates The Dismissal Of Counts Two And Three

The Special Counsel's Office relied largely on immune conduct to oppose President Trump's motion to dismiss Counts Two and Three of the original Indictment. The Superseding Indictment contains many of the same allegations, and *Fischer* validates President Trump's arguments regarding the misuse of § 1512(c)(2) in this case. Therefore, Counts Two and Three must be dismissed.

Prior to *Fischer*, President Trump argued in the Motion that the violation of § 1512(c)(2) alleged in Count Three of the Indictment was defective because, *inter alia*, submitting contingent slates of electors and alternate certificates, and advocating that Vice President Pence take action during the certification proceeding to investigate the integrity of the 2020 election was not obstructive. *See* ECF No. 114 at 23. A conspiracy with that non-obstructive object does not violate § 1512(k), as charged in Count Two, either. *See, e.g.*, *United States v. Hemphill*, 514 F.3d 1350, 1362 (D.C. Cir. 2008). President Trump's interpretation of § 1512(c)(2) is endorsed by *Fischer* and supported by the vagueness and fair-notice doctrines, the rules of lenity and interpretive restraint, and the Constitutional avoidance canon based on First Amendment protections for the political advocacy at issue. *See* ECF No. 114 at 23.

The Special Counsel's Office opposed the Motion by arguing that the charges were "consistent with" the D.C. Circuit's split decision in *Fischer*, which the Supreme Court later overruled. ECF No. 139 at 33. The Office proceeded to use fanciful and inaccurate language to describe actions by President Trump and his advisers that are subject to Presidential immunity. *See id.* at 33-35. As President Trump will establish in his forthcoming response to the Office's Presidential immunity submission, the challenged conduct—when described accurately, placed in context, and stripped of the Office's misplaced rhetoric—"qualifies as official because it was

5

undertaken to ensure the integrity and proper administration of the federal election." *Trump*, 144 S. Ct. at 2338.  These allegations do not constitute evidence impairment under *Fischer*.

For example, in opposition to the Motion, the Office relied on an alleged communication "within the Executive Branch." ECF No. 139 at 33.  However, the Office excised that allegation from the Superseding Indictment, and all others like it, because the Supreme Court held that President Trump is "absolutely immune from prosecution for the alleged conduct involving his discussions with Justice Department officials." *Trump*, 144 S. Ct. at 2335.

The Special Counsel's Office also cited exaggerated allegations concerning President Trump's interactions with Vice President Pence, which they included in the Superseding Indictment as well.  ECF No. 139 at 34; *see also, e.g.*, ECF No. 226 ¶ 67.  Under *Fischer*, these allegations do not concern the type of evidence impairment that is within the scope of § 1512(c)(2).  In addition, the Supreme Court held that President Trump "is at least presumptively immune from prosecution" based on those interactions.  *Trump*, 144 S. Ct. at 2336.

The Special Counsel's Office pointed to alleged interactions with "state officials," and those allegations are included in the Superseding Indictment.  ECF No. 139 at 33; *see also, e.g.*, ECF No. 226 ¶ 29.  These allegations lack the required nexus to evidence impairment under *Fischer*.  Further, President Trump will establish that these communications are also subject to immunity.  "[T]he President may speak on and discuss such matters with state officials—even when no specific federal responsibility requires his communication—to encourage them to act in a manner that promotes the President's view of the public good." *Trump*, 144 S. Ct. at 2338.  This follows from "the President's broad power to speak on matters of public concern," which includes "public communications regarding the fairness and integrity of federal elections," and Presidential authority under the Take Care Clause.  *Id.*

The Special Counsel's Office also sought to defend the § 1512 charges based on their false allegations relating to responsibility for events on January 6. *See* ECF No. 139 at 34. They continue to do so, including in the Superseding Indictment, where they falsely allege that President Trump sought to "leverage" events at the Capitol to "retain power." ECF No. 226 ¶ 14; *see also id.* ¶ 11(d) (alleging inaccurately that President Trump "exploited the disruption"). These false allegations do not render President Trump factually or legally responsible, let alone criminally culpable, for the actions of others. Absent direct calls to imminent lawless action, which the Office does not come close to alleging, bedrock First Amendment principles permit public speakers, including President Trump on January 6, to speak their mind without fear of criminal prosecution for the unlawful acts of others. *See Brandenburg v. Ohio*, 395 U.S. 444, 447-48 (1969); *Watts v. United States*, 394 U.S. 705, 708 (1969).

