**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:23-cr-00257-TSC |
| DONALD J. TRUMP, | |
| *Defendant*. | |

**PRESIDENT DONALD J. TRUMP'S PROPOSED MOTION TO DISMISS AND
FOR INJUNCTIVE RELIEF BASED ON VIOLATIONS OF
THE APPOINTMENTS AND APPROPRIATIONS CLAUSES**

President Donald J. Trump respectfully requests leave to file this proposed motion to dismiss the Superseding Indictment and for injunctive relief—which is timely and, alternatively, supported by good cause—based on violations of the Constitution's Appointments and Appropriations Clauses.

Leave should be granted. In an intervening opinion issued while this case was stayed, Justice Thomas observed that "there are serious questions whether the Attorney General has violated [our Constitutional] structure by creating an office of the Special Counsel that has not been established by law," and he instructed that "[t]hose questions *must* be answered before this prosecution can proceed." *Trump v. United States*, 144 S. Ct. 2312, 2351-52 (2024) (Thomas, J., concurring) (emphasis added). These issues are jurisdictional, and they cannot be forfeited or waived. In another intervening decision, a District Court issued a thorough and well-reasoned opinion that relied in part on Justice Thomas's concurrence, credited many of the arguments raised in President Trump's proposed motion, and dismissed charges unlawfully filed by Special Counsel

1

Jack Smith.  *United States v. Trump*, 2024 WL 3404555, at *47 (S.D. Fla. 2024).[1]  The Superseding Indictment is a new charging instrument, filed after both of these intervening decisions, which warrants a new set of Rule 12 deadlines.  That is how the Court proceeded in connection with the statutory motions to dismiss, and there is no countervailing reason to deny leave here. Accordingly, there is no procedural bar to the proposed motion.

The proposed motion establishes that this unjust case was dead on arrival— unconstitutional even before its inception.  In November 2022, the Attorney General violated the Appointments Clause by naming private-citizen Smith to target President Trump, while President Trump was campaigning to take back the Oval Office from the Attorney General's boss, without a statutory basis for doing so.  Garland did so following improper public urging from President Biden to target President Trump, as reported at the time in 2022, and repeated recently by President Biden through his inappropriate instruction to "lock him up" while Smith presses forward with the case unlawfully as the Presidential election rapidly approaches.  ECF No. 116-2.[2]  Everything that Smith did since Attorney General Garland's appointment, as President Trump continued his leading campaign against President Biden and then Vice President Harris, was unlawful and unconstitutional.  That includes Smith's separate violation of the Appropriations Clause by relying on an appropriation that does not apply in order to take more than $20 million from taxpayers—in addition to Smith improperly relying on more than $16 million in additional funds from other

---

[1] To avoid duplicative briefing, President Trump incorporates by reference the arguments and analysis in Justice Thomas's concurrence in *Trump v. United States*, 144 S. Ct. 2312 (2024), and Judge Cannon's opinion in *United States v. Trump*, 2024 WL 3404555 (S.D. Fla. 2024).

[2] Hanna Panreck, *Biden's 'lock him up' remark about Trump was 'profoundly stupid thing' to say: CNN analyst*, Fox News (Oct. 23, 2024, 10:07 am), https://www.foxnews.com/media/bidens-lock-him-up-remark-about-trump-profoundly-stupid-thing-say-cnn-analyst.

unspecified "DOJ components"—for use in wrongfully targeting President Trump and his allies during the height of the campaign season.

Smith was not appointed "by Law." U.S. Const., art. II, § 2, cl. 2. None of the statutes cited in the order appointing Smith provide the type of clear statement from Congress that is necessary to authorize a department head to appoint an inferior officer. In fact, far from the required clear statement, the plain language of those statutes, as well as their statutory context and historical understanding, directly undermine the validity of Smith's appointment. At least one Supreme Court Justice, a District Court, two former Attorneys General who administered the laws at issue, and several prominent legal scholars, among others, have supported that conclusion.[3] Courts in this district, on the other hand, have erroneously relied on a single sentence from *United States v. Nixon*, 418 U.S. 683 (1974), which cited the same statutes cited by Attorney General Garland to appoint Smith. The sentence is dictum, as it lacks reasoning, was based on an undisputed issue, was not necessary to the Supreme Court's holding, and is not even an accurate characterization of statutes relied on for the appointment at issue in that case. Decisions from this Circuit relying on the *Nixon* dictum did not address intervening decisions regarding the clear-statement rule and major questions doctrine. As such, they do not control the outcome of this motion, and they are not persuasive authority for Smith's unlawful and unconstitutional appointment.

Even if Smith is a valid officer, which he is not, he is a principal rather than an inferior officer and his appointment is plainly unconstitutional because he was never nominated by the President or confirmed by the Senate. This conclusion follows from the lack of effective oversight

---

[3] *See, e.g.*, Brief of Former Attorney General Edwin Meese III, *et al.*, *Trump v. United States*, U.S. Supreme Court, No. 23A745 (Feb. 20, 2024); Steven G. Calabresi & Gary Lawson, *Why Robert Mueller's Appointment as Special Counsel Was Unlawful*, 95 Notre Dame L. Rev. 87, 124 (2019).

over Smith, coupled with the extremely broad jurisdiction described in the appointment order.  In addition, unless and until he is removed, the duration of Smith's tenure is governed by his subjective determination of when his so-called "work" is "concluded."  These features of Smith's role also violate the Appointments Clause.

Smith's massive expenditures also violate the Appropriations Clause.  Smith has operated with a blank check by relying on an inapplicable permanent indefinite appropriation that was enacted in connection with a reauthorization of the Independent Counsel Act in 1987.  Smith was not appointed pursuant to that Act, which expired in 1999.  The appropriation contemplates the possibility of appointment by some "other law," but no "other law" authorized Smith's appointment.  The appropriation also requires that the prosecutor be "independent," in the very particular, rigorous sense that attorneys appointed pursuant to the defunct Independent Counsel Act were meant to be independent.  That is not true of Smith's appointment, either.  For these reasons, Smith should have never been permitted to access these huge sums of money, and his use of this funding violated the Appropriations Clause.

Based on these violations of the Appointments and Appropriations Clauses, the Superseding Indictment should be dismissed with prejudice.  In addition, an injunction against additional spending by Smith is necessary to prevent ongoing irreparable harm and to ensure complete relief for the Appropriations Clause violation.

## <u>BACKGROUND</u>

On November 18, 2022—just three days after President Trump announced his candidacy in the 2024 Presidential election—Attorney General Garland purported to appoint Smith as a "Special Counsel" to "prosecute federal crimes arising from the investigation[s]" targeting President Trump.  Att'y Gen. Order No. 5559-2022 at 2 (the "Appointment Order").  In the

4

Appointment Order, Attorney General Garland cited 28 U.S.C. §§ 509, 510, 515, and 533, and directed in paragraph (e) that Smith is subject to 28 C.F.R. §§ 600.4-600.10 (the "Special Counsel Regulations").  Appointment Order at 1-2.

