IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   CRIMINAL NO. 23-cr-257 (TSC) |
| | * |
| DONALD J. TRUMP, | * |
| | * |
| Defendant. | * |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO THE DEFENDANT'S PROPOSED MOTION TO DISMISS AND FOR INJUNCTIVE RELIEF BASED ON THE <u>APPOINTMENTS AND APPROPRIATIONS CLAUSES</u>**

The defendant's proposed motion to dismiss and for injunctive relief based on the Appointments and Appropriations Clauses (ECF No. 270) is untimely and without merit. In a separate case against the defendant in the Southern District of Florida, he timely filed the very challenge that he belatedly advances here, a year after the deadline for such a motion in this case. And in this case, although the defendant timely filed more than one hundred pages urging dismissal of the indictment, he chose not to raise the issues he now tries to put before the Court. Because the defendant cannot demonstrate good cause for his failure to file a timely non-jurisdictional claim under the Appointments or Appropriations Clauses in this case, the Court should not consider it. If the Court nonetheless reaches the merits, it should reject the defendant's argument that the Special Counsel is not lawfully appointed or funded. The D.C. Circuit's decision in *In re Grand Jury Investigation*, 916 F.3d 1047 (2019), squarely forecloses the defendant's Appointments Clause argument. And the defendant's Appropriations Clause challenge fails because it is entirely derivative of his faulty Appointments Clause claim and because the Special Counsel is plainly an

"independent counsel" as that term is used in the relevant appropriation. The Court should deny the defendant's untimely motion for dismissal and his meritless claim for injunctive relief.[1]

## I. Background

### A. Procedural History

Following the original indictment, the Court set, and in some cases extended, deadlines by which the parties were required to file certain pretrial motions, including motions to dismiss and dispositive motions. *See* ECF No. 39 (setting deadline on October 9, 2023); ECF No. 82 (extending deadline to October 23, 2023). The defendant complied with that schedule by filing several lengthy pretrial dismissal motions. *See, e.g.*, ECF No. 74 (motion to dismiss based on presidential immunity); ECF No. 113 (motion to dismiss based on constitutional grounds); ECF No. 114 (motion to dismiss based on statutory grounds); ECF No. 116 (motion to dismiss based on claims of selective and vindictive prosecution). The defendant also complied with a similar schedule in a separate criminal case in the Southern District of Florida by timely filing a motion to dismiss that argued that the Special Counsel was unlawfully appointed and funded. *See United States v. Trump*, No. 23-cr-80101, ECF No. 326 (S.D. Fla.) (filed Feb. 22, 2024) ("Florida Case"). The defendant did not, however, seek dismissal on that basis in this case—and even affirmatively stated that he was not pressing the Appointments Clause claim when asked during oral argument in both the D.C. Circuit and the Supreme Court[2]—until he suggested for the first time in a status

---

[1] As in prior filings, the defendant repeats several false claims that the Government has acted with "bad-faith partisan bias" by intending to interfere with his campaign. ECF No. 251 at 7. This Court, noting the utter lack of evidence supporting defendant's selective prosecution claim, previously has described those types of claims as "unresponsive," "unhelpful," and "unbefitting of experienced defense counsel" and has admonished the defendant to focus on legal argument, not political rhetoric. *Id.* We therefore do not address these claims further.

[2] *See Trump v. United States*, Sup. Ct. No. 23-939, Joint Appendix at 152 (counsel for defendant acknowledging in argument at the D.C. Circuit in response to a question about whether

hearing more than a year after the original indictment that he intended to raise Appointments- and Appropriations-Clause challenges to the Special Counsel's authority to prosecute this case. *See* ECF No. 232 at 48-53.

### B. Background on the Appointment and Funding of the Special Counsel

The Attorney General is the head of the Department of Justice and has exclusive authority (except as otherwise provided by law) to direct "the conduct of litigation" on behalf of the United States. 28 U.S.C. §§ 503, 516. Congress has "vested" in the Attorney General virtually "[a]ll functions of other officers of the Department of Justice," *id.* § 509, and empowered him to authorize other Departmental officials to perform his functions, *id.* § 510. Congress has also authorized the Attorney General to commission attorneys "specially retained under authority of the Department of Justice" as "special assistant[s] to the Attorney General or special attorney[s]" and provided that "any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, . . . which United States attorneys are authorized by law to conduct." *Id.* § 515(a) and (b). Congress has also provided for the Attorney General to "appoint officials . . . to detect and prosecute crimes against the United States." *Id.* § 533(1). These statutes authorize Attorneys General to appoint special counsels and define their duties. *See, e.g.*, *United States v. Nixon,* 418 U.S. 683, 694 (1974).

