IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * CRIMINAL NO. 23-cr-257 (TSC) |
| DONALD J. TRUMP, | * |
| Defendant. | * |

## GOVERNMENT'S MOTION TO DISMISS

As a result of the election held on November 5, 2024, the defendant, Donald J. Trump, will be inaugurated as President on January 20, 2025. It has long been the position of the Department of Justice that the United States Constitution forbids the federal indictment and subsequent criminal prosecution of a sitting President. But the Department and the country have never faced the circumstance here, where a federal indictment against a private citizen has been returned by a grand jury and a criminal prosecution is already underway when the defendant is elected President. Confronted with this unprecedented situation, the Special Counsel's Office consulted with the Department's Office of Legal Counsel (OLC), whose interpretation of constitutional questions such as those raised here is binding on Department prosecutors. After careful consideration, the Department has determined that OLC's prior opinions concerning the Constitution's prohibition on federal indictment and prosecution of a sitting President apply to this situation and that as a result this prosecution must be dismissed before the defendant is inaugurated. That prohibition is categorical and does not turn on the gravity of the crimes charged, the strength of the Government's proof, or the merits of the prosecution, which the Government stands fully behind. Based on the Department's interpretation of the Constitution, the Government moves for dismissal without prejudice of the superseding indictment under Federal Rule of Criminal Procedure 48(a). The Government has conferred with defense counsel, who does not object to this motion.

I.   **Legal Standard**

Rule 48(a) of the Federal Rules of Criminal Procedure allows the Government to dismiss an indictment "with leave of court." A district court's role in granting leave is circumscribed but may include consideration of the Government's stated reasons for seeking dismissal. *See United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016); *United States v. Ammidown*, 497 F.2d 615, 621 (D.C. Cir. 1973). There is a strong presumption that such a dismissal should be without prejudice. *See United States v. Florian*, 765 F. Supp. 2d 32, 34-35 (D.D.C. 2011).

II.   **Discussion**

On August 1, 2023, a federal grand jury of citizens in the District of Columbia found probable cause for an indictment charging the defendant with four felony offenses in connection with his efforts to interfere with Congress's certification of the 2020 presidential election and the lawful transfer of presidential power. ECF No. 1. After the Supreme Court held last summer in *Trump v. United States*, 603 U.S. 593 (2024), that the defendant was immune from prosecution for certain abuses of official power alleged in the original indictment, a second grand jury returned a superseding indictment that charged the same offenses but omitted conduct that was subject to immunity under the Supreme Court's decision. ECF No. 226. And on September 27, 2024, the Government filed a motion explaining that the conduct charged in the superseding indictment was not immune from prosecution under *Trump* and that the case should proceed to trial. ECF No. 252.

The Government's position on the merits of the defendant's prosecution has not changed. But the circumstances have: as a result of the election held on November 5, 2024, the defendant will be certified as President-elect on January 6, 2025, and inaugurated on January 20, 2025. This sets at odds two fundamental and compelling national interests: on the one hand, the Constitution's requirement that the President must not be unduly encumbered in fulfilling his weighty

responsibilities, *see Nixon v. Fitzgerald*, 457 U.S. 731, 749-50 (1982) ("[t]he President occupies a unique position" and is "entrusted with supervisory and policy responsibilities of utmost discretion and sensitivity"), and on the other hand, the Nation's commitment to the rule of law and the longstanding principle that "[n]o man in this country is so high that he is above the law," *United States v. Lee*, 106 U.S. 196, 220 (1882). Given this unprecedented circumstance, the Special Counsel's Office consulted with OLC, which by delegation of the Attorney General provides controlling legal advice to the Executive Branch, including the Department.

OLC has twice before addressed the amenability to federal prosecution of a sitting President. The first relevant OLC opinion, drafted during Watergate in 1973, explored whether the Constitution's Impeachment Judgment Clause prohibits federal criminal prosecution of a sitting President before the exhaustion of the impeachment process and, if not, whether a sitting President is subject to criminal prosecution. *See* Memorandum from Robert G. Dixon, Jr., Assistant Attorney General, Office of Legal Counsel, *Re: Amenability of the President, Vice President, and other Civil Officers to Federal Criminal Prosecution while in Office* (Sept. 24, 1973) (1973 OLC Opinion). OLC concluded that the Impeachment Judgment Clause did not preclude prosecution of a sitting President, *id*. at 16, but that a criminal prosecution of a sitting President would violate the separation of powers and "unduly interfere in a direct or formal sense with the conduct of the Presidency[.]" *Id*. at 27.