In addition, this theory relies on an impermissible and since-rejected "all-encompassing interpretation" of § 1512(c)(2). *Fischer*, 144 S. Ct. at 2190. In opposition to the Motion, the Office argued that § 1512(c)(2) applies in this case based on the conclusory claim that "[p]reventing the Members of Congress from validating the state certificates constitutes evidence-focused obstruction . . . ." ECF No. 139 at 36. Similarly, in the Superseding Indictment, the Special Counsel falsely alleges that President Trump generally hoped to "obstruct or impede the January 6 congressional *proceeding*." ECF No. 226 at ¶ 4(a) (emphasis added). This is the same argument the Supreme Court rejected in *Fischer*, where the petitioner was alleged to have "delayed" the certification process. 144 S. Ct. at 2182. In reaching that conclusion, the *Fischer* Court applied the restraint principle cited by President Trump. *See id.* at 2189 ("We have long recognized that the power of punishment is vested in the legislative, not in the judicial department, and we have as a result traditionally exercised restraint in assessing the reach of a federal criminal

statute." (cleaned up)); *see also* ECF No. 114 at 19.  Thus, *Fischer* makes clear that baseless allegations of generalized obstruction of a "proceeding," standing alone, is not enough to state an offense under § 1512(c).  *See* 144 S. Ct. at 2189 ("If Congress had wanted to authorize such penalties for *any* conduct that delays or influences a proceeding in *any way*, it would have said so." (emphasis in original)).

Section 1512(c)(2) is an "evidence-focused statute," *Fischer*, 144 S. Ct. at 2189, and the Office's allegations, even when accepted as true, do not meet that requirement or the corresponding *mens rea* element.  Actions taken by President Trump, as President, based on concerns about "the fairness and integrity" of the election, *Trump*, 144 S. Ct. at 2338, were not undertaken "corruptly" under § 1512(c), and did not result in evidence impairment at the certification proceeding.  The focus of § 1512(c)(2) is narrowly tailored to the documents and objects that are "use[d] in an official proceeding." *Fischer*, 144 S. Ct. at 2190.  The Superseding Indictment makes no allegation that the documents were stolen, harmed, damaged, or concealed in any way.  Rather, the certificates remained under official control at all times, available for use—and in fact used—during the certification proceeding.

1. **Physical Movement Of Electoral College Certificates Does Not Support § 1512(c)(2) Charges**

The Superseding Indictment relies in part on what amounts to an impermissible "certificate movement" theory.  Under this theory, the alleged § 1512(c) document is "the legitimate electors' certificates of vote and their governors' certificates of ascertainment," which staffers allegedly "evacuated from the Senate" after "the crowd at the Capitol broke into the building."  ECF No. 226 at ¶ 93.  The incidental movement of documents from one room to another did not, as a matter of law, "impair[] the availability or integrity for use in an official proceeding" of those documents. *Fischer*, 144 S. Ct. at 2190.  The Special Counsel's Office has also failed to allege that President

8

Trump *intended* to impair the integrity or availability of these documents. The Superseding Indictment does not allege that President Trump even *considered* the status of the allegedly "legitimate" certificates in any manner, let alone intended to cause the movement of those documents or to keep them away from Congress. The documents were simply moved by functionaries from one room to another until Congress reconvened. If such ministerial acts, routinely performed by government functionaries during adjournments, could form the basis of a § 1512(c)(2) charge, the restrictions of *Fischer* would be rendered a dead letter.

### 2. The Transmission Of Contingent Certificates Does Not Support § 1512(c)(2) Charges

The reliance by the Special Counsel's Office on the transmission of alternate certificates also fails as a matter of law. *See, e.g.*, ECF No. 226 ¶ 11(b). Some of the certificates were refused by the Archivist and the Vice President, so the Office has not adequately alleged that those objects impacted the proceeding in any way. *See id.* ¶ 83. In reality, far from an impediment to the certification proceeding, the then-existing version of the ECA acknowledged the possibility of "more than one return or paper purporting to be" a certificate, and contemplated that Congress would consider and pass upon "all the certificates and papers purporting to be certificates of the electoral votes." 3 U.S.C. § 15 (2020 ed.). The statute set forth a procedure for objections and resolution of authenticity disputes. *See id.* ("Upon such reading of any such certificate or paper, the President of the Senate shall call for objections, if any."); *see also Bush v. Gore*, 531 U.S. 98, 127 (2000) (Stevens, J., dissenting) (reasoning that the Electoral Count Act "merely provide[s] rules of decision for Congress to follow when selecting among conflicting slates of electors"). Because these tasks were required by the ECA, actual or attempted transmission of alternate certificates did nothing to impair the integrity or availability of any certificates, all of which remained unaffected and available for full use during the entire certification proceeding.