In a press statement, Attorney General Garland touted the appointment as reflecting DOJ's "commitment" to "independence" on Smith's part, and "accountability" for unjustly pursued targets "in particularly sensitive matters."[4]  According to publicly available Statements of Expenditures, for the period from November 2022 through March 2024 (and thus excluding the last seven months), Smith's "office" has spent $19.44 million.[5]  The Statements of Expenditures disclose an additional $16.31 million in "DOJ component expenses" that are "attributable to this investigation."  This extraordinary sum of money was spent on only two cases—one of which has been dismissed, on the grounds articulated in the proposed motion—that prominent scholars and former federal prosecutors have criticized as politically motivated and in violation of DOJ's policies prohibiting election interference.[6]

## DISCUSSION

### I.   The Proposed Motion Is Timely And There Is Good Cause

The Court should grant leave to file the proposed motion.  The motion is timely under Rule 12, there is good cause under Rule 12(c)(3), and these jurisdictional issues cannot be waived or forfeited.

---

[4]   Press Release, DOJ, Appointment of a Special Counsel (Nov. 18, 2022), https://www.justice.gov/opa/pr/appointment-special-counsel-0.

[5] Statements of Expenditures, Special Counsel's Office, DOJ, https://www.justice.gov/sco-smith.

[6]   Ellie Honig, *Jack Smith's October Cheap Shot*, N.Y. Magazine (Oct. 3, 2024), https://nymag.com/intelligencer/article/jack-smith-october-surprise-donald-trump.html; *see also* Jack Goldsmith, *Jack Smith Owes Us an Explanation*, N.Y. Times (Oct. 9, 2024), https://www.nytimes.com/2024/10/09/opinion/jack-smith-trump-biden.html.

This motion attacks the Superseding Indictment, which did not exist at the time of the Court's previous motions deadline because the Special Counsel's Office obtained this new charging instrument—with significant substantive modifications—following the Supreme Court's remand in *Trump v. United States* and Judge Cannon's decision in *United States v. Trump*. Consistent with those circumstances, the Court has since properly permitted President Trump to supplement previously filed motions to dismiss based on the new charging instrument. *See* ECF Nos. 233, 255.

Justice Thomas instructed that the "essential questions" raised in the proposed motion "must be answered before this prosecution can proceed." *Trump v. United States*, 144 S. Ct. at 2348, 2352 (Thomas, J., concurring). In addition to the timing of the Superseding Indictment, that command strongly supports the existence of Rule 12(c)(3) good cause. Equally important is the fact that Justice Thomas's concurrence and Judge Cannon's thorough intervening decision present important and thoughtful reasons—many of which have not been addressed in this Circuit—supporting President Trump's position that Smith's appointment and work have violated the Appointments and Appropriations Clauses. *See United States v. Abu Khatallah*, 316 F. Supp. 3d 207, 211 (D.D.C. 2018) (finding good cause based on intervening Supreme Court decision).

These are fatal Constitutional defects that are causing irreparable harm, cannot be waived, and "must" be addressed. *Trump v. United States*, 144 S. Ct. at 2348, 2352 (Thomas, J., concurring). Smith's actions pursuant to an unlawful appointment, based on funds to which he should not have had access, have resulted in the "'exercise of power that the actor did not lawfully possess,'" such that "the proper remedy is invalidation of the *ultra vires* action." *United States v. Trump*, 2024 WL 3404555, at *41 (quoting *Collins v. Yellen*, 594 U.S. 220, 258 (2021)). Because Smith's actions are *ultra vires*, he is simply "a private citizen [who] lacks a judicially cognizable

interest in the prosecution . . . ." *Diamond v. Charles*, 476 U.S. 54, 64 (1986) (cleaned up).  Smith's

lack of standing cannot be ignored.  *See Bauer v. Marmara*, 774 F.3d 1026, 1029 (D.C. Cir. 2014)

("[W]hen there is doubt about a party's constitutional standing, the court *must* resolve the doubt,

*sua sponte* if need be." (cleaned up)).  The Court does not have jurisdiction over a criminal

prosecution maintained by someone other than an attorney for the United States, and so must

address this issue at "any time" raised.  *See* Rule 12(b)(2) ("A motion that the court lacks

jurisdiction may be made at any time while the case is pending."); *cf. United States v. Providence*

*J. Co.*, 485 U.S. 693, 698-99 (1988); *United States v. Singleton*, 165 F.3d 1297, 1299-1300 (10th

Cir. 1999); *United States v. Durham*, 941 F.2d 886, 892 (9th Cir. 1991).  President Trump's

equitable request for an injunction is not governed by Rule 12's procedural requirements, and these

serious problems infected the grand jury proceedings and the charging instruments as well.  *See*

Fed. R. Crim. P. 6(d)(1) ("attorneys for the government" may be present when grand jury is in

session); Fed. R. Crim. P. 7(c)(1) (indictments "must be signed by an attorney for the

government").

Based on these same considerations, the proposed motion raises "constitutional

challenge[s] that [are] neither frivolous nor disingenuous" and addresses "important questions . . .

about the Constitution's structural separation of powers."  *Freytag v. Comm'r*, 501 U.S. 868, 873,

879 (1991).  Such issues may be "considered on appeal whether or not they were ruled upon

below."  *Id.* at 879.  That is because the purpose of the separation of powers is "'to ensure that we

do not lose liberty.'"  *Trump v. United States*, 144 S. Ct. at 2347 (Thomas, J., concurring) (quoting

*Morrison v. Olson*, 487 U.S. 654, 710-11 (1988) (Scalia, J., dissenting)).  Like Presidential

immunity, "the Constitution also secures liberty by separating the powers to create and fill offices."

*Id.* at 2351.  Similar to Presidential immunity violations, failure to adhere to the requirements of

the Appointments Clause risks "weakening the Presidency." *Morrison*, 487 U.S. at 713 (Scalia, J., dissenting). "[I]t must also be obvious that the institution of the independent counsel enfeebles [the President] more directly in his constant confrontations with Congress, by eroding his public support." *Id.* Litigation challenging government conduct that risks the "enfeebling of the Presidency," with the potential for "profound consequences" for "the future of our Republic," must be had on the merits and cannot be avoided on inapposite procedural grounds. *Trump v. United States*, 144 S. Ct. at 2346-47.

Finally, there is no countervailing reason to deny filing. Unlike when the original motion deadline was set, no trial is currently scheduled. Just the opposite. All trial-related deadlines are stayed, and will remain stayed, while the courts resolve the threshold immunity issues presented by this case. The Court pointed out at the September 5, 2024 conference: "We're hardly sprinting to a finish line here. We all know, we all know that whatever my ruling on immunity is, it's going to be appealed and the taking of that appeal will again stay this case." 9/5/2024 Tr. at 31; *see also* ECF No. 233. The Special Counsel's Office also acknowledged that "it is hard to see how the Government is substantively prejudiced by the Court extending the deadline in order to have that issue resolved at this early stage." 9/5/2024 Tr. at 52. In light of these considerations, the procedural requirements of Rule 12 do not bar the proposed motion.

## II.     Smith Was Not Appointed "By Law" Under The Appointments Clause

The Appointments Clause requires that inferior officers be appointed "by Law." U.S. Const., art. 2, § 2, cl. 2. This requires a statute. *See Trump v. United States*, 144 S. Ct. at 2348 (Thomas, J., concurring) (reasoning that "'established by law' refers to an office that Congress creates 'by statute'"); *United States v. Trump*, 2024 WL 3404555, at *7 ("[T]he Appointments Clause requires that any Congressional decision to vest inferior-officer appointment power must

8

be made by 'Law'—meaning statutory law, as all parties rightly agree.").  The Appointment Order cites no law granting the Attorney General authority to appoint an officer like Smith, and none exists.