Twenty-five years ago, the Attorney General issued a regulation providing an internal framework for special-counsel appointments. 28 C.F.R. §§ 600.1-600.10; Office of Special

---

the Special Counsel was "improperly appointed" that the defendant had not "raised [that claim] in this case"); *Trump v. United States*, Sup. Ct. No. 23-939, Oral Argument Tr. at 33-34 (same in argument at the Supreme Court, while noting that the defendant had raised the claim "in the Southern District of Florida case").

Counsel, 64 Fed. Reg. 37,038 (July 9, 1999) *see also* 5 U.S.C. § 301 (authorizing the head of a department to issue regulations "for the government of his department" and "the distribution and performance of its business"). The Special Counsel regulation "replace[d]," 64 Fed. Reg. at 37,038, the independent counsel regime formerly provided in Title VI of the Ethics in Government Act, 28 U.S.C. §§ 591-599 (expired); *see Morrison v. Olson,* 487 U.S. 654 (1988). The Ethics in Government Act had required the Attorney General in certain cases to ask a court to appoint an independent counsel, who then operated with significant statutory freedom from Department of Justice supervision. The Special Counsel regulation, by contrast, provides for a wholly Executive Branch procedure for appointing a special counsel, who exercises discretion over a particular matter "within the context of the established procedures of the Department," with "ultimate responsibility for the matter and how it is handled . . . continu[ing] to rest with the Attorney General." 64 Fed. Reg. at 37,038. The regulation seeks "to strike a balance between independence and accountability in certain sensitive investigations." *Id.*

In November 2022, it was known publicly that the defendant was the subject of two ongoing federal criminal investigations. The first investigation involved potential criminal violations in connection with the 2020 presidential election, and the second investigation involved the defendant's alleged retention of classified documents at his residence in Mar-a-Lago and related obstruction of justice. On November 15, 2022, while both investigations were pending, the defendant declared his candidacy for the presidency in 2024. Faced with this sensitive situation, the Attorney General followed the well-established Department practice of appointing a special counsel to dispel any notion that political motives played a role in the investigations.

Although that step was not legally required, the Attorney General followed a well-worn path established by his predecessors of employing special counsels in similarly sensitive cases.[3]

On November 18, 2022, the Attorney General issued an order appointing John L. Smith as Special Counsel "to conduct the ongoing investigation into whether any person or entity violated the law in connection with efforts to interfere with the lawful transfer of power following the 2020 presidential election or the certification of the Electoral College vote held on or about January 6, 2021." Office of the Att'y Gen., Order No. 5559-2022, *Appointment of John L. Smith as Special Counsel*, at ¶ (b) (Nov. 18, 2022) ("Appointment Order") (capitalization omitted). The Attorney General explained that he was doing so to promote the public interest and the Department's independence and accountability, and to enable "prosecutors and agents" to "make decisions indisputably guided only by the facts and the law" in the particularly sensitive circumstance presented by "the former President's announcement that he is a candidate for President in the next election, and the sitting President's stated intention to be a candidate as well." U.S. Dep't of Just., Press Release, *Appointment of a Special Counsel* (Nov. 18, 2022). The Appointment Order also authorized the Special Counsel "to conduct the ongoing investigation referenced and described in the United States' Response to Motion for Judicial Oversight and Additional Relief, *Donald J. Trump v. United States*, No. 9:22-CV-81294-AMC (S.D. Fla. Aug. 30, 2022)." Appointment

---

[3] The defendant has argued repeatedly that the judicial process and court calendar should yield to his election campaign—*see, e.g.*, ECF No. 30 (proposing April 2026 trial date in the District of Columbia); ECF No. 232 at 28 (objecting to immunity litigation during the election campaign); Florida Case, ECF No. 66 at 9-10; Florida Case, ECF No. 357 at 1-2 (no trial should be scheduled until after the election)—and he appears to take the position that he cannot be investigated by anyone for anything once he has announced his candidacy. But shutting down a criminal investigation at the mere announcement of a run for office would invite and enable any would-be candidate to stymie the criminal justice process and insulate the candidate from accountability under the law. It would also be flatly inconsistent with Department of Justice history and precedent.