In 2000, in the wake of the first presidential impeachment in more than a century, OLC issued a second opinion revisiting the question of whether a sitting President could be criminally charged, and again concluded that charging and prosecuting a sitting President would impermissibly threaten the constitutional separation of powers because it would harm the President's ability to fulfill his constitutional role. *See* Memorandum from Randolph D. Moss,

Assistant Attorney General, Office of Legal Counsel, *A Sitting President's Amenability to Indictment and Criminal Prosecution*, 24 Op. O.L.C. 222, 222 (Oct. 16, 2000) (2000 OLC Opinion). The 2000 OLC Opinion reasoned that doing so would risk imposing three burdens that would make it impossible for a President to effectively carry out his constitutional duties: (1) the burden of imprisonment, which would physically prevent the President from doing his work; (2) the burden of "public stigma and opprobrium," which could weaken the President's ability to "fulfill his constitutionally contemplated leadership role"; and (3) the mental and physical burdens associated with preparing a defense to a criminal prosecution, which "might severely hamper the President's performance of his official duties." *Id*. at 246. OLC concluded that, because a pending criminal prosecution would impair the President's ability to carry out these responsibilities to the detriment of the Nation, the constitutional interest in the President's unfettered performance of his duties must take precedence over the immediate enforcement of the criminal law against a sitting President. *Id*. at 255-60. The 2000 OLC Opinion, moreover, adopted "a categorical rule against indictment or criminal prosecution" of a sitting President. *Id.* at 254. While recognizing that "a particular criminal charge" might not impose all three burdens to the same degree, the Opinion deemed it "perilous" for the constitutional rule to turn on a case-by-case assessment. *Id.*

Both the 1973 and 2000 OLC Opinions recognized the critical national interest in upholding the rule of law, and stated that the President is not above it. *See* 2000 OLC Opinion at 236 ("Both the [1973] OLC memorandum and the Solicitor General's brief [filed in the District of Maryland in connection with the prosecution of former Vice President Spiro Agnew] recognized that the President is not above the law, and that he is ultimately accountable for his misconduct that occurs before, during, and after his service to the country."); 1973 OLC Opinion at 20 n.14 ("The Framers of the Constitution made it abundantly clear that the President was intended to be

a Chief Executive, responsible, subject to the law, and lacking the prerogatives and privileges of the King of England."). OLC explained that because a sitting President's immunity is "temporary," extending only so far as his term in office, it "would not subvert the important interest in maintaining the 'rule of law.'" 2000 OLC Opinion at 257; *see id.* (stating that this form of immunity "would generally result in the delay, but not the forbearance, of any criminal trial").

OLC has previously considered the possibility that the harms to the presidency might be ameliorated by returning an indictment against a sitting President but holding subsequent proceedings in abeyance until his term expires. 2000 OLC Opinion at 259 ("We have thus separately reconsidered whether, if the constitutional immunity extended only to criminal prosecution and confinement but not indictment, the President's ability to perform his constitutional functions would be unduly burdened by the mere pendency of an indictment against which he would need to defend himself after leaving office."); 1973 OLC Opinion at 31 ("To be sure it is arguable that despite the foregoing analysis it would be possible to indict a President, but defer trial until he was out of office."). While the 1973 OLC Opinion did not reach any conclusion on this question, in 2000, after balancing the competing interests that would arise from a federal indictment brought against a sitting President, OLC concluded that "a sitting President is immune from indictment as well as from further criminal process" and that the Constitution would thus prohibit an indictment "even if all subsequent proceedings were postponed until after the President left office." 2000 OLC Opinion at 259. But OLC recognized that the interest in avoiding a statute of limitations bar by securing an indictment during the presidency "is a legitimate one," and it noted the possibility that a court might equitably toll the statute of limitations to permit proceeding against the President once out of office. *Id.* at 256; 1973 OLC Opinion at 29.

Neither the 1973 nor the 2000 OLC Opinion addressed directly a federal indictment that has already been returned against a private citizen prior to his election as President. The Special Counsel's Office therefore sought OLC's guidance on whether this case must be dismissed, or whether the pending superseding indictment against the defendant could be held in abeyance until he is no longer immune from prosecution. OLC concluded that its 2000 Opinion's "categorical" prohibition on the federal indictment of a sitting President—even if the case were held in abeyance—applies to this situation, where a federal indictment was returned before the defendant takes office. 2000 OLC Opinion at 254.[1] Accordingly, the Department's position is that the Constitution requires that this case be dismissed before the defendant is inaugurated. And although the Constitution requires dismissal in this context, consistent with the temporary nature of the immunity afforded a sitting President, it does not require dismissal with prejudice. *Cf. id.* at 255 ("immunity from prosecution for a sitting President would not preclude such prosecution once the President's term is over or he is otherwise removed from office by resignation or impeachment"). This outcome is not based on the merits or strength of the case against the defendant.

For the foregoing reasons, the Government respectfully moves under Federal Rule of Criminal Procedure 48(a) for dismissal without prejudice of the superseding indictment.

                                                    Respectfully submitted,

                                                    JACK SMITH
                                                    Special Counsel

                                                    */s/ Jack Smith*
                                                    950 Pennsylvania Avenue NW
                                                    Room B-206
                                                    Washington, D.C. 20530

---

[1] As with the 1973 and 2000 OLC Opinions, OLC's analysis addressed only the federal cases pending against the defendant.