Based on these specific features of the ECA, the Supreme Court's reference to "creating false evidence" cannot save Counts Two and Three. *Fischer*, 144 S. Ct. 2186. The allegations relating to alternate certificates are consistent with the ECA process rather than an obstruction to it. The situation is therefore unlike the case cited in *Fischer*, *United States v. Reich*, where the defendant forged a court order that "caused a litigant to withdraw a filing and contact a judge, and caused Magistrate Judge Mann to issue an order explaining the falsity of the forged Order and to convene a status conference to discuss it." 479 F.3d 179, 187 (2d Cir. 2007). Insofar as the certification proceeding is concerned—which must be the focus of § 1512(c)(2) charges relating to a specific "proceeding"—any actions resulting from the alternate certificates were part of the ECA process. Following that process to resolve objections and disputes, as required by the ECA, did not "impair[] the integrity or availability" of any of the certificates. *Fischer*, 144 S. Ct. at 2190. There is no allegation that any certificates, including the ones the Office regards as legitimate, were replaced or altered; the certificates remained available for use, unblemished, during the certification proceeding. Therefore, the factual allegations by the Special Counsel's Office reflect activities that were consistent with the ECA process rather than an obstacle to it, which is fatal to their transmission theory.

The Special Counsel's Office has ignored these aspects of the operative version of the ECA and instead claimed that "political jousting" was not allowed that day. ECF No. 139 at 35 (cleaned up). President Trump's Constitutionally protected and immune advocacy regarding decisions Congress and the Vice President could, or should, make in connection with the certification proceeding in no way obstructed that proceeding, much less "impaired the availability or integrity for use in an official proceeding of records, documents, objects." *Fischer*, 144 S. Ct. at 2190. In fact, there were entirely lawful debates regarding certificate objections by members of Congress

10

on January 6. All of them were well aware of the contingent slates of electors, which had been discussed publicly in advance of the proceeding, and some of the legislators expressed sincere and widely shared concerns about the integrity of the 2020 election:

- "The Electoral Count Act explicitly allows objections such as this one for votes that were not regularly given. . . . This objection is for the State of Arizona, but it is broader than that. It is an objection for all six of the contested States to have a credible, objective, impartial body hear the evidence and make a conclusive determination. That would benefit both sides. That would improve the legitimacy of this election." 167 Cong. Rec. S15 (2021).

- "They did an end-run around the Constitution in every State that Republicans will object to today. Every single one. It was a pattern. It was their template. They did it in Arizona. They did it in Georgia. They did it in Michigan. They did it in Pennsylvania. They did it in Nevada. They did it in Wisconsin." 167 Cong. Rec. H79 (2021).

- "I join the objection to counting votes of electors from my home State of Arizona, as well as Georgia, Pennsylvania, Wisconsin, Michigan, and Nevada, because election integrity is the heart of our American constitutional republic[.]" 167 Cong. Rec. H80 (2021).

- "Since we are convinced that the election laws in Arizona and some other key States were changed in this unconstitutional manner, we have a responsibility today. The slates of electors produced under those modified laws are thus unconstitutional. They are not "regularly given" or "lawfully certified," as required by the Electoral Count Act, and they are invalid on their face. That is just the conclusion that you have to reach." 167 Cong. Rec. H84 (2021).

- "The bottom line for my constituents is that Pennsylvania's officials, at all levels, failed to conduct a uniform and legal election, and for that reason, they inappropriately and unlawfully certified the State's electors." 167 Cong. Rec. H103 (2021).

To the extent President Trump's official acts contributed to or otherwise facilitated this type of debate "in a manner that promotes the President's view of the public good," that conduct was the opposite of "corrupt[]," did not violate § 1512(c)(2), and is also subject to Presidential immunity. *Trump*, 144 S. Ct. at 2338.

The lack of obstruction and corrupt intent is underscored by the fact that Congress amended the ECA in 2022 to say what the Special Counsel's Office apparently wishes the statute said in 2020. *See* 3 U.S.C. § 5(c) (2024 ed.) (section entitled "Treatment of certificate as conclusive").