### A. Congress Has Not Provided The Required Clear Statement

Consistent with the major questions doctrine and other cases applying clear-statement rules to vindicate fundamental constitutional interests—including the separation of powers—a clear statement from Congress is required to support an appointment like the one set forth in the Appointment Order.  An oblique inference from statutory language does not suffice.

The Supreme Court has applied clear-statement rules "when a statute implicates historically or constitutionally grounded norms that we would not expect Congress to unsettle lightly."  *Jones v. Hendrix*, 599 U.S. 465, 492 (2023); *see also West Virginia v. EPA*, 597 U.S. 697, 721 (2022) (reasoning that "the history and the breadth of the authority that the agency has asserted, . . . provide a reason to hesitate before concluding that Congress meant to confer such authority" (cleaned up)).  The issues raised in this motion implicate such norms.

The Appointments Clause "is among the significant structural safeguards of the constitutional scheme."  *Edmond v. United States*, 520 U.S. 651, 659 (1997); *see also Freytag*, 501 U.S. at 878 ("The roots of the separation-of-powers concept embedded in the Appointments Clause are structural and political.  Our separation-of-powers jurisprudence generally focuses on the danger of one branch's aggrandizing its power at the expense of another branch."); *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 764 (2021) ("We expect Congress to speak clearly when authorizing an agency to exercise powers of vast economic and political significance." (cleaned up)).  The requirement in the Appointment Clause that officers be created by statute, with direct congressional authorization, reflects the Constitution's original public

meaning and the Framers' deliberate balancing of the powers of the coordinate branches. This requirement is deeply embedded in the constitutional structure, and was central to the Framers' formulation of the appointment power. *See Trump v. United States*, 144 S. Ct. at 2349 (Thomas, J., concurring).

"The absence of the legislature's bark is all the more compelling when one considers what the watchdog is guarding." *U.S. House of Representatives v. U.S. Dep't of Com.*, 11 F. Supp. 2d 76, 101 (D.D.C. 1998). "A private citizen cannot criminally prosecute anyone, let alone a former President," unless "duly authorized to do so by the American people." *Trump v. United States*, 144 S. Ct. at 2348 (Thomas, J., concurring). The Appointment Order is "no everyday exercise of federal power." *Nat'l Fed'n of Indep. Bus. v. OSHA*, 595 U.S. 109, 117 (2022) (cleaned up). Attorney General Garland unlawfully named a private citizen to investigate and prosecute a former President. Garland instructed Smith to investigate President Trump's immune official acts of Executive power. Exacerbating that Constitutional injury in an unprecedent fashion inconsistent with decades of DOJ practice, Garland did so at a time when President Trump was campaigning against President Biden, who held removal power over the Attorney General. To put it mildly, these circumstances present particularly unique and sensitive issues for the structure of the Constitution. *See Trump v. United States*, 144 S. Ct. at 2330 ("Criminally prosecuting a President for official conduct undoubtedly poses a far greater threat of intrusion on the authority and functions of the Executive Branch than simply seeking evidence in his possession . . . .").

These separation-of-powers concerns "caution . . . against reading legislation, absent clear statement, to place in executive hands" the authority to appoint officers and establish offices like the one Smith occupies. *Kucana v. Holder*, 558 U.S. 233, 237 (2010). Indeed, "there are cases specifically in the Appointments Clause context . . . where the Supreme Court has insisted upon

10

textual clarity when faced with more ambiguous language." *United States v. Trump*, 2024 WL

3404555, at *9 (citing *Edmond*, 520 U.S. 651 and *Weiss v. United States*, 510 U.S. 163 (1994)).

> The Supreme Court has recognized that "[i]n traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in decision." Although the "clear statement" rule was originally articulated to guide interpretation of statutes that significantly alter the federal-state balance, there are similar compelling reasons to apply the rule to statutes that significantly alter the balance between Congress and the President.

*Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991) (quoting *United States v. Bass*, 404 U.S.

336, 349 (1971)); *see also Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir. 2023) ("Because of

the background presumption that the President may remove anyone he appoints, Congress must

make it clear in a statute if it wishes to restrict the President's removal power."); *Roeder v. Islamic

Republic of Iran*, 333 F.3d 228, 238 (D.C. Cir. 2003) (citing *Armstrong* for the proposition that a

clear-statement rule applies to "a significant alteration in the balance of power between Congress

and the President").

The D.C. Circuit's ruling in *In re Sealed Case* is not on point and has been abrogated by

more recent Supreme Court authority regarding the clear-statement rule and major question

doctrine. In *In re Sealed Case*, the court acknowledged that 28 U.S.C. §§ 509, 510, and 515 did

not "explicitly authorize" the Attorney General to appoint Lawrence Walsh as Independent

Counsel in connection with Iran/Contra. 829 F.2d 50, 55 (D.C. Cir. 1987). The panel also

correctly pointed out that *Nixon* had "presupposed" a valid statutory basis for the appointment in

that case. *Id.* at 55 n.30. The court nevertheless asserted that the statutes "accommodate[ed]"

Walsh's appointment. *Id.* at 55 & n.30. Accommodation is not enough where, as here, a clear

statement is required, as the above-cited subsequent Supreme Court case law demonstrates. *See,*

*e.g.*, *West Virginia v. EPA*, 597 U.S. at 723 ("[S]omething more than a merely plausible textual basis for the agency action is necessary.").

This distinction also addresses the D.C. Circuit's more recent consideration of the appointment of Robert Mueller in 2019.  In that decision, the D.C. Circuit characterized *In re Sealed Case* as "binding," notwithstanding the cases cited above, and declined to consider the clear-statement caselaw based on a disputed finding of forfeiture, which is not true here.  *In re Grand Jury Investigation*, 916 F.3d 1047, 1054 (D.C. Cir. 2019).  Thus, *In re Sealed Case* and *In re Grand Jury Investigation* are not controlling because they were decided before the Supreme Court's development of "an identifiable body of law . . . all addressing a particular and recurring problem: agencies asserting highly consequential power beyond what Congress could reasonably be understood to have granted."  *West Virginia v. EPA*, 597 U.S. at 724; *see also Attias v. CareFirst, Inc.*, 344 F.R.D. 38, 46 (D.D.C. 2023) ("Controlling precedent may be effectively overruled if a later Supreme Court decision eviscerates its reasoning." (cleaned up)).

As there is no statutory authority for the Appointment Order, the case is an instance of "the Executive seizing the power of the Legislature."  *Biden v. Nebraska*, 143 S. Ct. 2355, 2373 (2023).  "The Constitution's division of power among the three branches is violated where one branch invades the territory of another, whether or not the encroached-upon branch approves the encroachment."  *New York v. United States*, 505 U.S. 144, 182 (1992).  One of "the most vital functions" of the federal courts is "policing the enduring structure of constitutional government when the political branches fail to do so."  *NLRB v. Noel Canning*, 573 U.S. 513, 572 (2014) (Scalia, J., concurring) (cleaned up).  The Court is duty-bound to do so here by dismissing the Superseding Indictment.