Order at ¶ (c). Relying on "the authority vested in the Attorney General, including 28 U.S.C. §§ 509, 510, 515, and 533," the Attorney General ordered the appointment of a Special Counsel "in order to discharge [the Attorney General's] responsibility to provide supervision and management of the Department of Justice, and to ensure a full and thorough investigation of" the matters for which he appointed the Special Counsel. *Id.* (introduction). The Attorney General made applicable to the Special Counsel "Sections 600.4 to 600.10 of title 28 of the Code of Federal Regulations." *Id.* at ¶ (e). As noted above, the Department of Justice regulation upon which Special Counsel Smith's appointment rests has been in place since 1999.

Consistent with longstanding practice, the Department of Justice has funded the Special Counsel through a "permanent indefinite appropriation" that Congress enacted in 1987 to "pay all necessary expenses of investigations and prosecutions by independent counsel appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or other law." Pub. L. No. 100-202, § 101(a) (Title II), 101 Stat. 1329, 1329-9 (Dec. 22, 1987). 28 U.S.C. § 591 note (2000); *see* U.S. Dep't of Just., *Special Counsel's Office-Smith, Statement of Expenditures: April 1, 2023 through Sept. 30, 2023*, at 4 (noting that funding for the Special Counsel's Office came from this appropriation). For many years, the Department has relied on the permanent indefinite appropriation to fund a variety of special and independent counsels. *See*, *e.g.*, U.S. Dep't of Just., Special Counsel's Office-Hur, Statement of Expenditures: Oct. 1, 2023 through March 31, 2024, at 4 (noting that funding for Robert Hur came from the permanent indefinite appropriation); Attorney General Order No. 4878-2020 (Oct. 19, 2020) (appointing John Durham to investigate intelligence or counter-intelligence activities directed at the 2016 presidential campaigns and the Trump administration); U.S. Dep't of Just., Special Counsel's Office-Durham, Statement of Expenditures: Oct. 1, 2022 through Mar. 31, 2023, at 4 (noting that funding for Durham came from the permanent indefinite appropriation);

*United States v. Stone*, 394 F. Supp. 3d 1, 22 (D.D.C. 2019) (permanent indefinite appropriation properly used to fund investigation by Special Counsel Robert Mueller); *United States v. Libby*, 429 F. Supp. 2d 27, 28-29, 41 (D.D.C. 2006) (describing appointment of Patrick Fitzgerald to investigate the leak of Valerie Plame's identity as a covert CIA officer); U.S. Gov't Accountability Off. ("GAO"), B-302582, Special Counsel and Permanent Indefinite Appropriation (Sept. 30, 2004) (funding Fitzgerald); Attorney General Order No. 2256-99 (Sept. 9, 1999) (appointing Jack Danforth to investigate a raid of the Branch Davidian compound in Waco, Texas); GAO, Independent Counsel Expenditures for the Six Months Ended September 30, 1999, at 6 (March 2000) (funding Danforth); Independent Counsel: In re Madison Guaranty Savings & Loan Association, 59 Fed. Reg. 5321 (Jan. 31, 1994) (codified at 28 C.F.R. pts. 600 & 603) (providing for the appointment of an independent counsel (Robert Fiske) to conduct initial investigation of Whitewater real estate transactions); GAO, B-271128 Independent Counsel Expenditures for the Six Months Ended Sept. 30, 1995 at 5 & n.2 (March 1996); Budget of the U.S. Government Fiscal Year 1996, Appx, at 637 (funding Fiske). The permanent indefinite appropriation ensured that specially appointed independent counsel could continue to carry out sensitive investigations even as the statutory Independent Counsel under the Ethics in Government Act faced "legal challenges." GAO, B-302582, *Special Counsel and Permanent Indefinite Appropriation*, 2004 WL 2213560, at *3 (Comp. Gen. Sept. 30, 2004).