11

Moreover, congressional remarks during the January 6 debates established that there is historical precedent for certificate objections:

- "Some claim today's objections set new precedent by challenging State electors. That claim, of course, ignores that Democrats have objected every time a Republican Presidential candidate has won an election over the past generation." 167 Cong. Rec. H90 (2021).

- "[N]ot since 1985 has a Republican President been sworn in absent some Democrat effort to object to the electors; but when we do it, it is the new violation of all norms." 167 Cong. Rec. H92 (2021).

Thus, there is a long history of similar lawful efforts in connection with certification proceedings—but no corresponding history of criminal prosecutions arising from activities that were provided for in the ECA at the time. *See* ECF No. 114 at 29-31. "Such a lack of historical precedent is generally telling indication of a severe constitutional problem with the asserted power." *Anderson*, 601 U.S. at 113-14 (cleaned up). Accordingly, Counts Two and Three should be dismissed.

### C. Section 371 (Count One) And Section 241 (Count Four)

Consistent with the fact that the Special Counsel's Office has failed to present factual allegations suggesting that President Trump acted "corruptly" in Counts Two and Three, the Office has not adequately alleged that President Trump specifically intended to violate individual civil rights as required by § 241, or acted deceptively under § 371. Similar to § 1512(c)(2), the Office's legally unsustainable application of these statutes seeks to justify efforts by "[a]n enterprising prosecutor in a new administration" to "assert that a previous President violated [a] broad statute"—which risks "[t]he enfeebling of the Presidency." *Trump*, 144 S. Ct. at 2346. The Court must reject that approach, as the Supreme Court repeatedly has.

The Superseding Indictment lacks factual allegations to support the violation of § 241 charged in Count Four. Because President Trump's public advocacy was consistent with historical practice and the then-existing version of the ECA, his efforts to ensure the integrity of the election

12

furthered rather than harmed "the right to vote, and to have one's vote counted."  ECF No. 226 ¶ 106.  For the same reason, the Special Counsel's Office cannot establish that, "in the light of pre-existing law the unlawfulness under the Constitution [was] apparent."  *United States v. Lanier*, 520 U.S. 259, 271-72 (1997) (cleaned up); *see also* ECF No. 114 at 28-29.  This is fatal to § 241's specific intent requirement.  *See* ECF No. 114 at 32-33.  To hold otherwise would assign an untenable scope to the statute—similar to the unlawful breadth that DOJ unsuccessfully advocated for § 1512(c)(2) in *Fischer*—and result in unconstitutional fair-notice and vagueness defects.  Therefore, Count Four should be dismissed.

As to § 371, President Trump argued in the Motion that the theory of the Special Counsel's Office is unlawfully broad because, under *McDonnell v. United States*, their interpretation would "cast a pall of potential prosecution" over the "basic compact underlying representative government," which "'assumes that public officials will hear from their constituents and act appropriately on their concerns.'"  ECF No. 114 at 15 (quoting 579 U.S. 550, 575 (2016)).  In *Trump*, the Supreme Court confirmed that the "pall of potential prosecution" discussed in *McDonnell* presents "unique risks to the effective functioning of government" and harms the compelling "public interest in fair and effective law enforcement."  144 S. Ct. at 2331 (cleaned up).  Again, this is just the sort of overbroad, atextual interpretation that the Supreme Court rejected in *Fischer*.  That reasoning further supports President Trump's Motion to dismiss Count One.

### III. Conclusion

For the foregoing reasons, as well as those set forth in prior filings in support of the Motion, the Superseding Indictment should be dismissed.

Dated: October 3, 2024

Respectfully submitted,

*/s/ John F. Lauro / Gregory Singer*
John F. Lauro, Esq.
D.C. Bar No. 392830
jlauro@laurosinger.com
Gregory M. Singer, Esq. (PHV)
gsinger@laurosinger.com
LAURO & SINGER
400 N. Tampa St., 15th Floor
Tampa, FL 33602
(813) 222-8990

*/s/ Todd Blanche / Emil Bove*
Todd Blanche, Esq. (PHV)
ToddBlanche@blanchelaw.com
Emil Bove, Esq. (PHV)
Emil.Bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall St., Suite 4460
New York, NY 10005
(212) 716-1250

*Counsel for President Donald J. Trump*