### B. Congress Provided Clear Authorization in Other Contexts

The statutes cited in the Appointment Order "contrast[] sharply with the numerous other statutes that *do* confer the power to appoint in a straightforward manner." *United States v. Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 598, 621 (D.D.C. 2018).

Several provisions of Title 28 track the principal-officer language of the Appointments Clause by requiring Presidential appointment as well as advice and consent from the Senate. *See* 28 U.S.C. §§ 503, 504, 504a, 505, 506, 541. Congress has also "repeatedly . . . demonstrated its ability to imbue the Attorney General with appointment power over officers and employees." *United States v. Trump*, 2024 WL 3404555, at *15; *see* 28 U.S.C. §§ 507, 532, 542, 543, 546(a). In 18 U.S.C. § 4041, for example, Congress authorized the Attorney General to "appoint such additional officers and employees as he deems necessary." That statute applies to the Bureau of Prisons, however, and there is no corresponding statutory authority for the appointment of someone like Smith.

Furthermore, "Congress has at times expressly created offices similar to the position now occupied by the Special Counsel." *Trump v. United States*, 144 S. Ct. at 2350 (Thomas, J., concurring).

> Congress created an office for a "special counsel" to investigate the Teapot Dome Scandal and pursue prosecutions. *See* ch. 16, 43 Stat. 6. And, a statute provided for "the appointment of an independent counsel" that we addressed in *Morrison v. Olson*. *See* 28 U.S.C. § 592. That statute lapsed, and Congress has not since reauthorized the appointment of an independent counsel.

*Id.* These current and former officer-appointment statutes, which used specific and explicit language, "negate[] any permissible inference that Congress intended" a more general source of authority for Smith's appointment, "but in a fit of absentmindedness forgot to say so." *Weiss v. United States*, 510 U.S. 163, 172 (1994). The Superseding Indictment must be dismissed.

**C.  The Statutes Cited In The Appointment Order Lack A Clear Statement And Did Not Authorize Smith's Appointment**

None of the statutes cited in the Appointment Order provides a sufficiently clear statement from Congress authorizing Smith's appointment.  This conclusion is supported by the "broader statutory context" and related enactment histories, as well as the "murky historical record" concerning DOJ's use of outside attorneys.  *United States v. Trump*, 2024 WL 3404555, at *14-16.  Specifically, "the appointment of private citizens like Mr. Smith—as opposed to already-retained federal employees—appears much closer to the exception than the rule."  *Id.* at *19.  Against this backdrop, the Attorney General's reliance on these statutes "destabilizes Congress's carefully crafted statutory structure for DOJ."  *Id.* at *26.  This is "precisely the type of diffusion and encroachment that concerned the Framers in drafting the Appointments Clause."  *Id.*  As a result, the Constitutional avoidance canon also counsels against the meritless interpretations relied upon to support the Appointment Order.  *See, e.g.*, *Clark v. Martinez*, 543 U.S. 371, 381-82 (2005).  For all of these reasons, and those discussed below, Smith was not appointed "by Law" as required by the Appointments Clause.  His actions since the appointment have been *ultra vires*, and dismissal of the Superseding Indictment is the appropriate remedy.  *See United States v. Trump*, 2024 WL 3404555, at *42 (citing *Lucia v. SEC*, 585 U.S. 237, 251 (2018)).

**1.  28 U.S.C. §§ 509, 510**

Sections 509 and 510 are "generic provisions" that do not authorize appointments.  *Trump v. United States*, 144 S. Ct. at 2350 (Thomas, J., concurring).  Section 509 is "a general statute simply declaring that the Attorney General is imbued with all functions of the Department and its agencies except in the limited instances of administrative law judges and private federal prisons."  *United States v. Trump*, 2024 WL 3404555, at *11.  Section 510 is "a general provision allowing the Attorney General to delegate his functions to officers, employees, and agencies of DOJ."  *Id.*

"[T]he Attorney General's general power to delegate duties to an existing officer is not the same as the power to appoint the officer in the first place." *Concord Mgmt.*, 317 F. Supp. 3d at 622. Therefore, 28 U.S.C. §§ 509 and 510 cannot sustain the Appointment Order.

### 2.  28 U.S.C. § 515

"On its face, § 515 does not explicitly empower the Acting Attorney General to appoint or retain anyone." *Concord Mgmt.*, 317 F. Supp. 3d at 621.  The requisite clear statement is thus absent.

Section 515(a) addresses the types of proceedings in which the Attorney General, "any other officer of the Department of Justice," and "any attorney specially appointed by the Attorney General *under law*" may participate.  28 U.S.C. § 515(a) (emphasis added).  The statutory phrase "under law," *id.*, means that "such an attorney's office must have already been created by some other law." *Trump v. United States*, 144 S. Ct. at 2350-51 (Thomas, J., concurring).  Any other interpretation would impermissibly render the phrase surplusage.  Thus, "[t]his is a provision conferring territorial flexibility to the Attorney General; it permits the Attorney General to use DOJ officers and previously appointed special attorneys to litigate on behalf of the United States, regardless of residency." *United States v. Trump*, 2024 WL 3404555, at *12.  But § 515(a) does not provide for appointments.

Section 515(b) addresses commission titles, oath, and salary for "[e]ach attorney specially retained *under authority of the Department of Justice*."  28 U.S.C. § 515(b) (emphasis added).  Similar to "under law" in § 515(a), the phrase "under authority of the Department of Justice" in § 515(b) is a reference to an external source of appointment authority.  "These clauses become surplusage if § 515 provides standalone appointment power, for in that case the statute could have

referred to attorneys 'specially appointed under this section' or simply attorneys 'specially appointed.'" *Concord Mgmt.*, 317 F. Supp. 3d at 621.

The lack of appointment authority in § 515 is further confirmed by the verb tense in these provisions.  "'Specially appointed' and 'specially retained' are past participles that modify 'attorney.'" *Concord Mgmt.*, 317 F. Supp. 3d at 621.  Although past participles can take past or present tenses, they were used in the past tense in § 515 to refer to an attorney who had already been appointed or retained pursuant to another statute.  *See United States v. Trump*, 2024 WL 3404555, at *13-14.  "Regardless whether § 515 refers to past or present conditions, it does not appear to convey the power to bring those conditions about." *Concord Mgmt.*, 317 F. Supp. 3d at 621.

Finally, the "special attorney" commission referenced in § 515(b) is a reference to a role specifically provided for in Title 28.  *See* 28 U.S.C. § 543; *see also id.* § 519.  Congress moved the provisions found at Title 28 to their current location in the same legislation.  *See* Pub. L. No. 89-554, 80 Stat. 378, 611 (1966).  "The term 'special attorney' thus has a known meaning in Title 28 that coincides harmoniously with the broader statutory context.  That meaning, per Section 543, consists of attorneys appointed by the Attorney General to *assist* United States Attorneys—a role Special Counsel Smith expressly disclaims." *United States v. Trump*, 2024 WL 3404555, at *15 (citation omitted).

### 3.  28 U.S.C. § 533

Section 533(1) authorizes the appointment of FBI "officials," not private-citizen prosecutors like Smith.  *Concord Mgmt.*, 317 F. Supp. 3d at 618 (reasoning that "official" and "officer" are "not necessarily synonyms").  That is not a clear statement authorizing Smith's appointment.