## II.     Argument

### A.     The Defendant Has Not Established Good Cause for His Failure to File a Timely Motion

The defendant's failure both to file a timely challenge to the Special Counsel's authority to prosecute this case and to establish good cause for his tardy filing should foreclose this Court from reviewing that claim. Rule 12 of the Federal Rules of Criminal Procedure governs pleadings

and pretrial motions. It provides that a pretrial motion objecting to a "defect in instituting the prosecution" must be made before trial if "the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3). Rule 12(b)(3)(A) provides a "nonexclusive list" of motions that must be filed before trial. *See United States v. Doost*, No. 17-cr-109, 2019 WL 3344277, at *1 (D.D.C. July 24, 2019) (citing Fed. R. Crim. P. 12, Advisory Committee Note to 2014 amendments). A district court may set a deadline for the filing of pretrial motions, *see* Fed. R. Crim. P. 12(c)(1), and a party's failure to file a motion by that deadline renders it "untimely," Fed. R. Crim. P. 12(c)(3). Rule 12 permits untimely challenges only where "the party shows good cause." *United States v. Doost*, 3 F.4th 432, 437 (D.C. Cir. 2021) (quoting Fed. R. Crim. P. 12(c)(3)). Whether a defendant who has filed an untimely motion has established good cause is committed to "the sound discretion of the trial judge," and in exercising that discretion, the district court should consider "the reason for the defendant's tardiness and whether he has shown that he is actually prejudiced by the defect . . . of which he complains." *United States v. Madeoy*, 912 F.2d 1486, 1490 (D.C. Cir. 1990). Although a district court "need not be unduly rigid in applying the timeliness requirement," the "intricacies of trial scheduling and crowded dockets" and the "desirability of deciding" before trial "questions . . . not relevant to the issue of guilt" make courts "understandably reluctant to grant relief except in unusually meritorious cases for untimely motions" under Rule 12. *United States v. Mangieri*, 694 F.2d 1270, 1282-83 (D.C. Cir. 1982); *see United States v. Mitchell*, 951 F.2d 1291, 1297 (D.C. Cir. 1991).

The defendant has failed to establish any "unusually meritorious" circumstances that excuse his untimely filing. His filing of a timely motion to dismiss in the Southern District of Florida raising the very claims that he belatedly seeks to advance here demonstrates conclusively

that he did not "lack[] the information necessary to make [the] argument before trial, which would ordinarily preclude a finding of good cause." *United States v. Jackson*, 5 F.4th 676, 682 (7th Cir. 2021); *see United States v. Donziger*, 38 F.4th 290, 299 & n.8 (2d Cir. 2022) (noting that a defendant's challenge to the authority of special prosecutors "was apparent as soon as the special prosecutors were appointed" and thus should have been raised by the pretrial motions deadline). The defendant has suggested (*see* ECF No. 232 at 49) that he did not file such a claim because circuit precedent had "held against" his position, but he provides no authority for the proposition that "a defendant's tactical decision"—if his decision not to press the claim in a timely manner is properly so described—"constitutes good cause for knowingly defying a scheduling order." *United States v. Andres*, 960 F.3d 1310, 1316 (11th Cir. 2020); *United States v. Griffith*, No. 21-cr-244, 2023 WL 3275619, at *2 (D.D.C. May 5, 2023) (concluding that a "tactical decision to delay investigating an argument" does not establish good cause). Finally, the defendant implies (ECF No. 270 at 6-7) that he had no basis to challenge the Special Counsel's authority to prosecute the case until Justice Thomas authored a concurring opinion addressing the issue in *Trump v. United States*, 603 U.S. 593 (2024), and the district court overseeing his criminal prosecution in the Southern District of Florida dismissed the indictment after accepting his arguments, *see United States v. Trump*, 23-cr-80101, 2024 WL 3404555 (S.D. Fla. July 15, 2024). But neither that solo concurring opinion on a question that the parties did not brief or argue to the Supreme Court nor the unpersuasive out-of-circuit district court opinion binds this Court, and, in any event, "[d]efendants need not, and often do not, await a Supreme Court precedent directly in point before raising a constitutional challenge." *United States v. Baker*, 713 F.3d 558, 561 (10th Cir. 2013);

*see id.* (finding no good cause justifying a defendant's failure to raise before trial "the very argument" that had "prevailed" in another circuit).[4]