16

The Appointment Order's meritless citation to § 533 would "shoehorn appointment authority for United States Attorney-equivalents into a statute that permits the hiring of FBI law enforcement personnel."  *United States v. Trump*, 2024 WL 3404555, at *21.  Such an interpretation would render superfluous, for example, 28 U.S.C. §§ 542 and 543.  "When vesting appointment authority in department heads, other provisions specifically confer the power to appoint 'officers,' not 'officials.'"  *Concord Mgmt.*, 317 F. Supp. 3d at 619 (citing 7 U.S.C. § 610(a); 20 U.S.C. § 3461(a); 42 U.S.C. § 913; 49 U.S.C. § 323(a)); *see also* 18 U.S.C. § 4041.  "These provisions show that, had Congress meant to confer 'officer'-appointing power via § 533 or any other provision, 'it easily could have done so.'"  *Concord Mgmt.*, 317 F. Supp. 3d at 619 (quoting *Baker Botts LLP v. ASARCO LLC*, 576 U.S. 121, 129 (2015)); *see also United States v. Trump*, 2024 WL 3404555, at *21-22.

"[T]his provision would be a curious place for Congress to hide the creation of an office for a Special Counsel.  It is placed in a chapter concerning the Federal Bureau of Investigation (§§ 531-540d), not the separate chapters concerning U.S. Attorneys (§§ 541-550) or the now-lapsed Independent Counsel (§§ 591-599)."  *Trump v. United States*, 144 S. Ct. at 2351 (Thomas, J., concurring).  This placement in chapter 33, and the narrowly focused title of § 533, "'supply clues' of congressional intent."  *United States v. Trump*, 2024 WL 3404555, at *26 (quoting *Yates v. United States*, 574 U.S. 528, 540 (2015)).  So does the FBI website.  Under a heading "Where is the FBI's authority written down?," the FBI explains that "[f]ederal law gives the FBI authority to investigate all federal crime not assigned exclusively to another federal agency (28, Section 533 of the U.S. Code)."[7]  Similarly, citing § 533, Justice Manual § 9-66.010 explains

---

[7]  FBI, Frequently Asked Questions: Where is the FBI's authority written down?, https://www.fbi.gov/about/faqs/where-is-the-fbis-authority-written-down.

that, "[b]y statute and by regulation the FBI has broad jurisdiction over offenses involving government property." Several OLC opinions are in accord. *See, e.g.*, Inspector General Authority to Conduct Regulatory Investigations, 13 U.S. Op. Off. Legal Counsel 54, 1989 WL 595865, at *58 n.7 (Mar. 9, 1989) (explaining that the FBI "has general criminal investigative authority over all violations of federal law. 28 U.S.C § 533(1)").[8]

In light of this context, as well as the other statutes that specifically authorize inferior-officer appointments within DOJ, the term "official" in § 533 cannot be interpreted to confer what would amount to virtually unlimited appointment authority for the Attorney General. "Congress 'does not . . . hide elephants in mouseholes.'" *United States v. Trump*, 2024 WL 3404555, at *21 (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)).

### D. The *Nixon* Dictum Is Neither Controlling Nor Persuasive

The *Nixon* dictum is neither controlling nor persuasive in this context. In *Nixon*, the Supreme Court made only "passing reference to the cited statutes" in the Appointment Order. *Trump v. United States*, 144 S. Ct. at 2351 (Thomas, J., concurring). The *Nixon* Court provided "no analysis." *Id.* Rather, as noted above, the Court "presupposed" a valid statutory basis for the appointment of Archibald Cox to investigate matters relating to Watergate. *In re Sealed Case*, 829 F.2d at 55 n.30. The language is therefore dictum, and it is not persuasive authority regarding the issues raised in this motion. *See Murray Energy Corp. v. EPA*, 936 F.3d 597, 627 (D.C. Cir. 2019)

---

[8] *See also, e.g.*, FBI Authority to Investigate Violations, 20 U.S. Op. Off. Legal Counsel 242, 1996 WL 33101185, at *1, 3 (June 21, 1996) (referring to the FBI's "general investigative authority of 28 U.S.C § 533"); Authority of FBI Agents to Pursue Non-Federal Fugitives, 19 U.S. Op. Off. Legal Counsel 33, 1995 WL 944018, at *4 (Feb. 21, 1995) ("Where there is a reasonable expectation that an investigation will lead to evidence of a violation of federal law, FBI agents have authority to undertake that investigation under 28 U.S.C. § 533."); Authority of FBI to Override International Law, 13 U.S. Op. Off. Legal Counsel 163, 1989 WL 595835, at *3 (June 21, 1989) ("The general investigative authority of the FBI derives from 28 U.S.C. § 533(1).").

("Dicta is never binding on any court, nor is it persuasive here, because it is fundamentally incorrect." (citing *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 235 (1959)).

The *Nixon* dictum states: "Under the authority of Art. II, s 2, Congress has . . . vested in [the Attorney General] the power to appoint subordinate officers to assist him in the discharge of his duties. 28 U.S.C. ss 509, 510, 515, 533." 418 U.S. at 694. This language appears to have been lifted, nearly verbatim, from a conclusory assertion in the brief submitted by Cox's successor, Leon Jaworski.[9]    Jaworski's assertion that §§ 509-510, 515, and 533 generally provided for the appointment of "subordinate officers"—disputed here— did not establish that any of those statutes authorized the appointment of an officer like Cox. That was not the argument Jaworski was making at that point in the brief, and Attorney General Richardson had not even relied on §§ 515 and 533 in the appointment order. Attorney General Richardson had only cited his "authority" under 28 U.S.C. §§ 509, 510 and 5 U.S.C. § 301. *See* Att'y Gen. Order No. 551-73; 38 Fed. Reg. 14,688; *see also* 38 Fed. Reg. 30,738 (same); 38 Fed. Reg. 32,805 (same).[10] Thus, the *Nixon* dictum concerning 28 U.S.C. §§ 515 and 533 is particularly unconsidered and unconvincing. *See Louisiana Env't Action Network v. Browner*, 87 F.3d 1379, 1385 (D.C. Cir. 1996) ("[P]recedent and prudence counsel us to avoid unnecessary dicta."). The appointment orders in *In re Sealed*

---

[9] *Compare* Brief for the United States, *United States v. Nixon*, 418 U.S. 683 (1974) (Nos. 73-1766, 73-1834), 1974 WL 174854, at *27-28 ("Under Article II, Section 2, Congress has vested in him alone the power to appoint subordinate officers to discharge his powers. 28 U.S.C. 509, 510, 515, 533."), *with Nixon*, 418 U.S. at 694 ("Under the authority of Art. II, s 2, Congress . . . has also vested in him the power to appoint subordinate officers to assist him in the discharge of his duties. 28 U.S.C. ss 509, 510, 515, 533.")

[10] Acting Attorney General Robert Bork cited 28 U.S.C. § 515(a) in connection with the latter set of Watergate Special Prosecution Force regulations. However, consistent with the interpretation of § 515(a) set forth herein, Acting Attorney General Bork indicated that § 515(a) was part of Jaworski's "specific functions," rather than the separate "authority" cited in the regulation as the basis for the appointment. *See* 38 Fed. Reg. 30,738.