The defendant also provides no authority for his claim (ECF No. 270 at 6) that the mere filing of a superseding indictment that does not add new charged offenses or introduce new legal theories would excuse a defendant's failure to timely file a dismissal motion where "the basis for the motion [was] . . . reasonably available," Fed. R. Crim. P. 12(b)(3), to him at the time of the original pretrial motion deadline. *See United States v. Burkhow*, No. 19-cr-59, 2020 WL 109796, at *4 (N.D. Iowa Jan. 8, 2020) (finding good cause for a defendant's untimely motion to dismiss a superseding indictment only for new charges in that indictment); *cf. United States v. Bryant,* 523 F.3d 349, 358 (D.C. Cir. 2008) ("We note that 'the filing of a superseding indictment does not affect the speedy trial timetable for offenses either charged in the original indictment or required under double jeopardy principles to be joined with such charges.'" (quoting *United States v. Marshall*, 935 F.2d 1298, 1302 (D.C. Cir. 1991)). Nothing in the superseding indictment provided any basis for his motion that did not exist before. The defendant's Appointments- and Appropriations-Clause claims thus differ from his statutory challenges, which the Court permitted the defendant to supplement. The defendant timely raised statutory challenges to the original indictment that he sought merely to supplement, and the Supreme Court's intervening decision in *Fischer v. United States*, 144 S. Ct. 2176 (2024), construed the scope of 18 U.S.C. § 1512(c)(2), which the defendant is charged with violating. The Supreme Court's majority opinion in this case

---

[4] The defendant's invocation (ECF No. 270 at 6) of *United States v. Abu Khatallah*, 316 F. Supp. 3d 207 (D.D.C. 2018), for the proposition that an "intervening Supreme Court decision" provides good cause does not support his claim here because the district court in *Abu Khatallah* found good cause in light of an intervening precedential Supreme Court majority opinion, not the nonprecedential opinions the defendant relies on here. *See id.* at 211.

expressly contemplated that this Court would analyze whether the Section 1512(c)(2) charges "may proceed" following its decision in *Fischer*. *Trump*, 603 U.S. at 603 n.1.

Taking a different tack, the defendant contends (ECF No. 270 at 6-8) that the good-cause requirement does not apply here because whether the Special Counsel was lawfully appointed and funded is jurisdictional and thus can be raised "at any time while the case is pending." *See* Fed. R. Crim. P. 12(b)(2). That contention is incorrect because his claim does not raise a jurisdictional challenge. The thrust of the defendant's claim is that "the Attorney General sent the wrong prosecutor to charge him with this crime." *United States v. Fitzhugh*, 78 F.3d 1326, 1330 (8th Cir. 1996). But the majority of courts to have considered an analogous claim have concluded that it is not jurisdictional. *See United States v. Suescun*, 237 F.3d 1284, 1287-88 (11th Cir. 2001) (holding that a claim that the appointment of a U.S. Attorney not made "as provided by the Appointments Clause does not affect the Government's power to prosecute" and is thus not jurisdictional for purposes of Fed. R. Crim. P. 12(b)); *United States v. Colón-Muñoz*, 192 F.3d 210, 217-18 (1st Cir. 1999) (same); *United States v. Easton*, 937 F.2d 160, 161-62 (5th Cir. 1991) (same); *see also Fitzhugh*, 78 F.3d at 1330 (same in context of challenge to authority of Independent Counsel Robert Fiske).[5] Nor does the analysis in *Freytag v. Comm'r*, 501 U.S. 868 (1991), on which the

---

[5] The defendant cites (ECF No. 270 at 7) *United States v. Durham*, 941 F.2d 886 (9th Cir. 1991), and *United States v. Singleton*, 165 F.3d 1297 (10th Cir. 1999) (en banc), but neither case undermines the weight and persuasiveness of the on-point authorities cited in the main text. *Durham* used the term "jurisdiction" without analyzing why that concept applied and provided no rationale for why the amount of direction and supervision by the United States Attorney would affect the district court's jurisdiction under 18 U.S.C. § 3231 of "all offenses against the laws of the United States." *See* 941 F.2d at 891-92; *see also Wilkins v. United States*, 598 U.S. 152, 156 (2023) (observing that the term "jurisdiction" is "a word of many, too many, meanings") (citation omitted). And *Singleton* did not involve a challenge to the court's jurisdiction at all; instead, the court simply referred in dictum to the exclusive authority of Department of Justice officers and United States Attorneys to illustrate the significance of the prosecutor's role as a representative of the United States. *See* 165 F.3d at 1299-1300.