*Case* and *In re Grand Jury Investigation* did not cite § 533 either, and those cases are therefore "dicta upon dicta." *Elec. Priv. Info. Ctr. v. Nat'l Sec. Comm'n on A.I.*, 466 F. Supp. 3d 100, 108 (D.D.C. 2020).

"[D]icta in the older cases cannot blind the courts to realities." *Richards v. United States*, 192 F.2d 602, 607 (D.C. Cir. 1951). The regulation at issue in *Nixon* was not "ordinary," and therefore distinguishable. 418 U.S. at 696. Congress conditioned Attorney General Richardson's confirmation on his appointment of Cox as an independent prosecutor, and the resulting regulation prohibited Cox's removal "without the President's first consulting the Majority and the Minority Leaders and Chairmen and ranking Minority Members of the Judiciary Committees of the Senate and House of Representatives and ascertaining that their consensus is in accord with his proposed action." 38 Fed. Reg. 30,739; *see also Nixon*, 418 U.S. at 694 n.8; Nomination of Elliot L. Richardson, of Massachusetts, to be Attorney General, Hearings Before the S. Comm. on the Judiciary, 93rd Cong. 12, 67 (1973). Consequently, Cox was intended by Congress and DOJ to have "unique authority and tenure." 418 U.S. at 694. Jaworski's appointment had similar features. 38 Fed. Reg. 30,738-39.

More broadly, the *Nixon* dictum concerned "a peripheral subject that was not raised in the case," and was unchallenged "[a]cross hundreds of pages of briefing (and hours of oral argument)." *United States v. Trump*, 2024 WL 3404555, at *31-32. The language is located in a section of the opinion concerning whether a dispute over President Nixon's invocation of Executive privilege in response to a subpoena issued by Cox, which had been raised in federal court, was justiciable. The *Nixon* Court answered that question in the affirmative. However, the Court's actual analysis focused on the "very broad delegation of authority" in the regulation itself, and "the fact that the regulation had not been revoked." *Id.* at *32. Insofar as justiciability was concerned, what

mattered in *Nixon* was that the regulation was "extant," that Cox's subpoena was "within the scope of his express authority" under that regulation, and that President Nixon had a non-frivolous basis to invoke the Executive Privilege in response to the subpoena.   418 U.S. at 695-97.   These considerations are what made the dispute justiciable.   Precisely *how* the regulation came to be "extant," *i.e.*, the source of the appointment authority, was of no moment.   *See United States v. Manafort*, 321 F. Supp. 3d 640, 659 (E.D. Va. 2018) (reasoning that the "holding" in *Nixon* "did not adjudicate the legal authority of a special prosecutor").

Based on these considerations, the conclusory sentence in *Nixon* concerning 28 U.S.C. §§ 509, 510, 515, and 533 is non-binding and unpersuasive.   Treating the sentence as dictum is consistent with *Seed v. EPA*, 100 F.4th 257 (D.C. Cir. 2024).   In *Seed*, the plaintiff cited *Babb v. Wilkie*, 589 U.S. 399 (2020) "to support her claim for compensatory damages under the ADEA." 100 F.4th at 266.   The D.C. Circuit characterized as "dictum" language in *Babb* indicating "that a plaintiff may obtain relief that is 'generally available for a violation of § 633a(a), including hiring, reinstatement, backpay, and compensatory damages,' if the plaintiff shows that 'age was a but-for cause of the challenged employment decision.'"   *Id.* (quoting *Babb*, 589 U.S. at 402).   The relevant paragraph in *Babb* begins, "We hold . . . ."   *Babb*, 589 U.S. at 402.   Justice Alito did not use the word "assume" in that paragraph.   *See id.*   Nevertheless, the *Seed* panel asserted that the *Babb* Court had "assumed without deciding that compensatory damages were available," and "[a] bare assumption is not the type of carefully considered language of the Supreme Court that this court considers authoritative for purposes of applying Supreme Court dictum."   *Seed*, 100 F.4th at 266 (cleaned up); *see also J.C. Eno (U.S.) Ltd. v. Coe*, 106 F.2d 858, 859-60 (D.C. Cir. 1939).   The same reasoning applies to the *Nixon* dictum, and this Court is not bound by it.

### III.   Smith Is A Principal Officer

Smith's appointment is also invalid for an independent reason: the Appointment Order violates the Appointments Clause because Smith is a principal officer. *See Trump v. United States*, 144 S. Ct. at 2351 (Thomas, J., concurring) (reasoning that if Smith "is a principal . . . officer," then "his appointment is invalid because the Special Counsel was not nominated by the President and confirmed by the Senate, as principal officers must be" under the Appointments Clause).

The relevant factors in determining whether one is a principal officer include the extent of oversight from a superior, as well as "nature, scope, and duration of an officer's duties." *Seila L. LLC v. CFPB*, 591 U.S. 197, 217 n.3 (2020). The Special Counsel Regulations afford Smith the full power of a U.S. Attorney, who is a principal officer. 28 CFR § 600.6 ("[T]he Special Counsel shall exercise, within the scope of his or her jurisdiction, the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney."). Attorney General Garland has touted Smith's "independence," and he explained that "the Special Counsel will not be subject to the day-to-day supervision of any official of the Department."[11] Prosecutors in this case later added that "coordination with the Biden Administration"—which includes Attorney General Garland as a department head and cabinet officer—is "non-existent." ECF No. 191 at 6. These assertions are consistent with the Special Counsel Regulations, and principal-officer status. *See, e.g.*, 28 C.F.R. § 600.7(b); *id.* § 600.6 ("[T]he Special Counsel *shall determine whether and to what extent* to inform or consult with the Attorney General or others within the Department about the conduct of his or her duties and responsibilities." (emphasis added)); *see also United States v. Trump*, 2024 WL 3404555, at *37-38. "[T]his framework does not lend itself

---

[11]   Press Release, DOJ, Appointment of a Special Counsel (Nov. 18, 2022), https://www.justice.gov/opa/pr/appointment-special-counsel-0.

to a finding that Special Counsel Smith's 'work is directed and supervised at some level' by the Attorney General . . . ." *United States v. Trump*, 2024 WL 3404555, at \*38.

Smith is subject to removal for "good cause."  28 C.F.R. § 600.7(d).  At minimum, there are serious questions whether that restriction passes muster under recent Appointments Clause precedent.  *See United States v. Trump*, 2024 WL 3404555, at \*38; *Concord Mgmt.*, 317 F. Supp. 3d at 613.  Although the *Morrison* Court "deemed the independent counsel an inferior officer despite a good-cause removal restriction," the Court did so "in the context of a multi-factored approach that did not purport to delineate the 'line' between principal and inferior officers." *United States v. Trump*, 2024 WL 3404555, at \*38.  The viability of *Morrison* is also, at minimum, subject to doubt, as the errors in that outcome are widely recognized and decried.  Justice Thomas cited Justice Scalia's *Morrison* dissent in the concurrence in *Trump v. United States*.  Moreover, at oral argument in *Trump v. United States*, Justice Kavanaugh described *Morrison* as "one of the Court's biggest mistakes."[12]  Justice Kagan has argued that Justice Scalia's *Morrison* opinion is "one of the greatest dissents ever written and every year it gets better."[13]  Because *Morrison* addressed a different appointment under a different set of facts and a different set of factors, it is distinguishable from this case, and there is no doubt that its now-discredited analysis should not be extended any further than its limited holding.