defendant relies (ECF No. 270 at 7-8), hold otherwise. In *Freytag*, the Supreme Court decided the Appointments Clause issue—whether special trial judges selected by the Chief Judge of the Tax Court could preside over trials in Tax Court—even though the petitioners had consented to special trial judges presiding in their cases. 501 U.S. at 878. The issue before the Supreme Court was one of issue preservation, not jurisdiction. The Court was not required to decide the "nonjurisdictional" Appointments Clause claim but concluded that *Freytag* presented "one of those rare cases" in which to exercise its discretion to overlook the petitioners' waiver given that the constitutional challenge there was "neither frivolous nor disingenuous." *Id.* at 878-79. If anything, *Freytag* confirms that the type of challenge that the defendant seeks to advance here is not jurisdictional. *See id.* at 893 (Scalia, J., concurring in part and concurring in judgment) ("Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review."); *Edd Potter Coal Co., Inc. v. Director, Office of Workers Comp. Programs, U.S. Dep't of Labor*, 39 F.4th 202, 207 (4th Cir. 2022) (collecting cases and explaining that "Appointments Clause challenges are not jurisdictional").

The defendant also relies (ECF No. 270 at 7) on *United States v. Providence Journal Co.*, 485 U.S. 693 (1988), to support his jurisdictional claim, but that case does not aid his argument. In *Providence Journal*, the Supreme Court noted that Solicitor General authorization was required to file a petition for a writ of certiorari on behalf of the United States under federal law (28 U.S.C. § 518(a)) and Department of Justice regulations (28 C.F.R. § 0.20 (1987)), and the Court concluded that a special prosecutor appointed to pursue criminal contempt in that case lacked authority to pursue litigation in the Supreme Court because the Solicitor General had denied authorization. *Id.* at 699-700 & n.5. By contrast, this Court's jurisdiction does not depend on a formal step, such as invoking jurisdiction through a writ of certiorari. To the contrary, this Court has jurisdiction under

18 U.S.C. § 3231 of "all offenses against the laws of the United States." The superseding indictment indisputably meets that requirement, and that is the end of the jurisdictional inquiry. *See Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 269 (2023); *United States v. Cotton*, 535 U.S. 625, 630-31 (2002). Alleged technical deficiencies in how a case was assigned to officials at the Department of Justice do not deprive courts of jurisdiction.

### B. Even If Preserved, The Defendant's Appointments- and Appropriations-Clause Claims Lack Merit

If the Court nonetheless reaches the merits, it should deny the defendant's motion.

#### 1. Appointments Clause

The defendant's challenges under the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, are foreclosed by binding precedent. The defendant argues that the Special Counsel lacks the constitutional and statutory authority to prosecute this case because (1) he is a principal officer who was not nominated by the President and confirmed by the Senate, ECF No. 270 at 22-24; and (2) even if the Special Counsel is an inferior officer, the Attorney General lacked a statutory basis for appointing him, *id.* at 8-21. But the D.C. Circuit has squarely rejected both claims. *See In re Grand Jury Investigation*, 916 F.3d 1047, 1052-53 (D.C. Cir. 2019) (holding that a special counsel subject to the same regulation as the Special Counsel prosecuting this case was an inferior officer); *id.* at 1053-54 (holding that, under *United States v. Nixon,* 418 U.S. 683, 694 (1974), the Attorney General had the statutory authority to appoint a special counsel); *accord In re Sealed Case*, 829 F.2d 50, 55 (D.C. Cir. 1987) (deciding the lawfulness of the Iran/Contra Independent Counsel's appointment by considering statutory provisions and a regulation promulgated by the Attorney General).[6] The defendant only attempts to escape that controlling precedent with respect to his

---

[6] Although the defendant places weight on former Attorney General Edwin Meese III's current view that the Special Counsel's appointment lacked a statutory basis, *see* ECF No. 270 at

- 13 -

argument that the Attorney General lacks statutory authority to appoint the Special Counsel, *see* ECF No. 270 at 9-12, and his effort fails. His sole contention is that the Supreme Court has applied a clear-statement rule in other contexts and that similar principles justify the novel creation of a clear-statement rule to statutes that authorize the Attorney General's appointment of the Special Counsel. But no sound principle justifies that suggestion; the authorities on which the defendant relies do not support it; and, in any event, a clear-statement rule would be satisfied here. *See In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 658-60 (D.D.C. 2018).[7] Nor is the defendant correct that clear-statement principles only came into existence recently; the D.C. Circuit has observed that the Supreme Court articulated a "'clear statement' rule" as long ago as 1971, three years before *Nixon*. *See Armstong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991) (citing *United States v. Bass*, 404 U.S. 336, 349 (1971)). Indeed, the D.C. Circuit noted that the subpoena-recipient challenger in *Grand Jury Investigation* abandoned the very clear-statement challenges the defendant mistakenly asserts to be novel here. *See* 916 F.3d at 1054.