The Appointment Order placed no real limitations on Smith's tenure and jurisdiction. Unless and until Smith is removed, the Special Counsel Regulations largely defer to special counsels on a decision regarding the "conclusion" of their "work."  28 C.F.R. § 600.8(c).

---

[12]  Tr. 142, *Trump v. United States*, U.S. Supreme Court, No. 23-939, www.supremecourt.gov/oral_arguments/argument_transcripts/2023/23-939_f2qg.pdf.

[13] *Justice Kagan and Judges Srinivasan and Kethledge Offer Views from the Bench*, Stanford Lawyer (May 30, 2015), https://law.stanford.edu/stanford-lawyer/articles/justice-kagan-and-judges-srinivasan-and-kethledge-offer-views-from-the-bench.

"[N]othing in the Regulations, the Appointment Order, or the record more generally provides a concrete sunset provision for the cessation of his work." *United States v. Trump*, 2024 WL 3404555, at *40.

Regarding jurisdiction, Attorney General Garland indicated that Smith could assume authority over investigation of (1) "any person or entity" in connection with the 2020 election; (2) President Trump's handling of records under the Presidential Records Act, which covered immune conduct and decisions by President Trump and numerous additional individuals and entities dating back to at least 2018; (3) "any matters that arose or may [or might] arise directly" from those enormously broad investigations; and (4) all matters "within the scope of 28 C.F.R. § 600.4(a)," which extended the scope of the Order to cover alleged crimes "committed in the course of, and with intent to interfere with, the Special Counsel's investigation." Appointment Order ¶¶ (b)-(c); 28 C.F.R. § 600.4(a). The Appointment Order contains no geographic limitations and, in that sense at least, confers authority that is broader than that given to individual U.S. Attorneys, who are principal officers. Moreover, Smith's ability to refer additional "discrete prosecutions" to U.S. Attorneys exponentially multiplied the scope of jurisdictional grant in the Appointment Order. *See* Appointment Order ¶ (d).

Collectively, these considerations demonstrate that Smith is a principal officer. Because the Appointment Order does not comply with the "default manner of appointment," *United States v. Arthrex, Inc.*, 594 U.S. 1, 12 (2021), Smith's appointment violates the Appointments Clause, and the Superseding Indictment must be dismissed.

## IV.   Smith Is Violating The Appropriations Clause

Between November 2022 and March 2024, Smith spent almost $20 million on his unjust and unwarranted prosecutions targeting President Trump. He has almost certainly spent many

more untold millions more between March 2024 and today.  In addition to the $20 million spent directly by Smith and his Special Counsel's Office prior to March 2024, other unspecified "components" of the Biden-Harris administration have spent more than $16 million on the same unlawful project.  All of that money was spent in violation of the Appropriations Clause.

"The Appropriations Clause is phrased as a limitation . . . ."  *CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 438 (2024).  Under the Clause, an appropriation must "identify a source of public funds and authorize the expenditure of those funds for designated purposes . . . ." *Id.* at 426.  "It is not mere happenstance that Congress is the chief guardian of the purse strings." *CFPB v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 225 (5th Cir. 2022) (Jones, J., concurring). "Drawing on the British experience, the Framers placed the national government's fiscal powers in Congress's hands to check the propensity for aggrandizement and consequent loss of liberty endemic to a powerful executive branch."  *Id.*

Since inception, Smith and his Special Counsel's Office have unlawfully taken tens of millions of dollars from the government's coffers based on a permanent indefinite appropriation for DOJ.  *See* 101 Stat. 1329-9.  These actions contradict the plain text of the relevant appropriation, and they are inconsistent with DOJ's representations to Congress in 1999 when arguing that the Independent Counsel Act should be permitted to expire.  At a House Judiciary Committee hearing, then Deputy Attorney General Eric Holder explained that resource constraints are a needed check on prosecutorial overreach:

> The Act . . . vests this immense prosecutorial power in . . . someone . . . who, as former Attorney General Barr stated, is not subject to the same sort of oversight or budgetary constraints that the publicly accountable Department of Justice faces day in and day out. . . .
>
> Independent counsel are largely insulated from any meaningful budget process, competing public duties, time limits, accountability to superiors and identification with the traditional long-term interests of the Department of Justice. This insulation contributes greatly to the independence of these prosecutors, but it also *eliminates the incentive to show restraint in*

> *the exercise of prosecutorial power*. Such restraint, usually referred to as prosecutorial discretion, is essential to our system of justice, and is a prosecutorial hallmark. . . .
>
> All of these provide an *impetus to investigate the most trivial matter to an unwarranted extreme, and to resolve all doubt against the subjects of an investigation*. . . .

Independent Counsel Hearing at 31-32 (emphasis added).[14]   The point was echoed by Senators Mitch McConnell and Chris Dodd, Congressional leaders on opposite sides of the aisle.[15]

To address this concern, DOJ recommended letting the Independent Counsel Act expire and instead using lawyers appointed within DOJ's statutory framework.  U.S. Senator Tammy Baldwin, then a House Judiciary Committee member, pressed Holder on what "safeguards" the American people would have that "expenditures will be appropriately limited."  Independent Counsel Hearing at 47.  Holder answered:

> [I]f you had special prosecutors who operated within the framework . . . of the Justice Department, you would not have the kinds of concerns that some people have expressed about expenditures.  They would be a part of the Department, part of the Department's budget.

*Id*.  Congress allowed the statute to lapse, and DOJ issued the Special Counsel Regulations soon thereafter.  But DOJ never delivered on the assurance that future special counsel would be subject to budgetary limitations and oversight.

Rather, Smith is drawing on a 1987 appropriation that authorizes "all necessary expenses of investigations and prosecutions by independent counsel appointed pursuant to the provisions of

---

[14] *Reauthorization of the Independent Counsel Statute, Pt. I, Hearings Before the Subcomm. on Commercial and Admin. Law of the H. Comm. on the Judiciary*, 106th Cong. (1999) (the "Independent Counsel Hearing").

[15] Such agreement was documented in the op-ed pages of the *Wall Street Journal*: "The current independent counsel law is opposed by nearly every former living attorney general . . . . The law gives virtually unchecked power, virtually unlimited budgets and completely distorted incentives--all to one man or woman whose sole job is to investigate a public official."  Mitch McConnell & Christopher Dodd, *No More Independent Counsels*, Wall St. J. (Feb. 23, 1999, 12:01 am), https://www.wsj.com/articles/SB919720839100844500.

28 U.S.C. 591 et seq. or other law." 101 Stat. 1329-9.  The citation to 28 U.S.C. § 591 is a reference

to the lapsed Independent Counsel Act.  For the reasons stated above, there is no "other law"

pursuant to which Smith was appointed.  Therefore, Smith's access to the permanent indefinite

appropriation has violated the Appropriations Clause for almost two years at this point, which is

an independent basis for dismissal.  *See United States v. Trump*, 2024 WL 3404555, at \*44.

Furthermore, Smith is not "independent" in the sense contemplated by the permanent

indefinite appropriation.  101 Stat. 1329-9.