---

3 n.3, he fails to acknowledge that, as Attorney General, Meese relied on the very same statutory provisions when he issued a Department of Justice regulation appointing the Iran/Contra Independent Counsel. As described in *Sealed Case*, Meese promulgated a regulation in 1987 "to make certain" that the Iran/Contra Independent Counsel could undertake "the necessary investigation and appropriate legal proceedings . . . in a timely manner." 829 F.2d at 59; *see* Offices of Independent Counsel; General Powers and Establishment of Independent Counsel—Iran/Contra, 52 Fed. Reg. 7270-02, 1987 WL 131422 (Mar. 10, 1987). That regulation provided the Iran/Contra Independent Counsel "identical investigative and prosecutorial powers and jurisdiction" as was available under the Ethics in Government Act. *Sealed* Case, 829 F.2d at 58. In enacting the 1987 regulation, then Attorney General Meese relied on the same statutory authority as the later enacted 1999 regulations. *Compare id.* at 55 (noting that the 1987 regulation relied on 5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, and 515), *with* Grounds for appointing a Special Counsel, 28 C.F.R. § 600.1 (citing as authority for the regulation 5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, and 515-519). Notwithstanding this history, Meese now appears to take the position that the very statutory provisions on which he relied in 1987 do not authorize the appointment of a Special Counsel.

[7] To the extent the defendant also relies on the "major questions doctrine," *see* ECF No. 270 at 9, 11, he provides no argument why that doctrine should operate differently than the inapplicable-but-nonetheless-satisfied clear-statement rule.

Although in light of controlling precedent this Court need not consider the underlying merits of the defendant's claim that the Attorney General lacked a statutory basis to appoint the Special Counsel, the defendant's arguments—which rely extensively on the nonbinding opinions noted above—are deeply flawed. As this Court observed at the status hearing on September 5, 2024, the defendant is relying on "dicta in a concurrence written by Justice Thomas" and "an opinion filed by another district judge in another circuit which frankly this Court doesn't find particularly persuasive" in the face of "binding D.C. Circuit precedent on this issue." ECF No. 232 at 50. Contrary to the defendant's claims (ECF No. 270 at 14-21), the Supreme Court's determination in *Nixon* that the Attorney General had the statutory authority under 28 U.S.C. §§ 509, 510, 515, and 533 to appoint the special prosecutor is binding, *see* Brief for the United States, *United States v. Trump*, No. 24-12311, at 14-20 (11th Cir.) (filed Aug. 26, 2024); statutory analysis confirms that that determination was correct, *id.* at 20-42; and the long history of special counsel appointments reflected the Attorney General's authority to appoint the Special Counsel here, *id.* at 42-56.

    2.    **Appropriations Clause**

The defendant also claims (ECF No. 270 at 24-28) that the use of a permanent indefinite appropriation to fund the Special Counsel violates the Appropriations Clause, U.S. Const. art. II, § 2, cl. 2. To pass constitutional muster under the Appropriations Clause, an appropriation "need[s] only identify a source of public funds and authorize the expenditure of those funds for designated purposes." *Consumer Financial Protection Bureau v. Community Financial Services Ass'n of America, Ltd.*, 601 U.S. 416, 426 (2024). The permanent indefinite appropriation at issue here readily satisfies those requirements by providing that it shall be used to "pay all necessary expenses of investigations and prosecutions by independent counsel appointed pursuant to the

provisions of 28 U.S.C. 591 et seq. or other law." 101 Stat. at 1329-9. In the defendant's view (ECF No. 270 at 27), no "other law" supports the Special Counsel's appointment because none of the statutes on which the Attorney General relied applied. But as just noted, the D.C. Circuit rejected that flawed claim in *Grand Jury Investigation*, 916 F.3d at 1053-54, and that precedent controls here as well.