> [T]he independent counsels appointed under "other law" around the time that the Congress was considering the Department of Justice appropriation act for fiscal year 1988 (which enacted the permanent indefinite appropriation into law) were the independent counsels that also had been appointed in conformity with the requirements of the independent counsel law.

*Special Counsel and Permanent Indefinite Appropriation*, GAO B-302582, 2004 WL 2213560, at

\*3 (Sept. 30, 2004) (the "GAO Fitzgerald Decision").  Congress expected these types of special

counsel to be "completely independent of the Department of Justice."  H.R. Rep. No. 100-316, at

32 (1987).  The Special Counsel Regulations applicable to Smith do not provide for that type of

independence.  In the Southern District of Florida, the Special Counsel's Office argued strenuously

based on the Regulations that Smith was *not* independent:

> [T]he Attorney General supervises the Special Counsel's work, may remove him from office, and may review and countermand his decisions.  And, as an additional means of exercising control, the Attorney General can rescind the regulation at any time, or amend the appointment order, and exercise direct statutory supervision over the Special Counsel.[16]

Smith's failure to meet the "independent" requirement under the permanent indefinite

appropriation is clear from a 2004 decision by the GAO.  That year, Jim Comey, as Acting Attorney

General, appointed then-U.S. Attorney Patrick Fitzgerald as a special counsel.  Comey expressly

---

[16] ECF No. 405 at 6, *United States v. Trump*, No. 23 Cr. 80101 (S.D. Fla. Mar. 15, 2024).

exempted Fitzgerald from the Special Counsel Regulations. *See* GAO Fitzgerald Decision, 2004 WL 2213560, at *2. During that year, the GAO evaluated Fitzgerald's access to the same permanent indefinite appropriation that Smith has abused. *Id.* The GAO explained that, "[s]ince the permanent indefinite appropriation is available for independent counsels, we looked for indicia of independence of Special Counsel Fitzgerald." *Id.* at *3. The GAO relied on Comey's exclusion of Fitzgerald from the Special Counsel Regulations:

> Department officials informed us that the express exclusion of Special Counsel Fitzgerald from the application of 28 C.F.R. Part 600, which contains provisions that might conflict with the notion that the Special Counsel in this investigation possesses all the power of the Attorney General, contributes to the Special Counsel's independence.

*Id.* That the same cannot be said of Smith further establishes a violation of the Appropriations Clause.

Based on these Appropriations Clause violations, amounting in improper expenditures far exceeding $20 million, the Superseding Indictment should be dismissed. *See United States v. McIntosh*, 833 F.3d 1163, 1175 (9th Cir. 2016) ("[I]f DOJ were spending money in violation of § 542, it would be drawing funds from the Treasury without authorization by statute and thus violating the Appropriations Clause. That Clause constitutes a separation-of-powers limitation that Appellants can invoke to challenge their prosecutions."); *see also All Am. Check Cashing, Inc.*, 33 F.4th at 242 (Jones, J., concurring) ("Because the CFPB has prosecuted this enforcement action using funds derived without a constitutionally footed appropriation or oversight, the court should dismiss the enforcement action against the appellants."); *United States v. Trump*, 2024 WL 3404555, at *46 (reasoning that "[t]he Court has difficulty seeing how a remedy short of dismissal would cure this substantial separation-of-powers violation" under the Appropriations Clause).

## V.     An Injunction On Further Spending Is Also Appropriate

In addition to dismissing the Superseding Indictment, the Court should enjoin Smith and the Special Counsel's Office from spending additional public funds in furtherance of the invalid Appointment Order.  *See McIntosh*, 833 F.3d at 1172 (reasoning that defendants "can seek—and have sought—to enjoin DOJ from *spending funds* from the relevant appropriations acts on such prosecutions").  "A 'court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation.'"  *Id.* (quoting *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001)).  Here, the legislation at issue is the 1987 permanent indefinite appropriation. The Special Counsel's Office is "spending money in violation" of that appropriation, as explained above, and "drawing funds from the Treasury without authorization by statute and thus violating the Appropriations Clause," as well as the Appointments Clause.  *Id.* at 1175; *see also id.* at 1174 ("Here, Appellants complain that DOJ is spending funds that have not been appropriated by Congress in violation of the Appropriations Clause of the Constitution.").  Thus, President Trump "may seek to enjoin the expenditure of those funds."  *Id.* at 1173.[17]

An injunction is necessary because a dismissal order will not necessarily provide complete relief.  This is illustrated by the fact that, notwithstanding Judge Cannon's findings, the Special Counsel's Office has continued to pursue and spend money on this case, and the Office is directly pursuing the appeal of Judge Cannon's ruling rather than the Department of Justice.  These actions are *ultra vires*, and funded from a source of money that Smith and the Office should not be

---

[17] Although *McIntosh* involved a "legislative restriction . . . that expressly prohibits DOJ from spending funds on certain actions," 833 F.3d at 1172-73, the underlying logic of the decision— that the "straightforward and explicit command [of the Appropriations Clause] means simply that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress," *id*. at 1174 (citation omitted)—applies with equal force to the appropriations statutes at issue here as well, supporting an injunction.

permitted to access.  *See United States v. Trump*, 2024 WL 3404555, at *41.  Under *McIntosh*, injunctive relief is appropriate to prevent that ongoing irreparable harm and any future steps in furtherance of Smith's illegal investigations or prosecutions of President Trump.[18]

## CONCLUSION

For the foregoing reasons, which establish Constitutional violations and call into question the Court's jurisdiction, the Court should grant leave to file the proposed motion, the Superseding Indictment should be dismissed with prejudice, and the Court should enjoin Smith and the Special Counsel's Office from spending additional public funds in furtherance of the invalid Appointment Order and in violation of the Appropriations Clause.

Dated: October 24, 2024

/s/ John F. Lauro / Gregory Singer
John F. Lauro, Esq.
D.C. Bar No. 392830
jlauro@laurosinger.com
Gregory M. Singer, Esq. (PHV)
gsinger@laurosinger.com
LAURO & SINGER
400 N. Tampa St., 15th Floor
Tampa, FL 33602
(813) 222-8990

Respectfully submitted,

/s/ Todd Blanche / Emil Bove
Todd Blanche, Esq. (PHV)
ToddBlanche@blanchelaw.com
Emil Bove, Esq. (PHV)
Emil.Bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall St., Suite 4460
New York, NY 10005
(212) 716-1250

*Counsel for President Donald J. Trump*

---

[18] *United States v. Stone*, 394 F. Supp. 3d 1 (D.D.C. 2019), does not counsel a different result. There, the defendant sought an injunction only "to end the prosecution against him."  ECF No. 71 at 1, *United States v. Stone*, No. 19 Cr. 18 (D.D.C. Apr. 12, 2019).  By contrast, President Trump's request for an injunction of further expenditures is distinct, and consistent with the Ninth Circuit's analysis in *McIntosh*, because, in effect, he is "seek[ing] to enjoin any future prosecution."  *Stone*, 394 F. Supp. 3d at 16.  In addition, like *In re Sealed Case* and *In re Grand Jury Proceedings*, the analysis in *Stone* did not account for the Supreme Court's more recent emphasis on clear-statement rules and the major question doctrine.