The defendant also contends (ECF No. 270 at 27-28) that the Special Counsel is not sufficiently "independent" to qualify as an "independent counsel" under the appropriation.[8] That is incorrect. An "independent counsel" is "[a]n attorney hired to provide an unbiased opinion about a case or to conduct an impartial investigation." *Black's Law Dictionary* (11th ed. 2019). That is the role served by the Special Counsel here. The Special Counsel was retained from outside of the Department and vested with investigatory and prosecutorial authority to "ensure a full and thorough investigation" of certain sensitive matters. Appointment Order at ¶ (introduction); *see* 28 C.F.R. § 600.4. While he remains subject to Attorney General direction and supervision, he also retains "a substantial degree of independent decisionmaking," 64 Fed. Reg. at 37,039-37,040, and, by regulation and Attorney General order, he is not part of the regular Department chain of command or "subject to the day-to-day supervision of any official of the Department," 28 C.F.R. § 600.7(b). And the GAO source that the defendant cites (ECF No. 270 at 27-28) undermines his argument. *See* GAO, *Special Counsel and Permanent Indefinite Appropriation*, B-302582, 2004 WL 2213560, at *4 (Comp. Gen. Sept. 30, 2004) ("[W]e have not objected to the use of the

---

[8] Paradoxically, when arguing that the Special Counsel is a principal officer, the defendant has claimed that the Special Counsel has too much independence. *See* ECF No. 270 at 22. The defendant's position on this issue can most charitably be described as fluid. While litigating in the Southern District of Florida, the defendant claimed that the Special Counsel was neither a principal nor inferior officer, and instead referred to the Special Counsel as "[a]t best . . . an employee." Florida Case, ECF No. 326 at 3.

permanent indefinite appropriation to fund the expenses of regulatory independent counsels appointed from outside the government pursuant to such authority."); *see also supra* at 6-7 (identifying the funding of other regulatory independent and special counsels reviewed by GAO).

### 3. Claim for Injunctive Relief

Based on his flawed Appointments- and Appropriations-Clause arguments, the defendant seeks (ECF No. 270 at 29-30) an injunction against any further spending under the permanent indefinite appropriation. But it is a "basic doctrine of equity jurisprudence" that "courts should not exercise their equitable discretion to enjoin criminal proceedings, as long as the defendant has an adequate legal remedy in the form of trial and direct appeal." *In re Al-Nashiri*, 835 F.3d 110, 118 (D.C. Cir. 2016); *see Deaver v. Seymour*, 822 F.2d 66, 68-69 (D.C. Cir. 1987); *see also O'Shea v. Littleton*, 414 U.S. 488, 499 (1974). If the defendant has an argument that a future prosecution is impermissible, he can raise that argument at the time any such prosecution is brought. But that can provide no basis to enjoin further spending in this case or for some undefined "future prosecution." ECF No. 270 at 30 n.18; *see Stone*, 394 F. Supp. at 14-16; *Manafort v. U.S. Dep't of Justice*, 311 F. Supp. 3d 22, 24 (D.D.C. 2018) (dismissing complaint seeking "to enjoin future actions against" the defendant in a criminal case prosecuted by a special counsel).

In addition, the defendant's reliance (ECF No. 270 at 29-30) on *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016), is misplaced. Unlike the circumstances presented here, *McIntosh* concerned a statute that "expressly prohibit[ed] DOJ from spending funds" on certain marijuana-related enforcement actions. *Id.* at 1173-75; *see id.* at 1177-79. Congress has enacted no such prohibition here, and *McIntosh* has nothing to say about the question the defendant raises in this case regarding what particular source the Department of Justice may use to fund the Special Counsel's Office. The defendant offers no support for his request to enjoin the progress of a

criminal case based on the choice by the Department of Justice to use one source of funds rather than another.

### III. Conclusion

The Court should decline to consider the defendant's proposed motion to dismiss the indictment and for injunctive relief based on the Appointments and Appropriations Clause (ECF No. 270) because the defendant has not shown good cause for his failure to timely file. If the Court reaches the merits, it should deny the motion.[9]

                                                      Respectfully submitted,

                                                      JACK SMITH
                                                      Special Counsel

By:    /s/ James I. Pearce
         James I. Pearce
         Assistant Special Counsel
         Molly Gaston
         Thomas P. Windom
         Senior Assistant Special Counsels
         950 Pennsylvania Avenue NW
         Room B-206
         Washington, D.C. 20530

---

[9] If the Court permits the defendant to proceed with his proposed motion and would benefit from additional briefing on any of the issues raised therein, the Government stands ready to submit a supplemental brief consistent with the extensive briefing that the Government has submitted in the Eleventh Circuit.